**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | CIVIL ACTION LAW |
| Plaintiff, | NO. 2:24-cv-152 |
| v. | JURY TRIAL DEMANDED |
| COLONIAL RESTAURANT, LLC, AND THE ESTATE OF AJAY P. PERSUAD, BY AND THROUGH, DESIREE PERSAUD, ADMINISTRATOR AD PROSEQUENDUM, | |
| Defendants. | |

### Plaintiff Scottsdale Insurance Company's Complaint For Rescission

Plaintiff, Scottsdale Insurance Company ("Scottsdale"), by and through its counsel, Goldberg Segalla, LLP, files this Complaint for Rescission and Declaratory Judgment of Rescission against Defendants Colonial Restaurant, LLC ("Colonial") and the Estate of Ajay P. Persuad ("Persuad"), by and through Desiree Persaud, Administrator ad Prosequendum, and avers the following:

**I.     The Parties**

1.     Plaintiff Scottsdale is a corporation organized under the laws of Ohio with a principal place of business in Scottsdale, Arizona.

2.     Upon information and belief, Colonial is a New Jersey corporation with a principal place of business of 821 Spring Street, Elizabeth, New Jersey 07208.

3.     Upon information and belief, Colonial's members are comprised of Ashok Dutta ("Dutta"), Aracely Gonzales ("Gonzales"), and Julian Valencia ("Valencia").

4.      Upon information and belief, Dutta, Gonzales, and Valencia are residents of New Jersey.

5.      Upon information and belief, Desiree Persaud, as the Administrator ad Prosequendum of the Estate of Persuad, is a resident of New Jersey and is named as an interested party, so that she may be bound by any orders, rulings, or judgments made herein.

**II.     Jurisdiction and Venue**

6.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

7.      Based upon information and belief, Scottsdale is diverse in citizenship from the Defendants.

8.      This action involves an insurance coverage dispute between Scottsdale and Colonial, which arises from a personal injury action brought by the Estate of Persaud and captioned: *Estate of Ajay P. Persaud deceased, by and through Desiree Persaud, Administrator as Prosequendum v. Sergio Cabrerachavez, et al*., pending in the New Jersey Superior Court, Law Division, Middlesex County under docket No. MID-L-004103-22 ("Underlying Lawsuit").

9.      In the Underlying Lawsuit, the Estate of Persaud alleges damages arising from the death of Ajay Persaud from a motor vehicle accident occurring in Elizabeth, New Jersey.

10.      Upon information and belief, the damages alleged in the Underlying Lawsuit exceed $75,000.

11.      Scottsdale issued an insurance policy to Colonial in effect during the underlying accident, the liability limits of which are $1 million.

12.     The liability limits of the Scottsdale insurance policy governing this dispute exceed $75,000.

13.     This Court has subject matter jurisdiction pursuant to the Declaratory Judgement Act, 28 U.S.C. § 2201.

14.     Venue in the United States District Court for New Jersey is proper because Colonial's principal place of business is located in the State of New Jersey in a county identified by 28 U.S.C. § 118 and pursuant to 28 U.S.C. § 1391(b)(1) as defined by 28 U.S.C. § 1391(c).

15.     Further, a substantial part of the events giving rise to Scottsdale's cause of action arose in this venue, including delivery of an insurance policy by Scottsdale to Colonial, and the Underlying Lawsuit giving rise to this insurance coverage dispute was filed in Middlesex County. Thus, venue is also appropriate pursuant to 28 U.S.C. § 1391(b)(2).

III.    **Facts Giving Rise To This Dispute**

    **A.  The Underlying Action**

16.     On or about October 12, 2022, the Estate of Persaud filed a Second Amended Complaint, in the Underlying Lawsuit, against Sergio Cabrerachavez ("Cabrerachavez"), The Lobby, Cotugno Investments, Inc., The Lobby Group NJ LLC d/b/a "The Lobby", and Colonial Restaurants, LLC d/b/a The Lobby ("Colonial Restaurants"). A true a correct copy of the Underlying Lawsuit is attached as **Exhibit 1**.

17.     In the First Count, it is alleged, on or about June 19, 2021, Persuad was a motorcyclist traveling at or near an intersection in Elizabeth, New Jersey. *See id.* at ¶ 1.

18.     It is further alleged that on that date, Cabrerachavez drove his truck in an allegedly negligent and unreasonable manner striking Persaud, which resulted in Persaud's death.  *See id*. at ¶¶ 2-4.

19.     In the Second Count, it is alleged that the defendants, including Colonial Restaurants, were business entities, which had ownership and/or control of an alcohol beverage serving establishment, commonly known as "The Lobby", located at 821 Spring Street, Elizabeth, New Jersey ("Premises").  *See id*. at ¶ 2.

20.     It is further alleged that on or about June 18, 2021, and into the early morning hours of June 19, 2021, the defendants, including Colonial Restaurants, through their agents, servants and/or employees served alcoholic beverages to Persaud in a negligent and unreasonable manner, while Persaud was visibly intoxicated.  *See id*. at ¶ 3.

21.     It also is alleged that as a result of the negligent and unreasonable service of alcoholic beverages to Persaud, by and through the defendants, including Colonial Restaurants, Persaud left The Lobby in an intoxicated condition and was involved in a motor vehicle accident. *See id*. at ¶ 4.

22.     It is alleged that the defendants, including Colonial Restaurants, negligently served alcoholic beverages to Persaud while Persaud was visibly intoxicated, which constituted a substantial factor in causing the accident and Persaud's death.  *See id*. at ¶¶ 5 & 7.

23.     The Fourth Count is a wrongful death claim brought pursuant to "The Death Act of The State of New Jersey", N.J.S.A. 2a:3-1, *et seq*. asserted against all defendants.  *See id*. at ¶¶ 1-5.

24.     The Fifth Count is a survival action claim brought pursuant to N.J.S.A. 2A:15-3 asserted against all defendants.  *See id*. at ¶¶ 1-5.

25.     The remaining count is not asserted against Colonial Restaurants.  *See id.*

**B. The Insurance Applications**

**1. Application #1**

26.     Colonial applied for a policy of insurance with Scottsdale by way of the Bars/Restaurant/Taverns General Liability Application, dated May 5, 2021 ("Application #1").  A true and correct copy of Application #1 is attached as **Exhibit 2**.

27.     The address listed on Application #1 is 821 Spring Street, Elizabeth, New Jersey, i.e., the Premises.  *See id.*

28.     Question #1, in Application #1, asks for the classification of the risk presented by Colonial's business.  *See id.*

29.     In response to Question #1, Colonial indicated "Bar / Tavern" and "Restaurant". Colonial did not indicate "Nightclub" in response to Question #1.  *See id.*

30.     Question #17.a., in Application #1, asks if there was any live music at the Premises, to which Colonial responded in the negative.  *See id.*

31.     Question #17.b., in Application #1, asks if there was any dancing at the Premises, to which Colonial responded "NA", i.e., Not Applicable.  *See id.*

32.     Question #5, in Application #1, requests information regarding the Premises' opening and closing times per day.  *See id.*

33.     In response to Question #5, Colonial listed "11 AM – 1 AM".  *See id.*

34.     In Question #2, of Application #1, Colonial was asked for its annual gross sales for the next twelve (12) months.  *See id.*

35.     In response to Question #2, Colonial listed $120,000 for alcohol sales and $280,000 for food sales.  *See id.*

36.     Question #3 and Question #4, in Application #1, ask the number of years Colonial had been in business and the number of years under current management.  *See id.*

37.     In response to both Question #3 and Question #4, Colonial replied that it was a "new venture".  *See id.*

38.     Question #30, in Application #1, asks Colonial to list all claims or losses, regardless of fault or whether or not insured, or occurrences that may have given rise to a claim for the prior three (3) years.  *See id.*

39.     In response to Question #30, Colonial listed "N/A".  *See id.*

40.     Question #29, in Application #1, asks for information for Colonial's insurers for the prior three (3) years, including the insurer name, policy number, coverage type, whether the coverage was provided on an occurrence or claims made basis, and the total premium.  *See id.*

41.     In response to Question #29, Colonial listed "N/A".  *See id.*

42.     Question #23, in Application #1, asks the number of bouncers, doormen, and other security personnel at the Premises.  *See id.*

43.     In response to Question #23, Colonial answered "No."  *See id.*

44.     Application #1 contains a fraud warning, applicable in New Jersey, which states, in

part:

> This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.
>
> *Fraud Warning:*  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. *(Not applicable in AL, CO, DC, FL, KS, ME, MD, MN, NE, NY, OH, OK, OR, RI, TN, VA, VT or WA).*
> ...

*Id.*

45.     Application #1 contains an applicant's statement, which states:

> *Applicant's Statement:*
>
> *I have read the above application and declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty).*

*Id.*

46.     Application #1 was signed and dated by the applicant, Terry Gonzalez, on May 5,

2021.  *See id.*

### 2.  Application #2

47.     Colonial applied for a policy of insurance with Scottsdale also by way of the Liquor

Liability Application, dated May 5, 2021 ("Application #2").   A true and correct copy of

Application #2 is attached as **Exhibit 3**.

48.     The address listed on Application #2 is 821 Spring Street, Elizabeth, New Jersey,

i.e., the Premises.  *See id.*

49.     Question #1, in Application #2, asks for the classification of the risk presented by Colonial's business.  *See id.*

50.     In response to Question #1, Colonial indicated "Bar / Tavern" and "Restaurant". Colonial did not indicate "Nightclub" in response to the question.  *See id.*

51.     Question #31, in Application #2, asks about the type of entertainment activities held at the Premises, including whether there was a dance floor and/or live entertainment.  *See id.*

52.     In response to Question #31, Colonial responded "N/A".  *See id.*

53.     Question #17, in Application #2, asks what time the Premises closed and its hours of service.  *See id.*

54.     In response to Question #17, Colonial listed "1 AM" and "11 AM – 1 AM" respectively to these inquires.  *See id.*

55.     Question #6 and Question #10, in Application #2, ask for Colonial's estimated liquor receipts and estimated food receipts.  *See id.*

56.     In response to Question #6 and Question #10, Colonial listed $120,000 for estimated liquor receipts and $280,000 for estimated food receipts.  *See id.*

57.     Question #12 and Question #13, in Application #2, ask how many years Colonial had been in business, and how many years it had been at its location at 821 Spring Street, Elizabeth, New Jersey.  *See id.*

58.     In response to both Question #12 and Question #13, Colonial listed "new venture". *See id.*

59.     Question #39, in Application #2, asks Colonial to list all liquor liability claims or losses, regardless of fault and whether or not insured, or occurrences that may have given rise to a claim for the prior three (3) years.  *See id.*

60.     In response to Question #39, Colonial responded "N/A".  *See id.*

61.     Question #38, in Application #2, asks for information regarding Colonial's prior insurers for the past three (3) years, including the insurer name, policy number, and year.  *See id.*

62.     In response to Question #38, Colonial listed "N/A".  *See id.*

63.     Question #29, in Application #2, asks Colonial to check all boxes that were applicable to security activities.  *See id.*

64.     In response to Question #29, no boxes were checked, e.g., the box for bouncers was not checked.  *See id.*

65.     Application #2 contains a fraud warning, applicable in New Jersey, which states, in part:

> *This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.*
> *...*
>
> *I further understand that the Company is relying upon statements I have made in this application as an inducement to provide insurance for Liquor Liability coverage.*
> *...*

*Id.*

66.     Application #2 also contains an applicant's statement, which states:

> *Applicant's Statement:*
>
> *I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying (Kansas: This does not constitute a warranty).*

*Id.*

67.     Application #2 was signed and dated by the Applicant on May 5, 2021.  *See id.*

**C.  The Policy**

68.     Scottsdale and its agents relied on Colonial's representations in Application #1 and Application #2 in issuing policy # CPS3985594 to "Colonial Restaurant LLC" with an effective date of May 5, 2021 ("Policy").  A true and correct copy of the Policy is attached as **Exhibit 4**.

69.     The Policy's Section IV – Commercial General Liability Conditions at Form CG 00 01 04 13 states, in part:

> *6.  Representations By accepting this policy, you agree:*
>
> *a.  The statements in the Declarations are accurate and complete;*
> *b.  Those statements are based upon representations you made to us; and*
> *c.  We have issued this policy in reliance upon your representations.*

*Id.*

70.     The Policy was cancelled on November 15, 2021 per the Notice of Cancellation, dated October 13, 2021, for "Substantial Change in risk assumed".  A true and correct copy of the Notice of Cancellation attached as **Exhibit 5**.

71.     Following the Policy's cancellation, which was effective November 15, 2021, a pro-rated portion of the Policy's premium was returned to Colonial, on or about December 12, 2021.

**D.  Scottsdale's Investigation**

72.     Scottsdale commenced an investigation into Colonial's business at the Premises, which revealed numerous material misrepresentations in Application #1 and Application #2.

### 1.  Misrepresentation Regarding Entertainment Activities

73.     Following the issuance of the Policy, Scottsdale learned there was live entertainment at the Premises.

74.     Prior to May 5, 2021, the Policy's effective date, Scottsdale had no knowledge there was live entertainment at the Premises as Colonial misrepresented this fact in Application #1 and Application #2.

75.     Following the issuance of the Policy, Scottsdale learned there was a certificate of dance hall posted at the Premises.  A true and correct copy of the Certificate Of Dance Hall is attached as **Exhibit 6**.

76.     Prior to May 5, 2021, Scottsdale had no knowledge dancing may be permitted at the Premises as Colonial misrepresented this fact in Application # 1 and Application #2.

### 2.  Misrepresentations Regarding Hours Of Operation

77.     Following the issuance of the Policy, Scottsdale learned Colonial operated its establishment Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m.

78.     Prior to May 5, 2021, Scottsdale had no knowledge that Colonial operated its establishment during the above-stated hours, as Colonial misrepresented that it was opened from 11 a.m. to 1 a.m. in Application #1 and Application #2.

### 3.  Misrepresentations Regarding Sales

79.     Following the issuance of the Policy, Scottsdale learned Colonial's total sales for the applicable period were $3.5 million in food sales and its liquor sales were $1.050 million.

80.     Prior to May 5, 2021, Scottsdale had no knowledge Colonial's total sales for the applicable period were $3.5 million in food sales and its liquor sales were $1.050 million as, in Application #1 and Application #2, Colonial misrepresented that its estimated food sales were only $280,000 and estimated liquor sales were only $120,000.

### 4. *Misrepresentations Regarding Years In Business*

81.     Following the issuance of the Policy, Scottsdale learned Colonial has been in business for approximately fifteen (15) years.

82.     Prior to May 5, 2021, Scottsdale had no knowledge Colonial had been in business for approximately fifteen (15) year as Colonial misrepresented it was a "new venture" in Application #1 and Application #2.

### 5. *Misrepresentations Regarding Prior Claims / Losses*

83.     Following the issuance of the Policy, Scottsdale learned numerous lawsuits had been brought against Colonial or "The Lobby", which, based upon information and belief is a trade name for Colonial, during the relevant time period including, but not limited to:

a.      the lawsuit captioned *Yesina Melendez v. The Lobby a/k/a The Lobby Sports Bar And Lounge, et al*., Docket No.: MID-L-001080-19 ("Melendez Lawsuit") commenced, on or about January 31, 2019, by Yesina Melendez ("Melendez").  A true and correct copy of the Melendez Lawsuit is attached as **Exhibit 7**.

b.       the lawsuit captioned: *Benjamin Casta v. Colonial Restaurant LLC d/b/a The Lobby, et al*., Docket No.: UNN-L-002718-19 ("Casta Lawsuit"), commenced by Benjamin Casta, on or about July 31, 2019, against, among others, Colonial d/b/a The Lobby.  A true and correct copy of the Casta Lawsuit is attached as **Exhibit 8**.

c.       the lawsuit captioned: *Bondreice Nakala Hutchinson v. Colonial Restaurant d/b/a The Lobby, et al*., Docket No.: MID-L-003607-20 ("Hutchinson Lawsuit") commenced by Bondreice Nakala Hutchinson ("Hutchinson"), on or about June 5, 2020, against, among others, Colonial Restaurant d/b/a The Lobby.  A true and correct copy of the Hutchinson Lawsuit is attached as **Exhibit 9**.

d.       the lawsuit captioned: *Diamante Suarez v. The Lobby, et al*., Docket No.: UNN-L-000192-21 ("Suarez Lawsuit") commenced by Diamante Suarez ("Suarez"), on or about January 19, 2021, against, among others, The Lobby.  A true and correct copy of the Suarez Lawsuit is attached as **Exhibit 10**.

84.     Prior to May 5, 2021, Scottsdale had no knowledge lawsuits had previously been commenced against Colonial as Colonial misrepresented this fact in Application #1 and Application #2.

85.     Following the issuance of the Policy, in response to Scottsdale's request, Colonial provided documents to Scottsdale that included notices of additional claims asserted against Colonial during the relevant time period including, but not limited to:

a.       a letter dated April 5, 2019 from lawyers representing Jennifer Garcia ("Garcia") stating due to the carelessness and negligence of The Lobby at its Premises,

Garcia sustained personal injuries.  A true a correct of the Garcia Letter is attached as **Exhibit 11**.

       b.     a letter dated November 1, 2019 from lawyers representing Edison Espinoza ("Espinoza") stating Espinoza sustained personal injuries on October 20, 2019 as a result of an assault and battery by The Lobby's employees / agents on The Lobby's Premises.  A true and correct copy of the Espinoza Letter is attached as **Exhibit 12**.

       c.     a letter dated June 1, 2021 from lawyers representing Quiana Diggs ("Diggs") with respect to a claim of an alleged attack on Diggs at the Premises on May 31, 2021 on an outside patio area.  A true and correct copy of the Diggs Letter is attached as **Exhibit 13**.

       d.     an undated letter from lawyers representing Kevin Connell ("Connell") for injuries at the Premises on May 5 and 6, 2019, when Connell claimed he was assaulted by one of The Lobby's security employees.  A true and correct copy of the Connell Letter is attached as **Exhibit 14**.

86.     Prior to May 5, 2021, Scottsdale had no knowledge there were prior claims asserted against Colonial as Colonial misrepresented this fact in Application #1 and Application #2.

87.     Following the issuance of the Policy, Scottsdale learned of numerous incidents of police activity, by the Elizabeth Police Department, at the Premises including, but not limited to:

       a.     on February 22, 2020, police responded to a report of a simple assault in which a female customer stated she had been assaulted by a security guard.  A true a correct copy of the Elizabeth Police Department Report, dated February 22, 2020, is attached as **Exhibit 15**.

b.      on February 23, 2020, police responded to a report of a fight involving a large crowd.  A true a correct copy of the Elizabeth Police Department Report, dated February 23, 2020, is attached as **Exhibit 16**.

c.      on March 15, 2020, police responded to a woman claiming she was grabbed by a stranger at the club.  A true a correct copy of the Elizabeth Police Department Report, dated March 15, 2020, is attached as **Exhibit 17**.

d.      on August 9, 2020, police responded to an incident in which it was alleged that security would not let a party in and they were stopped and pepper sprayed by security. A true a correct copy of the Elizabeth Police Department Report, dated August 9, 2020, is attached as **Exhibit 18**.

e.      on August 15, 2020, police responded to an incident in which it was alleged that bouncers had stolen a customer credit card.  A true a correct copy of the Elizabeth Police Department Report, dated August 15, 2020, is attached as **Exhibit 19**.

f.      on September 4, 2020, police responded to an incident in which a customer was harassing other customers.  A true a correct copy of the Elizabeth Police Department Report, dated September 4, 2020, is attached as **Exhibit 20**.

g.      on September 22, 2020, police returned to collect surveillance footage of a shooting that had occurred the day before.  A true a correct copy of the Elizabeth Police Department Report, dated September 22, 2020, is attached as **Exhibit 21**.

h.      on October 26, 2020, police responded to a report of a disorderly group.  A true a correct copy of the Elizabeth Police Department Report, dated October 26, 2020, is attached as **Exhibit 22**.

i.      on November 21, 2020, police responded to a report of a disorderly patron who would not leave the establishment.  A true a correct copy of the Elizabeth Police Department Report, dated November 21, 2020, is attached as **Exhibit 23**.

j.      on December 26, 2020, police responded to disorderly patrons, one of which was eventually charged with criminal mischief.  A true a correct copy of the Elizabeth Police Department Report, dated December 26, 2020, is attached as **Exhibit 24**.

k.      on January 26, 2021, police responded to a report of a fight at the establishment when patrons refused to leave.  A true a correct copy of the Elizabeth Police Department Report, dated January 26, 2021, is attached as **Exhibit 25**.

88.     Prior to May 5, 2021, Scottsdale had no knowledge there was substantial prior police activity at the Premises as Colonial misrepresented this fact in Application #1 and Application #2.

### 6.  *Misrepresentations Regarding Prior Insurance Information*

89.     Following the issuance of the Policy, based upon information and belief, Scottsdale learned Colonial was insured by other insurers prior to the Policy, including, but not limited to, Skyward Specialty Ins. Group ("Skyward").

90.     Prior to May 5, 2021, Scottsdale had no knowledge Colonial was previously insured by other insurers including, but not limited to Skyward, as Colonial misrepresented this fact in Application #1 and Application #2.

### 7.  *Misrepresentations Regarding Security*

91.     Following the issuance of the Policy, Scottsdale learned there were bouncers, doormen, and/or security at the Premises, which may have included off-duty police officers working at the Premises.

92.     Prior to May 5, 2021, Scottsdale had no knowledge there were bouncers, doormen, and/or security at the Premises, which potentially included off-duty police officers, as Colonial misrepresented this fact in Application #1 and Application #2.

### 8. *Misrepresentations Regarding Hookah Exposure*

93.     Following the issuance of the Policy, Scottsdale learned the Hutchinson Lawsuit was filed against Colonial / The Lobby, which alleged damages based on Hookah exposure. *See* **Exhibit 9**.

94.     Prior to May 5, 2021, Scottsdale had no knowledge there was Hookah exposure at the Premises as Colonial misrepresented this fact in Application #1 and Application #2.

95.     Accordingly, in completing Application #1 and Application #2, Colonial misrepresented many material facts.

96.     The misrepresentations and/or omissions of fact in Application #1 and Application #2 were material to Scottsdale's agreement to issue the Policy and its calculation of the appropriate amount of premium to be charged.

97.     If Application #1 and Application #2 contained correct information, Scottsdale's underwriting department states it would not have issued the Policy.

### E.  Scottsdale's Letters To Colonial

98.     On or about December 16, 2022, Scottsdale issued a reservation of rights letter to Colonial in which it agreed to provide a defense to Colonial, in the Underlying Lawsuit, pursuant to a strict reservation of rights.  A true and correct copy of Scottsdale's December 16, 2022 letter is attached as **Exhibit 26**.

99.     On or about June 14, 2023, Scottsdale issued a supplemental reservation of rights letter to Colonial, in which Scottsdale agreed to continue to provide a defense to Colonial, in the Underlying Lawsuit, pursuant to a strict reservation of rights letter.  A true and correct copy of Scottsdale's June 14, 2023 letter is attached as **Exhibit 27**.

100.    In its June 14, 2023 letter, Scottsdale notified Colonial of its intent to rescind the Policy based on Colonial's material misrepresentations in Application #1 and Application #2.  *See id.*

101.    In its December 7, 2023 letter, Scottsdale advised Colonial of its rescission of the Policy *ab initio* based upon the misrepresentations in Application #1 and Application #2, as well as advised it was in the process of returning the remaining premium to Colonial.  A true and correct copy of Scottsdale's December 7, 2023 letter rescinding the Policy is attached as **Exhibit 28**.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment Rescinding The Policy)**

102.    Scottsdale repeats and realleges paragraphs 1-99 as if stated more fully in this paragraph 100.

103.    In completing Application #1 and Application #2, Colonial misrepresented facts about the nature of the business at the Premises, including, but not limited to, classifying its business as a bar/tavern or a restaurant rather than a nightclub, its entertainment activities, and hours of operation.

104.    In completing Application #1 and Application #2, Colonial misrepresented facts about its food and alcohol sales for the requested time period, including stating that its annual liquor sales were $120,000 when in reality its liquor sales were approximately $1.050 million.

105.    In completing Application #1 and Application #2, Colonial misrepresented the number of years Colonial had been in business stating it was a new venture when in reality Colonial had been in business for approximately fifteen (15) years.

106.    In completing Application #1 and Application #2, Colonial misrepresented it was not aware of any claims or losses or occurrences that could give rise to a claim for the relevant time period when in actuality there were numerous lawsuits and claims asserted against Colonial, as well as extensive police activity at the Premises, during the applicable time period.

107.    In completing Application #1 and Application #2, Colonial misrepresented it was not previously insured by other insurers when in actuality, based upon information and belief, Colonial had been previously insured by other insurers including, but not limited to, Skyward.

108.    In completing Application #1 and Application #2, Colonial misrepresented there were no bouncers, doormen, or other security personnel at the Premises when in actuality there were bouncers, doormen, and/or security at the Premises, potentially including off-duty police officers.

109.    In completing Application #1 and Application #2, Colonial misrepresented there was no Hookah exposure at the Premises when in actuality a lawsuit was commenced based on Hookah exposure at the Premises.

110.    Based upon and in reliance on the information contained in Application #1 and Application #2, the Policy was issued to Colonial.

111.    If Application #1 and Application #2 had contained correct information, Scottsdale's underwriting states it would not have issued the Policy.

112.    Scottsdale has advised Colonial of its rescission of the Policy *ab initio* based upon the misrepresentations in Application #1 and Application #2.

113.    Moreover, Scottsdale is in the process of returning to Colonial the remaining premium paid by Colonial which is attributable to the Policy.

114.    Scottsdale is entitled to a declaration that the Policy is void *ab initio* based upon the material misrepresentations in Application #1 and Application #2.

**WHEREFORE**, Scottsdale demands judgment in its favor, together with costs of Court, and the following declarations:

a.    The Policy is rescinded and void *ab initio*;

b.    That in light of the rescission of the aforesaid Policy, the Court finds and declares that Scottsdale has no duty or obligations to defend Colonial and/or Colonial Restaurants in connection with the Underlying Lawsuit;

c.    That in light of the rescission of the aforesaid Policy, the Court finds and declares that Scottsdale has no duty or obligations to indemnify Colonial and/or Colonial Restaurants in connection with the Underlying Lawsuit;

d.    Inasmuch as the Policy is rescinded *ab initio*, there is no duty to defend or indemnify Colonial in connection with any past or future claims that may have accrued from May 5, 2021 to November 15, 2021;

e.      That the Court grant Scottsdale such other and further relief as it deems just and

proper.

Dated:   January 9, 2024                    GOLDBERG SEGALLA LLP

                                            /s/ Colleen E. Hayes
                                            Christian A. Cavallo, Esq.
                                            Colleen E. Hayes, Esq.
                                            1037 Raymond Blvd., Suite 1010
                                            Newark, New Jersey 07102-5423
                                            ccavallo@goldbergsegalla.com
                                            chayes@goldbergsegalla.com
                                             *Attorneys for Plaintiff Scottsdale Insurance
                                            Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies a true and correct copy of the foregoing Complaint was served on all parties.

Dated:   January 9, 2024

GOLDBERG SEGALLA LLP

*/s/ Colleen E. Hayes*
Christian A. Cavallo, Esq.
Colleen E. Hayes, Esq.
1037 Raymond Blvd., Suite 1010
Newark, New Jersey 07102-5423
ccavallo@goldbergsegalla.com
chayes@goldbergsegalla.com
*Attorneys for Plaintiff Scottsdale Insurance Company*