**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

SCOTTSDALE INSURANCE
COMPANY,

<div align="center">Plaintiff,</div>

<div align="center">v.</div>

COLONIAL RESTAURANT, LLC, THE
ESTATE OF AJAY P. PERSAUD, BY
AND THROUGH, DESIREE PERSAUD,
ADMINISTRATOR AD
PROSEQUENDUM, AND ERNESTO
ROJAS,

<div align="center">Defendants.</div>

CIVIL ACTION LAW

NO. 2:24-cv-00152

JURY TRIAL DEMANDED

---

**Plaintiff Scottsdale Insurance Company's First Amended Complaint For Rescission**

Plaintiff, Scottsdale Insurance Company ("Scottsdale"), by and through its counsel, Goldberg Segalla, LLP, files this First Amended Complaint for Rescission and Declaratory Judgment of Rescission against Defendants Colonial Restaurant, LLC ("Colonial"), the Estate of Ajay P. Persaud ("Persaud"), by and through Desiree Persaud, Administrator ad Prosequendum, and Ernesto Rojas ("Rojas") and avers the following:

**I.      The Parties**

1.      Plaintiff Scottsdale is a corporation organized under the laws of Ohio with a principal place of business in Scottsdale, Arizona.

2.      Upon information and belief, Colonial is a New Jersey corporation with a principal place of business of 821 Spring Street, Elizabeth, New Jersey 07208.

3.      Upon information and belief, Colonial's members are comprised of Ashok Dutta ("Dutta"), Aracely Gonzales ("Gonzales"), and Julian Valencia ("Valencia").

4.      Upon information and belief, Dutta, Gonzales, and Valencia are residents of New Jersey.

5.      Upon information and belief, Desiree Persaud, as the Administrator ad Prosequendum of the Estate of Persaud, is a resident of New Jersey and is named as an interested party, so that she may be bound by any orders, rulings, or judgments made herein.

6.      Upon information and belief, Rojas is a resident of New Jersey and is named as an interested party, so that he may be bound by any orders, rulings, or judgments made herein.

II.    **Jurisdiction and Venue**

7.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

8.      Based upon information and belief, Scottsdale is diverse in citizenship from the Defendants.

9.      This action involves an insurance coverage dispute between Scottsdale and Colonial, which arises from a personal injury action brought by the Estate of Persaud and captioned: *Estate of Ajay P. Persaud deceased, by and through Desiree Persaud, Administrator as Prosequendum v. Sergio Cabrerachavez, et al*., pending in the New Jersey Superior Court, Law Division, Middlesex County under docket No. MID-L-004103-22 ("Persaud Lawsuit"); and a personal injury action brought by Rojas and captioned: *Ernesto Rojas v. Maurico Cornejo Martinez, et al*., pending in the New Jersey Superior Court, Law Division, Middlesex County under docket No. MID-L-2399-22 ("Rojas Lawsuit") (Persaud Lawsuit and Rojas Lawsuit collectively referred to as "Underlying Lawsuits").

10.    In the Persaud Lawsuit, the Estate of Persaud alleges damages arising from the death of Ajay Persaud from a motor vehicle accident occurring in Elizabeth, New Jersey.

11.    In the Rojas Lawsuit, Rojas alleges damages arising from a motor vehicle accident in Newark, New Jersey.

12.    Upon information and belief, the damages alleged in the Underlying Lawsuits exceed $75,000.

13.  Scottsdale issued an insurance policy to Colonial in effect during the Persaud accident, the liability limits of which are $1 million.

14.    The liability limits of the Scottsdale insurance policy governing this dispute exceed $75,000.

15.    This Court has subject matter jurisdiction pursuant to the Declaratory Judgement Act, 28 U.S.C. § 2201.

16.    Venue in the United States District Court for New Jersey is proper because Colonial's principal place of business is located in the State of New Jersey in a county identified by 28 U.S.C. § 118 and pursuant to 28 U.S.C. § 1391(b)(1) as defined by 28 U.S.C. § 1391(c).

17.    Further, a substantial part of the events giving rise to Scottsdale's cause of action arose in this venue, including delivery of an insurance policy by Scottsdale to Colonial, and the Underlying Lawsuits, giving rise to this insurance coverage dispute, were filed in Middlesex County.  Thus, venue is also appropriate pursuant to 28 U.S.C. § 1391(b)(2).

## III.    Facts Giving Rise To This Dispute

### A.  The Underlying Actions

### 1. The Persaud Lawsuit

18.     On or about October 12, 2022, the Estate of Persaud filed a Second Amended Complaint, in the Persaud Lawsuit, against Sergio Cabrerachavez ("Cabrerachavez"), The Lobby, Cotugno Investments, Inc., The Lobby Group NJ LLC d/b/a "The Lobby", and Colonial Restaurants, LLC d/b/a The Lobby ("Colonial Restaurants").  A true a correct copy of the Persaud Lawsuit is attached as **Exhibit 1**.

19.     In the First Count, it is alleged, on or about June 19, 2021, Persaud was a motorcyclist traveling at or near an intersection in Elizabeth, New Jersey.  *See id*. at ¶ 1.

20.     It is further alleged that on that date, Cabrerachavez drove his truck in an allegedly negligent and unreasonable manner striking Persaud, which resulted in Persaud's death.  *See id*. at ¶¶ 2-4.

21.     In the Second Count, it is alleged that the defendants, including Colonial Restaurants, were business entities, which had ownership and/or control of an alcohol beverage serving establishment, commonly known as "The Lobby", located at 821 Spring Street, Elizabeth, New Jersey ("Premises").  *See id*. at ¶ 2.

22.     It is further alleged that on or about June 18, 2021, and into the early morning hours of June 19, 2021, the defendants, including Colonial Restaurants, through their agents, servants and/or employees served alcoholic beverages to Persaud in a negligent and unreasonable manner, while Persaud was visibly intoxicated.  *See id*. at ¶ 3.

23.     It also is alleged that as a result of the negligent and unreasonable service of alcoholic beverages to Persaud, by and through the defendants, including Colonial Restaurants,

Persaud left The Lobby in an intoxicated condition and was involved in a motor vehicle accident. *See id*. at ¶ 4.

24.     It is alleged that the defendants, including Colonial Restaurants, negligently served alcoholic beverages to Persaud while Persaud was visibly intoxicated, which constituted a substantial factor in causing the accident and Persaud's death. *See id*. at ¶¶ 5 & 7.

25.     The Fourth Count is a wrongful death claim brought pursuant to "The Death Act of The State of New Jersey", N.J.S.A. 2a:3-1, *et seq*. asserted against all defendants. *See id*. at ¶¶ 1-5.

26.      The Fifth Count is a survival action claim brought pursuant to N.J.S.A. 2A:15-3 asserted against all defendants. *See id*. at ¶¶ 1-5.

27.     The remaining count is not asserted against Colonial Restaurants. *See id.*

### 2. The Rojas Lawsuit

28.     On or about January 16, 2024, Rojas filed his Amended Complaint, in the Rojas Lawsuit, against, among others, Mauricio Cornejo Martinez ("Martinez"), Guiliano Environmental, LLC, Christopher Guiliano, Nancy Guiliano (collectively "Guiliano"), Nelson Guzman ("Guzman"), Lookers, and The Lobby. A true and correct copy of the Rojas Lawsuit is attached as **Exhibit 29**.

29.     In the First Count of the Rojas Lawsuit, it is alleged, on or about December 10, 2021, Rojas was a passenger in an automobile driven and owned by Guzman. *See id*. at ¶¶ 1-2.

30.    It is alleged, at that time and place, Defendant Mauricio Cornejo Martinez ("Martinez") was the driver of a commercial vehicle owned by Defendants Guiliano.  *See id.* at ¶ 3.

31.    As a result of the Defendants' negligence, it is alleged a motor vehicle accident occurred in Newark, New Jersey, which resulted in Rojas' claimed damages.  *See id.* at ¶¶ 4-6.

32.    In the Second Count, it is alleged that prior to the aforementioned incident, Defendant Guzman had been a patron at one of more of the establishments that sold liquor to him, including Defendant Lookers and The Lobby.  *See id.* at ¶ 2.

33.    It is alleged, during this period, the Defendants by and through their servants, agents, and/or employees, sold and served Nelson intoxicating liquor and alcoholic beverages when said Defendants knew or should have known that Nelson was intoxicated and under the influence of alcoholic beverages as a result of having been served said beverages by the Defendants.  *See id.* at ¶ 3.

34.    It is alleged the incident set forth in the Rojas Complaint was caused by and was the result of the intoxication of Nelson and was brought about by the negligent, careless, and/or reckless conduct of the Defendants.  *See id.* at ¶ 4.

35.    In the Third Count, it is alleged that the acts of the Defendants, including The Lobby, were willful and wanton in nature and constituted gross negligence.  *See id.* at ¶ 2.

36.    In the Fourth Count, it is alleged the losses and damages suffered by Rojas were the result of the combined negligence of all of the Defendants.  *See id.* at ¶ 2.

**B.  The Insurance Applications**

1. **Application #1**

37.     Colonial applied for a policy of insurance with Scottsdale by way of the Bars/Restaurant/Taverns General Liability Application, dated May 5, 2021 ("Application #1").  A true and correct copy of Application #1 is attached as **Exhibit 2**.

38.     The address listed on Application #1 is 821 Spring Street, Elizabeth, New Jersey, i.e., the Premises.  *See id.*

39.     Question #1, in Application #1, asks for the classification of the risk presented by Colonial's business.  *See id.*

40.     In response to Question #1, Colonial indicated "Bar / Tavern" and "Restaurant". Colonial did not indicate "Nightclub" in response to Question #1.  *See id.*

41.     Question #17.a., in Application #1, asks if there was any live music at the Premises, to which Colonial responded in the negative.  *See id.*

42.     Question #17.b., in Application #1, asks if there was any dancing at the Premises, to which Colonial responded "NA", i.e., Not Applicable.  *See id.*

43.     Question #5, in Application #1, requests information regarding the Premises' opening and closing times per day.  *See id.*

44.     In response to Question #5, Colonial listed "11 AM – 1 AM".  *See id.*

45.     In Question #2, of Application #1, Colonial was asked for its annual gross sales for the next twelve (12) months.  *See id.*

46.     In response to Question #2, Colonial listed $120,000 for alcohol sales and $280,000 for food sales.  *See id.*

47.     Question #3 and Question #4, in Application #1, ask the number of years Colonial had been in business and the number of years under current management.  *See id.*

48.     In response to both Question #3 and Question #4, Colonial replied that it was a "new venture".  *See id.*

49.     Question #30, in Application #1, asks Colonial to list all claims or losses, regardless of fault or whether or not insured, or occurrences that may have given rise to a claim for the prior three (3) years.  *See id.*

50.     In response to Question #30, Colonial listed "N/A".  *See id.*

51.     Question #29, in Application #1, asks for information for Colonial's insurers for the prior three (3) years, including the insurer name, policy number, coverage type, whether the coverage was provided on an occurrence or claims made basis, and the total premium.  *See id.*

52.     In response to Question #29, Colonial listed "N/A".  *See id.*

53.     Question #23, in Application #1, asks the number of bouncers, doormen, and other security personnel at the Premises.  *See id.*

54.     In response to Question #23, Colonial answered "No."  *See id.*

55.     Application #1 contains a fraud warning, applicable in New Jersey, which states, in part:

> *This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.*
>
> *Fraud Warning:  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act,*

> *which is a crime and subjects such person to criminal and civil penalties. (Not applicable in AL, CO, DC, FL, KS, ME, MD, MN, NE, NY, OH, OK, OR, RI, TN, VA, VT or WA).*
> ...

*Id.*

56. Application #1 contains an applicant's statement, which states:

> *Applicant's Statement:*
>
> *I have read the above application and declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty).*

*Id.*

57. Application #1 was signed and dated by the applicant, Terry Gonzalez, on May 5, 2021. *See id.*

## 2. Application #2

58. Colonial applied for a policy of insurance with Scottsdale also by way of the Liquor Liability Application, dated May 5, 2021 ("Application #2"). A true and correct copy of Application #2 is attached as **Exhibit 3**.

59. The address listed on Application #2 is 821 Spring Street, Elizabeth, New Jersey, i.e., the Premises. *See id.*

60. Question #1, in Application #2, asks for the classification of the risk presented by Colonial's business. *See id.*

61. In response to Question #1, Colonial indicated "Bar / Tavern" and "Restaurant". Colonial did not indicate "Nightclub" in response to the question. *See id.*

62. Question #31, in Application #2, asks about the type of entertainment activities held at the Premises, including whether there was a dance floor and/or live entertainment. *See id.*

63.     In response to Question #31, Colonial responded "N/A".  *See id.*

64.     Question #17, in Application #2, asks what time the Premises closed and its hours of service.  *See id.*

65.     In response to Question #17, Colonial listed "1 AM" and "11 AM – 1 AM" respectively to these inquires.  *See id.*

66.     Question #6 and Question #10, in Application #2, ask for Colonial's estimated liquor receipts and estimated food receipts.  *See id.*

67.     In response to Question #6 and Question #10, Colonial listed $120,000 for estimated liquor receipts and $280,000 for estimated food receipts.  *See id.*

68.     Question #12 and Question #13, in Application #2, ask how many years Colonial had been in business, and how many years it had been at its location at 821 Spring Street, Elizabeth, New Jersey.  *See id.*

69.     In response to both Question #12 and Question #13, Colonial listed "new venture". *See id*.

70.     Question #39, in Application #2, asks Colonial to list all liquor liability claims or losses, regardless of fault and whether or not insured, or occurrences that may have given rise to a claim for the prior three (3) years.  *See id.*

71.     In response to Question #39, Colonial responded "N/A". *See id*.

72.     Question #38, in Application #2, asks for information regarding Colonial's prior insurers for the past three (3) years, including the insurer name, policy number, and year.  *See id.*

73.     In response to Question #38, Colonial listed "N/A".  *See id.*

74.     Question #29, in Application #2, asks Colonial to check all boxes that were applicable to security activities.  *See id.*

75.     In response to Question #29, no boxes were checked, e.g., the box for bouncers was not checked.  *See id.*

76.     Application #2 contains a fraud warning, applicable in New Jersey, which states, in part:

> *This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.*
> *...*
>
> *I further understand that the Company is relying upon statements I have made in this application as an inducement to provide insurance for Liquor Liability coverage.*
> *...*

*Id.*

77.     Application #2 also contains an applicant's statement, which states:

> *Applicant's Statement:*
>
> *I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying (Kansas: This does not constitute a warranty).*

*Id.*

78.     Application #2 was signed and dated by the Applicant on May 5, 2021.  *See id.*

**C.  The Policy**

79.     Scottsdale and its agents relied on Colonial's representations in Application #1 and Application #2 in issuing policy # CPS3985594 to "Colonial Restaurant LLC" with an effective date of May 5, 2021 ("Policy").  A true and correct copy of the Policy is attached as **Exhibit 4**.

80.    The Policy's Section IV – Commercial General Liability Conditions at Form CG 00 01 04 13 states, in part:

*6. Representations By accepting this policy, you agree:*

*a. The statements in the Declarations are accurate and complete;*
*b. Those statements are based upon representations you made to us; and*
*c. We have issued this policy in reliance upon your representations.*

*Id.*

81.    The Policy was cancelled on November 15, 2021 per the Notice of Cancellation, dated October 13, 2021, for "Substantial Change in risk assumed".  A true and correct copy of the Notice of Cancellation attached as **Exhibit 5**.

82.    Following the Policy's cancellation, which was effective November 15, 2021, a pro-rated portion of the Policy's premium was returned to Colonial, on or about December 12, 2021.

**D.  Scottsdale's Investigation**

83.    Scottsdale commenced an investigation into Colonial's business at the Premises, which revealed numerous material misrepresentations in Application #1 and Application #2.

*1. Misrepresentation Regarding Entertainment Activities*

84.    Following the issuance of the Policy, Scottsdale learned there was live entertainment at the Premises.

85.    Prior to May 5, 2021, the Policy's effective date, Scottsdale had no knowledge there was live entertainment at the Premises as Colonial misrepresented this fact in Application #1 and Application #2.

86.     Following the issuance of the Policy, Scottsdale learned there was a certificate of dance hall posted at the Premises.  A true and correct copy of the Certificate Of Dance Hall is attached as **Exhibit 6**.

87.     Prior to May 5, 2021, Scottsdale had no knowledge dancing may be permitted at the Premises as Colonial misrepresented this fact in Application # 1 and Application #2.

## 2.  *Misrepresentations Regarding Hours Of Operation*

88.     Following the issuance of the Policy, Scottsdale learned Colonial operated its establishment Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m.

89.     Prior to May 5, 2021, Scottsdale had no knowledge that Colonial operated its establishment during the above-stated hours, as Colonial misrepresented that it was opened from 11 a.m. to 1 a.m. in Application #1 and Application #2.

## 3.  *Misrepresentations Regarding Sales*

90.     Following the issuance of the Policy, Scottsdale learned Colonial's total sales for the applicable period were $3.5 million in food sales and its liquor sales were $1.050 million.

91.     Prior to May 5, 2021, Scottsdale had no knowledge Colonial's total sales for the applicable period were $3.5 million in food sales and its liquor sales were $1.050 million as, in Application #1 and Application #2, Colonial misrepresented that its estimated food sales were only $280,000 and estimated liquor sales were only $120,000.

## 4.  *Misrepresentations Regarding Years In Business*

92.    Following the issuance of the Policy, Scottsdale learned Colonial has been in business for approximately fifteen (15) years.

93.    Prior to May 5, 2021, Scottsdale had no knowledge Colonial had been in business for approximately fifteen (15) year as Colonial misrepresented it was a "new venture" in Application #1 and Application #2.

### 5.  *Misrepresentations Regarding Prior Claims / Losses*

94.    Following the issuance of the Policy, Scottsdale learned numerous lawsuits had been brought against Colonial or "The Lobby", which, based upon information and belief is a trade name for Colonial, during the relevant time period including, but not limited to:

a.    the lawsuit captioned *Yesina Melendez v. The Lobby a/k/a The Lobby Sports Bar And Lounge, et al.*, Docket No.: MID-L-001080-19 ("Melendez Lawsuit") commenced, on or about January 31, 2019, by Yesina Melendez ("Melendez").  A true and correct copy of the Melendez Lawsuit is attached as **Exhibit 7**.

b.    the lawsuit captioned: *Benjamin Casta v. Colonial Restaurant LLC d/b/a The Lobby, et al.*, Docket No.: UNN-L-002718-19 ("Casta Lawsuit"), commenced by Benjamin Casta, on or about July 31, 2019, against, among others, Colonial d/b/a The Lobby.  A true and correct copy of the Casta Lawsuit is attached as **Exhibit 8**.

c.    the lawsuit captioned: *Bondreice Nakala Hutchinson v. Colonial Restaurant d/b/a The Lobby, et al.*, Docket No.: MID-L-003607-20 ("Hutchinson Lawsuit") commenced by Bondreice Nakala Hutchinson ("Hutchinson"), on or about June 5, 2020, against, among others, Colonial Restaurant d/b/a The Lobby.  A true and correct copy of the Hutchinson Lawsuit is attached as **Exhibit 9**.

d.    the lawsuit captioned: *Diamante Suarez v. The Lobby, et al.*, Docket No.: UNN-L-000192-21 ("Suarez Lawsuit") commenced by Diamante Suarez ("Suarez"), on or about January 19, 2021, against, among others, The Lobby.  A true and correct copy of the Suarez Lawsuit is attached as **Exhibit 10**.

95.    Prior to May 5, 2021, Scottsdale had no knowledge lawsuits had previously been commenced against Colonial as Colonial misrepresented this fact in Application #1 and Application #2.

96.    Following the issuance of the Policy, in response to Scottsdale's request, Colonial provided documents to Scottsdale that included notices of additional claims asserted against Colonial during the relevant time period including, but not limited to:

a.    a letter dated April 5, 2019 from lawyers representing Jennifer Garcia ("Garcia") stating due to the carelessness and negligence of The Lobby at its Premises, Garcia sustained personal injuries.  A true a correct of the Garcia Letter is attached as **Exhibit 11**.

b.    a letter dated November 1, 2019 from lawyers representing Edison Espinoza ("Espinoza") stating Espinoza sustained personal injuries on October 20, 2019 as a result of an assault and battery by The Lobby's employees / agents on The Lobby's Premises.  A true and correct copy of the Espinoza Letter is attached as **Exhibit 12**.

c.    a letter dated June 1, 2021 from lawyers representing Quiana Diggs ("Diggs") with respect to a claim of an alleged attack on Diggs at the Premises on May 31, 2021 on an outside patio area.  A true and correct copy of the Diggs Letter is attached as **Exhibit 13**.

d.      an undated letter from lawyers representing Kevin Connell ("Connell") for injuries at the Premises on May 5 and 6, 2019, when Connell claimed he was assaulted by one of The Lobby's security employees.  A true and correct copy of the Connell Letter is attached as **Exhibit 14**.

97.      Prior to May 5, 2021, Scottsdale had no knowledge there were prior claims asserted against Colonial as Colonial misrepresented this fact in Application #1 and Application #2.

98.      Following the issuance of the Policy, Scottsdale learned of numerous incidents of police activity, by the Elizabeth Police Department, at the Premises including, but not limited to:

a.      on February 22, 2020, police responded to a report of a simple assault in which a female customer stated she had been assaulted by a security guard.  A true a correct copy of the Elizabeth Police Department Report, dated February 22, 2020, is attached as **Exhibit 15**.

b.      on February 23, 2020, police responded to a report of a fight involving a large crowd.  A true a correct copy of the Elizabeth Police Department Report, dated February 23, 2020, is attached as **Exhibit 16**.

c.      on March 15, 2020, police responded to a woman claiming she was grabbed by a stranger at the club.  A true a correct copy of the Elizabeth Police Department Report, dated March 15, 2020, is attached as **Exhibit 17**.

d.      on August 9, 2020, police responded to an incident in which it was alleged that security would not let a party in and they were stopped and pepper sprayed by security.  A true a correct copy of the Elizabeth Police Department Report, dated August 9, 2020, is attached as **Exhibit 18**.

e.      on August 15, 2020, police responded to an incident in which it was alleged that bouncers had stolen a customer credit card.  A true a correct copy of the Elizabeth Police Department Report, dated August 15, 2020, is attached as **Exhibit 19**.

f.      on September 4, 2020, police responded to an incident in which a customer was harassing other customers.  A true a correct copy of the Elizabeth Police Department Report, dated September 4, 2020, is attached as **Exhibit 20**.

g.      on September 22, 2020, police returned to collect surveillance footage of a shooting that had occurred the day before.  A true a correct copy of the Elizabeth Police Department Report, dated September 22, 2020, is attached as **Exhibit 21**.

h.      on October 26, 2020, police responded to a report of a disorderly group.  A true a correct copy of the Elizabeth Police Department Report, dated October 26, 2020, is attached as **Exhibit 22**.

i.      on November 21, 2020, police responded to a report of a disorderly patron who would not leave the establishment.  A true a correct copy of the Elizabeth Police Department Report, dated November 21, 2020, is attached as **Exhibit 23**.

j.      on December 26, 2020, police responded to disorderly patrons, one of which was eventually charged with criminal mischief.  A true a correct copy of the Elizabeth Police Department Report, dated December 26, 2020, is attached as **Exhibit 24**.

k.      on January 26, 2021, police responded to a report of a fight at the establishment when patrons refused to leave.  A true a correct copy of the Elizabeth Police Department Report, dated January 26, 2021, is attached as **Exhibit 25**.

99.     Prior to May 5, 2021, Scottsdale had no knowledge there was substantial prior police activity at the Premises as Colonial misrepresented this fact in Application #1 and Application #2.

### 6. *Misrepresentations Regarding Prior Insurance Information*

100.     Following the issuance of the Policy, based upon information and belief, Scottsdale learned Colonial was insured by other insurers prior to the Policy, including, but not limited to, Skyward Specialty Ins. Group ("Skyward").

101.     Prior to May 5, 2021, Scottsdale had no knowledge Colonial was previously insured by other insurers including, but not limited to Skyward, as Colonial misrepresented this fact in Application #1 and Application #2.

### 7. *Misrepresentations Regarding Security*

102.     Following the issuance of the Policy, Scottsdale learned there were bouncers, doormen, and/or security at the Premises, which may have included off-duty police officers working at the Premises.

103.     Prior to May 5, 2021, Scottsdale had no knowledge there were bouncers, doormen, and/or security at the Premises, which potentially included off-duty police officers, as Colonial misrepresented this fact in Application #1 and Application #2.

### 8. *Misrepresentations Regarding Hookah Exposure*

104.     Following the issuance of the Policy, Scottsdale learned the Hutchinson Lawsuit was filed against Colonial / The Lobby, which alleged damages based on Hookah exposure. *See* **Exhibit 9**.

105.    Prior to May 5, 2021, Scottsdale had no knowledge there was Hookah exposure at the Premises as Colonial misrepresented this fact in Application #1 and Application #2.

106.    Accordingly, in completing Application #1 and Application #2, Colonial misrepresented many material facts.

107.    The misrepresentations and/or omissions of fact in Application #1 and Application #2 were material to Scottsdale's agreement to issue the Policy and its calculation of the appropriate amount of premium to be charged.

108.    If Application #1 and Application #2 contained correct information, Scottsdale's underwriting department states it would not have issued the Policy.

**E.  Scottsdale's Letters To Colonial**

109.    On or about December 16, 2022, Scottsdale issued a reservation of rights letter to Colonial in which it agreed to provide a defense to Colonial, in the Persaud Lawsuit, pursuant to a strict reservation of rights.  A true and correct copy of Scottsdale's December 16, 2022 letter is attached as **Exhibit 26**.

110.    On or about June 14, 2023, Scottsdale issued a supplemental reservation of rights letter to Colonial, in which Scottsdale agreed to continue to provide a defense to Colonial, in the Persaud Lawsuit, pursuant to a strict reservation of rights letter.  A true and correct copy of Scottsdale's June 14, 2023 letter is attached as **Exhibit 27**.

111.    In its June 14, 2023 letter, Scottsdale notified Colonial of its intent to rescind the Policy based on Colonial's material misrepresentations in Application #1 and Application #2. *See id.*

112.    In its December 7, 2023 letter, Scottsdale advised Colonial of its rescission of the Policy *ab initio* based upon the misrepresentations in Application #1 and Application #2, as well as advised it was in the process of returning the remaining premium to Colonial.  A true and correct copy of Scottsdale's December 7, 2023 letter rescinding the Policy is attached as **Exhibit 28**.

113.    In its April 3, 2024 letter, Scottsdale advised Colonial that it was disclaiming coverage to Colonial for the Rojas Lawsuit, as the accident occurred on December 10, 2021, after the Policy's cancellation on November 15, 2021.  A true and correct copy of Scottsdale's April 3, 2024 letter disclaiming coverage for the Rojas Lawsuit is attached as **Exhibit 30**.

### AS AND FOR A FIRST CAUSE OF ACTION
#### (Declaratory Judgment Rescinding The Policy)

114.    Scottsdale repeats and realleges paragraphs 1-113 as if stated more fully in this paragraph 100.

114.    In completing Application #1 and Application #2, Colonial misrepresented facts about the nature of the business at the Premises, including, but not limited to, classifying its business as a bar/tavern or a restaurant rather than a nightclub, its entertainment activities, and hours of operation.

115.    In completing Application #1 and Application #2, Colonial misrepresented facts about its food and alcohol sales for the requested time period, including stating that its annual liquor sales were $120,000 when in reality its liquor sales were approximately $1.050 million.

116.    In completing Application #1 and Application #2, Colonial misrepresented the number of years Colonial had been in business stating it was a new venture when in reality Colonial had been in business for approximately fifteen (15) years.

117.    In completing Application #1 and Application #2, Colonial misrepresented it was not aware of any claims or losses or occurrences that could give rise to a claim for the relevant time period when in actuality there were numerous lawsuits and claims asserted against Colonial, as well as extensive police activity at the Premises, during the applicable time period.

118.    In completing Application #1 and Application #2, Colonial misrepresented it was not previously insured by other insurers when in actuality, based upon information and belief, Colonial had been previously insured by other insurers including, but not limited to, Skyward.

119.    In completing Application #1 and Application #2, Colonial misrepresented there were no bouncers, doormen, or other security personnel at the Premises when in actuality there were bouncers, doormen, and/or security at the Premises, potentially including off-duty police officers.

120.    In completing Application #1 and Application #2, Colonial misrepresented there was no Hookah exposure at the Premises when in actuality a lawsuit was commenced based on Hookah exposure at the Premises.

121.    Based upon and in reliance on the information contained in Application #1 and Application #2, the Policy was issued to Colonial.

122.    If Application #1 and Application #2 had contained correct information, Scottsdale's underwriting states it would not have issued the Policy.

123.    Scottsdale has advised Colonial of its rescission of the Policy *ab initio* based upon the misrepresentations in Application #1 and Application #2.

124.    Moreover, on or about December 1, 2023, Scottsdale returned the remaining premium paid by Colonial which is attributable to the Policy.

125.    Scottsdale is entitled to a declaration that the Policy is void *ab initio* based upon the material misrepresentations in Application #1 and Application #2.

**WHEREFORE**, Scottsdale demands judgment in its favor, together with costs of Court, and the following declarations:

a.    The Policy is rescinded and void *ab initio*;

b.    That in light of the rescission of the aforesaid Policy, the Court finds and declares that Scottsdale has no duty or obligations to defend Colonial, Colonial Restaurants, and/or The Lobby in connection with the Underlying Lawsuits;

c.    That in light of the rescission of the aforesaid Policy, the Court finds and declares that Scottsdale has no duty or obligations to indemnify Colonial, Colonial Restaurants, and/or The Lobby in connection with the Underlying Lawsuits;

d.    Inasmuch as the Policy is rescinded *ab initio*, there is no duty to defend or indemnify Colonial in connection with any past or future claims that may have accrued from May 5, 2021 to November 15, 2021;

e.    That the Court grant Scottsdale such other and further relief as it deems just and proper.

Dated:    Newark, New Jersey
          April 12, 2024

**GOLDBERG SEGALLA LLP**

*/s/ Christian A. Cavallo*
Christian A. Cavallo, Esq.
Colleen E. Hayes, Esq.
1037 Raymond Blvd., Suite 1010
Newark, New Jersey 07102-5423
ccavallo@goldbergsegalla.com
chayes@goldbergsegalla.com
*Attorneys for Plaintiff Scottsdale Insurance
Company*

# Exhibit 1

LOMBARDI & LOMBARDI, P.A.
1862 Oak Tree Road
P.O. Box 2065
Edison, New Jersey 08818
Tel:  (732) 906-1500
Fax:  (732) 906-7625
E-Mail: JosephL@lombardiandlombardi.com
File No.:  21-30194JAL
Attorneys for Plaintiff(s)
Joseph A. Lombardi, Esq. (ID: 019352004)

| | |
|---|---|
| ESTATE OF AJAY P. PERSAUD, deceased; by and through, DESIREE PERSAUD, Administrator ad Prosequendum, | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION<br>: MIDDLESEX COUNTY<br>: |
| Plaintiffs, | : |
| vs. | : DOCKET NO.: MID-L-4103-22<br>:<br>: CIVIL ACTION |
| SERGIO CABRERACHAVEZ, an individual; THE LOBBY, a business entity; COTUGNO INVESTMENTS, INC., a business entity; THE LOBBY GROUP NJ LLC d/b/a "THE LOBBY", a business entity; JWPA, LLC d/b/a "THE LOBBY", a business entity; COLONIAL RESTAURANTS, LLC d/b/a "THE LOBBY", a business entity; JOHN DOES (I-V), fictitiously named individuals; ABC COMPANIES (I-V), fictitiously named business entities; | :<br>: SECOND AMENDED COMPLAINT<br>: AND JURY DEMAND<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants, | :<br>: |

Plaintiff, Estate of Ajay P. Persaud, by way of Complaint against the defendants, jointly and severally, says:

## **FIRST COUNT**

1.    On or about June 19, 2021, the plaintiff, Ajay P. Persaud (deceased), was a

motorcyclist traveling in a southbound direction in the northbound express lane of US 1 at or near that road's intersection with North Avenue in the City of Elizabeth, New Jersey.

2.   On the date and at the place aforesaid, the defendant, Sergio Cabrerachavez, was the operator and owner of a 2018 Ford pick-up truck which was traveling in a northbound direction on US 1 at or near that road's intersection with North Avenue in the City of Elizabeth, New Jersey.

3.   On the date and at the place aforesaid, the defendant, Sergio Cabrerachavez, did maintain and operate said 2018 Ford pick-up truck in a negligent and unreasonable manner so as to cause said vehicle to strike the plaintiff, Ajay P. Persaud (deceased), who was riding his 2016 Kawasaki motorcycle.

4.   As a result of the aforesaid negligence of the defendant, Sergio Cabrerachavez, and the ensuing collision, the plaintiff, Ajay P. Persaud (deceased), did sustain bodily injury which resulted in death.   The plaintiff, Ajay P. Persaud (deceased), did suffer great pain of mind and body prior to his death.

**WHEREFORE,** the plaintiff, the Estate of Ajay P. Persaud, demands judgment against the defendant, Sergio Cabrerachavez, for compensatory damages together with interest and costs of suit.

## SECOND COUNT

1.   The plaintiff repeats the allegations of the First Count as if same were set forth herein at length.

2.   At all times relevant hereto, the defendants, The Lobby, a business entity; Cotugno Investments, Inc., a business entity; The Lobby Group NJ LLC d/b/a "The

Lobby", a business entity; JWPA, LLC d/b/a "The Lobby", a business entity; and Colonial Restaurants, LLC d/b/a "The Lobby", a business entity, had ownership and/or control of an alcohol beverage serving establishment, commonly known as "The Lobby" located at 821 Spring Street, Elizabeth, New Jersey.

3.     On or about June 18, 2021, and into the early morning hours of June 19, 2021, the defendants, The Lobby, a business entity; Cotugno Investments, Inc., a business entity; The Lobby Group NJ LLC d/b/a "The Lobby", a business entity; JWPA, LLC d/b/a "The Lobby", a business entity; and Colonial Restaurants, LLC d/b/a "The Lobby", and through its agents, servants and/or employees serve alcoholic beverages to the deceased plaintiff, Ajay P. Persaud, in a negligent and unreasonable manner, while the plaintiff, Ajay P. Persaud, was visibly intoxicated.

4.     As a result of the negligent and unreasonable service of alcoholic beverages to the deceased plaintiff, Ajay P. Persaud, by and through the defendants, The Lobby, a business entity; Cotugno Investments, Inc., a business entity; The Lobby Group NJ LLC d/b/a "The Lobby", a business entity; JWPA, LLC d/b/a "The Lobby", a business entity; and Colonial Restaurants, LLC d/b/a "The Lobby", the deceased plaintiff, Ajay P. Persaud, did leave The Lobby in an intoxicated condition and was involved in a motor vehicle versus motorcycle accident on US Highway 1 sustaining injuries which led to his death.

5.     The negligence of the defendants, The Lobby, a business entity; Cotugno Investments, Inc., a business entity; The Lobby Group NJ LLC d/b/a "The Lobby", a business entity; JWPA, LLC d/b/a "The Lobby", a business entity; and Colonial Restaurants, LLC d/b/a "The Lobby", by and through its agents, servants and/or

employees, in the negligent service of alcoholic beverages to the deceased plaintiff, Ajay P. Persaud, while said plaintiff was visibly intoxicated, constituted a substantial factor in causing the accident referenced herein.

6.    The happening of the motor vehicle accident as described herein, was a foreseeable consequence of the negligent service of alcoholic beverages to the plaintiff, Ajay P. Persaud (deceased), while said plaintiff was visibly intoxicated by the defendants, The Lobby, a business entity; Cotugno Investments, Inc., a business entity; The Lobby Group NJ LLC d/b/a "The Lobby", a business entity; JWPA, LLC d/b/a "The Lobby", a business entity; and Colonial Restaurants, LLC d/b/a "The Lobby".

7.    As a result of the negligence of the defendants, The Lobby, a business entity; Cotugno Investments, Inc., a business entity; The Lobby Group NJ LLC d/b/a "The Lobby", a business entity; JWPA, LLC d/b/a "The Lobby", a business entity; and Colonial Restaurants, LLC d/b/a "The Lobby", by and through its agents, servants and/or employees, and the ensuing collision, the plaintiff, Ajay P. Persaud (deceased), did sustain bodily injury which resulted in death.   The plaintiff, Ajay P. Persaud (deceased), was caused to suffer great pain of mind and body prior to his death.

**WHEREFORE,** the plaintiff, the Estate of Ajay P. Persaud, demands judgment against the defendants, jointly and severally, for compensatory damages together with interest and costs of suit.

### THIRD COUNT

1.    The plaintiff repeats the allegations of the First Count and Second Count as if same were set forth herein at length.

2.     John Does (I-V) and/or ABC Companies (I-V), are fictitiously named parties respectively representing any persons and/or business entities which had ownership and/or control of any of the instrumentalities of the damages complained of herein, or who are otherwise liable for the damages complained of herein.  The plaintiff reserves his right to amend this Complaint to implead the actual names of such persons and/or business entities should the identity and/or liability of same be revealed in the course of discovery herein.

**WHEREFORE,** the plaintiff, the Estate of Ajay P. Persaud, demands judgment against the defendants, jointly and severally, for compensatory damages together with interest and costs of suit.

## FOURTH COUNT
## (WRONGFUL DEATH)

1.     The allegations of the First Count, Second Count and Third Count are repeated herein as if same were set forth herein at length.

2.     This cause of action was based upon a statute identified as "The Death Act of The State of New Jersey", N.J.S.A. 2a:3-1, et seq. and amendments thereto.

3.     This action was commenced within two (2) years after the death of Ajay P. Persaud which occurred on June 19, 2021.

4.     As a result of the death of Ajay P. Persaud, his next of kin will be deprived of his future society, future services, future companionship, and future earnings and other services having pecuniary value.

5.     Desiree Persaud was appointed Administrator Ad Prosequendum of the Estate of Ajay P. Persaud, and she is authorized to institute the within action.

## FIFTH COUNT
## (SURVIVAL ACTION)

1.    The allegations of the First Count, Second Count, Third Count and Fourth Count are repeated herein as of set forth at length.

2.    Desiree Persaud and Tillack Persaud are the next of kin of Ajay P. Persaud who died on June 19, 2021.

3.    Ajay P. Persaud left surviving him at the time of his June 19, 2021 death, the following next of kin:

- Desiree Persaud (mother);

- Tillack Persaud (father).

4.    As a result of the negligence of the parties described in the preceding paragraphs, Ajay P. Persaud, did sustain serious and grievous bodily injury on June 19, 2021, causing him to suffer great pain of mind and body prior to his death.

5.    The within survival action is brought pursuant to N.J.S.A. 2A:15-3 for the plaintiff-decedent's pain, suffering, distress, and loss of enjoyment of life prior to his death on June 19, 2021.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of six (6) persons on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the provisions of R.4:25-4, Joseph A. Lombardi, Esq. is hereby designated as trial counsel.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Plaintiff hereby demands answers to Form "C" and "C1" Interrogatories, together with answers to Supplemental Interrogatories, from the Defendants under oath within the time prescribed by the Rules of this Court.

## CERTIFICATION; R. 4:5-1 (b) (3)

The undersigned certifies that the within pleading contains no personal confidential identifiers. The undersigned recognizes a responsibility to ensure the same as to subsequent pleadings.

## CERTIFICATION; R. 4:5.1

The undersigned certifies that to the best of his knowledge and belief, there is not pending any other action which arises from the incident alleged in this Complaint or which involves the parties to this action.

LOMBARDI & LOMBARDI, P.A.
Attorneys for Plaintiff

_____
Joseph A. Lombardi, Esq.
(ID#019352004)

DATED:  October 12, 2022

# Exhibit 2

☐ **Scottsdale Insurance Company**
　Home Office: One Nationwide Plaza
　　　　　　Columbus, Ohio 43215
　Adm. Office: 8877 North Gainey Center Drive
　　　　　　Scottsdale, Arizona 85258

☐ **Scottsdale Surplus Lines Insurance Company**
　Adm. Office: 8877 North Gainey Center Drive
　　　　　　Scottsdale, Arizona 85258

☐ **Scottsdale Indemnity Company**
　Home Office: One Nationwide Plaza
　　　　　　Columbus, Ohio 43215
　Adm. Office: 8877 North Gainey Center Drive
　　　　　　Scottsdale, Arizona 85258

## BARS/RESTAURANTS/TAVERNS GENERAL LIABILITY APPLICATION

Applicant's Name: Colonial Restaurant

Mailing Address: 821 Spring St.
Elizabeth NJ 0702?

Location Address: Same

Agency Name: _____
Agent No.: _____
Address: _____
_____
E-mail: _____
Phone No.: _____

PROPOSED EFFECTIVE DATE: From 5-5-2? To 5-5-2? 12:01 A.M., Standard Time at the address of the Applicant

ANSWER ALL QUESTIONS—IF THEY DO NOT APPLY, INDICATE "NOT APPLICABLE" (N/A)

Applicant is: ☐ Individual　　☐ Corporation　　☐ Partnership　　☐ Joint Venture
　　　　☑ Limited Liability Company　　☐ Other (Specify) _____

**Website Address:** _____

**E-mail Address:** _____　　　**Phone No.:** _____

**Inspection Contact:** _____

**E-mail Address:** _____　　　**Phone No.:** _____

**Limits of Liability and Deductible Requested:**

| | |
|---|---|
| General Aggregate (other than Products/Completed Operations) | $ 7,000,000 |
| Products and Completed Operations Aggregate | $ 2,000,000 |
| Personal and Advertising Injury (any one person or organization) | $ 1,000,000 |
| Each Occurrence | $ 1,000,000 |
| Damage to Premises Rented to You (any one premise) | $ 100,000 |
| Medical Expense (any one person) | $ 5,000 |
| Other Coverages, Restrictions and/or Endorsements: | $ |
| Deductible | $ |


Nationwide

1. **Classification of risk** (select all that apply):

☐ Banquet facility ☐ Bring your own bottle establishment ☐ Disco ☐ Membership club
☑ Bar/Tavern ☐ Cabaret ☐ Country club ☐ Fine Dining ☐ Nightclub
☐ Bowling center ☐ Comedy Club ☐ Deli ☐ Gentlemen's/Strip Club ☑ Restaurant

2. **Annual gross sales:**

| | Past Twelve (12) Months | Next Twelve (12) Months |
|---|---|---|
| Alcohol Sales | | 120,000 |
| Food Sales | | 280,000 |
| Gambling | | |
| Other | | |
| Total | | |

New License

New Venture

3. **Number of years in business:** .................................................................

4. **Number of years under current management:** ................... 11AM - 1AM

5. **Opening and closing time per day:** _____ 11AM - 1AM

6. **Schedule of Hazards:**

| Loc. No. | Classification Description | Class. Code | Exposure | Premium Basis (s) Gross Sales (p) Payroll (a) Area (c) Total Cost (t) Other |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

7. Are there any catering services available?...................................................... ☐ Yes ☑ No

   If yes: ☐ Off premises ☐ On premises Gross sales: ................................... $ _____

8. **Types of meals served:** ☑ Full meals ☐ Short order

9. Square footage of bar/tavern/restaurant:.................................................. 4500

10. Is applicant a BBQ restaurant? ............................................................... ☐ Yes ☑ No

11. Is applicant a microbrewery that sells their products for off premises consumption?.............. ☐ Yes ☑ No

12. Are facilities available for use or rent for private parties, receptions, banquets or similar affairs? ☐ Yes ☑ No

    If yes: Number of times per year: ............................................... _____

    Describe: _____


Nationwide

13. Are patrons allowed to drink their own alcoholic beverages on the premises? ............................ ☐ Yes ☑ No

   If yes:

   a. Are there procedures in place for handling violent or disruptive patrons?................................ ☑ Yes ☐ No

   b. Is there table service?................................................................................................................ ☑ Yes ☐ No

   c. Does applicant also sell alcohol?............................................................................................... ☑ Yes ☐ No

14. Does applicant advertise or promote "happy hour" or other events when drinks are sold at a lower price than usual? ............................................................................................................... ☐ Yes ☑ No

15. Does applicant subscribe to a taxi or other service providing transportation home to apparently intoxicated persons?.......................................................................................................................... ☐ Yes ☑ No

   If yes, describe: _____

16. Is there Hookah exposure (communal smoking)? ....................................................................... ☐ Yes ☑ No

   If yes:

   a. Any blending of tobacco by applicant? ...................................................................................... ☐ Yes ☐ No

      If yes, what percentage of tobacco products: _____ %

   b. Does applicant import any tobacco products? ........................................................................... ☐ Yes ☐ No

      If yes, what percentage of tobacco products: _____ %

   c. Does applicant allow underage persons to purchase and/or use the products?........................ ☐ Yes ☐ No

   d. How often does applicant clean pipes, tubing and mouthpieces? _____

   _____

17. Entertainment:

   a. Is there any live entertainment on premises? ........................................................................... ☐ Yes ☑ No

      If yes:  Number of times per week: _____

      Describe: (include go-go dancers, topless, disco, exotic, female/male): _____

      _____

   b. Is there dancing?....................................................................................................................... ☐ Yes ☐ No

      If yes:  Number of times per week: _____

      Square footage of dance floor:_____

   c. Does applicant have any mechanical or amusement devices? .................................................. ☐ Yes ☐ No

      If yes:  How many? ...................................................................................................................

      Describe: _____

   d. Is there a minimum or cover charge? ........................................................................................ ☐ Yes ☐ No

   e. Are there sports on the premises?.............................................................................................. ☐ Yes ☐ No

      If yes:  Provide complete details: _____

      _____

   f. Are sports sponsored off premises? ........................................................................................... ☐ Yes ☐ No

      If yes:  Number of times per week: _____

      Give details: _____

   g. Does applicant sponsor any special events?.............................................................................. ☐ Yes ☐ No

      If yes:  Describe: _____

      _____

h. Is there any gambling?........................................................................................ ☐ Yes ☒ No

    If yes:  Are there any "live" dealers?.................................................... ☐ Yes ☐ No

       Number of gambling machines:........................................... ☐ Yes ☒ No

i. Is there a play area for children? ......................................................... ☐ Yes ☒ No

j. Are there any drinking games (i.e., beer pong, flip cup)? ...................... ☐ Yes ☒ No

    If yes:  Describe: _____

_____

k. Are there any pub crawls (pedal bus or motorized)? ............................ ☐ Yes ☒ No

l. Does applicant own or sponsor party buses?...................................... ☐ Yes ☒ No

m. Are there any hatchet/axe throwing activities? ................................... ☐ Yes ☒ No

18. **Does applicant have parking area?** ..................................................... ☒ Yes ☐ No

    If yes, is parking area well lit?............................................................ ☒ Yes ☐ No

19. **Does applicant subcontract valet parking services on restaurant premises?** ............... ☐ Yes ☒ No

    If yes: Annual subcontract cost:........................................................... $_____

    Do subcontractors provide certificate of insurance with liability limits equal or greater than our applicant? ............................................................................. ☐ Yes ☐ No

    Do written contracts contain hold harmless agreements in favor of the applicant? ............... ☐ Yes ☐ No

    Does applicant require all subcontractors to include the applicant as an additional insured on the General Liability and Garage policies?............................................ ☐ Yes ☐ No

20. **Clientele:**
    ☒ Local residents   ☐ Families   ☐ Retirement community   ☐ College students   ☐ Seasonal residents

    Median age of patrons:   ☐ 18-25   ☒ 26-30   ☒ 31-40   ☐ 41 and over

    Are premises located near a college or university?................................. ☐ Yes ☒ No

21. **In the past five years, has applicant been cited by the Liquor Control Commission?** .............. ☐ Yes ☒ No

    If yes, give date(s) and full explanation: _____

_____

22. **Are police records and background checks conducted on employees?** .................... ☒ Yes ☐ No

23. **Number of bouncers, doormen or security personnel:** .............................. _____

    Are bouncers, doormen or security personnel employees? ........................ ☐ Yes ☒ No

    Are bouncers, doormen or security personnel independent contractors?.......... ☐ Yes ☐ No

    If independent contractors, do they provide Certificates of Insurance and Additional Insured Endorsements to the applicant? ................................................ ☐ Yes ☐ No

24. **Does applicant have Workers' Compensation coverage in force?** ................. ☒ Yes ☐ No

    Total number of employees: ............................................................... ∞

25. **During the past three years, has any company ever canceled, nonrenewed, declined or refused similar insurance to the applicant?** (Not applicable in Missouri) ............ ☐ Yes ☒ No

    If yes, explain: _____

26. **Does risk engage in the generation of power, other than emergency back-up power, for their own use or sale to power companies?**.................................. ☐ Yes ☒ No


Nationwide

27. Does applicant have other business ventures for which coverage is not requested?...................... ☐ Yes ☑ No

If yes, explain and advise where insured: _____

28. **Additional Insured Information:**

| Name | Address | Interest |
|------|---------|----------|
|  |  |  |
|  |  |  |
|  |  |  |

29. **Prior Carrier Information:**

|  | Year: | Year: | Year: |
|--|-------|-------|-------|
| Carrier |  |  |  |
| Policy No. |  |  |  |
| Coverage |  |  |  |
| Occurrence or Claims Made |  |  |  |
| Total Premium |  |  |  |

30. **Loss History:**

Indicate all claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the prior three years.        ☐ Check if no losses in the last three years.

| Date of Loss | Description of Loss | Amount Paid | Amount Reserved | Claim Status (Open or Closed) |
|--------------|---------------------|-------------|-----------------|-------------------------------|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. (Not applicable in AL, CO, DC, FL, KS, LA, ME, MD, MN, NE, NY, OH, OK, OR, RI, TN, VA, VT or WA.)

**NOTICE TO ALABAMA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**NOTICE TO COLORADO APPLICANTS:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

Nationwide

GLS-APP-18s (8-18)

**APPLICANT'S STATEMENT:**

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty.)

APPLICANT'S NAME AND TITLE: Terry Gonzalez

APPLICANT'S SIGNATURE: _____ DATE: 5-5-21

PRODUCER'S SIGNATURE: _____ DATE: _____

AGENT NAME: Hillary Comero     AGENT LICENSE NUMBER: 1537643

NAME AND PHONE NUMBER OF INDIVIDUAL TO CONTACT FOR INSPECTION/AUDIT: Terry Gonzalez
908 63 7976

---

**IMPORTANT NOTICE**

As part of our underwriting procedure, a routine inquiry may be made to obtain applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

GLS-APP-18s (8-18)     Page 8 of 8     Nationwide

Form Number SLPS-6-CERT-1

/_/_/_/_/_/ - /_/ _/ - /_/_/_/_/_/
Transaction Number

### STATE OF NEW JERSEY
### DEPARTMENT OF BANKING AND INSURANCE
### SURPLUS LINES EXAMINING OFFICE
### P.O. BOX 325
### TRENTON, NEW JERSEY 08625-0325

## CERTIFICATION OF EFFORT TO PLACE RISK WITH AUTHORIZED INSURER

This certification shall be submitted by the originating producer to the surplus lines agent, within 30 business days after the effectuation of any surplus lines insurance. The original of the certification must be maintained in the files of the surplus lines agent and a copy in the files of the producer and both must be available for inspection by the Commissioner for a period of at least five years.

Colonial Restaurant LLC.
(Name of Insured)

821 Spring St. Elizabeth NJ 07208
(Address of Insured)

821 Spring St. Elizabeth NJ 07208
(Location of Property or Risk)

6C / 1 million
(Insurance Coverage: Description and Amount)

////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

Whis Hill
(Originating Producer - Corporate or partnership)

Hillary Sermeno
(Originating Producer - Individual Name and/or Title)

1329 North Ave. Elizabeth NJ 07208
(Originating Producer - Complete Address)

The above hereby certifies that he/she is duly licensed as an insurance producer under the laws of New Jersey, and that:  On or about _____, 20___, I was engaged by the insured named herein to procure insurance of the kind described herein and in the amount shown.  I have made a diligent effort first to place this coverage with authorized insurers, each of which is authorized in New Jersey to write insurance of the kind requested and is an insurer that I had a good faith reason to believe might consider writing the type of coverage described herein.



**RWRSO**

## Certification of Effort To Place Risk With Authorized Insurer (continued)

### Page 2 of 2

The following insurers are among those that I contacted relative to this risk, or to substantially similar risks within the past 30 days:

| INSURER | REPRESENTATIVE | TELEPHONE NO. | DATE | RESULT CODE* |
|---------|----------------|---------------|------|--------------|
| CNA | | | | |
| State farm | | | | |
| Travelers | | | | |

\*Result Codes: (enter appropriate code(s) for each insurer listed above)

**A.** - Having made a diligent effort. I was unable to obtain an offer/quote from this authorized insurer in the admitted market, which declined to accept all or any part of the risk.

AND/OR

**B.** - Having made a diligent effort, the only offer(s)/ quote(s) obtained reflected such a substantial increase in premium over similar coverage placed within the preceding 12 months that comparable coverage is, as a practical matter, unavailable from this authorized insurer in the admitted market.

AND/OR

**C.** - Having made a diligent effort, the only offer(s)/ quote(s) obtained reflect(s) such a substantial reduction in coverage from coverage placed within the preceding 12 months for substantially similar premium that comparable coverage is, as a practical matter, unavailable from this authorized insurer in the admitted market.

I certify that the foregoing statements made by me are true to the best of my knowledge and belief. I am aware that if any of the statements are willfully false, I am subject to civil and criminal penalties.

5-5-21
_____
(Date)

_____
Signature

Amended by R.2005 d.104, effective April 4, 2005.
See: 36 N.J.R.2144(a), 37 N.J.R.1065(a).

# Exhibit 3

☐ **Scottsdale Insurance Company**
   Home Office:  One Nationwide Plaza
                 Columbus, Ohio 43215
   Adm. Office:  8877 North Gainey Center Drive
                 Scottsdale, Arizona 85258

☐ **Scottsdale Surplus Lines Insurance Company**
   Adm. Office:  8877 North Gainey Center Drive
                 Scottsdale, Arizona 85258

☐ **Scottsdale Indemnity Company**
   Home Office:  One Nationwide Plaza
                 Columbus, Ohio 43215
   Adm. Office:  8877 North Gainey Center Drive
                 Scottsdale, Arizona 85258

## LIQUOR LIABILITY APPLICATION

### Complete a separate application for each location.

Applicant's Name: Colonial Restaurant

Mailing Address: 821 Spring St.
                 Elizabeth NJ 0378

Location Address: _____

Website Address: _____

Agency Name: _____

Agent: _____

Address: _____

E-Mail: _____

Phone No.: _____

**PROPOSED EFFECTIVE DATE: From** 5-5-21 **To** 5-5-22    12:01 A.M., Standard Time at the address of the Applicant

**Inspection Contact Name:** Terry Gonzalez    **Phone:** _____

ANSWER ALL QUESTIONS—IF THEY DO NOT APPLY, INDICATE "NOT APPLICABLE" (N/A)

**Applicant is:**  ☐ Individual   ☐ Corporation   ☐ Partnership   ☐ Joint Venture
                  ☑ Limited Liability Company   ☐ Other (Specify): _____

### Limits of Liability Requested

| Each Common Cause | Aggregate |
|---|---|
| $ 1,000,000 | $ 2,000,000 |

### 1.  Classification of risk:

| | | |
|---|---|---|
| ☐ Arena/Stadium | ☐ Auditorium | ☐ Banquet Hall |
| ☐ Bar/Tavern | ☐ Bartender/Liquor service only | ☐ Bowling Alley |
| ☐ Casino/Gaming | ☐ Catering Service | ☐ Comedy Club |
| ☐ Concession Stand | ☐ Convenience Store | ☐ Drive-through Daiquiri Shop |
| ☐ Exercise and Health Studio | ☐ Exhibit Hall | ☐ Fairground |
| ☐ Gentlemen's/Strip Club | ☐ Grocery Store | ☐ Hotel/Motel |
| ☐ Liquor Distributor/Wholesaler | ☐ Liquor Manufacturer/Brewery | ☐ Liquor/Package Store |
| ☐ Microbrewery | ☐ Nightclub | ☐ Party Buses |
| ☑ Restaurant | ☐ Social Club | ☐ Special Event |
| ☐ Sports Field | ☐ Winery | |
| ☐ Other (Describe): _____ | | |


Nationwide

2. Are patrons allowed to bring their own alcoholic beverages? .......... ☐ Yes ☑ No

3. Are patrons allowed to self-serve themselves alcoholic beverages? .......... ☐ Yes ☑ No

4. Has applicant ever been assessed a fine for violation of a law concerning the sale of alcohol, or had their liquor license suspended/revoked? .......... ☐ Yes ☑ No
   If yes, when and why? _____

5. Name on liquor license: colonial restaurant    Type of liquor license: retail

6. Estimated liquor receipts: .......... $120,000
   Other receipts: .......... $

7. Average price for:
   Beer: .......... $6
   Wine: .......... $7
   Liquor: .......... $7

8. Percentage of receipts for on-premises consumption: .......... 80 %

9. Percentage of receipts for off-premises consumption: .......... %

10. Estimated food receipts: .......... $280,000

11. Percentage of liquor receipts to total receipts: .......... 30 %

12. How many years has the applicant been in business? .......... new venture

13. How many years has the applicant been at this location? .......... new venture

14. Premises within city limits? .......... ☑ Yes ☐ No

15. Square foot area of establishment: 4500    (Maximum Occupancy: 80)

16. How many days per week is the location open? .......... 7

17. What time does the location close? 1AM    Hours of serving: 11AM~1AM

18. Number of servers? .......... 5

19. Have all servers been through alcohol awareness server training (i.e., TIPS, TOPS)? .......... ☑ Yes ☐ No
    If yes:
    Type of course: TIPS
    How often required? twice a year

20. Does insured have a ride home policy? .......... ☐ Yes ☑ No

21. How often does the manager review liquor liability laws with employees (including penalties for serving intoxicated customers)? weekly

22. Are procedures in place regulating the sale of alcohol to minors and those under the influence? ☑ Yes ☐ No
    If yes, describe: ID scanners

    How is age of customer verified? ID scanners

23. Type of clientele:  ☑ Area Residents    ☐ Area Workers    ☐ Tourists    ☐ College    ☐ Other: _____

24. Percent of clientele:
    25 and under: _____
    26-30: .......... 40 %
    Over 30: .......... 60 %

25. **Type of area:** ☑ Industrial or Commercial  ☐ Residential  ☐ Rural  ☐ Other: _____
Located on or near college campus? ........................................................ ☐ Yes ☑ No

26. **Is there an entrance fee or cover charge?** ........................................... ☐ Yes ☑ No
If yes, what is the amount? ...................................................................... $ _____

27. **Does applicant have "Happy Hour" or 2-for-1 drink specials?** ............... ☐ Yes ☑ No
Is last call announced? .............................................................................. ☑ Yes ☐ No
Are customers allowed more than one drink at last call? ......................... ☐ Yes ☑ No

28. **Any internet or mail order liquor sales?** .............................................. ☐ Yes ☑ No

29. **Security Activities:**
Security provided (check all applicable):
☐ Bouncers     ☐ Doormen     ☐ Off-Duty Police     ☐ Contracted Security Guards
☐ Inside       ☐ Outside      ☐ Armed              ☐ Unarmed
☐ Other (Describe): _____
Any firearms kept or carried on the premises? ........................................ ☐ Yes ☑ No

30. **Are there procedures for handling violent or disruptive patrons?** ........... ☑ Yes ☐ No
If yes, describe: The Restaurant & Nightclub Handbook

31. **Types of entertainment activities:**
☐ Darts     ☐ DJ     ☐ Exotic Dancing     ☐ Jukebox     ☐ Karaoke     ☐ Pinball Machine
☐ Dance Floor ................................................ Size: N/A
☐ Electronic Games ....................................... Type: _____
☐ Live Entertainment .................................... Type and how often: _____
☐ Mechanical Devices .................................... Type: _____
☐ Pool Table(s) .............................................. Number: _____
☐ Other activities that would include patron participation (such as: wrestling, boxing, volleyball, etc.): _____

☐ Drinking Games (i.e., beer pong, flip cup) sponsored by the insured? ...... ☐ Yes ☐ No
☐ Special Promotions .................................................................................. ☐ Yes ☐ No
If yes, describe: _____

32. **Gentlemen's/Strip Clubs:**
Turnover rate for staff: _____ N/A
Are servers/dancers in training? ............................................................... ☐ Yes ☐ No
Does applicant prohibit serving of alcohol after hours to their staff? ........ ☐ Yes ☐ No
Are clients allowed to purchase drinks for dancers/hostesses? ................ ☐ Yes ☐ No

33. **Manufacturer:**
Are tours of facility provided? .................................................................. ☐ Yes ☐ No
Are free samples given? ............................................................................ ☐ Yes ☐ No
If yes, how is quantity controlled? _____



**34. Distributor:**
Any sponsored events? ..................................................................................................................... ☐ Yes ☒ No
If yes, describe: _____

Policy for giving away alcoholic beverages by Sponsor? ................................................................... ☐ Yes ☐ No
If yes, describe: _____

**35. Caterers:**
Are clients/guests allowed to mix their own drinks? ........................................................................ ☐ Yes ☒ No
Does caterer provide liquor or bartending service? ......................................................................... ☐ Yes ☐ No

**36. Additional Insured Information:**

| Name | Address | Interest |
|------|---------|----------|
|  |  |  |
|  | N/A |  |
|  |  |  |

**37. During the past three years, has any company ever canceled, declined or refused similar insurance to the applicant?** (Not applicable in Missouri) ............................................................. ☐ Yes ☐ No
If yes, explain: N/A

**38. Prior Carrier Information:**

|  | Year: | Year: | Year: |
|------|-------|-------|-------|
| **Carrier** |  |  |  |
| **Policy No.** |  |  |  |

**39. Loss History:**

Indicate all Liquor Liability claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the prior three years. ☐ Check if no losses in the last three years.

| Date of Loss | Description of Loss | Amount Paid | Amount Reserved | Claim Status (Open or Closed) |
|--------------|---------------------|-------------|-----------------|-------------------------------|
|  |  | $ | $ |  |
|  | N/A | $ | $ |  |
|  |  | $ | $ |  |
|  |  | $ | $ |  |
|  |  | $ | $ |  |

This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.

I understand that Liquor Liability is a separate coverage part and the limits requested in this application apply solely to liquor liability coverage and may differ from the General Liability limits afforded in my commercial package policy.

I further understand that the Company is relying upon statements I have made in this application as an inducement to provide insurance for Liquor Liability coverage.

GLS-APP-28g (9-17)


Nationwide

**FRAUD WARNING (APPLICABLE IN VERMONT, NEBRASKA AND OREGON):** Any person who intentionally presents a materially false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

**FRAUD WARNING (APPLICABLE IN TENNESSEE, VIRGINIA AND WASHINGTON):** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

**NEW YORK FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**APPLICANT'S STATEMENT:**

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty.)

APPLICANT'S SIGNATURE: _____    DATE: 5-5-21

CO-APPLICANT'S SIGNATURE: _____    DATE: _____

PRODUCER'S SIGNATURE: _____    DATE: 5-5-21

AGENT NAME: Hillary Semeno    AGENT LICENSE NUMBER: 1537643

(Applicable to Florida Agents Only)

**IOWA LICENSED AGENT:** _____

(Applicable in Iowa Only)

--- **IMPORTANT NOTICE** ---

As part of our underwriting procedure, a routine inquiry may be made to obtain applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

Nationwide



I_|_|_|_|_|-|_|_|-|_|_|_|_|_|
Transaction Number

The undersigned applicant has been advised by the undersigned originating insurance producer and understands that an insurance policy written by a surplus lines insurer is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance.  Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance.

_____
**Applicant's Signature**

Terry Gonzalez
**Applicant's Name (Print or Type)**

5-5-21
**Date of Applicant's Signature**

_____
**Producer Signature**

Hillary Semen
**Producer Name (Print or Type)**

5-5-21
**Date of Producer Signature**

1537648
**New Jersey Producer License Reference Number**

**RWRSO**

# Exhibit 4

POLICY

CPS3985594

# INSURED ADDRESS COVER SHEET

TAPCO
PO BOX 286
BURLINGTON, NC  27216

KHRIS HILL, LLC

P. O. BOX 2241

ELIZABETH, NJ  07208

**Due to USPS regulations on automated flat mail, YOU may receive the AGENT COPY and the INSURED COPY of the policy in separate envelopes.**

## Agency Information:

Agency Code:  2903662
KHRIS HILL, LLC
P. O. BOX 2241

ELIZABETH                          NJ     07208
Phone Number:  (800) 754-7613

# INSURED'S COPY

# COMMON POLICY DECLARATIONS

Underwritten by:  SCOTTSDALE INSURANCE COMPANY
Home Office:
One Nationwide Plaza    Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive    Scottsdale, Arizona 85258
1-800-423-7675  *  A Stock Company

**Policy Number**

## CPS3985594

NJ TRANSACTION NUMBER:
F0301-21-53024

NEW
Renewal of Number

**ITEM 1.** NAMED INSURED AND MAILING ADDRESS

COLONIAL RESTAURANT LLC

821 SPRING ST.

ELIZABETH, NJ  07208

KHRIS HILL, LLC
P. O. BOX 2241

ELIZABETH, NJ  07208

**If property coverage is afforded by this policy, the POLICY IS A CO-INSURANCE CONTRACT.**

AGENT NAME AND ADDRESS
TAPCO UNDERWRITERS, INC.
A DIVISION OF CRC INSURANCE SERVICES, INC.
PO BOX 286
BURLINGTON, NC 27216

Agent No.  32019          Program No.:     AG

**ITEM 2.** POLICY PERIOD  From:  05/05/2021          To: 05/05/2022          Term: 365 DAYS

**12:01 A.M. Standard Time at your mailing address.**

BUSINESS DESCRIPTION  RESTAURANT

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

**Coverage Part(s)**

Commercial General Liability Coverage Part
Commercial Property Coverage Part
Commercial Crime Coverage Part
Commercial Inland Marine Coverage Part
Commercial Auto (Business Auto or Truckers) Coverage Part
Liquor Liability Coverage Part
Professional Liability Coverage Part

**EXPORTABLE**

**Premium Summary**

**Total Policy Premium:**

POLICY FEE
INSPECTION FEE
STATE TAX

**Policy Total**

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

Countersigned:  BURLINGTON,NC          06/15/2021  WGM
(Date)

By
(Authorized Representative)

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

OPS-D-1 (1-17)

ORIGINAL

dece.fap

Nationwide®

# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. ___CPS3985594___    Effective Date: ___05/05/2021___

12:01 A.M., Standard Time

Named Insured ___COLONIAL RESTAURANT LLC___    Agent No. ___32019___

| | |
|---|---|
| OPS-D-1  (01-17) | COMMON POLICY DECLARATIONS |
| UTS-SP-2 (12-95) | FORMS & ENDORSEMENT SCHEDULE |
| UTS-COVPG (06-19) | COVER PAGE |
| NJ STAMP 04-05 | NJ STATE STAMP |
| NOTX0105CW (02-19) | PRIVACY STATEMENT |
| NOTX0135CW (06-09) | FLOOD DAMAGE NOTICE |
| NOTS0137NJ (02-02) | NJ NOTICE |
| NOTX0178CW (03/16) | CLAIM REPORTING INFO |
| NOTS0223NJ (05/05) | NOTICE TO INSURED - NEW JERSEY |
| NOTX0423CW (12/20) | NOTICE OF TERRORISM INSURANCE |
| UTS-SP-3  8-96 | LOCATIONS SCHEDULE |
| UTS-9g (6-20) | SERVICE OF SUIT |
| UTS-365s  (02-09) | AMENDMENT OF NONPAYMENT CANC CON |
| IL0208(09-07) | NJ CHANGES - CANC & NON-RENEW |
| UTS-404g-NJ  (07-10) | NJ-RETURN OF UNEARNED PREM ENDO |
| UTS-496  (06-19) | MINIMUM EARNED CANCELLATION PREMIUM |
| IL0017(11-98) | COMMON POL COND |
| IL0141(09-08) | NJ CHANGES-CIVIL UNION |
| CLS-SD-1L (8-01) | COMM LIAB DEC |
| CLS-SP-1L  10-93 | GL EXT SUPPLEMENTAL DEC |
| IL0021(09-08) | NUCLEAR ENERGY EXCL (NE) |
| CG 00 01 (04-13) | LIABILITY COVERAGE PART |
| CG2101(12-19) | EXCL ATH/SPT PARTICIPANTS |
| CG2106(05-14) | EXCL-ACCESS OF CONF OR PERS INFO |
| CG2144(04-17) | LMT CVG DES PREM/PROD |
| CG2147(12-07) | EMP REL PRACTICES EX |
| CG2167(12-04) | FUNGI / BACTERIA  EXCLUSION |
| CG2173[01-15] | EXCLUSION OF CERT ACTS OF TERROR |
| CG2407(01-96) | PROD/C/OPS HAZ REDEFINE |
| CG2426 (04-13) | AMEND OF INSURED CONTRACT DEFINI |
| CG4012(12-19) | EXCL-ALL HAZARDS / ELECTRONIC SMOKING DEVICE |
| UTS-266g (5-98) | ASBESTOS EXCLUSION |
| UTS-267g (5-98) | LEAD CONTAMINATION |
| GLS-30s (01-15) | CONTRACTORS SPECIAL CONDITIONS |
| GLS-47s(10-07) | MIN AND ADVANCE PREM EN |
| GLS-74s(09-05) | AMENDMENT OF  CONDITIONS |
| GLS-152s(08-16) | AMENDMENT TO OTHER INSURANCE CONDITIONS |
| GLS-285s(04-18) | ASSAULT AND/OR BATTERY LMT LIAB (DESIG PREM) |
| GLS-289s(11-07) | KNOWN INJURY OR DMG EXCL-PER/ADV |
| GLS-328s(11-20) | INJURY TO EMPLOYEE AND WORKER EXCLUSION |
| GLS-341s(08-12) | HYDRAULIC FRACTURING EXCLUSION |
| GLS-457s(10-14) | EXCL-AIRCRAFT |
| UTS-74g(08-95) | PUNITIVE OR EXEMPLARY |
| UTS-428g  (11-12) | PREMIUM AUDIT ENDORSEMENT |
| CLS-SD-5 (8-01) | LIQUOR LIAB SUP DEC |
| CG0033 (04-13) | LIQUOR LIABILTY COV FORM |
| CG0305(1/96) | DEDUCTIBLE LIAB INS |
| CG2173[01-15] | EXCLUSION OF CERT ACTS OF TERROR |
| CG2806(11-85) | LMT CVG INSD PREM |

## ADDITIONAL FORMS



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza ▫ Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive ▫ Scottsdale, Arizona 85258
1-800-423-7675 ▫ A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                        President

The information contained herein replaces any similar information contained elsewhere in the policy.

# <u>NJ STATE STAMP</u>

**"This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance.  Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance.  The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund."**

Repeal and New Rule, R.2005 d.104, effective April 4, 2005
See:  36 N.J.R. 2144(a), 37 N.J.R. 1065(a).

**Scottsdale Insurance Company**
**National Casualty Company**
**Scottsdale Indemnity Company**
**Scottsdale Surplus Lines Insurance Company**

## PRIVACY STATEMENT

Thank you for choosing the Scottsdale group of insurance companies.

Our privacy statement explains how we collect, use, share, and protect your personal information. So just how do we protect your privacy? Simply, we respect your right to privacy and promise to treat your personal information responsibly. It's as simple as that. Here's how.

**Confidentiality and security**

We follow all data security laws. We protect your information by using physical, technical, and procedural safeguards. We limit access to your information to those who need it to do their jobs. Our business partners are also legally bound to use your information for our purposes only. They may not share it or use it in any other way.

**Collecting and using your personal information**

We collect personal information about you when you ask about or buy one of our products or services. The information comes from your application and from your business transactions with us. Please know that we only use that information to sell, service, or market products to you.

We may share the following types of information:•

- Name, address, Social Security number
- Driver's license number
- Assets and income
- Financial information
- Account and policy information
- Credit reports
- Family member and beneficiary information

**Sharing your information for business purposes**

When you buy a product, we share your personal information for everyday business purposes with our sister companies and business partners. Some examples include mailing your statements or processing transactions that you request. You cannot opt out of these. We also share your personal information with your agent or producer. They use your personal information to manage your policy or account. We may also share your personal information where federal and state law requires.

**Sharing your information for marketing purposes**

We don't sell your information for marketing purposes. We have chosen not to share your personal information to anyone except to service your product. So, there's no reason for you to opt out. If we change our policy, we'll tell you and give you the opportunity to opt out before we share your information.



**Using your medical information**

We sometimes collect medical information. We may use this medical information for a product or service you're interested in, to pay a claim, or to provide a service. We may share this medical information for these business purposes if required or permitted by law. But, we won't use it for marketing purposes unless you give us permission.

**Accessing your information**

You can ask us for a copy of your personal information. Please send a letter to the address below and have your signature notarized. This is for your protection so we may prove your identity. We don't charge a fee for giving you a copy of your information now, but we may charge a small fee in the future.

You can call your Agent to change your personal information. But, we can't update information that other companies, like credit agencies, provide to us. So, you'll need to contact these other companies to change and correct your information.

Send your privacy inquiries to the address below. Please include your name, address, and policy number.

The Office of Customer Advocacy
1000 Yard Street GH-2D-OCA1 Building H
Grandview Heights, OH 43212

**A parting word...**

These are our privacy practices. They apply to all current and former clients of the Scottsdale group of companies.

**We look forward to building a lifetime relationship with you.**

Scottsdale Insurance Company
National Casualty Company
Scottsdale Indemnity Company
Scottsdale Surplus Lines Insurance Company





**National Casualty Company**

*Scottsdale Indemnity Company*

**FLOOD DAMAGE NOTICE**

This policy does not cover damage to your property caused by flooding.

The federal government offers flood insurance through the National Flood Insurance Program (NFIP) to residents of communities that participate in its program. The NFIP provides coverage for residential and non-residential buildings and their contents.

For additional information concerning this important coverage, please contact your agent or you can learn more about the National Flood Insurance Program at www.floodsmart.gov or by calling 888-379-9531.



## NOTICE

**This policy contains a mold exclusion endorsement(s). Please read the policy carefully.**



**Scottsdale Insurance Company**
**National Casualty Company**
**Scottsdale Indemnity Company**
**Scottsdale Surplus Lines Insurance Company**

# CLAIM REPORTING INFORMATION

Your insurance policy has been placed with a Nationwide® insurance company.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact us 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our website at www.nationwideexcessandsurplus.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| HOW TO REPORT A CLAIM |
|---|
| Call **1-800-423-7675** or visit our website at www.nationwideexcessandsurplus.com. In order to expedite this process, please be prepared to furnish as much of the following information as possible: |

- Your policy number
- Date, time and location of the loss/ accident
- Details of the loss/ accident
- Name, address and phone number of any involved parties
- If applicable, name of law enforcement agency or fire department along with the incident number

**Please refer to your policy for specific claim reporting requirements.**



## NOTICE TO INSURED - NEW JERSEY

This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Guaranty Fund.

NOTS0223NJ (5-05)                    ORIGINAL

**Freedom Specialty Insurance Company**
**National Casualty Company**
**Scottsdale Indemnity Company**
**Scottsdale Insurance Company**
**Scottsdale Surplus Lines Insurance Company**

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

**TERRORISM RISK INSURANCE ACT**

Under the Terrorism Risk Insurance Act of 2002, as amended pursuant to the Terrorism Risk Insurance Program Reauthorization Act of 2019 (the "Act"), you have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act: The term "certified acts of terrorism" means any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that where coverage is provided by this policy for losses resulting from "certified acts of terrorism," such losses may be partially reimbursed by the United States Government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear, chemical, biological or radioactive events. Under the formula, the United States Government agrees to reimburse eighty percent (80%) of covered terrorism losses that exceed the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss that may be covered by the Federal Government under the Act.

You should also know that the Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "certified acts of terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

**CONDITIONAL TERRORISM COVERAGE**

The federal Terrorism Risk Insurance Program Reauthorization Act of 2019 is scheduled to terminate at the end of December 31, 2027, unless renewed, extended or otherwise continued by the federal government. Should you select Terrorism Coverage provided under the Act and the Act is terminated December 31, 2027, any terrorism coverage as defined by the Act provided in the policy will also terminate.



**IN ACCORDANCE WITH THE ACT, YOU MUST CHOOSE TO SELECT OR REJECT COVERAGE FOR "CERTIFIED ACTS OF TERRORISM" BELOW:**

**The Note below applies for risks in these states:** California, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, Washington, West Virginia, Wisconsin.

**NOTE:** In these states, a terrorism exclusion makes an exception for (and thereby provides coverage for) fire losses resulting from an act of terrorism. Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism coverage for such fire losses will be provided in your policy.

**If you do not respond to our offer and do not return this notice to the Company, you will have no Terrorism Coverage under this policy. Please select one of the checkboxes below.**

| | |
|---|---|
| | I hereby elect to purchase certified terrorism coverage for a premium of $_____ . I understand that the federal Terrorism Risk Insurance Program Reauthorization Act of 2019 may terminate on December 31, 2027. Should that occur my coverage for terrorism, as defined by the Act, will also terminate. |
| | I hereby reject the purchase of certified terrorism coverage. |

_____    __COLONIAL RESTAURANT LLC_____
Policyholder/ Applicant's Signature           Named Insured/  Business Name

_____    _____CPS3985594_____
Print Name                                    Policy Number, if available

_____
Date



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF LOCATIONS

Policy No. _CPS3985594_

Effective Date _05/05/2021_

12:01 A.M. Standard Time

Named Insured _COLONIAL RESTAURANT LLC_

Agent No. _32019_

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|-----------|-----------|-----------------------------------------------------|-----------|
| 01 | 01 | 821 SPRING ST. ELIZABETH, NJ 07208 | RESTAURANT |

UTS-SP-3 (8-96)

ORIGINAL

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal. However, nothing in this endorsement constitutes a waiver of company's right to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The person named below is authorized and directed to accept service of process on behalf of the Company:

COMMISSIONER OF INSURANCE
_____

20 W. STATE STREET, PO BOX 325, TRENTON, NJ  08625
_____

_____

Having accepted service of process on behalf of the Company, the person designated above is authorized to mail the process or a true copy to:

RECIPIENT NOT REQUIRED
_____

_____

_____

/
_____          _____
AUTHORIZED REPRESENTATIVE                                              DATE



 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF NONPAYMENT CANCELLATION CONDITION

Wherever a Cancellation Condition for nonpayment of premium is found in the policy, the following is added:

If the insured failed to pay premium charged on a prior policy we issued and payment was due during the current renewal policy term, we may cancel this policy by mailing or delivering to the first Named Insured and mortgagee, if any, written notice of cancellation at least ten (10) days before the effective date of cancellation.

/
_____    _____
AUTHORIZED REPRESENTATIVE                         DATE

UTS-365s (2-09)

Page 1 of 1
ORIGINAL

IL 02 08 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

      CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
      COMMERCIAL AUTOMOBILE COVERAGE PART
      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      COMMERCIAL INLAND MARINE COVERAGE PART
      COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
      COMMERCIAL PROPERTY COVERAGE PART
      CRIME AND FIDELITY COVERAGE PART
      EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
      EQUIPMENT BREAKDOWN COVERAGE PART
      FARM COVERAGE PART
      FARM UMBRELLA LIABILITY POLICY
      LIQUOR LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/ or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **2.** If this policy has been in effect for less than 60 days, we may cancel this policy for any reason subject to the following:

    **a.** We may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice, of cancellation, at least:

      **(1)** 10 days before the effective date of cancellation if we cancel for:

        **(a)** Nonpayment of premium; or

        **(b)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

          **(i)** "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

          **(ii)** "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

**(3)** Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

**(4)** Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

**(5)** Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/ or insurability of the risk;

**(6)** Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

**(7)** Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

**(8)** Loss of or reduction in available insurance capacity;

**(9)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

**(10)** Loss of or substantial changes in applicable reinsurance;

**(11)** Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

**(12)** Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefore and a reasonable opportunity to respond.

**(13)** Agency termination, provided:

**(a)** We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

**(b)** We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

**(14)** Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

**b.** If we cancel this policy based on Paragraph **7.a.(1)** or **(2)** above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

**c.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

**d.** Notice will be sent to the last mailing addresses known to us, by:

**(1)** Certified mail; or

**(2)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

**e.** We need not send notice of cancellation if you have:

    **(1)** Replaced coverage elsewhere; or

    **(2)** Specifically requested termination.

**D.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

    **1.** We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire   annually on the anniversary of its inception.

**2.** This notice will be sent to the first Named Insured at the last mailing address known to us by:

    **a.** Certified mail; or

    **b.** First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

**3.** We need not mail or deliver this notice if you have:

    **a.** Replaced coverage elsewhere; or

    **b.** Specifically requested termination.

 ISO Properties Inc., 2006

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO._____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## RETURN OF UNEARNED PREMIUM - NEW JERSEY

If this policy is canceled, the Company will return unearned premium to the first Named Insured within a reasonable time after the date cancellation takes effect, and will not be subject to interest or any statutory penalty.

/
_____          _____
AUTHORIZED REPRESENTATIVE                                    DATE

UTS-404g-NJ (7-10)

Page 1 of 1

ORIGINAL

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED CANCELLATION PREMIUM

The following provision is added to the Cancellation Condition:

If You request cancellation of this policy, We will retain not less than _____ 25 % _____ of the premium.

_____ / _____

AUTHORIZED REPRESENTATIVE                      DATE



IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998
ORIGINAL

IL 01 41 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES - CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under New Jersey law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage - Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of your household, including a ward or foster child.

Copyright, Insurance Services Office, Inc., 2008
ORIGINAL

## SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No. _____ CPS3985594 _____ Effective Date _____ 05/05/2021 _____

12:01 A.M., Standard Time

Named Insured  COLONIAL RESTAURANT LLC _____  Agent No. _____ 32019 _____

**Item 1.** Limits of Insurance

| Coverage | Limit of Liability | |
|---|---|---|
| Aggregate Limits of Liability | $ ___1,000,000___ | Products/ Completed Operations Aggregate |
| | $ 2,000,000 | General Aggregate (other than Products/ Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ 1,000,000 | any one occurrence subject to the Products/ Completed Operations and General Aggregate Limits of Liability |
| Damage to Premises Rented to You Limit | $ ____100,000____ | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ 1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ _____5,000_____ | any one person subject to the Coverage A occurrence and the General Aggregate Limits |

**Item 2.** Description of Business

Form of Business:

☐ Individual    ☐ Partnership    ☐ Joint Venture    ☐ Trust    ☒ Limited Liability Company

☐ Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Location of All Premises You Own, Rent or Occupy:
SEE SCHEDULE OF LOCATIONS

**Item 3.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

**Item 4.** Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | 5,536.00 |
| Other Premium: | $ | |
| Total Premium: | $ | 5,536 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.



**SCOTTSDALE INSURANCE COMPANY®**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. CPS3985594

Effective Date: 05/ 05/ 2021
12:01 A.M., Standard Time

Named Insured COLONIAL RESTAURANT LLC

Agent No. 32019

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 01 | 01 | 16916 | 400,000 | GROSS SALES - per $1000 Gross Sales |

| Class Description: RESTAURANTS - WITH SALE OF ALCOHOLIC BEVERAGES THAT ARE 30% OR MORE OF BUT LESS THAN 75% OF THE TOTAL ANNUAL RECEIPTS OF THE RESTAURANTS - WITHOUT DANCE FLOOR | Premises/ Operations | |
|---|---|---|
| | Rate | Premium |
| | ██████ | ██████ |
| | Products/ Comp Operations | |
| | Rate | Premium |
| | ██████████████████ | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| | | | | |

| Class Description: | Premises/ Operations | |
|---|---|---|
| | Rate | Premium |
| | | |
| | Products/ Comp Operations | |
| | Rate | Premium |
| | | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| | | | | |

| Class Description: | Premises/ Operations | |
|---|---|---|
| | Rate | Premium |
| | | |
| | Products/ Comp Operations | |
| | Rate | Premium |
| | | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| | | | | |

| Class Description: | Premises/ Operations | |
|---|---|---|
| | Rate | Premium |
| | | |
| | Products/ Comp Operations | |
| | Rate | Premium |
| | | |

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

    **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

        **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

        **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

Copyright, ISO Properties, Inc., 2007
ORIGINAL

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.

## SECTION I - COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Copyright, Insurance Services Office, Inc., 2012
ORIGINAL

**2.   Exclusions**

This insurance does not apply to:

**a.   Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.   Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.   Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d.   Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.   Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

Copyright, Insurance Services Office, Inc., 2012

**f.    Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.** **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.** **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.** **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.** **Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 Copyright, Insurance Services Office, Inc., 2012

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** - Limits Of Insurance.

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

Copyright, Insurance Services Office, Inc., 2012

**i.  Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.  Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.  Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l.  Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.  Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.  Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o.  War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p.  Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C - MEDICAL PAYMENTS**

**1.  Insuring Agreement**

**a.**  We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)**  On premises you own or rent;

**(2)**  On ways next to premises you own or rent; or

**(3)**  Because of your operations;

provided that:

**(a)**  The accident takes place in the "coverage territory" and during the policy period;

**(b)**  The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)**  The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.**  We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)**  First aid administered at the time of an accident;

**(2)**  Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)**  Necessary ambulance, hospital, professional nursing and funeral services.

**2.  Exclusions**

We will not pay expenses for "bodily injury":

**a.  Any Insured**

To any insured, except "volunteer workers".

**b.  Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.  Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d.  Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.  Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f.  Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g.  Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.**  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.**  All expenses we incur.

**b.**  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.**  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.**  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", in cluding actual loss of earnings up to $250 a day because of time off from work.

**e.**  All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.**  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 Copyright, Insurance Services Office, Inc., 2012

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

Copyright, Insurance Services Office, Inc., 2012

CG 00 01 04 13

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage **A;** and

    **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

  Copyright, Insurance Services Office, Inc., 2012

9. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 2012

POLICY NUMBER: CPS3985594

COMMERCIAL GENERAL LIABILITY
CG 21 01 12 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description Of Operations: |
| --- |
| RESTAURANT |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person arising out of practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" involved practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

ORIGINAL

POLICY NUMBER:  CPS3985594

COMMERCIAL GENERAL LIABILITY
CG 21 44 04 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Premises: |
| SEE SCHEDULE OF LOCATIONS |

| Project Or Operation: |
| RESTAURANT |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01**, the provisions under this Paragraph **A.** apply:

1. Paragraph **1.b.** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

   **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

   **(1)** The "bodily injury" or "property damage":

   **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

   **(b)** Arises out of the project or operation shown in the Schedule;

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

2. Paragraph **1.b.** under **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

   **b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

   **(1)** The offense arises out of your business:

   **(a)** Performed on the premises shown in the Schedule; or

Copyright, Insurance Services Office, Inc., 2016
ORIGINAL

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I - Coverage C - Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02,** the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V** - Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

Copyright, Insurance Services Office, Inc., 2016

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V - Extended Reporting Periods.**

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I - Coverage C - Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

Copyright, Insurance Services Office, Inc., 2016

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Fungi Or Bacteria**

   **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Fungi Or Bacteria**

   **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

   **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 Copyright, ISO Properties, Inc., 2003
ORIGINAL

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Copyright, Insurance Services Office, Inc., 2014
ORIGINAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 24 07 01 96

# PRODUCTS/ COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| 05/05/2021          12:01 A.M. standard time | CPS3985594 |
| Named Insured          COLONIAL RESTAURANT LLC | Countersigned by |

<div align="right">(Authorized Representative)</div>

**SCHEDULE**

**Description of Premises and Operations:**

RESTAURANT

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or
2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf.

Paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

Copyright, Insurance Services Office, Inc., 1994

ORIGINAL

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL  LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

Copyright, Insurance Services Office, Inc., 2012
ORIGINAL

COMMERCIAL GENERAL LIABILITY
CG 40 12 12 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ALL HAZARDS IN CONNECTION WITH AN ELECTRONIC SMOKING DEVICE, ITS VAPOR, COMPONENT PARTS, EQUIPMENT AND ACCESSORIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**Electronic Smoking Device**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the following:

**1.** The design, manufacture, distribution, sale, maintenance, use or repair of:

   **a.** An "electronic smoking device"; or

   **b.** Any component part of, or equipment or accessory designed for use with an "electronic smoking device", including, but not limited to, a mouthpiece, tube, tank, connector, atomizer, cartomizer, clearomizer, coil, battery, charger, cartridge, liquid, flavoring, solutions of any kind, or ingredients therein;

**2.** The actual, alleged, threatened or suspected inhalation of, contact with, exposure to, existence of, or presence of, vapor delivered from an "electronic smoking device"; or

**3.** Any component part of, or equipment or accessory designed for use with an "electronic smoking device", including, but not limited to those items listed in Paragraph **A.1.b.** of this endorsement, and in connection with the actual, alleged, threatened or suspected inhalation of, contact with, exposure to, existence of, or presence of, vapor delivered from an "electronic smoking device".

**B.** The following definition is added:

"Electronic smoking device" means a battery-powered device that delivers a vaporized inhalable substance through a mouthpiece. "Electronic smoking devices" include, but are not limited to, battery-powered:

**1.** Cigarettes;

**2.** Pipes;

**3.** Cigars;

**4.** Hookahs; and

**5.** Vaporizers, other than steam or mist inhalers.

 Copyright, Insurance Services Office, Inc., 2018
ORIGINAL

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/ 05/ 2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASBESTOS EXCLUSION

This policy does not apply to:

(1) Damages in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

(2) Any economic loss, diminution of property value, abatement costs, or any other loss, cost or expense including equitable relief, in any way or to any extent arising out of or involving asbestos, asbestos fibers or any product containing asbestos or asbestos fibers.

(3) Any fees, fines, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or suit arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

_____    /_____
AUTHORIZED REPRESENTATIVE        DATE

UTS-266g (5-98)                    ORIGINAL

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/ 05/ 2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This policy does not apply to:

1.  Any damages arising out of the ingestion, inhalation or absorption of lead in any form.

2.  Any loss, cost or expense arising out of any:

    (a)  Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

    (b)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

/

_____     _____

AUTHORIZED REPRESENTATIVE              DATE

ORIGINAL

UTS-267g (5-98)

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS SPECIAL CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**

**Contractors Special Conditions**

You will obtain current certificates of insurance from all independent contractors providing evidence of:

**1.** "Bodily injury" and "property damage" liability Limits of Insurance equal to or greater than the limits provided by this policy;

**2.** Coverage equal to or greater than the coverage provided by this policy; and

**3.** Effective dates of coverage that "coincide" with the effective dates of coverage on this policy.

Failure to comply with this condition does not alter the coverage provided by this policy, but will result in an additional premium charge.

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,** paragraph **5. Premium Audit:**

Should you fail to provide current certificates of insurance from all independent contractors at such times as we request to complete a premium audit, a premium charge will be made. The premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 payroll for the applicable classification of the work performed. The premium charge will be computed by multiplying our usual and customary rate per $1,000 payroll for that classification.

For purposes of this endorsement the following definitions apply:

"Total cost" means the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions paid.

"Coincide" means that the effective dates of coverage for all policies of all independent contractors covers that period of time during which work was performed for you within the effective dates covered by this policy.

_____    /_____
AUTHORIZED REPRESENTATIVE              DATE

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM AND ADVANCE PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**MINIMUM PREMIUM** _____100_____**%**

Item **5.b.** of the **Premium Audit** condition under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, SECTION IV - LIQUOR LIABILITY CONDITIONS** and **SECTION IV - PRODUCTS/ COMPLETED OPERATIONS LIABILITY CONDITIONS** is amended to read:

**b.** The advance premium for this Coverage Part is a deposit premium only. The final premium shall be subject to audit. At the close of each audit period we will compute the earned premium for that period. Any audit premiums are due and payable to us on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, subject to the minimum premium as defined below. In the event the first Named Insured fails or refuses to allow our representative to audit your books and records, we may unilaterally charge a final premium for the Policy Period at double the minimum or advance premium, whichever is greater, and such final premium shall be immediately due and payable on notice to the first Named Insured.

For purposes of this endorsement, the terms advance premium, earned premium, and minimum premium are defined as follows:

Advance Premium - the premium that is stated in the applicable initial policy Declarations or Renewal Certificate and payable in full by the first Named Insured at the inception of each Policy Period.

Earned Premium - the premium that is developed by applying the rate(s) scheduled in the policy to the actual premium basis for the audit period.

Minimum Premium - the lowest premium for which this insurance will be written for the Policy Period stated in **Item 2.** of the Declarations of the applicable initial policy or subsequent Renewal Certificate. This minimum premium is equal to 100% (unless a different percentage [%] is shown in the Schedule above) of the advance premium including any premium adjustments made by endorsement to this policy during the Policy Period. Premium adjustments do not include the audit premium developed for the Policy Period stated in **Item 2.** of the Declarations.

_____     /_____

AUTHORIZED REPRESENTATIVE          DATE

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**PRODUCTS COMPLETED OPERATIONS COVERAGE PART**

The Condition entitled **When We Do Not Renew** is deleted in its entirety.

_____  /_____
AUTHORIZED REPRESENTATIVE                      DATE

GLS-74s (9-05)

Page 1 of 1

ORIGINAL

 **SCOTTSDALE INSURANCE COMPANY®**

## ENDORSEMENT NO._____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Condition **4. Other Insurance** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and is replaced by the following:

**4. Other Insurance**

**a. Primary Insurance**

This insurance is primary except when **b.** below applies.

**b. Excess Insurance**

**(1)** This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

**(d)** If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Coverage **A (SECTION I); or**

**(e)** That is valid and collectible insurance available to any insured under any other policy.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

**(b)** The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

_____ / _____

AUTHORIZED REPRESENTATIVE                                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASSAULT AND/ OR BATTERY LIMITED LIABILITY COVERAGE
### (Limited to Designated Premises)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**ERRORS AND OMISSIONS COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

### SCHEDULE

| Designated Premises: |
|---|
| SEE SCHEDULE OF LOCATIONS |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Throughout this endorsement, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under item **3. WHO IS AN INSURED** of this endorsement.

Except as provided by this endorsement, this policy does not apply to "injury," "bodily injury," "property damage," "damages" or "personal and advertising injury" arising from:

**1.** Assault and/ or Battery that occurs at any premises other than the designated premises shown in the Schedule above; or

**2.** Assault and/ or Battery that occurs away from the designated premises caused by supervision, hiring, training, organizing, or any other activities conducted on or from the designated premises shown in the Schedule above.

**3.** Assault and/ or Battery committed by:

   **a.** Any insured;

   **b.** Any employee/ "employee" of any insured; or

   **c.** Any other person.

**4.** The failure to suppress or prevent Assault and/ or Battery by any person in **3.a.-c.** above;

**5.** The selling, serving or furnishing of alcoholic beverages which results in an Assault and/ or Battery; or

**6.** The negligent:

   **a.** Employment;

   **b.** Investigation;

   **c.** Supervision;

   **d.** Hiring;

   **e.** Training;

   **f.** Monitoring;

   **g.** Reporting to the proper authorities, or failure to so report; or

   **h.** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs **3.** and **4.** above.

We will have no duty to defend any "suit" against you seeking "damages" as a consequence of any such injury unless coverage is provided by this endorsement.

The coverage provided is described below:

**INSURING AGREEMENTS**

For the premium shown below, we agree to afford coverage with respect to Assault and/ or Battery Liability only as indicated on this endorsement and subject to the provisions as set forth in this endorsement at liability limits of $25,000 Each Event and $50,000 Aggregate unless otherwise stated below:

| LIMITS OF LIABILITY | COVERAGE |
|---|---|
| $ _____ Each Event<br>$ _____ Aggregate | Assault and/ or Battery Liability |
| $ _____ TOTAL PREMIUM | |

**1. COVERAGES - ASSAULT AND/ OR BATTERY LIABILITY**

We will pay on your behalf all sums which you shall become legally obligated to pay as damages because of "injury," "bodily injury," "property damage," "damages" or "personal and advertising injury" to any person arising out of Assault and/ or Battery only if the "injury," "bodily injury," "property damage," "damages" or "personal and advertising injury";

   **a.** Takes place at the designated premises; and

   **b.** Occurs during the policy period.

We will have the right and duty to defend any suit against you seeking such "damages," even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and such settlement of any claim or suit as we deem expedient, but we shall not be obligated to pay any claim or judgment or to defend any suit after the applicable Limit of Liability shown in this endorsement has been exhausted. However, we will have no duty to defend the insured against any suit seeking "damages" to which this insurance does not apply.

**2. EXCLUSIONS**

This endorsement does not apply to:

**a.** Liability of others assumed by you under any contract or agreement, either oral or in writing, unless specifically endorsed hereon;

**b.** Assault and/ or Battery to:

   **(1)** Any of your "employees" arising out of and in the course of:

   **(a)** Employment by you;

   **(b)** Performing duties related to the conduct of your business; or

   **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of **(1)** above.

   This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury;

**c.** Any loss or claim either directly or indirectly arising from your activities as an officer or director of any corporation, company or business other than that of the Named Insured;

**d.** Any claim for punitive or exemplary damages; or

**e.** Any claims covered by a Sexual And/ Or Physical Abuse Liability Coverage Form, or any other coverages included in this policy.

**3. WHO IS AN INSURED**

Each of the following is an insured under this insurance to the extent set forth below:

**a.** If the Named Insured is designated in the Declarations as an individual, the person so designated, but only with respect to the conduct of a business of which that person is the sole proprietor, and the spouse of the Named Insured with respect to the conduct of such a business.

**b.** If the Named Insured is designated in the Declarations as a partnership or joint venture, the partnership or joint venture so designated, and any partner or member are also insureds, but only with respect to the conduct of your business.

**c.** If the Named Insured is designated in the Declarations as other than an individual, partnership or joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**d.** If the Named Insured is designated in the Declarations as a limited liability company, your members are also insured, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**e.** Your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** Assault and/ or Battery:

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**f.** Any person (other than your "employee") or any organization while acting as your real estate property manager.

**4.  LIMITS OF LIABILITY**

Regardless of the number of insureds under this policy, our liability is limited as follows:

The Limit of Liability stated in this endorsement as applicable to each "Event" is the most we will pay for all damages arising out of "injury," "bodily injury," "property damage," "personal and advertising injury" or "errors or omissions" because of assault and/ or battery, regardless of the number of insureds, persons injured, claims made or suits brought or persons or organizations making claims or bringing suits. The Limit of Liability stated above as Aggregate, subject to the above provision regarding each Event, is the total limit of our liability under this coverage for all "damages" in any policy period.

**5.  DEFINITIONS**

"Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death, resulting from any of these at any time.

"Damages" means a monetary judgment, award, or settlement, including damages for death, which are payable because of injury to which this insurance applies. However, damages do not include criminal restitution.

"Damages" shall not include:

**a.** Amounts paid to you as fees or expenses for services performed which are to be reimbursed or discharged as a part of the judgment or settlement; or

**b.** Judgments or awards arising from acts deemed uninsurable by law.

"Injury" means damages because of "bodily injury" and "property damage," including damages for care, loss of services or loss of support.

"Event" means an act or series of acts based on or arising out of the same assault and/ or battery.

"Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

"Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**6.  OTHER INSURANCE**

If there is other valid and collectible insurance available to you for "damages" covered under this endorsement, this insurance is excess over such other insurance.

/
_____       _____
AUTHORIZED REPRESENTATIVE                                    DATE

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO._____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWN INJURY OR DAMAGE EXCLUSION - PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:

**a.** That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

**b.** That occurs during the policy period and was, prior to the policy period, known to have

occurred by any insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

**(3)** Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur.

/

_____    _____
AUTHORIZED REPRESENTATIVE          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006

Underwritten by Scottsdale Insurance Company

# ENDORSEMENT NO._____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INJURY TO EMPLOYEE AND WORKER EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**A.** With respect to this endorsement, **SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions,** subparagraph **e. Employer's Liability** is deleted in its entirety and replaced by:

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**i.** Whether the insured may be liable as an employer or in any other capacity; and

**ii.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following is added to **SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions** and **SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY,** paragraph **2. Exclusions:**

This insurance does not apply to:

**1.** "Bodily injury" or "personal and advertising injury" to:

**a.** An "employee," "leased worker," "temporary worker" or "volunteer worker" of any insured;

**b.** Any contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any insured; or

**c.** Any employee or anyone directly or indirectly employed by such contractor, subcontractor or sub-subcontractor or anyone for whose acts such contractor, subcontractor or sub-subcontractor may be liable

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2004



if such "bodily injury" or "personal and advertising injury" arises out of and in the course of their employment or retention of such contractor, subcontractor or sub-subcontractor, regardless of whether it is caused in part by you; or

**2.** Any obligation of any insured to defend, indemnify or contribute with another because of "bodily injury" or "personal and advertising injury" to:

    **a.** An "employee," "leased worker," "temporary worker" or "volunteer worker" of any insured;

    **b.** Any contractor, subcontractor, sub-subcon-tractor or anyone hired or retained by or for any insured; or

    **c.** An employee of any contractor, subcontractor or sub-subcontractor; or

**3.** "Bodily injury" or "personal and advertising injury" to the spouse, child, parent, brother or sister of that employee of any contractor, subcontractor or sub-subcontractor, or that contractor, subcontractor or sub-subcontractor, or that "employee," "leased worker," "temporary worker" or "volunteer worker" of any insured as a consequence of items **1.** or **2.** above.

This applies to all claims, offenses and "suits" by any person or organization for damages, indemnity and/ or any obligation to share damages with or repay someone else who must pay damages because of the injury.

**C.** The following exclusion is added to **SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions:**

"Bodily injury" to:

**1.** Any "worker"; or

**2.** The spouse, child, parent, brother or sister of that "worker."

This exclusion applies:

    **a.** Whether the insured may be liable as an employer or in any other capacity; and

    **b.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**D.** For purposes of this endorsement only, the following is added to **SECTION V - DEFINITIONS:**

"Worker" means any person performing duties directly or indirectly related to the conduct of any business, regardless of the person or organization responsible for hiring, retaining, employing, furnishing or directing the worker.

---

/

               AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2004



 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HYDRAULIC FRACTURING EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**ERRORS AND OMISSIONS COVERAGE PART**

**A.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage A. Bodily Injury And Property Damage Liability** of the Commercial General Liability Coverage Part and Paragraph **2. Exclusions** of **SECTION I - COVERAGE** of the Errors And Omissions Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Bodily injury," "property damage" or "error or omission":

    **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing," "gas fracking" and/ or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any insured or by any other person or entity; or

    **b.** Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

**2.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B. Personal And Advertising Injury** Liability of the Commercial General Liability Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Personal and advertising injury":

    **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include,

GLS-341s (8-12)

Page 1 of 2

ORIGINAL

but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any "insured" or by any other person or entity; or

**b.** Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

**2.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

For purposes of this endorsement, the following definitions apply:

**1.** "Hydraulic fracturing," or hydrofracking means the process by which water, "proppants," chemicals and/or other fluid additives are injected at high pressure into underground geologic formations to create fractures, to facilitate the extraction of any hydrocarbons including but not limited to natural gas and/or oil.

**2.** "Flowback" means any substance containing returned "hydraulic fracturing" fluid, including but not limited to water, "proppants," "hydraulic fracturing" fluid additives; and, any hydrocarbon compounds, salts, conventional pollutants, organics, metals, and naturally occurring radioactive material brought to the surface with the water.

**3.** "Gas fracking" or liquefied propane/butane gas fracturing means the waterless process by which propane gel and "proppants" are injected at high pressure into underground geologic formations to create fractures, to facilitate the release and extraction of natural gas.

**4.** "Proppant" means particles that are used to keep fractures open after a hydraulic fracturing treatment.

_____/_____
AUTHORIZED REPRESENTATIVE           DATE

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.**_____



| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AIRCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to paragraph **2. Exclusions** of **SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft. Use includes operation and "loading and unloading."

This exclusion applies even if claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured.

/
_____          _____
AUTHORIZED REPRESENTATIVE                              DATE

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

_____  /  _____

AUTHORIZED REPRESENTATIVE                    DATE

ORIGINAL

UTS-74g (8-95)

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3985594 | 05/05/2021 | COLONIAL RESTAURANT LLC | 32019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMIUM AUDIT

The following is added to the Premium Audit provision:

If the first Named Insured fails or refuses to provide documentation adequate to determine the apportionment of exposures by class code, we may unilaterally apply all exposures to the class code with the highest rate stated in the policy including any class code adjustments made by endorsement.

_____ / _____
AUTHORIZED REPRESENTATIVE                    DATE

# SCOTTSDALE INSURANCE COMPANY®

## LIQUOR LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy Number: _____CPS3985594_____    Effective Date: _____05/05/2021_____

Named Insured: _COLONIAL RESTAURANT LLC_    Agent Number: _____32019_____

---

**Item 1.** Limits of Insurance

Aggregate Limit                                    $ _____2,000,000_____

Each Common Cause Limit                             $ _____1,000,000_____

---

**Item 2.** Description of Business

Form of business:

☐ Individual      ☐ Partnership or Joint Venture      ☒ Limited Liability Company

☐ Organization (other than Partnership, Joint Venture or Limited Liability Company)

Location of all premises you own, rent or occupy:
SEE SCHEDULE OF LOCATIONS

---

**Item 3.** Classification and Premium

| Classification | Code No. | *Premium Basis | Rate | Advance Premium |
|---|---|---|---|---|
| RESTAURANTS, TAVERNS, HOTELS, MOTELS, INCLUDING PACKAGE SALES (5816A) | 58161 | ███████████ | | $ ████████ |

Total Advance Premium $ ████████

---

**Item 4.** Forms and Endorsements (other than applicable form(s) and endorsement(s) shown elsewhere in the policy)

Form(s) and endorsement(s) applying to this Coverage Part and made part of this policy at time of issue:
**See Schedule of Forms and Endorsements**

---

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

THIS SUPPLEMENTAL DECLARATIONS AND THE POLICY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENT(S) COMPLETE THE ABOVE NUMBERED POLICY.

COMMERCIAL GENERAL LIABILITY
CG 00 33 04 13

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" re-fer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.

## SECTION I - LIQUOR LIABILITY COVERAGE

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured be-comes legally obligated to pay as damages because of "injury" to which this insurance ap-plies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "in-jury" and settle any claim or "suit" that may re-sult. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of in-surance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    **b.** This insurance applies to "injury" only if:

        **(1)** The "injury" occurs during the policy pe-riod in the "coverage territory"; and

        **(2)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "in-jury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" dur-ing or after the policy period will be deemed to have been known prior to the policy period.

    **c.** "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

    **d.** "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Sec-tion **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

        **(1)** Reports all, or any part, of the "injury" to us or any other insurer;

        **(2)** Receives a written or verbal demand or claim for damages because of the "injury"; or

        **(3)** Becomes aware by any other means that "injury" has occurred or has begun to occur.

**2. Exclusions**

    This insurance does not apply to:

    **a. Expected Or Intended Injury**

    "Injury" expected or intended from the stand-point of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    **b. Workers' Compensation And Similar Laws**

    Any obligation of the insured under a workers' compensation, disability benefits or unemploy-ment compensation law or any similar law.

Copyright, Insurance Services Office, Inc., 2012
ORIGINAL

**c. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "injury".

**d. Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

**e. Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**f. Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**g. War**

"Injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**4.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**5.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**7.** Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above; or

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)** above.

**(2)** "Property damage" to property:

**(a)** Owned or occupied by; or

**(b)** Rented or loaned;

to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

**b.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

**3.** Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - LIQUOR LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2.   Duties In The Event Of Injury, Claim Or Suit**

   **a.**  You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

     **(1)**  How, when and where the "injury" took place;

     **(2)**  The names and addresses of any injured persons and witnesses; and

     **(3)**  The nature and location of any "injury".

   **b.**  If a claim is made or "suit" is brought against any insured, you must:

     **(1)**  Immediately record the specifics of the claim or "suit" and the date received; and

     **(2)**  Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.**  You and any other involved insured must:

     **(1)**  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

     **(2)**  Authorize us to obtain records and other information;

     **(3)**  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     **(4)**  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

   **d.**  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.   Legal Action Against Us**

No person or organization has a right under this Coverage Part:

   **a.**  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.**  To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.   Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

   **a.   Primary Insurance**

    This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

   **b.   Method Of Sharing**

    If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

    If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.   Premium Audit**

   **a.**  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   **b.**  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

     Copyright, Insurance Services Office, Inc., 2012     **CG 00 33 04 13**

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

2. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

c. All other parts of the world if the "injury" arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph **a.** above; or

(2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

3. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

4. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

5. "Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

6. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

7. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

8. "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

9. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

 Copyright, Insurance Services Office, Inc., 2012

**10.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

Copyright, Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 03 05 01 96

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

LIQUOR LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

(Authorized Representative)

## SCHEDULE

Location 821 SPRING ST, ELIZABETH, NJ 07208

| Coverage | **Amount and Basis of Deductible**<br>PER CLAIM or PER COMMON CAUSE | |
|---|---|---|
| Liquor Liability | $ -0- | $ XXXXX |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for "injury," however caused):

**A.** Our obligation under the Liquor Liability Coverage to pay damages on your behalf applies only to the amount of damages in excess of any deductible amount stated in the Schedule above.

**B.** You may select a deductible amount on either a per claim or a per common cause basis. Your selected deductible applies to the Liquor Liability Coverage and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies under Liquor Liability Coverage, to all "injuries" sustained by any one person or organization.

**2. PER COMMON CAUSE BASIS.** If the deductible amount indicated in the Schedule above is on a per common cause basis, that deductible amount applies under Liquor Liability Coverage to all damages because of "injury" as the result of the selling, serving or furnishing of any alcoholic beverage to any one person, regardless of the number of persons or organizations who sustain damages.

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suit" seeking those damages; and

**2.** Your duties in the event of an "injury," claim or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claims or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

ORIGINAL

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

CL 359
(11-85)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

CG 28 06 11 85

# LIMITATION OF COVERAGE TO INSURED PREMISES

This endorsement modifies insurance provided under the following:

LIQUOR LIABILITY COVERAGE PART

### SCHEDULE

**Description and Location of "Insured Premises":**

RESTAURANT
821 SPRING ST
ELIZABETH, NJ 07208

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance only applies to "damages" arising out of your "insured premises."

"Insured premises" means:

1. The premises shown in the Schedule; and

2. Any premises you acquire during the policy period for use in manufacturing, distributing, selling, serving or furnishing alcoholic beverages if:

    a. You notify us within 30 days after the acquisition, and

    b. You have no other valid and collectible insurance applicable to the loss.

Copyright, Insurance Services Office, Inc., 1985

# Exhibit 5

## NOTICE OF CANCELLATION OR REFUSAL TO RENEW

| Policy Number | Issued Through Agency Or Office At | Cancellation or Termination Will Take Effect At | | Date of Notice |
|---|---|---|---|---|
| | | Date | (Hour Standard Time) | |
| CPS3985594 | Tapco Underwriters, Inc.<br>Burlington, NC 27215 | 11/15/2021 | 12:01 AM | 10/13/2021 |

**Name and Address of Insurance Company**

Received From
Scottsdale Insurance Company
P.O. Box 4110
Scottsdale, AZ 85258



**Name and Address of Insured**

Colonial Restaurant LLC
821 Spring St.
Elizabeth, NJ 07208

Khris Hill, LLC
P. O. Box 2241
Elizabeth, NJ 07208

For use as a certificate of mailing as provided in Section 931 of the Domestic Mail Manual May be used for Domestic and International mail, does not provide for insurance

**Cancellation**

You are hereby notified, in accordance with the terms and conditions of the above mentioned numbered policy and in accordance with the law, that your insurance will cease at and from the hour and date indicated above. If premium has been paid, premium adjustment will be made as soon as practicable.

THIS ACTION HAS BEEN TAKEN FOR THE FOLLOWING SPECIFIC REASON OR REASONS

### Company Request - Substantial Change in risk assumed

(Duplicate of Notice of Cancellation or Terminitation to Lienholder)

You are hereby notified that the agreement under the Loss Payable Cause payable to you as Lienholder which is a part of the above policy, issued to the above insured, is hereby cancelled (or terminated) in accordance with the conditions of the policy, said cancellation (or termination) to be effective on and after the hour and date mentioned above)

United States Postal Service

**Insurance Company**

Received From
Scottsdale Insurance Company

For Registered Mail or Certificate Mail Notice of Cancellation or Nonrenewal to the insured and, if required, to the Lienholder, the appropriate U.S. Postal Service receipt must be attached hereto and no postage stamp should be affixed to the receipt reproduced hereon
CERTIFICATION
I hereby certify that I personally mailed in the U.S. Post Office at the place and time stamped hereon, a notice of cancellation or nonrenewal to the insured and, if required, to the Lienholder, an exact carbon copy of which appears above, and at said time received from the U.S. Postal Service the receipt made a part hereof or attached hereto.

Signed    10/13/2021

Signature    

| Premium | | Expiration | 5/5/2022 | RWRSO |
|---|---|---|---|---|
| Return Premium | | | | |

Company Copy

# Exhibit 6

# City of Elizabeth

## New Jersey

OFFICE OF PLANNING COMMUNITY DEVELOPMENT
CENTRAL LICENSE BUREAU

This is to Certify, that    COLONIAL RESTAURANTS LLC DBA THE LOBBY

having paid the sum of    $1,000.00    required by ordinance, is hereby licensed to conduct a

## Dance Hall

Capacity of Hall    281

on the Premises located    921 SPRING STREET

In the City of Elizabeth, NJ, until    June 30, 2023

License No.    Date Issued    7/26/2022

Conditions:    CITY CODE SECTION 5.08.130 CONDUCT OF BUSINESS LIMITED TO
GROUND FLOOR. NO PERSON UNDER THE AGE 21. SECTION 5.64.50
NO DANCING PERMITTED BETWEEN 1:30 AM TO 7:00 AM MONDAY
THROUGH FRIDAY AND SATURDAY & SUNDAY 2:30 AM TO 7:00 AM

_____    _____
Chief License Inspector    Mayor

# City of Elizabeth

## New Jersey

OFFICE OF PLANNING COMMUNITY DEVELOPMENT
CENTRAL LICENSE BUREAU

**This is to Certify, that**    COLONIAL RESTAURANTS LLC DBA THE LOBBY

having paid the sum of    $1,000.00    required by ordinance, is hereby licensed to conduct a

## Dance Hall

Capacity of Hall    281

On the Premises located at    321 SPRING STREET

In the City of Elizabeth, NJ, until    **June 30, 2023**

License No.    Date Issued    7/26/2022

Conditions    CITY CODE SECTION 5:08:130 CONDUCT OF BUSINESS LIMITED TO
GROUND FLOOR. NO PERSON UNDER THE AGE 21. SECTION 5.64.50
NO DANCING PERMITTED BETWEEN 1:30 AM TO 7:00 AM MONDAY
THROUGH FRIDAY, AND SATURDAY & SUNDAY 2:30 AM TO 7:00 AM

_____
Chief License Inspector

_____
Mayor

# Exhibit 7

REBENACK, ARONOW & MASCOLO, LLP
111 Livingston Avenue
New Brunswick, NJ 08901
(732) 247-3600
Attorney I.D. No.: 025201999
Attorneys for Plaintiff, Yesenia Melendez

| | |
|---|---|
| Plaintiff(s),<br><br>Yesenia Melendez<br><br>vs.<br><br>Defendant(s),<br><br>THE LOBBY a/k/a THE LOBBY SPORTS BAR AND LOUNGE; and JOHN DOES 1-10 (fictitious names) | SUPERIOR COURT OF NEW JERSEY<br>MIDDLESEX COUNTY<br>LAW DIVISION<br><br>DOCKET NO.<br><br>CIVIL ACTION<br><br>**COMPLAINT** |

Plaintiff, Yesenia Melendez, by way of Complaint, say(s):

### FIRST COUNT

1.      This action arises out of a fall down accident that occurred on February 4, 2018 on the premises of The Lobby located at 821 Spring Street in Elizabeth, New Jersey.

2.      At the time of the February 4, 2018 accident, Plaintiff, Yesenia Melendez, resided in Middlesex County, New Jersey.

3.      Defendant, The Lobby, a/k/a The Lobby Sports Bar and Lounge, is restaurant, bar and lounge located on the property of 821 Spring Street in Elizabeth, New Jersey.

4.      On or about February 4, 2018, Plaintiff was lawfully on the premises of The Lobby when she slipped and fell on a wet and slippery floor.

5.      Defendant is responsible for providing a safe premises and warning of and/or repairing any dangerous condition that it is aware of or should be aware of on its premises.

6.      Defendant, its agents and employees, were negligent in that it took actions and inactions to cause the floor to be slippery, failed to exercise reasonable care for the

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

safety of individuals lawfully on the premises, failed to inspect the floors of the premises, failed to maintain the premises, failed to warn of a hazardous condition that it had actual or constructive notice of, failed to provide safe premises and were otherwise negligent.

7.      As a result of the negligence of Defendant, Plaintiff suffered severe and permanent bodily injuries for which she has obtained medical treatment and which caused her great pain and suffering, incapacitated her from pursuing usual activities and left her with permanent disabilities that will in the future similarly incapacitate her, cause her pain and suffering, and require medical attention and has caused her to accumulate medical expenses.

WHEREFORE, Plaintiff,  Yesenia Melendez, DEMAND(S) judgment against Defendant, The Lobby (a/k/a The Lobby Sports Bar and Lounge), herein for damages in an amount sufficient to compensate her for her injuries and medical expenses together with interest and costs of suit and other remedies.

## SECOND COUNT

1.      Plaintiff, Yesenia Melendez, repeats and realleges each and every allegation of the prior paragraphs as if set forth herein at length.

2.      Defendants, John Does 1-10, are fictitious names intended to represent additional persons or legal entities that may have caused the accident and/or damages referred to in the First Count of the complaint through their negligence or who are otherwise vicariously liable for the negligence of the named Defendants and that cannot be identified at this time but may be identified through the course of discovery.

3.      At the aforesaid time and place, Defendants John Does 1-10 were negligent in it failed to exercise reasonable care for the safety of its customers, failed to inspect the floors of the premises, failed to maintain and clean the premises, failed to warn of a hazardous condition that it had actual or constructive notice of, failed to provide safe premise and were

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

otherwise negligent.

4.      As a result of the negligence of Defendants, Plaintiff suffered severe and permanent bodily injuries for which she has obtained medical treatment and which caused her great pain and suffering, incapacitated her from pursuing usual activities and left her with permanent disabilities that will in the future similarly incapacitate her, cause her pain and suffering, and require medical attention and has caused her to accumulate medical expenses.

WHEREFORE, Plaintiff,  Yesenia Melendez, DEMAND(S) judgment against the Defendant, John Does 1-10, herein for damages in an amount sufficient to compensate her for her injuries and medical expenses together with interest and costs of suit and other remedies.

### JURY DEMAND

Please be advised that the Plaintiff, Yesenia Melendez, hereby demand(s) a trial by jury on all issues so triable.

### TRIAL COUNSEL DESIGNATION

Pursuant to Rule 4:25-4, **J. Silvio Mascolo, Esq.,** has been designated as trial counsel on behalf of the Plaintiff(s) in the above-captioned matter.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

### DEMAND FOR INSURANCE INFORMATION

PURSUANT to Rule 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which

may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

<p align="center">( ) Yes ( ) No</p>

If the answer is "yes", attach a copy of each or in the alternative, state under oath or certification:

    (a)     policy number;

    (b)     name and address of insurer or issuer;

    (c)     the inception and expiration dates;

    (d)     names and addresses of all persons insured thereunder;

    (e)     personal injury limits;

    (f)     property damage limits;

    (g)     medical payment limits;

    (h)     name and address of person who has custody and possession thereof;

    (I)     where and when each policy and agreement can be inspected and copied;

    (j)     whether any Reservation of Rights has been asserted by the carrier and if so, attach a copy of any such reservation.

## NOTICE TO PRODUCE DOCUMENTS

PLEASE TAKE NOTICE THAT, pursuant to Rule 4:18-1, request is hereby made of the Defendants by the Plaintiff, that you produce true, complete, and accurate copies of the following documents to this office, within thirty-five (35) days of the date hereof.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

    1.     Copies of any and all expert reports.

    2.     A copy of the police report and/or municipal court and/or County, State or Federal reports regarding this incident.

3.     Copies of any and all photographs which Defendants may have regarding the within matter.

4.     Copies of any and all witness statements which Plaintiff may have regarding the within matter.

5.     Copies of any and all CIB indexes and/or reports.

## REQUEST FOR ANSWERS TO INTERROGATORIES

**PLEASE TAKE FURTHER NOTICE** that a demand is made of Defendants to provide answers to Form C and C2 Interrogatories within the time prescribed by the Rules of Court.

## CERTIFICATION

1.     Pursuant to Rule 4:5-1, the undersigned hereby certifies that at the time of filing of this pleading, the matter in controversy is not the subject of any other action pending in any Court and/or Arbitration proceeding.

2.     I also understand that at this time there are no other parties to my knowledge, that should be named in this lawsuit.

3.     I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

REBENACK, ARONOW & MASCOLO, LLP
Attorneys for Plaintiff, Yesenia Melendez

By: _____
        J. SILVIO MASCOLO

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

Dated: January 27, 2019

# Exhibit 8

Richard J. Isolde, Esq. – Attorney ID No.: 001742006
Gelman, Gelman, Wiskow, McCarthy, LLC
5 Cold Hill Road, Suite 26
Mendham, NJ 07945
(862)263-0770
Attorneys for plaintiff

| | | |
|---|---|---|
| Benjamin Casta | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION: UNION COUNTY |
| Plaintiff, | : | |
| | : | |
| vs. | : | DOCKET NO.: UNN-L-5485-14 |
| | : | |
| COLONIA RESTAURANT LLC D/B/A | : | CIVIL ACTION |
| THE LOBBY, COTUGNO | : | |
| INVESTMENTS, INC., EKJ3 | : | **COMPLAINT, JURY DEMAND,** |
| ENTERPRISES LLC., JOHN and JANE | : | **DESIGNATION OF TRIAL COUNSEL ,** |
| DOES 1-10 (fictitious unidentified | : | **DISCOVERY REQUESTS UPON** |
| individuals) AND ABC | : | **DEFENDANTS, AND REQUEST FOR** |
| CORPORATIONS 1-10, (fictitious | : | **ADMISSIONS** |
| individuals, corporations or other | : | |
| business entities presently unidentifiable) | | |
| Defendants. | | |

Plaintiff, Benjamin Casta, residing at 230 Jewett Avenue, Jersey City, NJ 07304, by way of

Complaint against the defendants, hereby declares:

## FIRST COUNT

1. On or about February 4, 2018, plaintiff Benjamin Casta was lawfully upon the

premises of defendant, Colonia Restaurant LLC d/b/a The Lobby, Cotugno Investments, Inc. and

EKJ3 Enterprises LLC., located at or near Elizabeth, New Jersey.

2. On that date and prior thereto, defendant Colonia Restaurant LLC d/b/a The Lobby,

Cotugno Investments, Inc. and/or EKJ3 Enterprises LLC., owned, occupied, managed, supervised,

maintained, secured, serviced, and/or controlled said premises and the business thereon.

3. On that date and prior thereto, defendants, John and Jane Does 1-10 and ABC

Corporations 1-10 (fictitious unknown individuals and entities) were responsible for the

ownership, management, supervision, maintenance, security, service, and control of said premises and the business thereon.

4.     Defendants had a duty to exercise reasonable care in maintaining the property and keeping the premises in a reasonably safe condition.

5.     Defendants negligently owned, operated, managed, supervised, secured, controlled, maintained, and serviced said premises and the business thereon.

6.     As a direct and proximate result of defendants' negligence, plaintiff sustained severe and permanent personal injuries of body, mind and emotion; endured excruciating pain and suffering; became disabled and impaired; incurred liabilities for medical care and treatment; lost employment earnings; and suffered a significant diminution in the quality and enjoyment of life.

**WHEREFORE**, plaintiff demands judgment against the defendants, for damages, interest, attorney's fees, Court costs, and any other relief the Court deems fair and just.

## SECOND COUNT

1.     Plaintiff repeats and realleges the allegations of the First Count as though set forth herein.

2.     On the aforementioned date and prior thereto, defendants, including the fictitious defendants, negligently hired and trained their employees.

3.     As a result of the defendants' negligence, plaintiff sustained severe and permanent personal injuries of body, mind and emotion; endured excruciating pain and suffering; became disabled and impaired; incurred liabilities for medical care and treatment; lost employment earnings; and suffered a significant diminution in the quality and enjoyment of life.

**WHEREFORE**, plaintiff demands judgment against the defendants, for damages, interest, attorney's fees, Court costs, and any other relief the Court deems fair and just.

## THIRD COUNT

1.    Plaintiff repeats and realleges the allegations of the First and Second Counts as though set forth herein.

2.    On the aforementioned date, defendants, including the fictitious defendants, negligently failed to warn, inform, notify, or otherwise advise Plaintiff that a dangerous condition existed on said premises.

3.    As a result of the defendants' negligence, plaintiff sustained severe and permanent personal injuries of body, mind and emotion; endured excruciating pain and suffering; became disabled and impaired; incurred liabilities for medical care and treatment; lost employment earnings; and suffered a significant diminution in the quality and enjoyment of life.

**WHEREFORE**, plaintiff demands judgment against the Defendants, for damages, interest, attorney's fees, Court costs, and any other relief the Court deems fair and just.

## FOURTH COUNT

1.    Plaintiff repeats and realleges the allegations of the First, Second and Third Counts as though set forth herein.

2.    On or about the aforementioned date, defendants, including the fictitious defendants, negligently maintained a dangerous condition on and/or negligently failed to remove a dangerous condition from said premises.

3.    As a result of the defendants' negligence, plaintiff, Benjamin Casta, sustained severe and permanent personal injuries of body, mind and emotion; endured excruciating pain and suffering; became disabled and impaired; incurred liabilities for medical care and treatment; lost employment earnings; and suffered a significant diminution in the quality and enjoyment of life.

**WHEREFORE**, plaintiff, Benjamin Casta, demands judgment against the defendants, for damages, interest, attorney's fees, Court costs, and any other relief the Court deems fair and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Pursuant to Rule 4:17-1 et seq., plaintiff hereby demands that all defendants provide answers to Form C and C(2) interrogatories.

## DEMAND FOR ANSWERS TO SUPPLEMENTAL INTERROGATORIES

1. Please state the name of any person or entity who was responsible for operation and maintaining and ensuring the floors were dry and safe during business hours on the date of the accident described in the complaint.

2. If you are claiming any statutory or common law immunity please state the nature of the alleged immunity and the facts upon which you will rely to establish your claim.

3. Provide the name and address of any individuals or entities of **non-parties** that you allege are responsible for the subject accident or plaintiff's alleged injuries. Please describe how you believe those individuals or entities are responsible.

4. Provide the name, address and phone number of all employees that were on duty on the date of the accident.

5. Please describe what, if any, training the defendant provided or required, prior to the date of the accident, of its employees on keeping the floors dry and cleaning and mopping.

## DEMAND FOR DOCUMENTS PURSUANT TO RULE. 4:18-2

Pursuant to R. 4:18-2, demand is hereby made for the production of all documents referred to in the answer or any other responsive pleading within 5 days hereof .

## DEMAND FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 4:18-1, et seq., plaintiff hereby demands that all defendants provide the following documents:

1.  Any and all statements or reports made by any person or governmental entity concerning this civil action or its subject matter.

2.  Copies of any and all photographs in your possession of the vehicles, the location, or the parties involved in this accident.

3.  Copies of any and all repairs estimates of the vehicles involved in this accident.

4.  Copies of any claims information bureau or other insurance claims searches or other documents referencing any prior or subsequent injuries and/or claims by the plaintiff.

5.  Copies of any statements made by any person with regard to the happening of the collision or having to do with the subject matter of this action.

6.  Copies of any and all expert reports, reports of diagnostic tests, hospital and medical records, X-rays, CAT scan films, MRI films and any other films and bills relating to any condition or injury sustained by the plaintiff.

7.  Copies of all written reports or summaries of oral reports of all expert or treating or examining physicians along with their curriculum vitae.

8.  Copies of any and all books, treatises, commentaries, reports, statutes, codes, ordinances, rules, regulations or other published documents referred to, utilized by or relied upon by any expert witness whom plaintiff/defendant intends to call at the time of trial.

9.  Copies of any and all documents, reports, correspondence, blue prints, charts, diagrams, drawings, graphs, maps, plats, plans, photographs, models or other visual reproductions of any object, place or thing prepared or utilized by, referred to or relied upon by any expert witnesses, whether or not you intend on calling them at the time of trial.

10.  Copies of any and all photographs, diagrams, charts, drawings, maps, plans or models or other visual reproductions of any object, place or thing related to this litigation.

11.  All documents, tangible evidence or other items relevant to the incident set forth in the plaintiff's complaint.

12.  All deeds, leases, contracts, invoices, maintenance agreements, or records pertaining to any person, vehicle,  or premises identified in the plaintiff's complaint.

13.  Copies of any documents provided to drivers as part of their training or orientation.

14.  If you are not supplying any statement, report, medical record or other item requested herein, identify the item; indicate who has possession of the item; specify their address and state the reason why the items are not being provided.

15.  Provide copies of all documents you intend to use at trial, including cross-examination and for impeachment purposes.

16.  Was any type of surveillance taken of the plaintiff and, if so, state the name, address and occupation of the person performing such surveillance, the dates of this surveillance, and  produce copies of any and all surveillance materials along with logs and any other materials relating to the surveillance.

17.  Provide all videos and/or images and/or photographs and/or any depiction of the plaintiff.

18.  Provide all videos and/or images and/or photographs and/or any depiction of the accident scene and of the accident itself.

19.  With respect to any expert of the defendant, provide:
   i)      a complete statement of all opinions the witness will express and the basis and reasons for them:
   ii)     the date or other information considered by the witness in forming them;
   iii)    any exhibits that will be used to summarize or support them;
   iv)    the witness's qualifications, including a list of all publications authored in the
           previous 10 years;
   v)     a list of all other cases in which, during the previous four years, the witness
           testified as an expert at trial or by deposition;
   vi)    a statement of the compensation to be paid for the study and testimony in this case.

## REQUESTS FOR ADMISSIONS

Pursuant to R̲. 4:22-1, plaintiff hereby demands that you admit or deny the following statements:

1.     At the time of the incident, the Property where the incident is alleged to have occurred was owned and controlled by the defendant responding to this statement.

_____ Admit          _____ Deny

2.     The defendant responding to this statement was the only business operating at the location described in the complaint.

_____ Admit          _____ Deny

3.     The defendant responding to this statement was in exclusive control of the property and location described in the complaint on the date of the alleged incident.

_____ Admit          _____ Deny

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to R. 4:10-2 (b) demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.  If the answer is "yes" attach a copy of each or in the alternative state, under oath or certification (a) number (b) name and address of insurer or issuer (c) inception and expiration dates (d) names and addresses of all persons insured thereunder (e) personal injury limits (f) property damage limits (g) medical payment limits (h) name and address of person who has custody and possession thereof (i) where and when each policy or agreement can be inspected and copied., (j) excess coverage, (k) concurrent coverage, (l) umbrella policies.

## CERTIFICATION

I hereby certify that the within action is not the subject of any other action or arbitration proceeding nor is any contemplated.

By: _____
Richard J. Isolde, Esq.

DATED:        July 30, 2019

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, the firm of Gelman, Gelman, Wiskow, McCarthy, LLC., attorneys for Plaintiff, hereby appoint Matthew V. Villani, as trial counsel.

By: _____
Richard J. Isolde, Esq.

DATED:        July 30, 2019

9

# Exhibit 9

**STERN & STERN LLP**
LAWRENCE P. STERN - Attorney ID: 005691980
560 Sylvan Avenue, Suite 2170
Englewood Cliffs, NJ 07632
Phone: (201) 569-2222
Fax: (201) 567-6658
Email: lstern@sterninjurylawyers.com
*Attorney(s) for Plaintiff*

| | |
|---|---|
| BONDREICE NAKALA HUTCHINSON,<br><br>Plaintiff,<br><br>vs.<br><br>COLONIAL RESTAURANT d/b/a THE LOBBY; EKJ3 ENTERPRISES, LLC; COTUGNO INVESTMENTS INC., and ABC CORPORATION (1 to 3), fictiously named defendants<br><br>Defendant | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MIDDLESEX COUNTY<br>DOCKET NO.:<br><br>CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Bondreice Nakala Hutchinson residing at 25 Mitchell Avenue, Piscataway, Middlesex County, New Jersey, by way of Complaint against the defendants says:

1.    At all times herein mentioned defendants EKJ3 Enterprises, LLC, Colonial Restaurant d/b/a The Lobby owned and operated a restaurant, lounge and sports bar located at 821 Spring Street, Elizabeth, New Jersey 07201, commonly known as "The Lobby".

2.    At all times mentioned herein defendant Cotugno Investments, Inc., located at 28 Windsor Drive, Pine Brook, New Jersey was the owner of the premises from which co-defendants EKJ3 Enterprises LLC and Colonial Restaurant d/b/a The Lobby conducted their business.

3.    At all times mentioned herein defendants ABC Corporation (1 to 3), fictitiously named individuals, corporations, or other business entities, were managers, operators, inspectors, or other individuals responsible for operating the restaurant, lounge and sports bar aforementioned.

4.    In the early morning of July 1, 2018, plaintiff Bondreice N. Hutchinson was a legal invitee of defendants enjoying an evening with her friends.

5.      Around the inside of the premises defendants EKJ3 Enterprises LLC, Colonial Restaurant d/b/a The Lobby and ABC Corporation (1 to 3) placed a number of burning red-hot hookahs on small single leg tables in crowded conditions with patrons of the lounge and bar milling around the same.

6.      On July 1, 2018, while in "The Lobby", someone bumped into one of the single leg tables causing a burning red-hot hookah to fall upon plaintiff.

7.      It was negligent act for defendant's EKJ3 Enterprises, Inc., Colonial Restaurant d//b/a The Lobby, and ABC Corporation (1 to 3) to place the hookahs on one leg tables in a crowded lounge and sports bar and foreseeable that a legal invitee could be easily burned.

8.      It was further negligence of the owner of the premises, defendants Cotugno Investments, Inc., to allow its premises to be used by co-defendants in such a highly dangerous way.

9.      As a result of the negligence of the defendant aforesaid, the plaintiff, Bondreice N. Hutchinson, sustained painful, permanent, personal injuries, suffered permanent disability, permanent loss of bodily function, aggravated a pre-existing condition, was prevented from pursuing her daily occupation and activities, incurred and will in the future incur expenses for hospitalization, medical attention and other incidental items.

**WHEREFORE,** Plaintiff requests judgment against Colonial Restaurant d/b/a The Lobby, EKJ3 Enterprises, LLC, Cotugno Investments, and ABC Corporations, individually, jointly and severally for compensatory damages, cost of suit, attorney's fees, and such other relief as the court deems equitable and just.

Dated: June 3, 2020                                  STERN & STERN LLP
                                                     Attorney(s) for Plaintiff

                                          By:_____
                                                     DWIGHT D. de STEFAN

### CERTIFICATION OF NO OTHER ACTIONS

I certify to the best of my knowledge and belief that the dispute is not the subject of any other action pending in any other court or a pending arbitration proceeding.

Also, to the best of my knowledge and belief no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of

this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

Dated: June 3, 2020

STERN & STERN LLP
Attorney(s) for Plaintiff

By: _____
DWIGHT D. de STEFAN

## CERTIFICATION PURSUANT TO R. 1:38-7

I certify that confidential personal identifiers have been redacted from the documents now submitted to the Court and will be redacted from all documents submitted in the future in accordance with R. 1:38-7.

Stern & Stern LLP,
Attorney(s) for Plaintiff

Dated: June 3, 2020

By: _____
DWIGHT D. de STEFAN

## JURY DEMAND

The Plaintiff demands trial by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court *Rules* 1:8-2(b) and 4:35-1(a).

Dated: June 3, 2020

STERN & STERN LLP
Attorney(s) for Plaintiff

By: _____
DWIGHT D. de STEFAN

# Exhibit 10

Glen Devora, Esq. (ID No. 03935 2000)
JONATHAN D'AGOSTINO & ASSOCIATES, P.C.
3309 Richmond Avenue
Staten Island, New York  10312
718-967-1600
Attorney for Plaintiff, Diamante Suarez

| | |
|---|---|
| **DIAMANTE SUAREZ,**<br><br><div align=center>Plaintiff</div><br>vs.<br><br>**THE LOBBY** and/or **ABC COMPANIES 1-10** (being fictitious entities unknown at this time) and/or **JOHN DOES 1-10** (being fictitious persons unknown at this time) **COTUGNO INVESTMENTS, INC.,** and/or **ABC COMPANIES 11-20** (being fictitious entities unknown at this time), **JOHN DOES 11-20** (being fictitious persons unknown at this time) and **ABC MAINTENANCE COMPANIES 1-10** (being fictitious entities unknown at this time)<br><br><div align=center>Defendant(s)</div> | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: UNION COUNTY<br>DOCKET NO:  UNN-L          -21<br><br><br><div align=center>CIVIL ACTION</div><br><div align=center>**COMPLAINT AND JURY DEMAND**</div> |

Plaintiff, DIAMANTE SUAREZ, residing 180 Myrtle Avenue, in the Borough of Staten Island, County of Richmond and State of New York, by way of Complaint says:

<div align=center>**FIRST COUNT**</div>

1.      On or about February 24, 2019, the Plaintiff, DIAMANTE SUAREZ, was a patron lawfully on the premises located at 821 Spring Street, in the City of Elizabeth, County of Union and State of New Jersey.

2.      At the aforesaid time and place, Defendants, THE LOBBY and/or ABC COMPANIES 1-10 (being fictitious entities unknown at this time) and/or JOHN DOES 1-10 (being fictitious persons unknown at this time), owned, managed and maintained the property known as 821 Spring Street, in the City of Elizabeth, County of Union and State of New Jersey.

3.      At the aforesaid time and place, Defendants, THE LOBBY and/or ABC COMPANIES 1-10 (being fictitious entities unknown at this time) and/or JOHN DOES 1-10 (being fictitious persons unknown at this time), owned, operated, maintained and/or controlled the premises in a negligent, careless and reckless manner creating

foreseeable and dangerous conditions and activities on the premises, causing Plaintiff, DIAMANTE SUAREZ to fall and sustain serious, severe and permanent injury.

4.  At the aforesaid time and place, Defendants, COTUGNO INVESTMENTS, INC. and/or ABC COMPANIES 11-20 (being fictitious entities unknown at this time) and/or JOHN DOES 11-20 (being fictitious persons unknown at this time), owned, managed and maintained the property known as 821 Spring Street, in the City of Elizabeth, County of Union and State of New Jersey.

5.  At the aforesaid time and place, Defendants, COTUGNO INVESTMENTS, INC., and/or ABC COMPANIES 11-20 (being fictitious entities unknown at this time) and/or JOHN DOES 11-20 (being fictitious persons unknown at this time), owned, operated, maintained and/or controlled the premises in a negligent, careless and reckless manner creating foreseeable and dangerous conditions and activities on the premises, causing Plaintiff, DIAMANTE SUAREZ to fall and sustain serious, severe and permanent injury.

6.  At the aforesaid time and place, Defendant, ABC MAINTENANCE COMPANIES 1-10 (being fictitious entities unknown at this time), managed, maintained and/or controlled the premises in a negligent, careless and reckless manner creating foreseeable and dangerous conditions and activities on the premises, causing Plaintiff, DIAMANTE SUAREZ, fall and sustain serious, severe and permanent injury.

7.  The aforementioned occurrence, and the results thereof, were caused by the negligence of the Defendants and/or said Defendants' agent, servants, employees and/or licensees in the ownership, operation, management, maintenance and control of the aforesaid premises; in causing, permitting and/or allowing said premises at the aforementioned location to be, become and remain in a dangerous and hazardous condition, constituting a trap, nuisance and hazard.

8.  The no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

9.  At the time and place aforesaid, ABC COMPANIES 1-10 (being fictitious entities unknown at this time) and/or JOHN DOES 1-10 (being fictitious persons unknown at this time), were acting as agents, servants, employees and/or licensees of Defendant, THE LOBBY.

10.    At the time and place aforesaid, ABC COMPANIES 11-20 (being fictitious entities unknown at this time) and/or JOHN DOES 11-20 (being fictitious persons unknown at this time), were acting as agents, servants, employees and/or licensees of Defendant, COTUGNO INVESTMENTS, INC.

11.    At the time and place aforesaid, ABC MAINTENANCE COMPANIES 1-10 (being fictitious entities unknown at this time), was acting as agents, servants, employees and/or licensees of Defendants, THE LOBBY, and/or ABC COMPANIES 1-10 (being fictitious entities unknown at this time) and/or JOHN DOES 1-10 (being fictitious persons unknown at this time).

12.    At the time and place aforesaid, ABC MAINTENANCE COMPANIES 11-20 (being fictitious entities unknown at this time), was acting as agents, servants, employees and/or licensees of Defendants, COTUGNO INVESTEMENTS, INC., and/or ABC COMPANIES 11-20 (being fictitious entities unknown at this time) and/or JOHN DOES 1-10 (being fictitious persons unknown at this time)

13.    As a direct result of the negligence of the Defendants, THE LOBBY and/or ABC COMPANIES 1-10 (being fictitious entities unknown at this time) and/or JOHN DOES 1-10 (being fictitious persons unknown at this time), COTUGNO INVESTMENTS, INC., and/or ABC COMPANIES 11-20 (being fictitious entities unknown at this time), JOHN DOES 11-20 (being fictitious persons unknown at this time), and/or ABC MAINTENANCE COMPANIES 1-10 (being fictitious entities unknown at this time), Plaintiff, DIAMANTE SUAREZ, was injured, has incurred and in the future with incur expenses for her treatment of injuries, has been disabled and in the future will be caused great pain and suffering, to her great loss and damage and has lost time from her usual occupation.

**WHEREFORE,** Plaintiff, DIAMANTE SUAREZ, demands judgment against Defendants for damages, together with interest, attorney's fees, costs of suit, and any other relief the Court deems just.

## <u>DEMAND FOR ANSWERS TO INTERROGATORIES</u>

The Plaintiff demands that each defendant supply answers to Uniform Interrogatories, Form C and C (2) with the time frame allowed by the Rules of Court.

## DEMAND FOR ANSWERS TO NOTICE TO PRODUCE DOCUMENTS

The Plaintiff demands that each defendant provide documents pursuant to the following Notice to Produce Documents within the time frame provided by the Rules of Court.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to R. 4:10-2, demand is hereby made that you disclose to the undersigned whether there are any insurance policies or agreements under which a person or firm carrying an insurance business may be liable to satisfy all or part of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. Yes (  )    No (  ) If the answer is yes, attached a copy of each policy, or in the alternative, state under oath or certification the following: (a) policy number; (b) name and address of the insurer or issuer; (c) inception and expiration date; (d) names and addresses of all persons insured under the policy; (e) personal injury limits; (f) property damage limits; (g) medical payment limits; (h) name and address of person who has custody and possession thereof; (i) where and when policy can be inspected.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:5-1(c), Glen Devora, Esq. is designated as trial counsel.

## NOTICE PURSUANT TO R. 1:7-1

Pursuant to R. 1:7-1(b), Plaintiff hereby gives notice of his/her intention to suggest to the trier of fact that unliquidated damages be calculated on a time-unit basis without reference to a specific sum.

## CERTIFICATION PURSUANT TO RULE 1:38-7(B)

I hereby certify that all confidential personal identifiers have been redacted from the documents now submitted to the Court, and will be redacted from all documents submitted, in accordance with Rule 1:38-7(B).

## CERTIFICATION

I hereby certify that this matter is not the subject of any other action pending in any court or arbitration proceeding, that no such other action or arbitration proceeding is contemplated by this plaintiff, and that there are no other parties, whom, to the knowledge of the plaintiffs' counsel, should be joined in this action,

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  *1-19-2021*

JONATHAN D'AGOSTINO & ASSOCIATES, L.P.

BY: _____
GLEN DEVORA, ESQ.
Attorneys for Plaintiff, Diamante Suarez

# Exhibit 11

# BRANDON J. BRODERICK
## ATTORNEY AT LAW
### A Limited Liability Company

**65 STATE ROUTE 4 EAST, 1st FLOOR**
**RIVER EDGE, NEW JERSEY 07661**
**PHONE: 201-853-1505**
**FAX: 201-489-0878**
**NJ BAR**

April 5, 2019

**SECOND REQUEST!!**

The Lobby
821 Spring St
Elizabeth, NJ  07201

|     |                    |                          |
|-----|--------------------|--------------------------|
| **Re:** | **Accident Date:** | **02/02/2019**       |
|     | **My Client:**     | **Jennifer  Garcia**     |
|     | **Location:**      | **The Lobby, Elizabeth, NJ** |

Dear Sir/Madam

Please be advised that I represent the above named with regard to an accident which occurred on your premises.

Due to the carelessness and negligence of your company causing my client to sustain personal injuries.

My purpose for writing to you is to request that you turn this letter over to your insurance carrier at once and have them contact me concerning this matter.

Failure to hear from either you or your insurance carrier within ten (10) days of the date of this letter will result in a Sheriff's Officer serving you personally with a Summons and Complaint in the above matter.

Very truly yours,

*/s/ Brandon J. Broderick*

BRANDON J. BRODERICK, ESQ.

BJB/nls

# Exhibit 12

# LUCIANNA & LUCIANNA, P.A.

**COUNSELLORS AT LAW**
**JUSTICE BUILDING**
**111 MAIN STREET**
**HACKENSACK, NEW JERSEY 07601**

**(201)342-9090**
**FACSIMILE (201)342-3105**

| | |
|---|---|
| **FRANK P. LUCIANNA**<br>NJ & NY BARS | **SUSAN A. LUCIANNA**<br>PARALEGAL |
| **DIANE M. LUCIANNA**<br>NJ & NY BARS | **PAUL DARAKJIAN**<br>NJ & NY BARS |
| **FRANK V. CARBONETTI**<br>NJ & NY BARS | **DANIEL M. DONOHUE**<br>NJ & NY BARS |

November 1, 2019

General Manager
The Lobby
821 Spring Street
Elizabeth, N.J. 07201
**CERTIFIED MAIL RRR**

RE:         **EDISON ESPINOZA v. THE LOBBY**
              **DATE OF INCIDENT:      10/20/19**

Dear Sir or Madam:

Please be advised this firm represents Mr. Edison Espinoza in regards to personal injuries he sustained on the morning of October 20, 2019 as a result of an assault and battery by employees/agents of The Lobby and on The Lobby's premises.

This letter requests your immediate action to preserve electronically stored information that may contain evidence important to the above legal matter. This notice applies to The Lobby's on- and off-site computer systems and removable electronic media plus all computer systems, services, and videotape surveillance devices (including all remote access and wireless devices) used for The Lobby's overall operation.. **The importance of immediate action cannot be overstated.** Electronically stored information is easily corrupted, altered, and deleted in normal daily operations.

This preservation notice covers the above items and information between the following dates and times: **October 20, 2019 from 12 a.m. through October 20, 2019 5 a.m.**

The Lobby and your officers, employees, agents, and affiliated organizations must take all reasonable steps to preserve this information until this legal matter is finally resolved. Failure to take the necessary steps to preserve the information addressed in this letter or other pertinent information in your possession or control may result in an adverse inference as to the substance of the information destroyed, serious sanctions or penalties.

Furthermore, please forward a copy of this letter to your insurance company and inform them to contact me at their earliest convenience to discuss this matter.

Very truly yours,
LUCIANNA & LUCIANNA, P.A.

_____
DANIEL M. DONOHUE, ESQ.

# USPS Tracking®

FAQs >

## Track Another Package  +

Track Packages
Anytime, Anywhere

Get the free Informed Delivery® feature to receive
automated notifications on your packages

**Learn More**

(https://:eg.usps.com/xsell?app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

---

**Tracking Number:** 70180680000118289463

Remove ✕

Your item was delivered to the front desk, reception area, or mail room at 12:06 pm on
November 8, 2019 in ELIZABETH, NJ 07201.

## ⊘ Delivered

November 8, 2019 at 12:06 pm
Delivered, Front Desk/Reception/Mail Room
ELIZABETH, NJ 07201

**Get Updates** ⌄

---

| Text & Email Updates | ⌄ |
|---|---|

| Tracking History | ⌄ |
|---|---|

| Product Information | ⌄ |
|---|---|

## See Less ⌃

# Exhibit 13

June 1st, 2021

**VIA Regular & Certified Mail**
Clyde St Bernard
129 Oak st
East Orange, 07018

**RE:Notice of Spoliation & Claim**
**Complaining Party: Quiana Diggs**
**Date of Incident:      5/31/21**

Dear Sir or Madam:

  **PLEASE TAKE NOTICE** that this office represents the above-named individual with regard to a claim of an alleged attack on "Quiana Diggs" at your facility on the above-noted date at your facility "The Lobby" at bar area located at 812 Spring st, Elizabeth NJ 07201, between the times of 10:30-1145pm.

  **YOU ARE HEREBY ADVISED** of your legal obligations under New Jersey law with respect to negligent or intentional acts of spoliation of evidence. Please be on notice of the decisions in Callahan v. Stanley, 306 N.J. Super. 488 (App. Div. 1997) and Allis-Chalmers Corp. v. Liberty Mutual Insurance Company, 305 N.J. Super. 550 (App. Div. 1997), which establish a duty to preserve evidence on your part, as well as the part of your agents. If you have any processes in place that may automatically lead to the destruction of evidence (including but not limited to the automatic deletion or over-writing of audio/video recordings, or reports), you are hereby placed on notice of your obligation to protect potential evidence from destruction and loss. Please be further advised that any intentional or negligent destruction of potential evidence relevant to this cause of action will result in a separate claim against those responsible for preserving the same.

  It is our understanding that you have video surveillance of the area in which the incident took place of alleged attack "Outside patio area". **WE HEREBY DEMAND** that any existing footage of the incident or area on the above-date be preserved. We further demand that you preserve any footage of the event which took place and all records. Please provide copies of

footage of the mentioned area, and contact our office and advise when we can obtain a copy or duplicate these items and maintain them for our records.

Thank you kindly for your attention to this matter and please do not hesitate to contact me with any questions. Please be guided accordingly (678)855-3003 Clyde St Bernard.

Very truly yours,

Cc:     Client

# Exhibit 14

# GEORGE F. SURGENT

*Counselor at Law*

**888 RAMAPO VALLEY ROAD**
**MAHWAH, NEW JERSEY 07430**
**(201) 825-2300**
**FAX (201) 825-2912**
**CELL (917) 747-1040**

GEORGE F. SURGENT
NJ, NY, MINN, W.VA.

ERIC F. COSTA
NJ, NY

350 FIFTH AVENUE
SUITE 4908
NEW YORK, NEW YORK 10118
(212) 765-8888

CELL (917) 747-1040

**PLEASE REPLY TO:**
**PO BOX 863**
**MAHWAH, NEW JERSEY 07430-0863**

Lobby
Attn: Carlos Calero
821 Spring Street
Elizabeth, NJ 07201

**RE:   Kevin J. Connell**
**Date of Incident: May 5, & 6 2019**

Dear Mr. Calero:

Please be advised, this office represents Mr. Connell regarding the injuries he received at your establishment when he was assaulted by one of your Security Employees. At the time the incident occurred Mr. Connell was performing as a DJ in your establishment. Secure all video footage that exists from May 5 & 6, 2019 evidencing the incident, including all footage showing the DJ booth and all entrances and exits. Additionally, collect all internal reports which were generated alluding to the incident and forward same to my office. Call me at my Mahwah office to discuss this matter.

Very truly yours,

George F. Surgent

# Exhibit 15



# Elizabeth Police Department
### 1 Police Plaza, Elizabeth, NJ 07201
### Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004
## CAD Report

| CAD # | Case # | Date | Time of Call | Dispatched | Arrived | Cleared | 911 |
|-------|--------|------|--------------|------------|---------|---------|-----|
| 20-028440 | | 02/22/20 | 02:42 | 02:44 | 02:56 | 03:04 | X |

| Reg. | St. | Make | Color | Model | Class | Year | Exp | Race | SI | Warning |
|------|-----|------|-------|-------|-------|------|-----|------|----|---------|
| | | | | | | | | | | |

| Incident Type | Business / School / Location Name |
|---------------|-----------------------------------|
| Simple Assault 2C:12-1a | The Lobby |

**Location:**

| Street # | Street Name | Apt.# | Cross Street / Nearest Intersection | Zone |
|----------|-------------|-------|-------------------------------------|------|
| 821 | Spring Street | | | 4 |

| Contact (Lastname, Firstname) | Contact Address | Contact Phone |
|-------------------------------|-----------------|---------------|
| | | ▬▬▬▬▬ |

| Officer(s) | Car(s) | Date | Dispatched | Arrived | Cleared | Time on Scene |
|------------|--------|------|------------|---------|---------|---------------|
| Campos, Daniel: PO C911 | 874 | 02/22/20 | 02:44 | 02:56 | 03:04 | 00:08 |

| Average Response Time for this Call: | Dispatched By: | Disposition: |
|--------------------------------------|----------------|--------------|
| 00:12:33 | | Unfounded |

| Notes | Time | Entered By |
|---|---|---|
| female stating security guard assaulted her | 02/22/20 2:43 | ahoyos |

# Exhibit 16

# Elizabeth Police Department

**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**

## Incident Report

### Incident Details:

| Case Number | Time Reported | Date Reported | Time Occurred | Date Occurred | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 911 | Completed |
|---|---|---|---|---|---|---|---|---|---|
| 20-029318 | 23:49 | 02/23/20 | 23:49 | 02/23/20 | | | | | X |

### Incident Type:

Fight

### Incident Location:

| Street # | Street Name | | Intersection / Cross Street of: |
|---|---|---|---|
| 821 | Spring Street | | |
| Business / Common Location Name | | | |
| the lobby | | | |

### Contact Information: Victim  Suspect  Complainant  Witness  Driver  Arrest  Passenger  Missing  Involved  Other

| Code | Contact Name #1 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| V | Fisher, Andrew | G | | ▮▮▮▮ | | | | |
| **Address** | ▮▮▮▮▮▮▮▮▮▮▮ | | | | Primary Phone | | Secondary Phone | |
| Code | Contact Name #2 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| **Address** | | | | | Primary Phone | | Secondary Phone | |
| Code | Contact Name #3 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| **Address** | | | | | Primary Phone | | Secondary Phone | |
| Code | Contact Name #4 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| **Address** | | | | | Primary Phone | | Secondary Phone | |
| Code | Contact Name #5 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| **Address** | | | | | Primary Phone | | Secondary Phone | |
| Code | Contact Name #6 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| **Address** | | | | | Primary Phone | | Secondary Phone | |
| Code | Contact Name #7 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| **Address** | | | | | Primary Phone | | Secondary Phone | |
| Code | Contact Name #8 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| **Address** | | | | | Primary Phone | | Secondary Phone | |

### Property Information:

| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

### Automobile Information:

| | Vehicle Code | Year | Make | Body Type | Model | Color | Registration | State | VIN |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 1 |
|---|---|---|---|---|---|
| Castro, Michael: PO C926 | 02/23/20 | jfreel | | 20-029318 | |

# Elizabeth Police Department

**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**

## Incident Report

On 02/23/20 at approximately 2350 hours several units were dispatched to The Lobby club (821 Spring Street) for a fight in progress. The Lobby detail Officers Arena - Matos transmitted over radio that it was a big crowd fighting inside the mentioned place. Upon our arrival we spoke to Officer D. Jimenez and officer J. Martinez (Power 7) who advised us that the victim, Mr. Andrew Fisher was one of the parties assaulted inside. I spoke to Mr. Fisher who stated that he is a usual customer and never have this type of problem but he recognized the aggressor. Mr. Fisher stated that while he was waiting in line to pay his bill he was pushed by an unknown person. same started to express his concern and was punched in the face with a closed fist by a person described as Hispanic male wearing a red hooded sweatshirt.

Mr. Fisher was very upset and sustained a small laceration over his left ear.  EMS 6 arrived to our location and transported Mr. Fisher to Trinitas hospital without any incident. Mr. Fisher was advised about court procedures and provide with a case number.

While on scene my partner, Officer Colletti was able to get some information from the security personnel and the suspect was described as Hispanic and goes by the name "Eddy" no further information.

Sgt. Dorillus arrived on scene and same was advised of the situation. BWR.

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 2 |
|---|---|---|---|---|---|
| Castro, Michael: PO C926 | 02/23/20 | jfreel | | 20-029318 | |




# Elizabeth Police Department
### 1 Police Plaza, Elizabeth, NJ 07201
### Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004
## CAD Report

| CAD # | Case # | Date | Time of Call | Dispatched | Arrived | Cleared | 911 |
|---|---|---|---|---|---|---|---|
| 20-029318 | 20-029318 | 02/23/20 | 23:49 | 23:49 | 23:53 | 01:46 | |

| Reg. | St. | Make | Color | Model | Class | Year | Exp | Race | SI | Warning |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Incident Type | Business / School / Location Name |
|---|---|
| Fight | the lobby |

| Location: Street # | Street Name | Apt.# | Cross Street / Nearest Intersection | Zone |
|---|---|---|---|---|
| 821 | Spring Street | | | 4 |

| Contact (Lastname, Firstname) | Contact Address | Contact Phone |
|---|---|---|
| | | |

| Officer(s) | Car(s) | Date | Dispatched | Arrived | Cleared | Time on Scene |
|---|---|---|---|---|---|---|
| Castro, Michael: PO C926 | 701 | 02/23/20 | 23:49 | 23:53 | 01:46 | 01:52 |
| Morales, Carlos M: PO M980 | 544 | 02/23/20 | 23:49 | 23:52 | 23:54 | 00:02 |
| Molina, Aaron: PO M949 | 710 | 02/23/20 | 23:53 | 23:54 | 00:28 | 00:34 |
| Batista, Juan: PO B937 | 904 | 02/23/20 | 23:54 | 23:54 | 00:25 | 00:31 |
| Martinez, Jonathan: PO M956 | 407 | 02/24/20 | 00:10 | 00:10 | 00:28 | 00:17 |

| Average Response Time for this Call: | Dispatched By: | Disposition: |
|---|---|---|
| 00:01:31 | | Cleared Report Submitted |

# Exhibit 17

# Elizabeth Police Department

**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**

## Incident Report

### Incident Details:

| Case Number | Time Reported | Date Reported | Time Occurred | Date Occurred | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 911 | Completed |
|---|---|---|---|---|---|---|---|---|---|
| 20-039847 | 02:58 | 03/15/20 | 02:58 | 03/15/20 | | | | X | X |

### Incident Type:

Simple Assault 2C:12-1a

### Incident Location:

| Street # | Street Name | Intersection / Cross Street of: |
|---|---|---|
| 821 | Spring Street | |

Business / Common Location Name
The Lobby

### Contact Information: Victim  Suspect  Complainant  Witness  Driver  Arrest  Passenger  Missing  Involved  Other

| Code | Contact Name #1 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| V | Pagan, Melissa | N | | ███ | ███ | ███ | | |
| Address | ████████ | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #2 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #3 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #4 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #5 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #6 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #7 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #8 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

### Property Information:

| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

### Automobile Information:

| | Vehicle Code | Year | Make | Body Type | Model | Color | Registration | State | VIN |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 1 |
|---|---|---|---|---|---|
| Campos, Daniel: PO C911 | 03/15/20 | rmeola | | 20-039847 | |

# Elizabeth Police Department
### 1 Police Plaza, Elizabeth, NJ 07201
### Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004
### Incident Report

On 3/15/2020 at around 02:58 hours, PO Capetola and I (PO Campos) were dispatched to 821 Spring Street (Lobby) for a assault. Upon our arrival this unit was greeted by the victim, Melissa Pagan. Ms. Pagan stated that around 02:00 hours she was in the VIP area of lobby when a male approached her and grabbed her buttocks. Ms. Pagan responded by pushing the suspect towards the couches before he left the immediate area. Ms. Pagan consulted the security about the incident and became upset when she realized they didn't kick the suspect out the establishment. Ms. Pagan did not know who the suspect was and did not have any contact with him prior to the incident. The suspect was described at a light skin Spanish male wearing a Adidas sweatshirt,
See page 2

This officer proceeded to speak with the security of the establishment. The security stated that they were unable to intervene due to not seeing what had occurred in the incident. Security tried to see if they caught anything on the camera's, but where unable to find any footage of the described incident.

Sgt. Vazquez was notified of above incident. All parties advised.
### ***BWR***

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 2 |
|---|---|---|---|---|---|
| Campos, Daniel: PO C911 | 03/15/20 | rmeola | | 20-039847 | |



# Elizabeth Police Department
### 1 Police Plaza, Elizabeth, NJ 07201
### Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004
## CAD Report



| CAD # | Case # | Date | Time of Call | Dispatched | Arrived | Cleared | 911 |
|---|---|---|---|---|---|---|---|
| 20-039838 | | 03/15/20 | 02:33 | 02:45 | 02:47 | 02:54 | X |

| Reg. | St. | Make | Color | Model | Class | Year | Exp | Race | SI | Warning |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Incident Type | Business / School / Location Name |
|---|---|
| Simple Assault 2C:12-1a | The Lobby |

**Location:**

| Street # | Street Name | Apt.# | Cross Street / Nearest Intersection | Zone |
|---|---|---|---|---|
| 821 | Spring Street | | | 4 |

| Contact (Lastname, Firstname) | Contact Address | Contact Phone |
|---|---|---|
| | | ▓▓▓▓▓▓▓ |

| Officer(s) | Car(s) | Date | Dispatched | Arrived | Cleared | Time on Scene |
|---|---|---|---|---|---|---|
| Campos, Daniel: PO C911 | 874 | 03/15/20 | 02:45 | 02:47 | 02:54 | 00:07 |

| Average Response Time for this Call: | Dispatched By: | Disposition: |
|---|---|---|
| 00:02:02 | | Unfounded |

| Notes | Time | Entered By |
|---|---|---|
| see melissa waiting in front / states a male inside the club grabbed her | 03/15/20 2:34 | jagramiak |
| butt and arguing with security | 03/15/20 2:34 | jagramiak |



# Elizabeth Police Department

1 Police Plaza, Elizabeth, NJ 07201
Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004

## CAD Report

| CAD # | Case # | Date | Time of Call | Dispatched | Arrived | Cleared | 911 |
|---|---|---|---|---|---|---|---|
| 20-039847 | 20-039847 | 03/15/20 | 02:58 | 02:58 | 03:05 | 03:45 | X |

| Reg. | St. | Make | Color | Model | Class | Year | Exp | Race | SI | Warning |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Incident Type | Business / School / Location Name |
|---|---|
| Simple Assault 2C:12-1a | The Lobby |

**Location:**

| Street # | Street Name | Apt.# | Cross Street / Nearest Intersection | Zone |
|---|---|---|---|---|
| 821 | Spring Street | | | 4 |

| Contact (Lastname, Firstname) | Contact Address | Contact Phone |
|---|---|---|
| | | |

| Officer(s) | Car(s) | Date | Dispatched | Arrived | Cleared | Time on Scene |
|---|---|---|---|---|---|---|
| Campos, Daniel: PO C911 | 874 | 03/15/20 | 02:58 | 03:05 | 03:45 | 00:40 |

| Average Response Time for this Call: | Dispatched By: | Disposition: |
|---|---|---|
| 00:06:35 | | Cleared Report Submitted |

| Notes | Time | Entered By |
|---|---|---|
| see melissa / states a male inside the club grabbed her | 03/15/20 2:59 | jagramiak |

# Exhibit 18





# Elizabeth Police Department

**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**

## CAD Report

| CAD # | Case # | Date | Time of Call | Dispatched | Arrived | Cleared | | 911 |
|---|---|---|---|---|---|---|---|---|
| 20-112149 | 20-112149 | 08/09/20 | 02:23 | 02:26 | 02:31 | 05:24 | | ✕ |

| Reg. | St. | Make | Color | Model | Class | Year | Exp | Race | SI | Warning |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Incident Type | Business / School / Location Name |
|---|---|
| Simple Assault 2C:12-1a | The Lobby |

**Location:**

| Street # | Street Name | Apt.# | Cross Street / Nearest Intersection | Zone |
|---|---|---|---|---|
| 821 | Spring Street | | | 4 |

| Contact (Lastname, Firstname) | Contact Address | Contact Phone |
|---|---|---|
| | | ▆▆▆▆▆▆ |

| Officer(s) | Car(s) | Date | Dispatched | Arrived | Cleared | Time on Scene |
|---|---|---|---|---|---|---|
| Pereira, Gabriel: PO P988 | 911 | 08/09/20 | 02:26 | 02:31 | 05:24 | 02:52 |
| Pereira, Gabriel: PO P988 | 902 | 09/24/20 | 21:02 | 21:02 | 21:09 | 00:06 |

| Average Response Time for this Call: | Dispatched By: | Disposition: |
|---|---|---|
| 00:02:25 | | Cleared Report Submitted |

| Notes | Time | Entered By |
|---|---|---|
| See Raymond states the bouncer beat him up | 08/09/20 2:25 | aaho |
| Refused EMS | 08/09/20 2:27 | aaho |
| ems notified male pepper spray | 08/09/20 2:41 | gfukazawa |
| ems cxled | 08/09/20 2:51 | jcaparruva |
| | 08/09/20 4:08 | jcaparruva |
| | 08/09/20 4:08 | jcaparruva |

# Exhibit 19

# Elizabeth Police Department

**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**

## Incident Report

### Incident Details:

| Case Number | Time Reported | Date Reported | Time Occurred | Date Occurred | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 911 | Completed |
|---|---|---|---|---|---|---|---|---|---|
| 20-114747 | 00:52 | 08/15/20 | 00:52 | 08/15/20 | | | | X | X |

### Incident Type:

Dispute

### Incident Location:

| Street # | Street Name | | Intersection / Cross Street of: |
|---|---|---|---|
| 821 | Spring Street | | |
| Business / Common Location Name | | | |
| lobby | | | |

### Contact Information: Victim  Suspect  Complainant  Witness  Driver  Arrest  Passenger  Missing  Involved  Other

| Code | Contact Name #1 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| C | Francisco-Nunez  , Felix | E | | ███ | | | | |
| Address ███████████████ | | | | Primary Phone | | | | Secondary Phone |

| Code | Contact Name #2 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | Primary Phone | | | | Secondary Phone |

| Code | Contact Name #3 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | Primary Phone | | | | Secondary Phone |

| Code | Contact Name #4 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | Primary Phone | | | | Secondary Phone |

| Code | Contact Name #5 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | Primary Phone | | | | Secondary Phone |

| Code | Contact Name #6 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | Primary Phone | | | | Secondary Phone |

| Code | Contact Name #7 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | Primary Phone | | | | Secondary Phone |

| Code | Contact Name #8 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | Primary Phone | | | | Secondary Phone |

### Property Information:

| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

### Automobile Information:

| | Vehicle Code | Year | Make | Body Type | Model | Color | Registration | State | VIN |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 1 |
|---|---|---|---|---|---|
| Capetola, Michael: PO | 08/15/20 | gjeanmarie | | 20-114747 | |

# Elizabeth Police Department

**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**

## Incident Report

On 08/15/2020 at approximately 00:52 hours, PO Campos and I responded to 821 Spring Street (The Lobby) for a dispute. Upon our arrival we were met by the caller, Felix Nunez. Same claimed that the bouncers stole his Bank of America Debit card.

After speaking with Lobby personnel, same stated that Felix lost his wallet sometime during the night and when they found it they returned it to Mr. Felix. However, when the returned it to him, Felix stated that he was missing his debit card. Party was advised to cancel his debit card and dispute any charges that he doesn't recognize.  BWR

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 2 |
|---|---|---|---|---|---|
| Capetola, Michael: PO | 08/15/20 | gjeanmarie | | 20-114747 | |




# Elizabeth Police Department

### 1 Police Plaza, Elizabeth, NJ 07201
### Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004
## CAD Report

| CAD # | Case # | Date | Time of Call | Dispatched | Arrived | Cleared | 911 |
|-------|--------|------|--------------|------------|---------|---------|-----|
| 20-114747 | 20-114747 | 08/15/20 | 00:52 | 00:55 | 00:59 | 02:01 | ✕ |

| Reg. | St. | Make | Color | Model | Class | Year | Exp | Race | SI | Warning |
|------|-----|------|-------|-------|-------|------|-----|------|----|---------|
| | | | | | | | | | | |

| Incident Type | Business / School / Location Name |
|---------------|-----------------------------------|
| Dispute | lobby |

| Location: Street # | Street Name | Apt.# | Cross Street / Nearest Intersection | Zone |
|--------------------|-------------|-------|-------------------------------------|------|
| 821 | Spring Street | | | 4 |

| Contact (Lastname, Firstname) | Contact Address | Contact Phone |
|-------------------------------|-----------------|---------------|
| | | ▓▓▓▓▓▓ |

| Officer(s) | Car(s) | Date | Dispatched | Arrived | Cleared | Time on Scene |
|------------|--------|------|------------|---------|---------|---------------|
| Capetola, Michael: PO C963 | 911 | 08/15/20 | 00:55 | 00:59 | 02:01 | 01:02 |

| Average Response Time for this Call: | Dispatched By: | Disposition: |
|--------------------------------------|----------------|--------------|
| 00:03:49 | | Cleared Report Submitted |

| Notes | Time | Entered By |
|---|---|---|
| caller stated he thinks bouncer went in his pants and stole his wallet | 08/15/20 0:54 | japonte |

# Exhibit 20



# Elizabeth Police Department
**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**
## Incident Report

## Incident Details:

| Case Number | Time Reported | Date Reported | Time Occurred | Date Occurred | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 911 | Completed |
|---|---|---|---|---|---|---|---|---|---|
| 20-123618 | 01:40 | 09/04/20 | 01:40 | 09/04/20 | | | | | X |

## Incident Type:

Criminal Mischief 2C:17-3

Warrant Arrest

Disorderly Person

## Incident Location:

| Street # | Street Name | | Intersection / Cross Street of: |
|---|---|---|---|
| 821 | Spring Street | | |

Business / Common Name
The Lobby

## Contact Information: Victim  Suspect  Complainant  Witness  Driver  Arrest  Passenger  Missing  Involved  Other

| Code | Contact Name #1 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| A | Mcrae, Eric | | | ███ | | | | |
| Address | ████████████ | | | Primary Phone | | | Secondary Phone | |
| O | Young, Corey | M | | ███ | | | | |
| Address | ████████████ | | | Primary Phone | | | Secondary Phone | |
| O | Iglesias, Jose | | | | ████ | | | |
| Address | ████████████ | | | Primary Phone | | | Secondary Phone | |
| B | Lobby | | | | | | | |
| Address 821 Spring Street, Elizabeth, NJ | | | | Primary Phone | | | Secondary Phone | |
| | Contact Name #5 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Primary Phone | | | Secondary Phone | |
| | Contact Name #6 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Primary Phone | | | Secondary Phone | |
| | Contact Name #7 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Primary Phone | | | Secondary Phone | |
| | Contact Name #8 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Primary Phone | | | Secondary Phone | |

## Property Information:

| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

## Automobile Information:

| | Vehicle Code | Year | Make | Body Type | Model | Color | Registration | State | VIN |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 1 |
|---|---|---|---|---|---|
| Bravo, Devante: PO B985 | 09/04/20 | afazio | | 20-123618 | |

# Elizabeth Police Department
**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**

## Incident Report

On 09/04/2020 at 01:40 hours Officer Lawson and I (Officer Bravo) were dispatched to 821 Spring Street (The Lobby) on a report of a disorderly person. Unit Power 4 (J. Mimy/Croban) also responded to the aforementioned address. Upon arrival we spoke with a security guard of Lobby, Corey Young, who stated that a male, later identified as Eric Mcrae, was inside harassing customers. Same stated that Mr. Mcrae was told he was no longer going to be served alcohol. Mr. Young stated that he then kept on attempting to pay the bartenders for more drinks. Mr. Young stated that he and other security guards escorted Mr. Young to the exit as he would not go on his own terms. Same stated that once Mr. Mcrae was outside of the premise he became irate and punched the glass door. Mr. Young stated that it shattered once Mr. Mcrae made impact. (Continue on Page 2)

Sgt. Dorilus #29 responded to the scene. I made my way with Mr. Young to the camera room to observe the video surveillance of the incident. Upon reviewing the surveillance, I observed Mr. Mcrae hit the glass door with his right hand which then caused the glass to shatter. Mr. Young and the manager of Lobby (Jose Iglesias) were advised to save the video surveillance of the incident. Mr. Mcrae was placed under arrest by these officers. Mr. Mcrae was transported to Police Headquarters in marked patrol vehicle 543 without incident. Mr. Mcrae was transferred over to Cell Block Personnel for Booking Procedures.

A check through NCIC of Mr. Mcrae showed that he had a warrant out of Bloomfield (Warrant # SC 2019 025998) for disorderly conduct. A/P Grady was contacted and advised. A/P Grady approved Criminal Mischief (2C:17-3a) 4th Degree and PDP Defiant Trespass (2C:18-3b) on a summons.

BWR tagged as Evidence.
End of Report. BWR

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 2 |
|---|---|---|---|---|---|
| Bravo, Devante: PO B985 | 09/04/20 | afazio | | 20-123618 | |

# Exhibit 21



# Elizabeth Police Department
### 1 Police Plaza, Elizabeth, NJ 07201
### Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004
## <u>Incident Report</u>

## Incident Details:

| Case Number | Time Reported | Date Reported | Time Occurred | Date Occurred | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 911 | Completed |
|---|---|---|---|---|---|---|---|---|---|
| 20-131872 | 21:02 | 09/22/20 | 21:02 | 09/22/20 | | | | | X |

## Incident Type:
Shooting- No Hit
Evidence Retrieval / Delivery

## Incident Location:
| Street # | Street Name | Intersection / Cross Street of: |
|---|---|---|
| 821 | Spring Street | |

Business / Common Location Name

## Contact Information: Victim Suspect Complainant Witness Driver Arrest Passenger Missing Involved Other

| Code | Contact Name #1 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| C | Young, Corey | M | | ████ | ███ | ██████ | | |
| Address ████████████████ | | | | Primary Phone | | Secondary Phone | | |
| Code | Contact Name #2 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Primary Phone | | Secondary Phone | | |
| Code | Contact Name #3 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Primary Phone | | Secondary Phone | | |
| Code | Contact Name #4 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Primary Phone | | Secondary Phone | | |
| Code | Contact Name #5 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Primary Phone | | Secondary Phone | | |
| Code | Contact Name #6 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Primary Phone | | Secondary Phone | | |
| Code | Contact Name #7 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Primary Phone | | Secondary Phone | | |
| Code | Contact Name #8 | MI | Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Primary Phone | | Secondary Phone | | |

## Property Information:
| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

## Automobile Information:
| | Vehicle Code | Year | Make | Body Type | Model | Color | Registration | State | VIN |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 1 |
|---|---|---|---|---|---|
| Campos, Daniel: PO C911 | 09/22/20 | hdeabreu | | 20-131872 | |

# Elizabeth Police Department
**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**
## Incident Report

On 09/22/2020 at approximately 21:13 hours, PO Capetola and I (PO Campos) were dispatched to 821 Spring Street (Lobby) for a shooting/evidence retrieval. Upon our arrival this unit was greeted by the caller, Corey Young. Mr. Young stated that he was observing camera footage from a shooting (20-131200) that occurred on 9/21/2020. While reviewing the footage Mr. Young came upon another separate shooting incident that occurred in the rear of the business. Mr. Young proceeded to the rear of the business where he then observed a 9mm blazer shell casing on the ground.

See page 2

After reviewing the video footage it can be seen that a a group of individuals were disputing with an unknown individual in a black vehicle. One male grabbed a garbage can and threw it toward the black vehicle. A Black male with a white shirt then approached the vehicle and discharged a firearm in its direction. The black vehicle then fled the scene. The video was recorded with this units BWR and tagged as evidence. Mr. Young was also advised to save the footage for DB to follow up. The shell casing was tagged into evidence under this case number.

Sgt Fidalgo was advised accordingly.

All parties advised.

***BWR***

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 2 |
|---|---|---|---|---|---|
| Campos, Daniel: PO C911 | 09/22/20 | hdeabreu | | 20-131872 | |



# Elizabeth Police Department
**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000 Fax: 908-558-2038 Mun. Code: 2004**
## CAD Report



| CAD # | Case # | Date | Time of Call | Dispatched | Arrived | Cleared | 911 |
|---|---|---|---|---|---|---|---|
| 20-131872 | 20-131872 | 09/22/20 | 21:02 | 21:10 | 21:13 | 22:40 | |

| Reg. | St. | Make | Color | Model | Class | Year | Exp | Race | SI | Warning |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Incident Type | Business / School / Location Name |
|---|---|
| Shooting- No Hit | |

| Location: Street # | Street Name | Apt.# | Cross Street / Nearest Intersection | Zone |
|---|---|---|---|---|
| 821 | Spring Street | | | 4 |

| Contact (Lastname, Firstname) | Contact Address | Contact Phone |
|---|---|---|
| | | |

| Officer(s) | Car(s) | Date | Dispatched | Arrived | Cleared | Time on Scene |
|---|---|---|---|---|---|---|
| Campos, Daniel: PO C911 | 911 | 09/22/20 | 21:10 | 21:13 | 22:40 | 01:26 |

| Average Response Time for this Call: | Dispatched By: | Disposition: |
|---|---|---|
| 00:03:25 | | Cleared Report Submitted |

20-131872

| Notes | Time | Entered By |
|---|---|---|
| See Corey at The Lobby - found shell casings from Shots Fired incident on 9/21/2020 | 09/22/20 21:04 | jwassel |
| Case number 20-131200 | 09/22/20 21:03 | jwassel |

Exhibit 22



# Elizabeth Police Department
### 1 Police Plaza, Elizabeth, NJ 07201
### Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004
## Incident Report

## Incident Details:

| Case Number | Time Reported | Date Reported | Time Occurred | Date Occurred | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 911 | Completed |
|---|---|---|---|---|---|---|---|---|---|
| 20-147159 | 02:11 | 10/26/20 | 02:11 | 10/26/20 | | | | | X |

## Incident Type:

Disorderly Group
Resisting Arrest/Eluding 2C:29-2
Disorderly Conduct 2C:33-2

## Incident Location:

| Street # | Street Name | Intersection / Cross Street of: |
|---|---|---|
| 821 | Spring Street | |

Business / Common Location Name
The Lobby

## Contact Information: Victim  Suspect  Complainant  Witness  Driver  Arrest  Passenger  Missing  Involved  Other

| Code | Contact Name #1 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| A | Diallo, Mamdou | S | | | ███ | | | |
| Address ████████████ | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #2 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #3 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #4 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #5 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #6 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #7 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

| Code | Contact Name #8 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | Primary Phone | | Secondary Phone | |

## Property Information:

| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

## Automobile Information:

| | Vehicle Code | Year | Make | Body Type | Model | Color | Registration | State | VIN |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 1 |
|---|---|---|---|---|---|
| Valdez, Victor: PO V958 | 10/26/20 | tkelly | | 20-147159 | |

# Elizabeth Police Department

**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**

## Incident Report

On October 26th, 2020 at approximately 02:11 hours, my partner P.O M. Rodriguez (R948) and I (P.O Valdez) assisted the Lobby Detail, P.O Boone (B832) and Sgt. Alvarez A747 with a disorderly group at 821 Spring Street (Lobby). Upon arrival we observed a group of 4 parties, 3 females and 1 male, punching the windows and pulling the door, which was locked at the time. We then were advised by P.O Boone that the group was involved in a fight inside Lobby and was escorted out by security. Since that incident the group refused to exit the premise. We attempted to speak with the group however, the group began to yell and continued to punch the windows. We attempted to de-escalate the situation by speaking to the group. The females were complaining because they were "assaulted" by a male inside Lobby. ***see pg 2***

It should be noted the entire group was highly intoxicated and were not cooperating with us. Due to the aggressiveness of the group, Lobby's security maintained the remaining parties inside. The workers did not exit the premise either. We commanded the parties to exit the premise, to which they refused. The parties began to yell at us, stating that we were "racist" and yelled at us that we were "helping" the parties inside of lobby. At this time, P.O Boone attempted to obtain the parties' name in order to create a report of the "assault". However the group refused and continued to yell at us. The group then began to argue with each other and we observed two of the parties begin to fight. We were able to separate the parties and continued to command the group to enter their vehicle and leave. The group continued to refuse our commands and remained on scene. The group continued to yell and scream and one party continued to punch the window. We attempted to de-escalate the situation by speaking to the parties, separately, however it proved negative.

One of the parties asked us to wait in the car and stated she would help bring her friends into their vehicle. We then cooperated and responded to our vehicles. We observed the party speak to the others, however the group began to fight again. One female was extremely aggressive and continued to fight with both the parties. We continued to command the group to exit the premise, to which they continued to refuse. The male, later identified as Mamdou Diallo, attempted to force the female into his vehicle, which caused her to become more aggressive. We advised Mr. Diallo to wait in his vehicle, to which he originally cooperated. However, he quickly exited his vehicle and began to argue with the female again. We observed the parties fight multiple times. Mr. Diallo was escalating the situation by arguing with the female and refused to cooperate with our verbal commands. We then advised Mr. Diallo to enter his vehicle, again, to which he cooperated. At this time Mr. Diallo fell onto the ground and began to scream. Mr. Diallo was grabbing his ankle. I attempted to render aid to Mr. Diallo, however he screamed "don't touch me". We then advised dispatch, via radio, to start EMS to our location.

At this time the other party inside of Lobby responded to the window and this caused the group to become more disorderly. The group then began to scream, curse louder and the female continued to punch the windows. We continued to command the group to exit the premise, to which they continued to refuse. At this time we advised the female that she was going to be placed under arrest. The others within the group, including Mr. Diallo then advised us that they would put her into the vehicle. The other three parties then grabbed the female and began to escort her to their vehicle. The female continued to fight the other parties and continued to yell and scream.

The group was able to escort her to their vehicle however, the female refused to enter the vehicle. The group then stated the female's phone was "missing". We advised the group that we would take a report, however the group needed to leave the premise to which they refuse. We advised Mr. Diallo to enter his vehicle and drive, to which he refused. All 4 parties refused all of our verbal commands and refused to enter the vehicle and leave the premise. Two of the females responded back to Lobby, ignoring our warnings and

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 2 |
|---|---|---|---|---|---|
| Valdez, Victor: PO V958 | 10/26/20 | tkelly | | 20-147159 | |

# Elizabeth Police Department

**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**

## Incident Report

commands. The two females attempted to locate the phone, which proved negative at this time. ***see pg 3***

We continued to command the group to enter the vehicle and drive away. At this time, all 4 parties entered their vehicle however, Mr. Diallo refused to drive away. The parties continued to yell at us, screaming profanity. The parties continued to yell about the missing phone, to which we continued to command the parties to drive away. Mr. Diallo then began to drive the vehicle, however he immediately stopped and began to reverse the vehicle. The vehicle came extremely close to my leg, however the vehicle did not strike me. The parties then attempted to exit the vehicle again, to which we commanded them to stay in the vehicle and leave the premises. The group again refused to cooperate.

At this time, Sgt. Alvarez advised us to place all parties under arrest. I then opened the door to the rear passenger side and attempted to grab the female, in order to place her under arrest. Mr. Diallo then pressed the gas pedal and drove away, almost running over my foot. Mr. Diallo then exited the parking lot and drove northbound on Spring Street. However Mr. Diallo then turned into the parking lot of Motel 6. He then exited the vehicle and attempted to respond back to Lobby. I then ran towards Mr. Diallo and grabbed him, in order to place him under arrest. I grabbed Mr. Diallo by his arms to which he attempted to lay on the floor. My partner then assisted along with P.O Boone. Mr. Diallo began to tense his arms and swing his arms, preventing us from properly securing him into handcuffs. I then applied a compliance hold on Mr. Diallo which allowed us to properly secure him into handcuffs.

We then attempted to escort Mr. Diallo to our patrol vehicle. Mr. Diallo continued to drop to the floor and tense his body, making it extremely difficult to properly secure him into the vehicle. Once we arrived to the vehicle, Mr. Diallo refused to enter the vehicle, despite multiple verbal commands. We then had to grab Mr. Diallo by his shoulders and legs, from both the driver side and passenger side, and push and pull him into the vehicle. We were able to place him into our patrol vehicle however, he quickly exited the vehicle. We then placed him into the vehicle again. The other three parties then exited the premises in their vehicle and left to an unknown location.

Due to the group being extremely uncooperative and intoxicated, we were unable to obtain their information at this time. We then transported Mr. Diallo to headquarters. During the transport Mr. Diallo began to scream and cry for an unknown reason. We then responded back to headquarters and attempted to complete Mr. Diallo's Arrest Card and Property Slip. In cell block Mr. Diallo continued to scream and cry. He also began to throw himself onto the floor. Mr. Diallo refused to remove the appropriate clothing and continued to lay on the floor in a curled up position. We then removed Mr. Diallo's shoes, in order to confiscate his shoelaces, and removed Mr. Diallo's belt. We also removed the handcuffs from Mr. Diallo. Mr. Diallo then stood up and faced towards us. He began to scream at us aggressively and his arms began to rise. We then attempted to place our hands on Mr. Diallo's chest, in order to help calm him down, to which he swung his arms towards our hands. We then pushed Mr. Diallo against the lockers and then laid him onto the ground fearing that he would try and retaliate against us. We then placed Mr. Diallo in handcuffs again.

At this time P.O Hart (H852) and P.O Mercado (M986) assisted us in cell block. We then attempted to escort Mr. Diallo into Holding Cell A, to which he refused. He continued to tense his body. We then escorted Mr. Diallo into Holding Cell A, however he attempted to exit several times. ***see pg 4***

We then pushed him into the cell to which he tripped. However he did not fall nor hit the wall. We then closed Holding Cell A and completed the proper cell block paperwork. Mr. Diallo then stood in the cell calm.

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 3 |
|---|---|---|---|---|---|
| Valdez, Victor; PO V958 | 10/26/20 | tkelly | | 20-147159 | |

# Elizabeth Police Department

**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**

## Incident Report

At this time we attempted to remove the handcuffs from Mr. Diallo. Mr. Diallo complied however he dropped to his knees and began to beg to be released. Mr. Diallo began to crawl out of Holding Cell A, to which we dragged him towards the bench. Mr. Diallo continued to crawl out of Holding Cell A and continued to scream and cry. We continued to drag Mr. Diallo to the back of the cell. Mr. Diallo refused to remain in Holding Cell A.

   At this time, we placed Mr. Diallo into Holding Cell B, which was empty at the time, and handcuffed him to the bench. We then responded to roll call and attempted to compete our report. P.O Diaz (D973) then responded to Holding Cell B in order to check on Mr. Diallo. Mr. Diallo was laying on the floor, with no movement. P.O Diaz then checked Mr. Diallo and confirmed Mr. Diallo had a pulse. Mr. Diallo then responded. P.O Diaz then contacted dispatch in order to have EMS respond on scene.

   EMS then responded on scene and Mr. Diallo was fully responsive. P.O Diaz attempted to photograph Mr. Diallo and fingerprint him, as part of the cell block protocol. Mr. Diallo continued to be extremely uncooperative and refused to be photographed or fingerprinted. P.O Terrazes (T912), P.O Hart, P.O Mercado, P.O Rodriguez, P.O Napoli (N406) and myself all grabbed Mr. Diallo by his arms and manually placed his fingers onto the scanner. We were able to successfully fingerprint and photograph Mr. Diallo at this time. Lt. Belon was also on scene assisting as well. During the fingerprinting, I utilized another compliance hold on Mr. Diallo. EMS-7 then transported Mr. Diallo to Trinitas Hospital in order to evaluate Mr. Diallo. At the hospital we provided Mr. Diallo with the Defendant's Copy of the Suumons

Mr. Diallo was charged with the following charges on a summons:

2C:33-2A Disorderly Conduct
2C:29-2A Resisting Arrest

   At the hospital the other three parties responded along with the vehicle, that belongs to Mr. Diallo. The parties advised us that they would wait for Mr. Diallo to be released. Use of force reports were completed and submitted with this report and were reviewed and approved by Sgt. J. Luis. All parties were advised accordingly. Lt. Belon advised accordingly.

---

***BWR Tagged as evidence***

---

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 4 |
|---|---|---|---|---|---|
| Valdez, Victor: PO V958 | 10/26/20 | tkelly | | 20-147159 | |

# Exhibit 23



# Elizabeth Police Department
### 1 Police Plaza, Elizabeth, NJ 07201
### Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004
## CAD Report

| CAD # | Case # | Date | Time of Call | Dispatched | Arrived | Cleared | 911 |
|-------|--------|------|--------------|------------|---------|---------|-----|
| 20-158694 | | 11/21/20 | 21:15 | 22:44 | 22:44 | 22:44 | X |

| Reg. | St. | Make | Color | Model | Class | Year | Exp | Race | SI | Warning |
|------|-----|------|-------|-------|-------|------|-----|------|----|---------|
| | | | | | | | | | | |

| Incident Type | Business / School / Location Name |
|---------------|-----------------------------------|
| Disorderly Person | The Lobby |

| Location: Street # | Street Name | Apt.# | Cross Street / Nearest Intersection | Zone |
|---------------------|-------------|-------|-------------------------------------|------|
| 821 | Spring Street | | | 4 |

| Contact (Lastname, Firstname) | Contact Address | Contact Phone |
|-------------------------------|-----------------|---------------|
| | | ██████ |

| Officer(s) | Car(s) | Date | Dispatched | Arrived | Cleared | Time on Scene |
|------------|--------|------|------------|---------|---------|---------------|
| Maldonado, John: PO M918 | 705 | 11/21/20 | 22:44 | 22:44 | 22:44 | 00:00 |

| Average Response Time for this Call: | Dispatched By: | Disposition: |
|--------------------------------------|----------------|--------------|
| 00:00:03 | | No Report |

20-158694

| Notes | Time | Entered By |
|---|---|---|
| Intoxicated male wont leave called in by security | 11/21/20 21:16 | Robert.Hilongos |

Exhibit 24



# Elizabeth Police Department
**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**
## Incident Report

## Incident Details:

| Case Number | Time Reported | Date Reported | Time Occurred | Date Occurred | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 911 | Completed |
|---|---|---|---|---|---|---|---|---|---|
| **20-172890** | 17:23 | 12/26/20 | 17:23 | 12/26/20 | | | | | X |

## Incident Type:
Criminal Mischief 2C:17-3

## Incident Location:

| Street # | Street Name | Intersection / Cross Street of: |
|---|---|---|
| 821 | Spring Street | |

Business / Common Location Name

## Contact Information: Victim Suspect Complainant Witness Driver Arrest Passenger Missing Involved Other

| Code | Contact Name #1 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| C | Young, cory | | | ■ | ■ | ■ | | |
| Address | ■ | | | | | Primary Phone | | Secondary Phone |

| Code | Contact Name #2 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| B | Iglesias, Jose | R | | ■ | ■ | ■ | | |
| Address | ■ | | | | | Primary Phone | | Secondary Phone |

| Code | Contact Name #3 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| O | Opong, Jarvis | A | | ■ | ■ | | | |
| Address | ■ | | | | | Primary Phone | | Secondary Phone |

| Code | Contact Name #4 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| O | Sanders-Ferranto , Elijah | J | | ■ | ■ | | | |
| Address | ■ | | | | | Primary Phone | | Secondary Phone |

| Code | Contact Name #5 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | | Primary Phone | | Secondary Phone |

| Code | Contact Name #6 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | | Primary Phone | | Secondary Phone |

| Code | Contact Name #7 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | | Primary Phone | | Secondary Phone |

| Code | Contact Name #8 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Address | | | | | | Primary Phone | | Secondary Phone |

## Property Information:

| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

## Automobile Information:

| | Vehicle Code | Year | Make | Body Type | Model | Color | Registration | State | VIN |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 1 |
|---|---|---|---|---|---|
| Bravo, Devante: PO B985 | 12/26/20 | rdorilus | | 20-172890 | |



# Elizabeth Police Department
### 1 Police Plaza, Elizabeth, NJ 07201
### Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004
### Incident Report

On 12/26/2020 at 17:36 hours Officer Lawson and I (Officer Bravo) were dispatched to 821 Spring Street (The Lobby) on a report of an intoxicated male. Upon arrival, these officers spoke with the security guard at The Lobby, later identified as Cory Young, and he stated that two males, later identified as Jarvis Opong and Elijah Sanders-Ferranto, were dancing together at their table. Same stated he informed Mr. Opong and Mr. Sanders they were not allowed to dance while in the establishment. Mr. Young stated Mr. Opong became irate and began to act disorderly. Mr. Young stated he then escorted them out and Mr. Opong then kicked the door. These officers spoke to the manager (Jose Iglesias) who stated the damage of the door was approximately going to cost between $175-$200 dollars. (Continue on Page 2)

It should be noted that Mr. Opong's sneaker had fell off during the incident. Mr. Young brought the shoe out when these officers arrived on scene. It should be noted that when Mr. Young handed the sneaker over to this officer, the inside of the sneaker was filled with ketchup. I asked Mr. Young why the shoe was filled with ketchup, he stated he did not know. All parties involved were advised accordingly. Nothing further at this time.


End of Report.
BWR

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 2 |
|---|---|---|---|---|---|
| Bravo, Devante: PO B985 | 12/26/20 | rdorilus | | 20-172890 | |




# Elizabeth Police Department

### 1 Police Plaza, Elizabeth, NJ 07201
### Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004
## CAD Report

| CAD # | Case # | Date | Time of Call | Dispatched | Arrived | Cleared | 911 |
|---|---|---|---|---|---|---|---|
| 20-172890 | 20-172890 | 12/26/20 | 17:23 | 17:36 | 17:53 | 19:39 | |

| Reg. | St. | Make | Color | Model | Class | Year | Exp | Race | SI | Warning |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 2B | | |

| Incident Type | Business / School / Location Name |
|---|---|
| Intoxicated Person | |

| Location: Street # | Street Name | Apt.# | Cross Street / Nearest Intersection | Zone |
|---|---|---|---|---|
| 821 | Spring Street | | | 4 |

| Contact (Lastname, Firstname) | Contact Address | Contact Phone |
|---|---|---|
| Young, cory | 821 Spring street Elizabeth NJ | ███████ |

| Officer(s) | Car(s) | Date | Dispatched | Arrived | Cleared | Time on Scene |
|---|---|---|---|---|---|---|
| Bravo, Devante: PO B985 | 544 | 12/26/20 | 17:36 | 17:53 | 19:39 | 01:45 |

| Average Response Time for this Call: | Dispatched By: | Disposition: |
|---|---|---|
| 00:17:12 | | Cleared Report Submitted |

| Notes | Time | Entered By |
|---|---|---|
| Intoxicated male broke the door the lobby and vandalizing cars | 12/26/20 17:28 | odiaz |
| he is with the security guard secured | 12/26/20 17:30 | odiaz |

# Exhibit 25

# Elizabeth Police Department

**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**

## Incident Report

### Incident Details:

| Case Number | Time Reported | Date Reported | Time Occurred | Date Occurred | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 911 | Completed |
|---|---|---|---|---|---|---|---|---|---|
| 21-011907 | 22:08 | 01/26/21 | 22:08 | 01/26/21 | | | | X | X |

### Incident Type:

Fight

### Incident Location:

| Street # | Street Name | Intersection / Cross Street of: |
|---|---|---|
| 821 | Spring Street | |

Business / Common Location Name
The Lobby

### Contact Information: **V**ictim  **S**uspect  **C**omplainant  **W**itness  **D**river  **A**rrest  **P**assenger  **M**issing  **I**nvolved  **O**ther

| Code | Contact Name | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| A | Kongo, Sheereen | | | | | | | |
| | Address | | | | | Primary Phone | | Secondary Phone |
| O | Hudson, Erica | | | | | | | |
| | Address | | | | | Primary Phone | | Secondary Phone |
| O | Ligabo, Anastasia | W | | | | | | |
| | Address | | | | | Primary Phone | | Secondary Phone |
| O | Nortar-Francesca, Destiny | | | | | | | |
| | Address | | | | | Primary Phone | | Secondary Phone |
| V | Lubin, Jehovah | | | | | | | |
| | Address | | | | | Primary Phone | | Secondary Phone |
| O | Giraldo, Juan | F | | | | | | |
| | Address | | | | | Primary Phone | | Secondary Phone |
| | Contact Name #7 | | | | | | | |
| | Address | | | | | Primary Phone | | Secondary Phone |
| | Contact Name #8 | | | | | | | |
| | Address | | | | | Primary Phone | | Secondary Phone |

### Property Information:

| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

### Automobile Information:

| | Vehicle Code | Year | Make | Body Type | Model | Color | Registration | State | VIN |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 1 |
|---|---|---|---|---|---|
| Tovar, George: PO T867 | 01/26/21 | rvazquez | | 21-011907 | |



# Elizabeth Police Department
**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**
## Incident Report

On 01/27/2021, Officer Arrarte and I were dispatched to the above address for a fight. Upon arrival we were met on scene by 14 Baker Officers (Morales / Moreno) and Power 2 (Batista, Lawson) who were out with a group of females who were complaining of being assaulted by the bouncer of the restaurant. The females would be later identified as Sheereen Kongo, Erica Hudson, Anastasia W. Ligabo, and Destiny Nortar-Francesca.

We entered the establishment and spoke with the manager Juan F. Giraldo who stated the females and a large male attacked the bouncer Jehovah Lubin. According to Juan they also deployed pepper spray in the direction of Mr. Lubin. Mr. Giraldo allowed us to see video surveillance of the incident. At approx. 22:00hrs. you can see the females in the lobby area of the Lobby disputing with someone inside the restaurant. At this point in time Mr. Giraldo informs us he was asking them to leave since it was now time to close but they kept refusing to leave the restaurant. You can then see Destiny try to force herself through the front doors where Mr. Lubin was standing. She tried to push him out the way so he started to escort her outside. Destiny then swings in an aggressive manor at Mr. Lubin striking him the face. She was then followed by the other three females Sheeren, Erica, and Anastasia who began to assault Mr. Lubin as he tried to close the door. During this time a male who appeared to be part of the group removed what appears to be pepper spray from his pocket and sprayed Mr. Lubin directly in the face. Mr. Lubin then reacts by trying to grab the male suspect as he tries to runaway. You can then see in video surveillance Mr. Lubin grab the male suspect and the two began to tussle on the ground. At this point all four females jumped on Mr. Lubin back and an all out fight began.

We went outside and tried to gather information from the four females and the male. The male suspect had fled the scene already and was nowhere to be found. We tried to attend to Destiny who stated she had been punched by the bouncer. Destiny's forehead was swollen with a large bump. We immediately requested for EMS to be notified.  While trying to gather information the females started acting belligerent and refused to answer any question. One female in specific was later identified as Sheereen Kongo. Sheereen refused to give us her information.  Sheereen kept interfering as we attempted to gather information from the other females. She kept shouting for us to arrest the bouncer. She then took out her cellphone and began sticking her phone in our faces as she recorded and at some points making contact with the officers. She continued to invade the space of the officers on scene as she would get close to them without wearing a mask.  We asked her repeatedly to please step away as we tried to attend to her friend. She then pushed me and positioned herself in between  Destiny and I.  As I moved her out the way she then began to shout profanity telling us to " Suck Her Dick" and demanding we arrest the bouncer. My partner Officer Arrarte asked her multiple times to calm down and stop interfering. At which point he advised any officer if she shoved her way through one more time to place her under arrest for disorderly conduct because we were attempting to advise Destiny of the proper procedure to file charges. Sheereen completely disregarded his command and shoved him and started yelling in Officer Arrarte's face. Officer Morales then grabbed Sheereen by the arm and advised her she was being placed under arrest. Sheereen began to wale her arms around in an attempt to prevent us from placing her under arrest. Officer Morales and I were eventually able to place her in handcuffs. As we escorted her to the patrol vehicle Sheereen started to scream and stiffen up her body in an attempt to prevent herself from walking. After a few minutes of tussling with Sheereen we made it to the patrol car were we attempted to place her in the back seat of our patrol vehicle.

| Officer of Record: | Date: | Reviewed By: | Admin Reviewed: | Case #: | Page 2 |
|---|---|---|---|---|---|
| Tovar, George: PO T867 | 01/26/21 | rvazquez | | 21-011907 | |



# Elizabeth Police Department
**1 Police Plaza, Elizabeth, NJ 07201**
**Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004**
## Incident Report

Sheereen refused to get into our car and tried multiple times to exit the vehicle. She began to kick and scream and lock her legs on the door so we wouldn't be able to close them. After a few minutes of tussling with her she finally was inside our patrol car. EMS arrived on scene and attended to Destiny.  We then escorted Sheereen to headquarters were she continued her disorderly conduct.

 Once at headquarters she continued to shout profanity and preventing us from knowing her information. At this point we were still uncertain as to whether she was a minor or an adult. With the assistance of Officer Tahiry she was able to gather some information from Sheereen. Officer Arrarte and I offered Sheereen a new mask to wear while in cellblock. Sheereen refused to wear it and continued to tell us to "SUck MY DICK". She then turned towards my direction and removed her mask and intentionally coughed in my face. She was then placed into a holding cell. While in the holding cell Sheereen deliberately stuck her finger down her mouth and began to vomit all over our floor. We then had to call EMS to cellblock were they arrived and transported SHeereen to Trinitas Hospital. With the assistace of 4 Power Officer's (Garcia / Romero) they were able to stay at the hospital with Sheereen without incident.

 We notified the Union County on call A/P. Union County A/P Valdinoto contacted me and approved the following charges,
-Disorderly Conduct 2C:33-2(a)1
-Assault on Police 2C:12-1b(5)a

Sheereen was transported back to headquarters without incident by Power 4( Garcia, Romero)


All parties were advised accordingly.

BWR



# Elizabeth Police Department

1 Police Plaza, Elizabeth, NJ 07201
Phone: 908-558-2000  Fax: 908-558-2038  Mun. Code: 2004

## CAD Report

| CAD # | Case # | Date | Time of Call | Dispatched | Arrived | Cleared | 911 |
|-------|--------|------|--------------|------------|---------|---------|-----|
| 21-011907 | 21-011907 | 01/26/21 | 22:08 | 22:10 | 22:15 | 05:37 | ✕ |

| Reg. | St. | Make | Color | Model | Class | Year | Exp | Race | SI | Warning |
|------|-----|------|-------|-------|-------|------|-----|------|----|---------|
| | | | | | | | | | | |

| Incident Type | Business / School / Location Name |
|---------------|-----------------------------------|
| Fight | The Lobby |

| Location: Street # | Street Name | Apt.# | Cross Street / Nearest Intersection | Zone |
|--------------------|-------------|-------|-------------------------------------|------|
| 821 | Spring Street | | | 4 |

| Contact (Lastname, Firstname) | Contact Address | Contact Phone |
|-------------------------------|-----------------|---------------|
| | | ▓▓▓▓▓▓ |

| Officer(s) | Car(s) | Date | Dispatched | Arrived | Cleared | Time on Scene |
|------------|--------|------|------------|---------|---------|---------------|
| Tovar, George: PO T867 | 871 | 01/26/21 | 22:10 | 22:15 | 05:37 | 07:22 |
| Batista, Juan: PO B937 | 876 | 01/26/21 | 22:10 | 22:13 | 22:59 | 00:46 |
| Morales, Carlos M: PO M980 | 904 | 01/26/21 | 22:12 | 22:12 | 22:59 | 00:47 |
| Garcia, Irlanda: PO G978 | 544 | 01/26/21 | 22:12 | 22:15 | 23:21 | 01:06 |
| Cervantes, Rodrigo: PO C927 | CP12 | 01/26/21 | 22:14 | 22:14 | 22:56 | 00:42 |
| Dorilus, Rodney: Sgt. D763 | 29 | 01/26/21 | 22:55 | 22:55 | 23:10 | 00:14 |
| Cervantes, Rodrigo: PO C927 | CP12 | 01/26/21 | 22:56 | 22:56 | 22:57 | 00:00 |
| Garcia, Irlanda: PO G978 | 544 | 01/27/21 | 00:21 | 00:27 | 03:19 | 02:52 |
| Dorilus, Rodney: Sgt. D763 | 29 | 01/27/21 | 00:33 | 00:34 | 00:43 | 00:09 |

| Average Response Time for this Call: | Dispatched By: | Disposition: |
|--------------------------------------|----------------|--------------|
| 00:01:54 | | Cleared Report Submitted |

| Notes | Time | Entered By |
|---|---|---|
| fight in lobby between manager and 2 females | 01/26/21 22:09 | tmarques |
| woman bleed | 01/26/21 22:19 | odiaz |
| ems in route | 01/26/21 22:24 | odiaz |
| 1 female to HQ | 01/26/21 22:34 | Cestremera |
| p4 riding in ambulance | 01/26/21 22:40 | pmurphy |
| p2 at hq with 1 female arrest | 01/26/21 22:40 | pmurphy |
| P4 at hospital | 01/26/21 22:47 | Cestremera |
| going to trinitas with arrest | 01/27/21 0:01 | pmurphy |
| 4P responding to trinitas fast track 5 to assist 2P | 01/27/21 0:23 | rscharpnick |
| bringing female back to hq | 01/27/21 2:57 | fkelly |
| P4 at HQ | 01/27/21 3:00 | agissendaner |

# Exhibit 26



Christian A. Cavallo | Partner
Direct 973.681.7004 | CCavallo@goldbergsegalla.com

December 16, 2022

**Via Mail & Certified Mail, R.R.R.**
Colonial Restaurant LLC
821 Spring Street
Elizabeth, NJ 07208

    **Re: Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud,**
       **Administrator ad Prosequendum v. Sergio Cabrerachavez**
       **Docket No.: MID-L-004103-22**
       **Claim No.: 02110244**
       **Policy No.: CPS3985594 (Effective 5/5/21 to 11/15/21)**
       **Date of Loss: 6/19/21**

To Whom It May Concern:

    This firm has been retained by Nationwide E&S/Specialty Claims ("Nationwide"), on behalf of Scottsdale Insurance Company ("Scottsdale"), and Nationwide is in receipt of the above-referenced lawsuit filed by the Estate of Ajay P. Persaud ("Persaud") against, among others, Colonial Restaurants, LLC d/b/a "The Lobby" captioned: *Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez, an individual, et al.*, Superior Court of New Jersey, Middlesex County, Docket No.: MID-L-4103-22 ("Lawsuit").

    Nationwide has had the opportunity to review Plaintiff's Complaint and other relevant documents. Nationwide has also reviewed the relevant terms, conditions, exclusions, and limitations of the Scottsdale policy. Based on its evaluation of these materials, Nationwide offers to defend Colonial Restaurant LLC ("Colonial" and/or "Insured") in the above-referenced lawsuit, subject to a full and complete reservation of all of Nationwide's rights under the Scottsdale policy, at law, and in equity. The details of Nationwide's offer of a defense for the Lawsuit under a reservation of rights are set forth below. <u>Colonial has the right to accept or reject Nationwide's offer of a defense under a reservation of rights.</u>

<u>**Factual Background**</u>

***The Lawsuit***

    On or about August 15, 2022, the Estate of Persaud, by and through Desiree Persaud ("D. Persaud"), commenced the Lawsuit. Subsequently, on or about October 12, 2022, the Estate filed a Second Amended Complaint. Based on Scottsdale's understanding, the Second Amended Complaint is the operative complaint in the Lawsuit. The Second Amended Complaint names, among others, the following defendants: Sergio Cabrerachavez ("Cabrerachavez"); The Lobby; Cotugno Investments, Inc. ("Cotugno"); The Lobby Group NJ LLC d/b/a "The Lobby"; JWPA, LLC d/b/a "The Lobby"; and Colonial Restaurants, LLC d/b/a "The Lobby". On or about October 28, 2022, the Second Amended Complaint was dismissed against Cotugno via Consent Order.

Colonial Restaurant LLC
December 16, 2022
Page 2 of 15

In Count One of the Second Amended Complaint, it is alleged, on or about June 19, 2021, Persaud was a motorcyclist traveling on US 1 at or near the road's intersection with North Avenue in Elizabeth, New Jersey. *See* Lawsuit, ¶ 1. On that date, Cabrerachavez allegedly operated his pick-up truck in a negligent and unreasonable manner as to cause his vehicle to strike Persaud, who was riding on a motorcycle. *See* Lawsuit, ¶ 3. As a result of Cabrerachavez's alleged negligence, Persaud sustained bodily injuries that resulted in his death. *See* Lawsuit, ¶ 4.

In Count Two, it is alleged that the defendants, The Lobby, Cotugno, The Lobby Group NJ LLC d/b/a "The Lobby", JWPA, LLC d/b/a "The Lobby", and Colonial Restaurants, LLC d/b/a "The Lobby" had ownership and/or control of an alcohol beverage serving establishment, commonly known as "The Lobby" located at 821 Spring Street, Elizabeth, NJ. *See* Lawsuit, ¶ 2. On or about June 18, 2021, into the early hours of June 19, 2021, the aforementioned defendants, through their agents, servants, and/or employees, allegedly served alcoholic beverages to Persaud in a negligent and unreasonable manner, while Persaud was visibly intoxicated. *See* Lawsuit, ¶ 3. As a result of the alleged negligent and unreasonable service of alcoholic beverages to Persaud by the defendants, Persaud left The Lobby in an intoxicated condition and was involved in a motor vehicle accident. *See* Lawsuit, ¶ 4. The alleged negligence of the defendants, in the negligent service of alcoholic beverages to Persaud, while he was visibly intoxicated, allegedly constituted a substantial factor in the causing of the accident. *See* Lawsuit, ¶ 5. As a result of the defendants' alleged negligence, Persaud sustained bodily injuries that resulted in his death. *See* Lawsuit, ¶ 7.

Count Three is directed against John Does and/or ABC Companies.

Count Four asserts a wrongful death claim. In this count, it is alleged that this action was based upon the statute identified as "The Death Act of The State of New Jersey", N.J.S.A. 2a:3-1, *et seq*. *See* Lawsuit, ¶ 2. It is alleged, as a result of the death of Persaud, his next of kin will be deprived of his future society, services, companionship, and earnings. *See* Lawsuit, ¶ 4.

Finally, Count Five asserts a Survival Action claim. It is alleged in this count that D. Persaud and Tillack Persaud are the next of kin of Persaud and were left surviving him at the time of his death. *See* Lawsuit, ¶¶ 2-3. It is alleged, as a result of the defendants' negligence, Persaud sustained bodily injuries causing him to suffer prior to his death. *See* Lawsuit, ¶ 4. The survival action is brought pursuant to N.J.S.A. 2A:15-3. *See* Lawsuit, ¶ 5.

### *The Contract*

There appears to be a Lease Agreement between "Cotugno Investments, Inc.", as the Landlord, and "JPWA, LLC", as the Tenant, for the premises located at 821 US Highway 1, Elizabeth, New Jersey. Scottsdale is unaware of any contracts between Cotugno and Colonial.

### **The Tender**

Nationwide first received notice of the June 18-19, 2021 accident on or about October 5, 2022 when Cotugno tendered its defense and indemnity to JBWA, LLC/The Lobby in connection with the Lawsuit. To date, Colonial has not sought coverage under the Policy for the Lawsuit.

Colonial Restaurant LLC
December 16, 2022
Page 3 of 15

## The Insurance Applications

### *Application #1*

The Bars/Restaurant/Taverns General Liability Application for Colonial with a location address of 821 Spring Street, Elizabeth, NJ, which was signed and dated by Terry Gonzalez on May 21, 2021, included the following questions and responses.

In Question #2, the application asked for the Annual gross sales, for the next twelve (12) months. In response, $120,000 was listed for alcohol sales, and $230,000 was listed for food sales.

In Question #3, the application asked the number of years in business. In response, "new venture" was listed. Additionally, in Questions #28, the application requested prior carrier information. In response, "N/A" was listed.

In Question #5, the application requested the opening and closing times per day. In response, "11 AM – 1 AM" was listed.

In Question #17, the application asked whether there was live entertainment on the premises. In response, "no" was marked.

In Question #23, the application asked the number of bouncers, doormen, and other security personnel. In response, "no" was marked.

In Question #30, Loss History, the application requested the applicant indicate all claims or losses or occurrences that may give rise to a claim for the prior three (3) years. "N/A" was listed in response.

### *Application #2*

Additionally, the Liquor Liability Application for Colonial, which was signed and dated on May 5, 2021, included the following questions and responses.

In Question #6, the application requested the estimated liquor receipts. In response, $120,000 was listed. Additionally, in Question #11, when asked about the percentage of liquor receipts to total receipts, "30%" was listed.

In Questions #12 and #13, the application asked how many years the applicant had been in business, and how many years it had been at this location. "New Venture" was listed in response to both questions. Additionally, in Questions #38, with respect to prior carrier information, "N/A" was listed in response.

In Question #16, the application asked if there was Hookah exposure. "No" was marked in response.

In Question #17, the application asked what time the location closed. "1 AM was listed". Additionally, in that same question, when asked hours of serving, "11 AM – 1 AM" was listed.

Colonial Restaurant LLC
December 16, 2022
Page 4 of 15

In Question #29, the application asked the applicant to check all boxes that were applicable to security activities. In response, no boxes were checked, e.g., the box for bouncers was not checked.

In Question #31, the application asked about the types of entertainment activities. In response, "N/A" was listed, e.g., the live entertainment box was not checked.

In Question #39, Loss History, the applicant was asked to indicate all liquor liability claims or lawsuits or occurrences that may give rise to a claim for the prior three (3) years. "N/A" was listed in response.

## The Investigation

Prior to the accident, on or about June 16, 2021, Tapco Underwriters, Inc. ("Tapco"), as an agent of Nationwide, requested an inspection of Colonial's premises located at 821 Spring Street, Elizabeth, New Jersey. On or about August 25, 2021, the inspection was conducted by York Risk Control Services, LLC ("York"), which included an interview with Ashok Dutta, the Insured contact.

According to the inspection, the total sales of the establishment were $3,500,000, and its liquor sales were $1,050,000. With respect to hours of operation, the investigation determined that the premises operated Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m. It was also determined that there were bouncers, doormen, and/or security at the premises, however, they were not armed. With respect to whether there was a dance floor, the inspection report stated there was "none", but noted there was a certificate of dance hall posted. It was also determined that the establishment had been in business for fifteen (15) years at this particular location. The inspection report also stated there was live entertainment at the premises, however, the type and frequency were not provided.

## The Prior Claims And Lawsuits

Additionally, a review of New Jersey's court dockets has revealed the following lawsuits were commenced within the last three (3) years against Colonial and/or The Lobby. First, on or about January 31, 2019, Yesina Melendez ("Melendez") commenced the lawsuit captioned: *Yesina Melendez v. The Lobby a/k/a The Lobby Sports Bar And Lounge, et al.*, Docket No.: MID-L-001080-19 ("Melendez Lawsuit"). On or about May 17, 2019, an amended complaint was filed naming Colonial as a defendant in the Melendez Lawsuit. In the amended complaint, Melendez claimed to have suffered injuries as a result of a slip and fall, which occurred on February 4, 2018. It was alleged as a result of Colonial's negligence, Melendez suffered her claimed injuries. According to the docket, on or about November 9, 2020, the case was resolved via stipulation.

Second, on or about June 5, 2020, Bondreice Nakala Hutchinson ("Hutchinson") commenced the lawsuit captioned: *Bondreice Nakala Hutchinson v. Colonial Restaurant d/b/a The Lobby, et al.*, Docket No.: MID-L-003607-20 ("Hutchinson Lawsuit") against, among others, Colonial Restaurant d/b/a The Lobby. According to the complaint, on or about July 1, 2018, while in the "The Lobby", located at 821 Spring Street, New Jersey, someone bumped into a table causing a hot hookah to fall on the plaintiff. According to the docket, on or about June 9, 2021, the case was resolved via stipulation.

Colonial Restaurant LLC
December 16, 2022
Page 5 of 15

Third, on or about July 31, 2019, Benjamin Casta ("Casta") commenced the lawsuit captioned: *Benjamin Casta v. Colonial Restaurant LLC d/b/a The Lobby, et al.*, Docket No.: UNN-L-002718-19 ("Casta Lawsuit") against, among others, Colonial d/b/a The Lobby. In the complaint, it was alleged as a result of the defendants' negligence, Casta sustained injuries in an unspecified incident. According to the docket, on or about October 24, 2020, the case was resolved via stipulation.

Fourth, on or about January 19, 2021, Diamante Suarez commenced the lawsuit captioned: *Diamante Suarez v. The Lobby, et al.*, Docket No.: UNN-L-000192-21 ("Suarez Lawsuit") against, among others, The Lobby. According to the lawsuit, due to the defendants' negligence, the plaintiff allegedly suffered injuries at the premises located at 821 Spring Street, Elizabeth, New Jersey. According to the docket, on or about August 26 2022, a correspondence was filed with the court advising that a settlement had been reached in the matter.

Additionally, based on Nationwide's understanding, on or about July 25, 2015, there was an assault in the parking lot of the 821 Spring Street premises involving Kyle Nan Ness.

### The Scottsdale Policy

Scottsdale issued policy # CPS3985594 to Colonial with an effective date of May 5, 2021 (the "Scottsdale Policy" or the "Policy"). The Named Insured is identified as a "Limited Liability Company" in the Policy. The Policy is comprised of a Commercial General Liability Coverage Part and a Liquor Liability Coverage Part. The Policy's Schedule of Locations (UTS-SP-3 (8-96)) lists Premises No. 1 as 821 Spring St., Elizabeth, New Jersey.

The Policy's Commercial General Liability Coverage Part Supplemental Declarations page lists the General Aggregate (other than Products / Completed Operations) limit as $2 million. Coverage A – Bodily Injury and Property Damage Liability Limits are listed as $1 million per occurrence. Additionally, the Commercial General Liability Coverage Part Extension Of Supplemental Declarations (CLS-SP-1L (10-93)) lists the Class Description of Premises No. 1 as: "Restaurants – With Sale Of Alcoholic Beverages That Are 30% Or More Of But Less Than 75% Of The Total Annual Receipts Of The Restaurants – Without Dance Floor".

The Liquor Liability Coverage Part Supplemental Declarations page (CLS-SD-5 (8-01)) lists the aggregate limit as $2 million, with a $1 million each common cause limit. Item 3, Classification and Premium lists the Classification as "Restaurants, Taverns, Hotels, Motels, Including Package Sales (5816A)".

On or about October 13, 2021, a Notice of Cancellation Or Refusal To Renew, with an effective date of November 15, 2021, was issued in connection with the Policy. The Notice advised that this action had been taken for the following reasons: "Company Request – Substantial Change in risk assumed".

The Policy utilizes the Common Policy Conditions Form, (IL 00 17 11 98), which states, in pertinent part, as follows:

All Coverage Parts included in this policy are subject to the following conditions.

Colonial Restaurant LLC
December 16, 2022
Page 6 of 15

…

### D.  Inspections And Surveys

**1.**  We have the right to:

    **a.**  Make inspections and surveys at any time;

    **b.**  Give you reports on the conditions we find; and

    **c.**  Recommend changes.

**2.**  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of any workers or the public.  And we do not warrant that conditions:

    **a.**  Are safe or healthful; or

    **b.**  Comply with laws, regulations, codes or standards.

**3.**  Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.**  Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

The Policy's Commercial General Liability Coverage Form, (CG 00 01 04 13) states, in pertinent part, as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

…

### Section I – Coverages

### Coverage A – Bodily Injury And Property Damage Liability

### 1.  Insuring Agreement

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to

Colonial Restaurant LLC
December 16, 2022
Page 7 of 15

which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

…

## 2. Exclusions

This insurance does not apply to:

…

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol:

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, whether or not a fee is charged or a license is required

Colonial Restaurant LLC
December 16, 2022
Page 8 of 15

for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

…

## Section II – Who Is An Insured

…

**1.** If you are designated in the Declarations as:

…

**c.** A limited liability company, you are an insured. Your members are also insured, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers.

…

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

…

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not show as a Named Insured in the Declarations.

...

## Section IV – Commercial General Liability Conditions

…

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

Colonial Restaurant LLC
December 16, 2022
Page 9 of 15

      **(3)**  The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.**  If a claim is made or "suit" is brought against any insured, you must:

      **(1)**  Immediately record the specifics of the claim or "suit" the date received; and

      **(2)**  Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

…

**6.**  **Representations**

By accepting this policy, you agree:

  **a.**  The statements in the Declarations are accurate and complete;

  **b.**  Those statements are based upon representations you made to us; and

  **c.**  We have issued this policy in reliance upon your representations.

…

The Policy contains the Liquor Liability Coverage Form, (CG 00 33 04 13) which states, in part, as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

…

**Section I – Liquor Liability Coverage**

**1.**  **Insuring Agreement**

  **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance

Colonial Restaurant LLC
December 16, 2022
Page 10 of 15

does not apply.  We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result.  But:

…

### Section II – Who Is An Insured

**1.**  If you are designated in the Declarations as:

…

**c.**  A limited liability company, you are an insured.  Your members are also insured, but only with respect to the conduct of your business.  Your managers are insured, but only with respect to their duties as your managers.

…

**3.**  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

…

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

…

### Section IV – Liquor Liability Conditions

…

**2. Duties In The Event Of Injury, Claim Or Suit**

**a.**  You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim.  To the extent possible, notice should include:

**(1)**  How, when and where the "injury" took place;

**(2)**  The names and addresses of any injured persons and witnesses; and

**(3)**  The nature and location of any "injury".

**b.**  If a claim is made or "suit" is brought against any insured, you must:

Colonial Restaurant LLC
December 16, 2022
Page 11 of 15

> **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>
> **(2)** Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> …

**6. Representations**

> By accepting this policy, you agree:
>
> **a.** The statements in the Declarations are accurate and complete;
>
> **b.** Those statements are based upon representations you made to us; and
>
> **c.** We have issued this policy in reliance upon your representations.
>
> …

The Policy's Punitive Or Exemplary Damage Exclusion, (UTS-74g (8-95), states:

> In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.
>
> Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.
>
> If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.
>
> …

Please understand that while this Reservation of Rights And Non-Waiver Agreement quotes, references, and/or paraphrases only certain provisions of the Scottsdale Policy, Nationwide expressly reserves its right to rely on all of the provisions of the Policy, whether or not quoted, referenced, and/or paraphrased herein.

<u>**Nationwide's Offer To Defend Colonial Restaurant LLC For The Lawsuit, Subject To A Reservation Of Rights**</u>

Based on the information available to Nationwide at this time, and given the coverage issues discussed below, Nationwide offers to defend Colonial for the Lawsuit under the Scottsdale Policy,

Colonial Restaurant LLC
December 16, 2022
Page 12 of 15

subject to a full and complete reservation of all of Nationwide's rights under the Policy, at law, and in equity. In particular, Nationwide reserves its right to deny coverage to Colonial for the Lawsuit, to withdraw its defense of Colonial for the Lawsuit, to refuse to indemnify Colonial for any liability or other legal obligation Colonial incurs for the Lawsuit, to seek reimbursement of its defense costs incurred on Colonial's behalf for the Lawsuit, to seek a judicial declaration that there is no coverage available to Colonial for the Lawsuit under the Policy, and to rescind the Policy. Specifically, Nationwide reserves its rights under the following provisions of the Scottsdale Policy.

First, the Policy's Commercial General Liability Coverage Part, Section IV – Commercial General Liability Conditions, and the Policy's Liquor Liability Coverage Part, Section IV – Liquor Liability Conditions, 6. Representations sections state that by accepting the Policy, Colonial agrees that the statements in the Declarations are accurate and complete, that those statements are based upon representations that Colonial had made to Nationwide, and Nationwide has issued the Policy in reliance of Colonial's representations. Here, Nationwide relied on the representations made by Colonial in its insurance applications. However, York's investigation, which was requested pre-accident, as well as additional investigation, has revealed that the representations in Colonial's insurance applications were false.

Specifically, in the insurance applications, the estimated liquor receipts were listed as $120,000. However, according to York's investigation, the premises' liquor sales are approximately $1,050,000. Next, in the insurance applications, when asked regarding the number of years in business, "new venture" was listed. However, according to York's investigation, the business has been operating at its 821 Spring Street location for fifteen (15) years. Additionally, in the applications, when asked regarding loss history for the prior three (3) years, "N/A" was listed. However, based upon Scottsdale's current understanding, several lawsuits, including but not limited to the Melenendez Lawsuit, the Hutchinson Lawsuit, the Casta Lawsuit, and the Suarez Lawsuit, as well as an assault claim from 2015, have been asserted against Colonial and/or "The Lobby" within the last three (3) years. Further, in the insurance applications, when asked about opening and closing times, "11 AM – 1 AM" was listed. Conversely, the inspection revealed that the premises' hours of operation are actually Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m. Additionally, in the insurance applications, when asked whether there was live entertainment on the premises, "no" was marked in response. However, the inspection indicated that unspecified live entertainment is provided at the premises. The inspection also revealed that there is a certificate of dance hall posted. In the insurance application, when asked if there was any Hookah exposure, "no" was marked. However, according to the Hutchinson Lawsuit, it appears that the plaintiff was allegedly injured by a Hookah at the 821 Spring Street premises. Finally, in the applications, when asked regarding the number of bouncers, doormen, and other security personnel, "no" was marked in response. However, according to the inspection, there are bouncers, doormen, and/or security at the premises. Accordingly, Nationwide reserves its rights to rescind the Policy or disclaim coverage to Colonial for the Lawsuit based on Colonial's material misrepresentations in its insurance applications.

Second, the Policy's Commercial General Liability Coverage Part and Liquor Liability Coverage Part, Section II – Who Is An Insured sections, state that, if the Insured is a limited liability

Colonial Restaurant LLC
December 16, 2022
Page 13 of 15

company, "you" are an insured. However, no organization is an insured with respect to the conduct of any current or past limited liability company that is not shown as a Named Insured in the Declarations. Here, the Lawsuit is commenced against, among others, "Colonial Restaurant, LLC d/b/a 'The Lobby'". The Policy's Named Insured is "Colonial Restaurant LLC". As such, to the extent that the plaintiff's claims are asserted against an organization that does not constitute an insured under the Policy, Scottsdale must reserve its rights on this basis. For that reason, at this time, Nationwide will not agree to provide coverage to any defendant in the Lawsuit other than Colonial.

Third, the Policy's Commercial General Liability Coverage Part, Section IV – Commercial General Liability Conditions and the Policy's Liquor Liability Coverage Part, Section IV – Liquor Liability Conditions sections state, in part, that Colonial must see to it that Scottsdale is notified as soon as practicable of an "occurrence" which may result in a claim. Additionally, if a claim is made or "suit" is brought, Colonial must notify Nationwide as soon as practicable. Here, the accident occurred on or about June 19, 2021. However, Nationwide's first notice of the claim and Lawsuit was on or about October 5, 2022 when Cotugno tendered its defense and indemnity. Further, to date, Colonial has not sought coverage from Nationwide for the Lawsuit which was commenced on or about August 15, 2022. Accordingly, Nationwide reserves its right to deny coverage to Colonial for the Lawsuit based on that party's failure to comply with the above condition.

Fourth, the Scottsdale Policy's Commercial General Liability Coverage Part contains the Liquor Liability exclusion, which excludes coverage for "bodily injury" for which any insured may be held liable by reason of causing or contributing to the intoxication of any person. This exclusion applies even if the claims against the insured allege negligence or wrongdoing in the supervision, hiring, training or monitoring of others by the insured. In the Lawsuit, it is alleged as a result of the negligent and unreasonable service of alcoholic beverages to Persuad, Persuad left The Lobby in an intoxicated condition and was involved in a motorcycle accident sustaining injuries that led to his death. Nationwide therefore disclaims coverage to Colonial, under the Policy's Commercial General Liability Coverage Part, for the Lawsuit based on the Liquor Liability exclusion.

Fifth, the Policy contains the Punitive Or Exemplary Damages exclusion that excludes coverage for punitive or exemplary damages. Additionally, punitive damages are not insurable as a matter of New Jersey law. As such, to the extent the Lawsuit seeks any such damages, Nationwide must disclaim coverage to Colonial for any punitive or exemplary damages sought against it in the Lawsuit based on the Punitive Or Exemplary Damages Exclusion and New Jersey law.

As set forth above, some or all of the claims asserted against Colonial in the Lawsuit may fall outside the scope of the coverage provided by the Scottsdale Policy, or the Scottsdale Policy may be void *ab initio* based on Colonial's material misrepresentations in its insurance applications. Accordingly, Nationwide offers to defend Colonial for the Lawsuit under the Scottsdale Policy, subject to an express reservation of rights under the Policy, at law, and in equity. <u>Colonial is entitled to accept or reject this offer.</u> If it accepts this offer, then Nationwide will retain the law firm of Milber Makris Plousadis & Seiden, LLP ("Milber Makris") to defend Colonial for the Lawsuit in accordance with the terms and conditions set forth in this Reservation of Rights And Non-Waiver Agreement.

Colonial Restaurant LLC
December 16, 2022
Page 14 of 15

If Colonial chooses to reject Nationwide's offer, Nationwide will not retain Milber Makris to defend Colonial for the Lawsuit, and instead, Colonial must retain, at its own expense, counsel of its choosing to defend its interests for the Lawsuit. Thereafter, Colonial may seek reimbursement from Nationwide for the reasonable and necessary defense costs it incurs for the Lawsuit, but only to the extent such defense costs were incurred in connection with a claim actually covered under the Scottsdale Policy.

To reject Nationwide's offer of a defense for the Lawsuit under a reservation of rights, Colonial must contact the undersigned in writing rejecting the offer <u>within thirty (30) days of the date of this Reservation of Rights And Non-Waiver Agreement</u>. If we do not hear from Colonial within that time period, Nationwide will assume that Colonial accepts and agrees to Nationwide's offer of a defense subject to the terms specified in this Reservation of Rights And Non-Waiver Agreement, and Nationwide will retain Milber Makris to defend Colonial for the Lawsuit, subject to the reservation of rights set forth herein.

Even if Colonial accepts the terms of Nationwide's offer of a defense for the Lawsuit under a reservation of rights, it may still wish to retain personal counsel, at its own expense, to work with Milber Makris to protect any potential uninsured exposure discussed above. Should Colonial accept this offer, it is not required to retain its own attorney to represent it for the Lawsuit. However, we bring this matter to Colonial's attention since it merits serious consideration. The decision of whether Colonial should employ a personal attorney for the Lawsuit given the coverage issues discussed above rests with Colonial alone.

Please also be advised that the Scottsdale Policy imposes upon Colonial a duty to cooperate with Nationwide in investigating, defending, or settling the claims asserted against it in the Lawsuit. Any failure on Colonial's part to comply with this duty may provide a separate and independent basis for Nationwide to deny coverage to Colonial for the Lawsuit under the Policy. As part of that obligation, we request that Colonial provide the following documents:

1. Copies of all contract or agreements between Cotugno and Colonial;

2. The certificate of formation, articles of incorporation, or other documents governing the formation and management of Colonial;

3. All documents regarding any relationship between Colonial and The Lobby;

4. Any and claims and/or lawsuits asserted against Colonial and/or The Lobby between 2018 and June 2021; and

5. All correspondences between Colonial or Lobby and any other person or entity regarding the incident involving Persaud or the Lawsuit.

<u>Please provide the documents and information requested above to the undersigned. Additionally, please contact the undersigned, as soon as possible, to further discuss this matter.</u>

Colonial Restaurant LLC
December 16, 2022
Page 15 of 15

Nothing in this letter constitutes, nor should it be construed by you as, a waiver of any of Nationside's rights under the Policy, at law, or in equity. Nor is it the purpose of this letter to waive any additional defenses available to Nationwide that further investigation may reveal. Instead, Nationwide specifically and unequivocally reserves any and all rights available to it under any policy issued by Nationwide, at law, and in equity.

If you are aware of any additional information relevant to Nationwide's current coverage position in this matter, please provide such information to the undersigned as soon as possible for further consideration. Thank you.

Pursuant to New Jersey Statute 17:29E-9, we advise you that Nationwide has an internal appeals procedure for the review of disputed claims. Colonial may utilize this process following decisions regarding a claim. To notify Nationwide that they are requesting this process be implemented on their behalf, Colonial must send notice to the following address:

Scottsdale Insurance Company
Attention: Jennifer Gay, CBS Operations
18700 North Hayden Road
Scottsdale AZ 85255
Phone: (800) 423-7675 Ext. 2898
Fax: (480) 483-6752

Colonial may also seek further review of this matter by the New Jersey State Insurance Claims Ombudsman at the following address:

Department of Banking and Insurance
Office of Insurance Claims Ombudsman
P.O. Box 472
Trenton, NJ 08625-0427
Phone: 800-446-7467
Fax: 609-292-2431
E-mail: ombudsman@dobi.state.nj.us

Very Truly Yours,

Christian A. Cavallo

☐ **Scottsdale Insurance Company**
   Home Office:  One Nationwide Plaza
                 Columbus, Ohio 43215
   Adm. Office:  8877 North Gainey Center Drive
                 Scottsdale, Arizona 85258

☐ **Scottsdale Surplus Lines Insurance Company**
   Adm. Office:  8877 North Gainey Center Drive
                 Scottsdale, Arizona 85258

☐ **Scottsdale Indemnity Company**
   Home Office:  One Nationwide Plaza
                 Columbus, Ohio 43215
   Adm. Office:  8877 North Gainey Center Drive
                 Scottsdale, Arizona 85258

## BARS/RESTAURANTS/TAVERNS GENERAL LIABILITY APPLICATION

| | |
|---|---|
| Applicant's Name: Colonial Restaurant | Agency Name: _____ |
| | Agent No.: _____ |
| Mailing Address: 821 Spring St. Elizabeth NJ 07208 | Address: _____ |
| | _____ |
| Location Address: Same | E-mail: _____ |
| | Phone No.: _____ |

**PROPOSED EFFECTIVE DATE: From** 5-5-21 **To** 5-5-22 **12:01 A.M., Standard Time at the address of the Applicant**

ANSWER ALL QUESTIONS—IF THEY DO NOT APPLY, INDICATE "NOT APPLICABLE" (N/A)

**Applicant is:** ☐ Individual    ☐ Corporation    ☐ Partnership    ☐ Joint Venture
☑ Limited Liability Company    ☐ Other (Specify) _____

**Website Address:** _____

**E-mail Address:** _____    **Phone No.:** _____

**Inspection Contact:** _____

**E-mail Address:** _____    **Phone No.:** _____

**Limits of Liability and Deductible Requested:**

| | |
|---|---|
| General Aggregate (other than Products/Completed Operations) | $ 7,000,000 |
| Products and Completed Operations Aggregate | $ 2,000,000 |
| Personal and Advertising Injury (any one person or organization) | $ 1,000,000 |
| Each Occurrence | $ 1,000,000 |
| Damage to Premises Rented to You (any one premise) | $ 100,000 |
| Medical Expense (any one person) | $ 5,000 |
| Other Coverages, Restrictions and/or Endorsements: | $ |
| Deductible | $ |

1. **Classification of risk** (select all that apply):
   - ☐ Banquet facility
   - ☐ Bring your own bottle establishment
   - ☐ Disco
   - ☐ Membership club
   - ☑ Bar/Tavern
   - ☐ Cabaret
   - ☐ Country club
   - ☐ Fine Dining
   - ☐ Nightclub
   - ☐ Bowling center
   - ☐ Comedy Club
   - ☐ Deli
   - ☐ Gentlemen's/Strip Club
   - ☑ Restaurant

2. **Annual gross sales:**

| | Past Twelve (12) Months | Next Twelve (12) Months |
|---|---|---|
| Alcohol Sales | | 120.000 |
| Food Sales | | 280.000 |
| Gambling | | |
| Other | | |
| Total | | |

New License
New Venture

3. Number of years in business: .................................................................
4. Number of years under current management: ............................................
5. Opening and closing time per day: ____11AM - 1AM____

6. **Schedule of Hazards:**

| Loc. No. | Classification Description | Class. Code | Exposure | Premium Basis (s) Gross Sales (p) Payroll (a) Area (c) Total Cost (t) Other |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

7. Are there any catering services available?........................................................ ☐ Yes ☑ No
   If yes: ☐ Off premises    ☐ On premises    Gross sales: ......................... $ _____
8. Types of meals served:    ☑ Full meals    ☐ Short order
9. Square footage of bar/tavern/restaurant:.................................................... 4500
10. Is applicant a BBQ restaurant? ....................................................................... ☐ Yes ☑ No
11. Is applicant a microbrewery that sells their products for off premises consumption?.......... ☐ Yes ☑ No
12. Are facilities available for use or rent for private parties, receptions, banquets or similar affairs? ☐ Yes ☑ No
    If yes:  Number of times per year: ......................................................... _____
    Describe: _____


Nationwide

13. Are patrons allowed to drink their own alcoholic beverages on the premises? ................................ ☐ Yes ☑ No

If yes:

    a. Are there procedures in place for handling violent or disruptive patrons? ........................... ☑ Yes ☐ No

    b. Is there table service? ........................................................................................................ ☑ Yes ☐ No

    c. Does applicant also sell alcohol? ...................................................................................... ☑ Yes ☐ No

14. Does applicant advertise or promote "happy hour" or other events when drinks are sold at a lower price than usual? ................................................................................................................... ☐ Yes ☑ No

15. Does applicant subscribe to a taxi or other service providing transportation home to apparently intoxicated persons? .................................................................................................................... ☐ Yes ☑ No

    If yes, describe: _____

16. Is there Hookah exposure (communal smoking)? ............................................................. ☐ Yes ☑ No

If yes:

    a. Any blending of tobacco by applicant? ............................................................................ ☐ Yes ☐ No

    If yes, what percentage of tobacco products: _____ %

    b. Does applicant import any tobacco products? .................................................................. ☐ Yes ☐ No

    If yes, what percentage of tobacco products: _____ %

    c. Does applicant allow underage persons to purchase and/or use the products? .............. ☐ Yes ☐ No

    d. How often does applicant clean pipes, tubing and mouthpieces? _____

17. Entertainment:

    a. Is there any live entertainment on premises? .................................................................. ☐ Yes ☑ No

    If yes:  Number of times per week: _____

    Describe: (include go-go dancers, topless, disco, exotic, female/male): _____

    b. Is there dancing? .............................................................................................................. ☐ Yes ☐ No

    If yes:  Number of times per week: _____

    Square footage of dance floor: _____

    c. Does applicant have any mechanical or amusement devices? ....................................... ☐ Yes ☐ No

    If yes:  How many? _____

    Describe: _____

    d. Is there a minimum or cover charge? ............................................................................... ☐ Yes ☐ No

    e. Are there sports on the premises? .................................................................................... ☐ Yes ☐ No

    If yes:  Provide complete details: _____

    f. Are sports sponsored off premises? ................................................................................. ☐ Yes ☐ No

    If yes:  Number of times per week: _____

    Give details: _____

    g. Does applicant sponsor any special events? .................................................................... ☐ Yes ☐ No

    If yes:  Describe: _____

h.  Is there any gambling? ................................................................................. ☐ Yes ☒ No

If yes:  Are there any "live" dealers? ........................................................ ☐ Yes ☐ No

Number of gambling machines: ................................................... ☐ Yes ☒ No

i.  Is there a play area for children? ............................................................... ☐ Yes ☒ No

j.  Are there any drinking games (i.e., beer pong, flip cup)? ............................. ☐ Yes ☒ No

If yes:  Describe: _____

_____

k.  Are there any pub crawls (pedal bus or motorized)? ................................. ☐ Yes ☒ No

l.  Does applicant own or sponsor party buses? ........................................... ☐ Yes ☒ No

m.  Are there any hatchet/axe throwing activities? ........................................ ☐ Yes ☒ No

18.  **Does applicant have parking area?** ........................................................ ☒ Yes ☐ No

If yes, is parking area well lit? ...................................................................... ☒ Yes ☐ No

19.  **Does applicant subcontract valet parking services on restaurant premises?** ......... ☐ Yes ☒ No

If yes: Annual subcontract cost: ................................................................. $_____

Do subcontractors provide certificate of insurance with liability limits equal or greater than our applicant? ................................................................................. ☐ Yes ☐ No

Do written contracts contain hold harmless agreements in favor of the applicant? ...................... ☐ Yes ☐ No

Does applicant require all subcontractors to include the applicant as an additional insured on the General Liability and Garage policies? ................................................... ☐ Yes ☐ No

20.  **Clientele:**
☒ Local residents    ☐ Families    ☐ Retirement community    ☐ College students    ☐ Seasonal residents

Median age of patrons:    ☐ 18-25    ☒ 26-30    ☒ 31-40    ☐ 41 and over

Are premises located near a college or university? .......................................... ☐ Yes ☒ No

21.  **In the past five years, has applicant been cited by the Liquor Control Commission?** .............. ☐ Yes ☒ No

If yes, give date(s) and full explanation: _____

_____

22.  **Are police records and background checks conducted on employees?** ........................ ☒ Yes ☐ No

23.  **Number of bouncers, doormen or security personnel:** ...................................... _____

Are bouncers, doormen or security personnel employees? .............................. ☐ Yes ☐ No

Are bouncers, doormen or security personnel independent contractors? ........... ☐ Yes ☐ No

If independent contractors, do they provide Certificates of Insurance and Additional Insured Endorsements to the applicant? ....................................................... ☐ Yes ☐ No

24.  **Does applicant have Workers' Compensation coverage in force?** ........................... ☒ Yes ☐ No

Total number of employees: ........................................................................ ☐

25.  **During the past three years, has any company ever canceled, nonrenewed, declined or refused similar insurance to the applicant?** (Not applicable in Missouri) ......................... ☐ Yes ☒ No

If yes, explain: _____

26.  **Does risk engage in the generation of power, other than emergency back-up power, for their own use or sale to power companies?** ........................................ ☐ Yes ☒ No


Nationwide

27. Does applicant have other business ventures for which coverage is not requested?.................... ☐ Yes ☑ No

If yes, explain and advise where insured: _____

28. **Additional Insured Information:**

| Name | Address | Interest |
|------|---------|----------|
|      |         |          |
|      |         |          |
|      |         |          |

29. **Prior Carrier Information:**

|                            | Year: | Year: | Year: |
|----------------------------|-------|-------|-------|
| Carrier                    |       |       |       |
| Policy No.                 |       |       |       |
| Coverage                   |       |       |       |
| Occurrence or Claims Made  |       |       |       |
| Total Premium              |       |       |       |

30. **Loss History:**

Indicate all claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the prior three years.          ☐ Check if no losses in the last three years.

| Date of Loss | Description of Loss | Amount Paid | Amount Reserved | Claim Status (Open or Closed) |
|--------------|---------------------|-------------|-----------------|-------------------------------|
|              |                     |             |                 |                               |
|              |                     |             |                 |                               |
|              |                     |             |                 |                               |
|              |                     |             |                 |                               |

This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. (Not applicable in AL, CO, DC, FL, KS, LA, ME, MD, MN, NE, NY, OH, OK, OR, RI, TN, VA, VT or WA.)

**NOTICE TO ALABAMA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**NOTICE TO COLORADO APPLICANTS:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

 Nationwide

GLS-APP-18s (8-18)                                   Page 6 of 8

**APPLICANT'S STATEMENT:**

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty.)

APPLICANT'S NAME AND TITLE: Terry Gonzalez

APPLICANT'S SIGNATURE: _____    DATE: 5-5-21

PRODUCER'S SIGNATURE: _____    DATE: _____

AGENT NAME: Hillary Comero    AGENT LICENSE NUMBER: 1537643

NAME AND PHONE NUMBER OF INDIVIDUAL TO CONTACT FOR INSPECTION/AUDIT: Terry Gonzalez
908 63 7976

---

**IMPORTANT NOTICE**

As part of our underwriting procedure, a routine inquiry may be made to obtain applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

---

GLS-APP-18s (8-18)

Page 8 of 8

Nationwide

Form Number SLPS-6-CERT-1

/_/_/_/_/_/ - /_/_/ - /_/_/_/_/_/
Transaction Number

**STATE OF NEW JERSEY**
**DEPARTMENT OF BANKING AND INSURANCE**
**SURPLUS LINES EXAMINING OFFICE**
**P.O. BOX 325**
**TRENTON, NEW JERSEY 08625-0325**

# CERTIFICATION OF EFFORT TO PLACE RISK WITH AUTHORIZED INSURER

This certification shall be submitted by the originating producer to the surplus lines agent, within 30 business days after the effectuation of any surplus lines insurance. The original of the certification must be maintained in the files of the surplus lines agent and a copy in the files of the producer and both must be available for inspection by the Commissioner for a period of at least five years.

Colonial Restaurant LLC.
(Name of Insured)

821 Spring St. Elizabeth NJ 07208
(Address of Insured)

821 Spring St. Elizabeth NJ 07208
(Location of Property or Risk)

6C / 1 million
(Insurance Coverage: Description and Amount)

////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

Whis Hill
(Originating Producer - Corporate or partnership)

Hillary Sermeno
(Originating Producer - Individual Name and/or Title)

1329 North Ave. Elizabeth NJ 07208
(Originating Producer - Complete Address)

The above hereby certifies that he/she is duly licensed as an insurance producer under the laws of New Jersey, and that: On or about _____, 20____, I was engaged by the insured named herein to procure insurance of the kind described herein and in the amount shown. I have made a diligent effort first to place this coverage with authorized insurers, each of which is authorized in New Jersey to write insurance of the kind requested and is an insurer that I had a good faith reason to believe might consider writing the type of coverage described herein.



**RWRSO**

## Certification of Effort To Place Risk With Authorized Insurer (continued)

### Page 2 of 2

The following insurers are among those that I contacted relative to this risk, or to substantially similar risks within the past 30 days:

| INSURER | REPRESENTATIVE | TELEPHONE NO. | DATE | RESULT CODE* |
|---------|----------------|---------------|------|--------------|
| CNA | | | | |
| State farm | | | | |
| Travelers | | | | |

*Result Codes: (enter appropriate code(s) for each insurer listed above)

**A.** - Having made a diligent effort, I was unable to obtain an offer/quote from this authorized insurer in the admitted market, which declined to accept all or any part of the risk.

AND/OR

**B.** - Having made a diligent effort, the only offer(s)/ quote(s) obtained reflected such a substantial increase in premium over similar coverage placed within the preceding 12 months that comparable coverage is, as a practical matter, unavailable from this authorized insurer in the admitted market.

AND/OR

**C.** - Having made a diligent effort, the only offer(s)/ quote(s) obtained reflect(s) such a substantial reduction in coverage from coverage placed within the preceding 12 months for substantially similar premium that comparable coverage is, as a practical matter, unavailable from this authorized insurer in the admitted market.

I certify that the foregoing statements made by me are true to the best of my knowledge and belief. I am aware that if any of the statements are willfully false, I am subject to civil and criminal penalties.

5-5-21
(Date)

Signature

Amended by R.2005 d.104, effective April 4, 2005.
See: 36 N.J.R.2144(a), 37 N.J.R.1065(a).

☐ **Scottsdale Insurance Company**
Home Office: One Nationwide Plaza
Columbus, Ohio 43215
Adm. Office: 8877 North Gainey Center Drive
Scottsdale, Arizona 85258

☐ **Scottsdale Surplus Lines Insurance Company**
Adm. Office: 8877 North Gainey Center Drive
Scottsdale, Arizona 85258

☐ **Scottsdale Indemnity Company**
Home Office: One Nationwide Plaza
Columbus, Ohio 43215
Adm. Office: 8877 North Gainey Center Drive
Scottsdale, Arizona 85258

## LIQUOR LIABILITY APPLICATION

### Complete a separate application for each location.

Applicant's Name: Colonial Restaurant

Agency Name: _____

Mailing Address: 821 Spring St.
Elizabeth NJ 07208

Agent: _____
Address: _____

Location Address: _____

E-Mail: _____

Website Address: _____

Phone No.: _____

PROPOSED EFFECTIVE DATE: From 5-5-21 To 5-5-22    12:01 A.M., Standard Time at the address of the Applicant

Inspection Contact Name: Terry Gonzalez    **Phone:** _____

ANSWER ALL QUESTIONS—IF THEY DO NOT APPLY, INDICATE "NOT APPLICABLE" (N/A)

**Applicant is:** ☐ Individual   ☐ Corporation   ☐ Partnership   ☐ Joint Venture
☑ Limited Liability Company   ☐ Other (Specify): _____

### Limits of Liability Requested

| Each Common Cause | Aggregate |
|---|---|
| $ 1,000,000 | $ 2,000,000 |

### 1. Classification of risk:

| | | |
|---|---|---|
| ☐ Arena/Stadium | ☐ Auditorium | ☐ Banquet Hall |
| ☐ Bar/Tavern | ☐ Bartender/Liquor service only | ☐ Bowling Alley |
| ☐ Casino/Gaming | ☐ Catering Service | ☐ Comedy Club |
| ☐ Concession Stand | ☐ Convenience Store | ☐ Drive-through Daiquiri Shop |
| ☐ Exercise and Health Studio | ☐ Exhibit Hall | ☐ Fairground |
| ☐ Gentlemen's/Strip Club | ☐ Grocery Store | ☐ Hotel/Motel |
| ☐ Liquor Distributor/Wholesaler | ☐ Liquor Manufacturer/Brewery | ☐ Liquor/Package Store |
| ☐ Microbrewery | ☐ Nightclub | ☐ Party Buses |
| ☑ Restaurant | ☐ Social Club | ☐ Special Event |
| ☐ Sports Field | ☐ Winery | |
| ☐ Other (Describe): _____ | | |

GLS-APP-28g (9-17)    Page 1 of 6

 Nationwide

2. Are patrons allowed to bring their own alcoholic beverages? .................................... ☐ Yes ☑ No

3. Are patrons allowed to self-serve themselves alcoholic beverages? .......................... ☐ Yes ☑ No

4. Has applicant ever been assessed a fine for violation of a law concerning the sale of alcohol, or had their liquor license suspended/revoked? .................................... ☐ Yes ☑ No

   If yes, when and why? _____

5. Name on liquor license: colonial restaurant    Type of liquor license: retail

6. Estimated liquor receipts: ............................................................................ $ 120,000

   Other receipts: .......................................................................................... $ _____

7. Average price for:

   Beer: ........................................................................................................ $ 6

   Wine: ........................................................................................................ $ 7

   Liquor: ...................................................................................................... $ 7

8. Percentage of receipts for on-premises consumption: ................................ 80 %

9. Percentage of receipts for off-premises consumption: ............................... _____ %

10. Estimated food receipts: ......................................................................... $ 280,000

11. Percentage of liquor receipts to total receipts: .......................................... 30 %

12. How many years has the applicant been in business? ............................... New venture

13. How many years has the applicant been at this location? .......................... New venture

14. Premises within city limits? ....................................................................... ☑ Yes ☐ No

15. Square foot area of establishment: 4500          (Maximum Occupancy: 80 )

16. How many days per week is the location open? ......................................... 7

17. What time does the location close? 1AM          Hours of serving: 11AM - 1AM

18. Number of servers? .................................................................................... 5

19. Have all servers been through alcohol awareness server training (i.e., TIPS, TOPS)? ............ ☑ Yes ☐ No

    If yes:

    Type of course: TIPS

    How often required? twice a year

20. Does insured have a ride home policy? ...................................................... ☐ Yes ☑ No

21. How often does the manager review liquor liability laws with employees (including penalties for serving intoxicated customers)? weekly

22. Are procedures in place regulating the sale of alcohol to minors and those under the influence? ☑ Yes ☐ No

    If yes, describe: ID scanners

    How is age of customer verified? ID scanners

23. Type of clientele: ☑ Area Residents    ☐ Area Workers    ☐ Tourists    ☐ College    ☐ Other: _____

24. Percent of clientele:

    25 and under: _____

    26-30: ............................................................................................... 40 %

    Over 30: ............................................................................................. 60 %

GLS-APP-28g (9-17)          Page 2 of 6          Nationwide

25.  **Type of area:** ☑ Industrial or Commercial  ☐ Residential  ☐ Rural  ☐ Other: _____
Located on or near college campus? ................................................................................... ☐ Yes ☑ No

26.  **Is there an entrance fee or cover charge?** .................................................................... ☐ Yes ☑ No
If yes, what is the amount? ............................................................................................... $ _____

27.  **Does applicant have "Happy Hour" or 2-for-1 drink specials?** ..................................... ☐ Yes ☑ No
Is last call announced? .................................................................................................... ☑ Yes ☐ No
Are customers allowed more than one drink at last call? ................................................ ☐ Yes ☑ No

28.  **Any internet or mail order liquor sales?** ....................................................................... ☐ Yes ☑ No

29.  **Security Activities:**
Security provided (check all applicable):
☐ Bouncers  ☐ Doormen  ☐ Off-Duty Police  ☐ Contracted Security Guards
☐ Inside  ☐ Outside  ☐ Armed  ☐ Unarmed
☐ Other (Describe): _____
Any firearms kept or carried on the premises? ............................................................... ☐ Yes ☑ No

30.  **Are there procedures for handling violent or disruptive patrons?** ................................ ☑ Yes ☐ No
If yes, describe:  The Restaurant & Nightclub Handbook

31.  **Types of entertainment activities:**
☐ Darts  ☐ DJ  ☐ Exotic Dancing  ☐ Jukebox  ☐ Karaoke  ☐ Pinball Machine
☐ Dance Floor ..................................................... Size: _____
☐ Electronic Games ............................................ Type: _____
☐ Live Entertainment .......................................... Type and how often: _____
☐ Mechanical Devices ........................................ Type: _____
☐ Pool Table(s) ................................................... Number: _____
☐ Other activities that would include patron participation (such as: wrestling, boxing, volleyball, etc.): _____

☐ Drinking Games (i.e., beer pong, flip cup) sponsored by the insured? ............................ ☐ Yes ☐ No
☐ Special Promotions ........................................................................................................ ☐ Yes ☐ No
If yes, describe: _____

32.  **Gentlemen's/Strip Clubs:**
Turnover rate for staff: _____  N/A
Are servers/dancers in training? ...................................................................................... ☐ Yes ☐ No
Does applicant prohibit serving of alcohol after hours to their staff? ............................... ☐ Yes ☐ No
Are clients allowed to purchase drinks for dancers/hostesses? ...................................... ☐ Yes ☐ No

33.  **Manufacturer:**  N/A
Are tours of facility provided? .......................................................................................... ☐ Yes ☐ No
Are free samples given? .................................................................................................. ☐ Yes ☐ No
If yes, how is quantity controlled? _____


Nationwide

**34. Distributor:**
Any sponsored events? ................................................................................................................................ ☐ Yes ☒ No
If yes, describe: _____

Policy for giving away alcoholic beverages by Sponsor? ......................................................................... ☐ Yes ☐ No
If yes, describe: _____

**35. Caterers:**
Are clients/guests allowed to mix their own drinks? ................................................................................. ☐ Yes ☒ No
Does caterer provide liquor or bartending service? ................................................................................... ☐ Yes ☐ No

**36. Additional Insured Information:**

| Name | Address | Interest |
|------|---------|----------|
|  | N/A |  |
|  |  |  |

**37. During the past three years, has any company ever canceled, declined or refused similar insurance to the applicant?** (Not applicable in Missouri) ................................................................................. ☐ Yes ☐ No
If yes, explain: _____ N/A _____

**38. Prior Carrier Information:**

|  | Year: | Year: | Year: |
|--|-------|-------|-------|
| **Carrier** |  |  |  |
| **Policy No.** |  |  |  |

**39. Loss History:**

Indicate all Liquor Liability claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the prior three years.   ☐ Check if no losses in the last three years.

| Date of Loss | Description of Loss | Amount Paid | Amount Reserved | Claim Status (Open or Closed) |
|--------------|---------------------|-------------|-----------------|-------------------------------|
|  | N/A | $ | $ |  |
|  |  | $ | $ |  |
|  |  | $ | $ |  |
|  |  | $ | $ |  |
|  |  | $ | $ |  |

This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.

I understand that Liquor Liability is a separate coverage part and the limits requested in this application apply solely to liquor liability coverage and may differ from the General Liability limits afforded in my commercial package policy.

I further understand that the Company is relying upon statements I have made in this application as an inducement to provide insurance for Liquor Liability coverage.


Nationwide

**FRAUD WARNING (APPLICABLE IN VERMONT, NEBRASKA AND OREGON):** Any person who intentionally presents a materially false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

**FRAUD WARNING (APPLICABLE IN TENNESSEE, VIRGINIA AND WASHINGTON):** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

**NEW YORK FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**APPLICANT'S STATEMENT:**

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty.)

APPLICANT'S SIGNATURE: _____    DATE: 5-5-21

CO-APPLICANT'S SIGNATURE: _____    DATE: _____

PRODUCER'S SIGNATURE: _____    DATE: 5-5-21

AGENT NAME: Hillary Semeno    AGENT LICENSE NUMBER: W537643

(Applicable to Florida Agents Only)

IOWA LICENSED AGENT: _____

(Applicable in Iowa Only)

**——— IMPORTANT NOTICE ———**

As part of our underwriting procedure, a routine inquiry may be made to obtain applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

**Nationwide**


Transaction Number

The undersigned applicant has been advised by the undersigned originating insurance producer and understands that an insurance policy written by a surplus lines insurer is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance.  Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance.

_____
**Applicant's Signature**

Terry Gonzalez
_____
**Applicant's Name (Print or Type)**

5-5-21
_____
**Date of Applicant's Signature**

_____
**Producer Signature**

Hillary Somero
_____
**Producer Name (Print or Type)**

5-5-21
_____
**Date of Producer Signature**

1537648
_____
**New Jersey Producer License Reference Number**



**RWRSO**

Exhibit 27



Christian A. Cavallo | Partner
Direct 973.681.7004 | CCavallo@goldbergsegalla.com

June 14, 2023

**<u>Via Mail & Certified Mail, R.R.R.</u>**
Colonial Restaurant LLC
821 Spring Street
Elizabeth, NJ 07208

Re:  **<u>Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud,</u>**
**<u>Administrator ad Prosequendum v. Sergio Cabrerachavez et al.</u>**
**Docket No.:  MID-L-004103-22**
**Claim No.:  02110244**
**Policy No.: CPS3985594 (Effective 5/5/21 to 11/15/21) (cancelled)**
**Date of Loss:  06/19/21**

Dear Sir/Madam:

This law firm is counsel for Nationwide E&S/Specialty Claims ("Nationwide"), on behalf of Scottsdale Insurance Company ("Scottsdale"), with regard to the above referenced lawsuit filed by the Estate of Ajay P. Persaud ("Persaud") against, among others, Colonial Restaurants, LLC d/b/a "The Lobby" (the "Lawsuit"). As you know, by letter dated December 16, 2022, Nationwide offered to defend Colonial Restaurants, LLC ("Colonial") for the Lawsuit under the listed commercial insurance policy Scottsdale issued to Colonial for the period May 5, 2021 to November 15, 2021 (the "Scottsdale Policy" or the "Policy"), subject to a full and complete reservation of all rights. Colonial accepted Nationwide's offer, and assigned defense counsel David Montag, Esq. of the law firm Milber Makris Plousadis & Seiden, LLP, who has been defending Colonial for the Lawsuit under the Policy subject to that reservation of rights. Another copy of the December 16th letter is enclosed and the terms and reservations set forth in that letter are expressly incorporated herein by reference.

As explained in the December 16th letter, Scottsdale previously cancelled the Policy effective November 15, 2021 because it learned of substantial changes in Colonial's business operations and the corresponding risks Scottsdale agreed to assume by issuing the Policy. That letter further explained that since learning of the underlying June 19, 2021 accident involving Persaud and of the Lawsuit on approximately October 21, 2021, Nationwide has been investigating whether material misrepresentations by Colonial in its applications for the Policy provide a basis for Nationwide to now rescind the Policy from its inception, such that the Policy would be treated as though it was never issued and there would be no coverage available under the Policy to any party for any claims, including the claims by Persuad that form the basis of the Lawsuit.

In particular, Nationwide has recently learned that Colonial made multiple material misrepresentations in its Bars/Restaurant/Taverns General Liability Application signed by Terry Gonzalez on behalf of Colonial and dated on May 21, 2021 ("Application #1"), and that Colonial also made multiple material misrepresentations its Liquor Liability Application signed by Mr. Gonzalez and dated on May 5, 2021 ("Application #2"). The applications state that Mr. Gonzalez read the applications and that he declared that to the best of his knowledge and belief all of the statements in the applications are true and that the statements are offered as an inducement to Scottsdale to issue

Colonial Restaurant LLC
June 14, 2023
Page 2 of 7

the Policy. Scottsdale and its agent Tapco Underwriters, Inc. ("Tapco") relied on each of these misrepresentations made in the applications when deciding whether to issue the Policy, the terms of the Policy, and the amount of premium to be charged. Copies of Application #1 and Application #2 are enclosed.

First, question number 1 of Application #1 and question 1 of Application #2 ask for the classification of the risk presented by Colonial's business. In response to both questions, Colonial checked "Bar/Tavern" and "Restaurant". It did not check the box for "Nightclub". Question 17.a. of Application # 1 asked if there is any live music at the insured premises and Question 17.b. asked if there is any dancing. In response, Colonial checked the box for "no" for Question 17.a. and wrote "NA [e.g., Not Applicable] for Question 17.b. Additionally, question number 31 in Application #2 asked about the types of entertainment activities held at the insured location, including dance floor and live entertain. In response, Colonial listed "N/A". Nationwide has learned that there was live entertainment at the premises, however, the type and frequency are not currently known. Additionally, with respect to whether there was a dance floor, Nationwide has learned that a certificate of dance hall was posted at the insured premises. Further, question number 5 in Application #1 asked Colonial's opening and closing times per day. In response, Colonial listed "11 AM – 1 AM". Similarly, question number 17 in Application #2 asked what time the insured location closed and the hours of service, and in response Colonial listed "1 AM". and "11 AM – 1 AM". Nationwide has since learned that Colonial operated Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m. Thus, Colonial's responses to all of these questions were false, as Colonial was operating a nightclub, rather than a bar/tavern or a restaurant, at the insured location.

Second, question number 2 of Application #1 asked for Colonial's annual gross sales for the next twelve months. In response, Colonial listed $120,000 for alcohol sales and $280,000 for food sales. Additionally, question numbers 6 and 10 of Application #2 requested Colonial's estimated liquor receipts and estimated food receipts. In response, Colonial again listed $120,000 for estimated liquor receipts and $280,000 for estimated food receipts. Nationwide has since learned that Colonial's total sales for the pertinent period were actually $3.5 million and that its liquor sales were $1.050 million. Thus, Colonial's responses to these questions also were false.

Third, question numbers 3 and 4 of Application #1 asked the number of years Colonial had been in business and the number of years under current management. In response to both questions, Colonial replied that it was a "new venture". Colonial made this same response to question numbers 12 and 13 in Application #2, which asked how many years Colonial had been in business and how many years it had been at its location at 821 Spring Street, Elizabeth, New Jersey. Nationwide has since learned that Colonial has been in business for fifteen (15) years. Thus, Colonial's responses to these questions were also false.

Fourth, question number 30 of Application #1 asked Colonial to list all claims or losses (regardless of fault or whether or not insured) or occurrences that may give rise to a claim for the prior three years. In response, Colonial listed "N/A". Additionally, question number 39 of Application #2 asked Colonial to list all liquor liability claims or lawsuits or occurrences that may give rise to a claim for the prior three years. For this question also, Colonial responded "N/A". Nationwide has since learned Colonial's responses to each of these questions were false.

Colonial Restaurant LLC
June 14, 2023
Page 3 of 7

Specifically, Nationwide has learned that the following lawsuits were brought against Colonial or "The Lobby", which we understand is a trade name for Colonial, during the three years before Colonial completed the subject applications:

1. On or about January 31, 2019, Yesina Melendez ("Melendez") commenced the lawsuit captioned: *Yesina Melendez v. The Lobby a/k/a The Lobby Sports Bar And Lounge, et al.*, Docket No.: MID-L-001080-19 ("Melendez Lawsuit"). On or about May 17, 2019, an amended complaint was filed naming Colonial as a defendant in the Melendez Lawsuit. In the amended complaint, Melendez claimed to have suffered injuries as a result of a slip and fall that occurred on February 4, 2018.

2. On or about July 31, 2019, Benjamin Casta ("Casta") commenced the lawsuit captioned: *Benjamin Casta v. Colonial Restaurant LLC d/b/a The Lobby, et al.*, Docket No.: UNN-L-002718-19 ("Casta Lawsuit") against, among others, Colonial d/b/a The Lobby. In the complaint, it was alleged as a result of the defendants' negligence, Casta sustained injuries in an unspecified incident.

3. On or about June 5, 2020, Bondreice Nakala Hutchinson ("Hutchinson") commenced the lawsuit captioned: *Bondreice Nakala Hutchinson v. Colonial Restaurant d/b/a The Lobby, et al.*, Docket No.: MID-L-003607-20 ("Hutchinson Lawsuit") against, among others, Colonial Restaurant d/b/a The Lobby. According to the complaint, on or about July 1, 2018, while in the "The Lobby", located at 821 Spring Street, Elizabeth, New Jersey, someone bumped into a table causing a hot hookah to fall on Hutchinson.

4. On or about January 19, 2021, Diamante Suarez ("Suarez") commenced the lawsuit captioned: *Diamante Suarez v. The Lobby, et al.*, Docket No.: UNN-L-000192-21 ("Suarez Lawsuit") against, among others, The Lobby. According to the lawsuit, due to the defendants' negligence, Suarez allegedly suffered injuries at the insured location.

Further, in response to Nationwide's December 16, 2022 letter, Colonial provided documents that included notices of the following additional claims asserted against Colonial during the pertinent period:

1. A letter dated April 5, 2019 from lawyers representing Jennifer Garcia ("Garcia") that stated that due to the carelessness and negligence of The Lobby at its premises, Garcia sustained personal injuries, which would result in a lawsuit being filed. We do not know if Garcia ever filed a lawsuit for her injuries or if the claim was resolved without litigation.

2. A letter dated November 1, 2019 from lawyers representing Edison Espinoza ("Espinoza") that stated that Espinoza sustained personal injuries on October 20, 2019 as a result of an assault and battery by The Lobby's employees / agents on The Lobby's premises. We do not know if Espinoza ever filed a lawsuit for her injuries or if the claim was resolved without litigation.

3. A letter dated June 1, 2021 from lawyers representing Quiana Diggs ("Diggs") with respect to a claim of an alleged attack on Diggs at the insured location on May 31, 2021 on the

Colonial Restaurant LLC
June 14, 2023
Page 4 of 7

outside patio area.  We do not know if Diggs ever filed a lawsuit for Diggs' injuries or if the claim was resolved without litigation.

4.  An undated letter from lawyers representing Kevin Connell ("Connell") for injuries at insured location on May 5 and 6, 2019, when Connell claims he was assaulted by one of The Lobby's security employees.  At the time of the incident, it was stated that Connell was performing as a DJ.  We do not know if Connell ever filed a lawsuit for his injuries or if the claim was resolved without litigation.

Also, Nationwide also learned of the following police activity, by the Elizabeth Police Department, at the insured location at 821 Spring Street, Elizabeth, NJ for the pertinent period:

1.  On February 22, 2020, police responded to a report of a simple assault in which a female customer stated she had been assaulted by a security guard.

2.  On February 23, 2020, police responded to a report of a fight involving a large crowd, which appears to have been started by a confrontation between two patrons.  One of the patrons was seemingly punched and had a small laceration above his ear.

3.  On March 15, 2020, police responded to a woman claiming that she was grabbed by a stranger at the club.

4.  On August 9, 2020, police responded to an incident in which it was alleged that security would not let a party in and they were stopped and pepper sprayed by security.

5.  On August 15, 2020, police responded to an incident in which it was alleged that bouncers had stolen a customer credit card.

6.  On September 4, 2020, police responded to an incident in which a customer was harassing other customers.  The customer was escorted out by security, during which time he punched a glass door.  He was arrested and charged with criminal mischief.

7.  On September 22, 2020, police returned to collect surveillance footage of a shooting that had occurred the day before.  Security personnel had also located footage for a separate shooting that happened at the rear of the building, where shell casings on the ground were found.

8.  On October 26, 2020, police responded to a report of a disorderly group, which allegedly was involved in a fight inside the restaurant and was escorted outside.  One of the persons in the party was eventually charged with disorderly conduct and resisting arrest.

9.  On November 21, 2020, police responded to a report of a disorderly patron who would not leave the establishment.

10.  On December 26, 2020, police responded to disorderly patrons, one of which was eventually charged with criminal mischief.

Colonial Restaurant LLC
June 14, 2023
Page 5 of 7

11. On January 26, 2021, police responded to a report of a fight at the establishment when patrons refused to leave. One of the persons was charged with disorderly conduct and assault on a police officer.

Also, Nationwide has received a copy of letter from Persuad's estate's attorneys to the Lobby dated August 11, 2021 regarding the underlying accident involving Persaud. However, Colonial never sent his letter to Scottsdale or notified it of Persaud's claims or even the accident involving Persaud. Nationwide also reserves the right to rely on Colonial's breach of the Scottsdale policy's notice provisions as a further basis to preclude coverage to Colonial for the Lawsuit.

Fifth, question number 29 in Application 1 and Question number 38 in Application #2 asked for information on Colonial's insurers for the prior three years, including the insurer name, policy number, coverage types, whether the coverage was provided on an occurrence or claims made basis, and the total premium. In response to both questions, Colonial listed "N/A". Nationwide has since learned that Colonial was insured by other insurers prior to the Scottsdale Policy, including, but not limited to, Skyward Specialty Ins. Group. Thus, Colonial's responses to these questions were also false.

Sixth, question number 23 in Application #1 asked the number of bouncers, doormen, and other security personnel. In response, Colonial answered "No". Additionally, Question number 29 in Application #2 asked Colonial to check all boxes that were applicable to security activities. In response, no boxes were checked, e.g., the box for bouncers was not checked. Nationwide has learned that there were bouncers, doormen, and/or security at the insured location. Additionally, Nationwide has also learned that there may have been off-duty police officers working at the premises. Thus, Colonial's responses to these questions were also false.

Seventh, Question number 16 in Application #2 asked if there was Hookah exposure at the insured location and Colonia responded "No". Nationwide has since learned that there was Hookah exposure at the location, and that at least one lawsuit was filed against Colonial/The Lobby because of this exposure, e.g., the Hutchinson Lawsuit. Thus, Colonial's responses to these questions were also false.

Scottsdale and Tapco relied upon each and every one these misrepresentations when deciding to issue the Policy, the terms of the Policy, and the amount of premium to charge. Had Colonial answered these questions truthfully, Scottsdale would not have issued the Policy. As a result, Scottsdale has a basis to rescind the Policy from its inception, **such that no coverage would be available under the Scottsdale Policy to any party, including Colonial, for the Lawsuit or for any other claims or lawsuits**.

Given the number and scope of these misrepresentations, Nationwide invites Colonial to provide the undersigned with any documents or information Colonial believes contradicts Nationwide's understanding of the applications or Colonial's operations or that are otherwise relevant to these issues. Nationwide also is amenable to holding a meeting with Colonial and the undersigned to discuss these issues. **Should Colonial wish to provide any such documents, or schedule a meeting, please contact the undersigned as soon as possible, but in no event later than ten (10) days from the date of this letter.**

Colonial Restaurant LLC
June 14, 2023
Page 6 of 7

If we do not hear from Colonial within this time frame, we intend to contact counsel for Persaud and raise these misrepresentations and advise Persaud's counsel that Scottsdale plans to rescind the Policy and that there will be no coverage available to Colonial for the Lawsuit under the Policy.

Depending on Persaud's counsel's response, Scottsdale will likely then file a lawsuit in the United States District Court for the District of New Jersey, naming both Colonial and Persaud, to rescind the Policy based on the many, many material misrepresentations identified herein and to obtain a declaration that Scottsdale owes neither a defense nor indemnity to Colonial for the Lawsuit.

Notwithstanding Scottsdale's intent to rescind the Policy, Nationwide offers, as a courtesy, to continue to defend Colonial for the Lawsuit, subject to a full and complete reservation of all Scottsdale's and Nationwide's rights under the Policy, at law, and in equity, including the right to deny coverage to Colonial for the Lawsuit, to withdraw the defense of Colonial for the Lawsuit, to deny indemnity to Colonial for the Lawsuit, to seek reimbursement of all costs incurred on behalf of Colonial for the Lawsuit, and to file a lawsuit to rescind the Policy and obtain a declaration that no coverage is available to Colonial for the Lawsuit under the Policy.

**As before, Colonial has the right to accept or reject Nationwide's offer of a continued defense subject to a full and complete reservation of rights.** If Colonial accepts this offer, assigned defense counsel David Montag, Esq. will continue to defend Colonial for the Lawsuit subject to the reservation of rights set forth herein and in our prior letter.

If Colonial rejects Nationwide's offer, it must retain its own counsel, at its own expense, to substitute in place of assigned defense counsel and to protect its interests for the Lawsuit. **To reject Nationwide's offer of a continued defense under a reservation of rights, Colonial must contact the undersigned within thirty (30) days of this letter in writing rejecting the offer.** If we do not hear from Colonial by that deadline, Nationwide will assume Colonial consents to its offer and assigned defense counsel will continue to defend Colonial subject to a reservation of rights as set forth herein and in our prior letter.

Even if Colonial accepts Nationwide's offer of a continued defense subject to a reservation of rights, it may still wish to retain its own personal lawyer, at its own expense, to advise it with respect to the issues set forth herein and in our prior letter. Further, if Scottsdale files a lawsuit to rescind the Policy, Colonial will need to retain its own lawyer, at its own expense, to represent it for such a lawsuit, and assigned defense counsel will not be able to represent Colonial for such a lawsuit. Ultimately, the decision of whether to retain personal counsel rests with Colonial alone.

Nationwide and Scottsdale will continue to investigate this matter subject to a full and complete reservation of all rights under the Scottsdale Policy, at law, and in equity. Nothing herein constitutes, nor should it be viewed as, a waiver of any of Scottsdale's or Nationwide's rights under the Scottsdale Policy, at law, or in equity. Nor is it the purpose of this letter to waive any additional defenses that further investigation may reveal. Instead, Scottsdale and Nationwide expressly reserve all rights available to them under the Policy, at law or in equity.

Nationwide's coverage position is based on its investigation of this matter to date. Nationwide reserves the right to supplement, modify, or change its position based on its receipt of additional information or additional pleadings filed in the Lawsuit. If you believe that you have documents or

Colonial Restaurant LLC
June 14, 2023
Page 7 of 7

information that are relevant to Nationwide's position, please send same to the undersigned immediately.

      Pursuant to New Jersey Statute 17:29E-9, we advise you that Nationwide has an internal appeals procedure for the review of the disputed claims. Colonial may utilize this process following decisions regarding a claim. To notify Nationwide that it is requesting this process be implemented on its behalf, Colonial must send notice to the following address:

<div align="center">

Scottsdale Insurance Company
Attention: Jennifer Gay, CBS Operations
18700 North Hayden Road
Scottsdale AZ 85255
Phone: (800) 423-7675 Ext. 2898
Fax: (480) 483-6752

</div>

      You may seek further review of Nationwide's decisions for this matter from the New Jersey Insurance Claims Ombudsman at the following address:

<div align="center">

Department of Banking and Insurance
Office of Insurance Claims Ombudsman
P.O. Box 472
Trenton, NJ 08625-0427
Phone: 800-446-7467
Fax: 609-292-2431
Email: mailto:ombudsman@dobi.state.nj.us

</div>

If you have any questions, comments or objections, please contact the undersigned.

<div align="center">

Very truly yours,

Christian A. Cavallo

</div>

Enclosures:
cc: Khris Hill, LLC (via regular mail and certified mail, r.r.r. w/ encls.)
    P.O. Box 2241
    Elizabeth, NJ 07208



Christian A. Cavallo  |  Partner
Direct 973.681.7004  |  CCavallo@goldbergsegalla.com

December 16, 2022

**Via Mail & Certified Mail, R.R.R.**
Colonial Restaurant LLC
821 Spring Street
Elizabeth, NJ 07208

Re:    **Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez**
**Docket No.: MID-L-004103-22**
**Claim No.: 02110244**
**Policy No.: CPS3985594 (Effective 5/5/21 to 11/15/21)**
**Date of Loss: 6/19/21**

To Whom It May Concern:

This firm has been retained by Nationwide E&S/Specialty Claims ("Nationwide"), on behalf of Scottsdale Insurance Company ("Scottsdale"), and Nationwide is in receipt of the above-referenced lawsuit filed by the Estate of Ajay P. Persaud ("Persaud") against, among others, Colonial Restaurants, LLC d/b/a "The Lobby" captioned: *Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez, an individual, et al.*, Superior Court of New Jersey, Middlesex County, Docket No.: MID-L-4103-22 ("Lawsuit").

Nationwide has had the opportunity to review Plaintiff's Complaint and other relevant documents. Nationwide has also reviewed the relevant terms, conditions, exclusions, and limitations of the Scottsdale policy. Based on its evaluation of these materials, Nationwide offers to defend Colonial Restaurant LLC ("Colonial" and/or "Insured") in the above-referenced lawsuit, subject to a full and complete reservation of all of Nationwide's rights under the Scottsdale policy, at law, and in equity. The details of Nationwide's offer of a defense for the Lawsuit under a reservation of rights are set forth below. Colonial has the right to accept or reject Nationwide's offer of a defense under a reservation of rights.

### Factual Background

#### The Lawsuit

On or about August 15, 2022, the Estate of Persaud, by and through Desiree Persaud ("D. Persaud"), commenced the Lawsuit. Subsequently, on or about October 12, 2022, the Estate filed a Second Amended Complaint. Based on Scottsdale's understanding, the Second Amended Complaint is the operative complaint in the Lawsuit. The Second Amended Complaint names, among others, the following defendants: Sergio Cabrerachavez ("Cabrerachavez"); The Lobby; Cotugno Investments, Inc. ("Cotugno"); The Lobby Group NJ LLC d/b/a "The Lobby"; JWPA, LLC d/b/a "The Lobby"; and Colonial Restaurants, LLC d/b/a "The Lobby". On or about October 28, 2022, the Second Amended Complaint was dismissed against Cotugno via Consent Order.

Colonial Restaurant LLC
December 16, 2022
Page 2 of 15

In Count One of the Second Amended Complaint, it is alleged, on or about June 19, 2021, Persaud was a motorcyclist traveling on US 1 at or near the road's intersection with North Avenue in Elizabeth, New Jersey. *See* Lawsuit, ¶ 1. On that date, Cabrerachavez allegedly operated his pick-up truck in a negligent and unreasonable manner as to cause his vehicle to strike Persaud, who was riding on a motorcycle. *See* Lawsuit, ¶ 3. As a result of Cabrerachavez's alleged negligence, Persaud sustained bodily injuries that resulted in his death. *See* Lawsuit, ¶ 4.

In Count Two, it is alleged that the defendants, The Lobby, Cotugno, The Lobby Group NJ LLC d/b/a "The Lobby", JWPA, LLC d/b/a "The Lobby", and Colonial Restaurants, LLC d/b/a "The Lobby" had ownership and/or control of an alcohol beverage serving establishment, commonly known as "The Lobby" located at 821 Spring Street, Elizabeth, NJ. *See* Lawsuit, ¶ 2. On or about June 18, 2021, into the early hours of June 19, 2021, the aforementioned defendants, through their agents, servants, and/or employees, allegedly served alcoholic beverages to Persaud in a negligent and unreasonable manner, while Persaud was visibly intoxicated. *See* Lawsuit, ¶ 3. As a result of the alleged negligent and unreasonable service of alcoholic beverages to Persaud by the defendants, Persaud left The Lobby in an intoxicated condition and was involved in a motor vehicle accident. *See* Lawsuit, ¶ 4. The alleged negligence of the defendants, in the negligent service of alcoholic beverages to Persaud, while he was visibly intoxicated, allegedly constituted a substantial factor in the causing of the accident. *See* Lawsuit, ¶ 5. As a result of the defendants' alleged negligence, Persaud sustained bodily injuries that resulted in his death. *See* Lawsuit, ¶ 7.

Count Three is directed against John Does and/or ABC Companies.

Count Four asserts a wrongful death claim. In this count, it is alleged that this action was based upon the statute identified as "The Death Act of The State of New Jersey", N.J.S.A. 2a:3-1, *et seq*. *See* Lawsuit, ¶ 2. It is alleged, as a result of the death of Persaud, his next of kin will be deprived of his future society, services, companionship, and earnings. *See* Lawsuit, ¶ 4.

Finally, Count Five asserts a Survival Action claim. It is alleged in this count that D. Persaud and Tillack Persaud are the next of kin of Persaud and were left surviving him at the time of his death. *See* Lawsuit, ¶¶ 2-3. It is alleged, as a result of the defendants' negligence, Persaud sustained bodily injuries causing him to suffer prior to his death. *See* Lawsuit, ¶ 4. The survival action is brought pursuant to N.J.S.A. 2A:15-3. *See* Lawsuit, ¶ 5.

### *The Contract*

There appears to be a Lease Agreement between "Cotugno Investments, Inc.", as the Landlord, and "JPWA, LLC", as the Tenant, for the premises located at 821 US Highway 1, Elizabeth, New Jersey. Scottsdale is unaware of any contracts between Cotugno and Colonial.

### **The Tender**

Nationwide first received notice of the June 18-19, 2021 accident on or about October 5, 2022 when Cotugno tendered its defense and indemnity to JBWA, LLC/The Lobby in connection with the Lawsuit. To date, Colonial has not sought coverage under the Policy for the Lawsuit.

Colonial Restaurant LLC
December 16, 2022
Page 3 of 15

<p style="text-align:center"><strong><u>The Insurance Applications</u></strong></p>

<p style="text-align:center"><strong><em>Application #1</em></strong></p>

The Bars/Restaurant/Taverns General Liability Application for Colonial with a location address of 821 Spring Street, Elizabeth, NJ, which was signed and dated by Terry Gonzalez on May 21, 2021, included the following questions and responses.

In Question #2, the application asked for the Annual gross sales, for the next twelve (12) months. In response, $120,000 was listed for alcohol sales, and $230,000 was listed for food sales.

In Question #3, the application asked the number of years in business. In response, "new venture" was listed. Additionally, in Questions #28, the application requested prior carrier information. In response, "N/A" was listed.

In Question #5, the application requested the opening and closing times per day. In response, "11 AM – 1 AM" was listed.

In Question #17, the application asked whether there was live entertainment on the premises. In response, "no" was marked.

In Question #23, the application asked the number of bouncers, doormen, and other security personnel. In response, "no" was marked.

In Question #30, Loss History, the application requested the applicant indicate all claims or losses or occurrences that may give rise to a claim for the prior three (3) years. "N/A" was listed in response.

<p style="text-align:center"><strong><em>Application #2</em></strong></p>

Additionally, the Liquor Liability Application for Colonial, which was signed and dated on May 5, 2021, included the following questions and responses.

In Question #6, the application requested the estimated liquor receipts. In response, $120,000 was listed. Additionally, in Question #11, when asked about the percentage of liquor receipts to total receipts, "30%" was listed.

In Questions #12 and #13, the application asked how many years the applicant had been in business, and how many years it had been at this location. "New Venture" was listed in response to both questions. Additionally, in Questions #38, with respect to prior carrier information, "N/A" was listed in response.

In Question #16, the application asked if there was Hookah exposure. "No" was marked in response.

In Question #17, the application asked what time the location closed. "1 AM was listed". Additionally, in that same question, when asked hours of serving, "11 AM – 1 AM" was listed.

Colonial Restaurant LLC
December 16, 2022
Page 4 of 15

In Question #29, the application asked the applicant to check all boxes that were applicable to security activities. In response, no boxes were checked, e.g., the box for bouncers was not checked.

In Question #31, the application asked about the types of entertainment activities. In response, "N/A" was listed, e.g., the live entertainment box was not checked.

In Question #39, Loss History, the applicant was asked to indicate all liquor liability claims or lawsuits or occurrences that may give rise to a claim for the prior three (3) years. "N/A" was listed in response.

## The Investigation

Prior to the accident, on or about June 16, 2021, Tapco Underwriters, Inc. ("Tapco"), as an agent of Nationwide, requested an inspection of Colonial's premises located at 821 Spring Street, Elizabeth, New Jersey. On or about August 25, 2021, the inspection was conducted by York Risk Control Services, LLC ("York"), which included an interview with Ashok Dutta, the Insured contact.

According to the inspection, the total sales of the establishment were $3,500,000, and its liquor sales were $1,050,000. With respect to hours of operation, the investigation determined that the premises operated Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m. It was also determined that there were bouncers, doormen, and/or security at the premises, however, they were not armed. With respect to whether there was a dance floor, the inspection report stated there was "none", but noted there was a certificate of dance hall posted. It was also determined that the establishment had been in business for fifteen (15) years at this particular location. The inspection report also stated there was live entertainment at the premises, however, the type and frequency were not provided.

## The Prior Claims And Lawsuits

Additionally, a review of New Jersey's court dockets has revealed the following lawsuits were commenced within the last three (3) years against Colonial and/or The Lobby. First, on or about January 31, 2019, Yesina Melendez ("Melendez") commenced the lawsuit captioned: *Yesina Melendez v. The Lobby a/k/a The Lobby Sports Bar And Lounge, et al.*, Docket No.: MID-L-001080-19 ("Melendez Lawsuit"). On or about May 17, 2019, an amended complaint was filed naming Colonial as a defendant in the Melendez Lawsuit. In the amended complaint, Melendez claimed to have suffered injuries as a result of a slip and fall, which occurred on February 4, 2018. It was alleged as a result of Colonial's negligence, Melendez suffered her claimed injuries. According to the docket, on or about November 9, 2020, the case was resolved via stipulation.

Second, on or about June 5, 2020, Bondreice Nakala Hutchinson ("Hutchinson") commenced the lawsuit captioned: *Bondreice Nakala Hutchinson v. Colonial Restaurant d/b/a The Lobby, et al.*, Docket No.: MID-L-003607-20 ("Hutchinson Lawsuit") against, among others, Colonial Restaurant d/b/a The Lobby. According to the complaint, on or about July 1, 2018, while in the "The Lobby", located at 821 Spring Street, New Jersey, someone bumped into a table causing a hot hookah to fall on the plaintiff. According to the docket, on or about June 9, 2021, the case was resolved via stipulation.

Colonial Restaurant LLC
December 16, 2022
Page 5 of 15

Third, on or about July 31, 2019, Benjamin Casta ("Casta") commenced the lawsuit captioned: *Benjamin Casta v. Colonial Restaurant LLC d/b/a The Lobby, et al.*, Docket No.: UNN-L-002718-19 ("Casta Lawsuit") against, among others, Colonial d/b/a The Lobby. In the complaint, it was alleged as a result of the defendants' negligence, Casta sustained injuries in an unspecified incident. According to the docket, on or about October 24, 2020, the case was resolved via stipulation.

Fourth, on or about January 19, 2021, Diamante Suarez commenced the lawsuit captioned: *Diamante Suarez v. The Lobby, et al.*, Docket No.: UNN-L-000192-21 ("Suarez Lawsuit") against, among others, The Lobby. According to the lawsuit, due to the defendants' negligence, the plaintiff allegedly suffered injuries at the premises located at 821 Spring Street, Elizabeth, New Jersey. According to the docket, on or about August 26 2022, a correspondence was filed with the court advising that a settlement had been reached in the matter.

Additionally, based on Nationwide's understanding, on or about July 25, 2015, there was an assault in the parking lot of the 821 Spring Street premises involving Kyle Nan Ness.

### The Scottsdale Policy

Scottsdale issued policy # CPS3985594 to Colonial with an effective date of May 5, 2021 (the "Scottsdale Policy" or the "Policy"). The Named Insured is identified as a "Limited Liability Company" in the Policy. The Policy is comprised of a Commercial General Liability Coverage Part and a Liquor Liability Coverage Part. The Policy's Schedule of Locations (UTS-SP-3 (8-96)) lists Premises No. 1 as 821 Spring St., Elizabeth, New Jersey.

The Policy's Commercial General Liability Coverage Part Supplemental Declarations page lists the General Aggregate (other than Products / Completed Operations) limit as $2 million. Coverage A – Bodily Injury and Property Damage Liability Limits are listed as $1 million per occurrence. Additionally, the Commercial General Liability Coverage Part Extension Of Supplemental Declarations (CLS-SP-1L (10-93)) lists the Class Description of Premises No. 1 as: "Restaurants – With Sale Of Alcoholic Beverages That Are 30% Or More Of But Less Than 75% Of The Total Annual Receipts Of The Restaurants – Without Dance Floor".

The Liquor Liability Coverage Part Supplemental Declarations page (CLS-SD-5 (8-01)) lists the aggregate limit as $2 million, with a $1 million each common cause limit. Item 3, Classification and Premium lists the Classification as "Restaurants, Taverns, Hotels, Motels, Including Package Sales (5816A)".

On or about October 13, 2021, a Notice of Cancellation Or Refusal To Renew, with an effective date of November 15, 2021, was issued in connection with the Policy. The Notice advised that this action had been taken for the following reasons: "Company Request – Substantial Change in risk assumed".

The Policy utilizes the Common Policy Conditions Form, (IL 00 17 11 98), which states, in pertinent part, as follows:

All Coverage Parts included in this policy are subject to the following conditions.

Colonial Restaurant LLC
December 16, 2022
Page 6 of 15

…

### D.  Inspections And Surveys

    **1.** We have the right to:

        **a.** Make inspections and surveys at any time;

        **b.** Give you reports on the conditions we find; and

        **c.** Recommend changes.

    **2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of any workers or the public.  And we do not warrant that conditions:

        **a.** Are safe or healthful; or

        **b.** Comply with laws, regulations, codes or standards.

    **3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

    **4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

The Policy's Commercial General Liability Coverage Form, (CG 00 01 04 13) states, in pertinent part, as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

…

### Section I – Coverages

### Coverage A – Bodily Injury And Property Damage Liability

    **1. Insuring Agreement**

        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to

Colonial Restaurant LLC
December 16, 2022
Page 7 of 15

which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

…

## 2. Exclusions

This insurance does not apply to:

…

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol:

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3**) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.  For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, whether or not a fee is charged or a license is required

Colonial Restaurant LLC
December 16, 2022
Page 8 of 15

for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

…

## Section II – Who Is An Insured

…

1. If you are designated in the Declarations as:

…

**c.** A limited liability company, you are an insured. Your members are also insured, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers.

…

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

…

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not show as a Named Insured in the Declarations.

...

## Section IV – Commercial General Liability Conditions

…

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

Colonial Restaurant LLC
December 16, 2022
Page 9 of 15

        **(3)**  The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**  If a claim is made or "suit" is brought against any insured, you must:

        **(1)**  Immediately record the specifics of the claim or "suit" the date received; and

        **(2)**  Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

<div align="center">…</div>

**6.  Representations**

By accepting this policy, you agree:

    **a.**  The statements in the Declarations are accurate and complete;

    **b.**  Those statements are based upon representations you made to us; and

    **c.**  We have issued this policy in reliance upon your representations.

<div align="center">…</div>

The Policy contains the Liquor Liability Coverage Form, (CG 00 33 04 13) which states, in part, as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

<div align="center">…</div>

**Section I – Liquor Liability Coverage**

**1.  Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance

Colonial Restaurant LLC
December 16, 2022
Page 10 of 15

does not apply.  We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result.  But:

…

## Section II – Who Is An Insured

1.  If you are designated in the Declarations as:

…

**c.** A limited liability company, you are an insured.  Your members are also insured, but only with respect to the conduct of your business.  Your managers are insured, but only with respect to their duties as your managers.

…

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

…

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

…

## Section IV – Liquor Liability Conditions

…

**2. Duties In The Event Of Injury, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim.  To the extent possible, notice should include:

**(1)** How, when and where the "injury" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any "injury".

**b.** If a claim is made or "suit" is brought against any insured, you must:

Colonial Restaurant LLC
December 16, 2022
Page 11 of 15

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

…

6. **Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

…

The Policy's Punitive Or Exemplary Damage Exclusion, (UTS-74g (8-95), states:

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

…

Please understand that while this Reservation of Rights And Non-Waiver Agreement quotes, references, and/or paraphrases only certain provisions of the Scottsdale Policy, Nationwide expressly reserves its right to rely on all of the provisions of the Policy, whether or not quoted, referenced, and/or paraphrased herein.

**Nationwide's Offer To Defend Colonial Restaurant LLC For The Lawsuit, Subject To A Reservation Of Rights**

Based on the information available to Nationwide at this time, and given the coverage issues discussed below, Nationwide offers to defend Colonial for the Lawsuit under the Scottsdale Policy,

Colonial Restaurant LLC
December 16, 2022
Page 12 of 15

subject to a full and complete reservation of all of Nationwide's rights under the Policy, at law, and in equity. In particular, Nationwide reserves its right to deny coverage to Colonial for the Lawsuit, to withdraw its defense of Colonial for the Lawsuit, to refuse to indemnify Colonial for any liability or other legal obligation Colonial incurs for the Lawsuit, to seek reimbursement of its defense costs incurred on Colonial's behalf for the Lawsuit, to seek a judicial declaration that there is no coverage available to Colonial for the Lawsuit under the Policy, and to rescind the Policy. Specifically, Nationwide reserves its rights under the following provisions of the Scottsdale Policy.

First, the Policy's Commercial General Liability Coverage Part, Section IV – Commercial General Liability Conditions, and the Policy's Liquor Liability Coverage Part, Section IV – Liquor Liability Conditions, 6. Representations sections state that by accepting the Policy, Colonial agrees that the statements in the Declarations are accurate and complete, that those statements are based upon representations that Colonial had made to Nationwide, and Nationwide has issued the Policy in reliance of Colonial's representations. Here, Nationwide relied on the representations made by Colonial in its insurance applications. However, York's investigation, which was requested pre-accident, as well as additional investigation, has revealed that the representations in Colonial's insurance applications were false.

Specifically, in the insurance applications, the estimated liquor receipts were listed as $120,000. However, according to York's investigation, the premises' liquor sales are approximately $1,050,000. Next, in the insurance applications, when asked regarding the number of years in business, "new venture" was listed. However, according to York's investigation, the business has been operating at its 821 Spring Street location for fifteen (15) years. Additionally, in the applications, when asked regarding loss history for the prior three (3) years, "N/A" was listed. However, based upon Scottsdale's current understanding, several lawsuits, including but not limited to the Melenendez Lawsuit, the Hutchinson Lawsuit, the Casta Lawsuit, and the Suarez Lawsuit, as well as an assault claim from 2015, have been asserted against Colonial and/or "The Lobby" within the last three (3) years. Further, in the insurance applications, when asked about opening and closing times, "11 AM – 1 AM" was listed. Conversely, the inspection revealed that the premises' hours of operation are actually Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m. Additionally, in the insurance applications, when asked whether there was live entertainment on the premises, "no" was marked in response. However, the inspection indicated that unspecified live entertainment is provided at the premises. The inspection also revealed that there is a certificate of dance hall posted. In the insurance application, when asked if there was any Hookah exposure, "no" was marked. However, according to the Hutchinson Lawsuit, it appears that the plaintiff was allegedly injured by a Hookah at the 821 Spring Street premises. Finally, in the applications, when asked regarding the number of bouncers, doormen, and other security personnel, "no" was marked in response. However, according to the inspection, there are bouncers, doormen, and/or security at the premises. Accordingly, Nationwide reserves its rights to rescind the Policy or disclaim coverage to Colonial for the Lawsuit based on Colonial's material misrepresentations in its insurance applications.

Second, the Policy's Commercial General Liability Coverage Part and Liquor Liability Coverage Part, Section II – Who Is An Insured sections, state that, if the Insured is a limited liability

Colonial Restaurant LLC
December 16, 2022
Page 13 of 15

company, "you" are an insured.  However, no organization is an insured with respect to the conduct of any current or past limited liability company that is not shown as a Named Insured in the Declarations.  Here, the Lawsuit is commenced against, among others, "Colonial Restaurant, LLC d/b/a 'The Lobby'".  The Policy's Named Insured is "Colonial Restaurant LLC".  As such, to the extent that the plaintiff's claims are asserted against an organization that does not constitute an insured under the Policy, Scottsdale must reserve its rights on this basis.  For that reason, at this time, Nationwide will not agree to provide coverage to any defendant in the Lawsuit other than Colonial.

Third, the Policy's Commercial General Liability Coverage Part, Section IV – Commercial General Liability Conditions and the Policy's Liquor Liability Coverage Part, Section IV – Liquor Liability Conditions sections state, in part, that Colonial must see to it that Scottsdale is notified as soon as practicable of an "occurrence" which may result in a claim.  Additionally, if a claim is made or "suit" is brought, Colonial must notify Nationwide as soon as practicable.  Here, the accident occurred on or about June 19, 2021.  However, Nationwide's first notice of the claim and Lawsuit was on or about October 5, 2022 when Cotugno tendered its defense and indemnity.  Further, to date, Colonial has not sought coverage from Nationwide for the Lawsuit which was commenced on or about August 15, 2022.  Accordingly, Nationwide reserves its right to deny coverage to Colonial for the Lawsuit based on that party's failure to comply with the above condition.

Fourth, the Scottsdale Policy's Commercial General Liability Coverage Part contains the Liquor Liability exclusion, which excludes coverage for "bodily injury" for which any insured may be held liable by reason of causing or contributing to the intoxication of any person.  This exclusion applies even if the claims against the insured allege negligence or wrongdoing in the supervision, hiring, training or monitoring of others by the insured.  In the Lawsuit, it is alleged as a result of the negligent and unreasonable service of alcoholic beverages to Persuad, Persuad left The Lobby in an intoxicated condition and was involved in a motorcycle accident sustaining injuries that led to his death.  Nationwide therefore disclaims coverage to Colonial, under the Policy's Commercial General Liability Coverage Part, for the Lawsuit based on the Liquor Liability exclusion.

Fifth, the Policy contains the Punitive Or Exemplary Damages exclusion that excludes coverage for punitive or exemplary damages.  Additionally, punitive damages are not insurable as a matter of New Jersey law.  As such, to the extent the Lawsuit seeks any such damages, Nationwide must disclaim coverage to Colonial for any punitive or exemplary damages sought against it in the Lawsuit based on the Punitive Or Exemplary Damages Exclusion and New Jersey law.

As set forth above, some or all of the claims asserted against Colonial in the Lawsuit may fall outside the scope of the coverage provided by the Scottsdale Policy, or the Scottsdale Policy may be void *ab initio* based on Colonial's material misrepresentations in its insurance applications.  Accordingly, Nationwide offers to defend Colonial for the Lawsuit under the Scottsdale Policy, subject to an express reservation of rights under the Policy, at law, and in equity.  Colonial is entitled to accept or reject this offer.  If it accepts this offer, then Nationwide will retain the law firm of Milber Makris Plousadis & Seiden, LLP ("Milber Makris") to defend Colonial for the Lawsuit in accordance with the terms and conditions set forth in this Reservation of Rights And Non-Waiver Agreement.

Colonial Restaurant LLC
December 16, 2022
Page 14 of 15

If Colonial chooses to reject Nationwide's offer, Nationwide will not retain Milber Makris to defend Colonial for the Lawsuit, and instead, Colonial must retain, at its own expense, counsel of its choosing to defend its interests for the Lawsuit. Thereafter, Colonial may seek reimbursement from Nationwide for the reasonable and necessary defense costs it incurs for the Lawsuit, but only to the extent such defense costs were incurred in connection with a claim actually covered under the Scottsdale Policy.

To reject Nationwide's offer of a defense for the Lawsuit under a reservation of rights, Colonial must contact the undersigned in writing rejecting the offer <u>within thirty (30) days of the date of this Reservation of Rights And Non-Waiver Agreement</u>. If we do not hear from Colonial within that time period, Nationwide will assume that Colonial accepts and agrees to Nationwide's offer of a defense subject to the terms specified in this Reservation of Rights And Non-Waiver Agreement, and Nationwide will retain Milber Makris to defend Colonial for the Lawsuit, subject to the reservation of rights set forth herein.

Even if Colonial accepts the terms of Nationwide's offer of a defense for the Lawsuit under a reservation of rights, it may still wish to retain personal counsel, at its own expense, to work with Milber Makris to protect any potential uninsured exposure discussed above. Should Colonial accept this offer, it is not required to retain its own attorney to represent it for the Lawsuit. However, we bring this matter to Colonial's attention since it merits serious consideration. The decision of whether Colonial should employ a personal attorney for the Lawsuit given the coverage issues discussed above rests with Colonial alone.

Please also be advised that the Scottsdale Policy imposes upon Colonial a duty to cooperate with Nationwide in investigating, defending, or settling the claims asserted against it in the Lawsuit. Any failure on Colonial's part to comply with this duty may provide a separate and independent basis for Nationwide to deny coverage to Colonial for the Lawsuit under the Policy. As part of that obligation, we request that Colonial provide the following documents:

1. Copies of all contract or agreements between Cotugno and Colonial;

2. The certificate of formation, articles of incorporation, or other documents governing the formation and management of Colonial;

3. All documents regarding any relationship between Colonial and The Lobby;

4. Any and claims and/or lawsuits asserted against Colonial and/or The Lobby between 2018 and June 2021; and

5. All correspondences between Colonial or Lobby and any other person or entity regarding the incident involving Persaud or the Lawsuit.

<u>Please provide the documents and information requested above to the undersigned. Additionally, please contact the undersigned, as soon as possible, to further discuss this matter.</u>

Colonial Restaurant LLC
December 16, 2022
Page 15 of 15

Nothing in this letter constitutes, nor should it be construed by you as, a waiver of any of Nationside's rights under the Policy, at law, or in equity. Nor is it the purpose of this letter to waive any additional defenses available to Nationwide that further investigation may reveal. Instead, Nationwide specifically and unequivocally reserves any and all rights available to it under any policy issued by Nationwide, at law, and in equity.

If you are aware of any additional information relevant to Nationwide's current coverage position in this matter, please provide such information to the undersigned as soon as possible for further consideration. Thank you.

Pursuant to New Jersey Statute 17:29E-9, we advise you that Nationwide has an internal appeals procedure for the review of disputed claims. Colonial may utilize this process following decisions regarding a claim. To notify Nationwide that they are requesting this process be implemented on their behalf, Colonial must send notice to the following address:

Scottsdale Insurance Company
Attention: Jennifer Gay, CBS Operations
18700 North Hayden Road
Scottsdale AZ 85255
Phone: (800) 423-7675 Ext. 2898
Fax: (480) 483-6752

Colonial may also seek further review of this matter by the New Jersey State Insurance Claims Ombudsman at the following address:

Department of Banking and Insurance
Office of Insurance Claims Ombudsman
P.O. Box 472
Trenton, NJ 08625-0427
Phone: 800-446-7467
Fax: 609-292-2431
E-mail: ombudsman@dobi.state.nj.us

Very Truly Yours,

Christian A. Cavallo

☐ **Scottsdale Insurance Company**
Home Office:  One Nationwide Plaza
Columbus, Ohio 43215
Adm. Office:   8877 North Gainey Center Drive
Scottsdale, Arizona 85258

☐ **Scottsdale Surplus Lines Insurance Company**
Adm. Office:   8877 North Gainey Center Drive
Scottsdale, Arizona 85258

☐ **Scottsdale Indemnity Company**
Home Office:  One Nationwide Plaza
Columbus, Ohio 43215
Adm. Office:   8877 North Gainey Center Drive
Scottsdale, Arizona 85258

## BARS/RESTAURANTS/TAVERNS GENERAL LIABILITY APPLICATION

Applicant's Name: Colonial Restaurant

Mailing Address: 821 Spring St.
Elizabeth NJ 07208

Location Address: Same

Agency Name: _____
Agent No.: _____
Address: _____
_____
E-mail: _____
Phone No.: _____

**PROPOSED EFFECTIVE DATE: From** 5-5-22 **To** 5-5-22 **12:01 A.M., Standard Time at the address of the Applicant**

ANSWER ALL QUESTIONS—IF THEY DO NOT APPLY, INDICATE "NOT APPLICABLE" (N/A)

**Applicant is:** ☐ Individual    ☐ Corporation    ☐ Partnership    ☐ Joint Venture
☑ Limited Liability Company    ☐ Other (Specify) _____

**Website Address:** _____

**E-mail Address:** _____    **Phone No.:** _____

**Inspection Contact:** _____

**E-mail Address:** _____    **Phone No.:** _____

**Limits of Liability and Deductible Requested:**

| | |
|---|---|
| General Aggregate (other than Products/Completed Operations) | $ 7,000,000 |
| Products and Completed Operations Aggregate | $ 2,000,000 |
| Personal and Advertising Injury (any one person or organization) | $ 1,000,000 |
| Each Occurrence | $ 1,000,000 |
| Damage to Premises Rented to You (any one premise) | $ 100,000 |
| Medical Expense (any one person) | $ 5,000 |
| Other Coverages, Restrictions and/or Endorsements: | $ |
| Deductible | $ |

Nationwide

1. **Classification of risk** (select all that apply):
   - ☐ Banquet facility
   - ☐ Bring your own bottle establishment
   - ☐ Disco
   - ☐ Membership club
   - ☑ Bar/Tavern
   - ☐ Cabaret
   - ☐ Country club
   - ☐ Fine Dining
   - ☐ Nightclub
   - ☐ Bowling center
   - ☐ Comedy Club
   - ☐ Deli
   - ☐ Gentlemen's/Strip Club
   - ☑ Restaurant

2. **Annual gross sales:**

| | Past Twelve (12) Months | Next Twelve (12) Months |
|---|---|---|
| Alcohol Sales | | 120,000 |
| Food Sales | | 280,000 |
| Gambling | | |
| Other | | |
| Total | | |

New License

New venture

3. Number of years in business: ....................................................................
4. Number of years under current management: ...........................
5. Opening and closing time per day: _____ 11AM - 1AM

6. **Schedule of Hazards:**

| Loc. No. | Classification Description | Class. Code | Exposure | Premium Basis (s) Gross Sales (p) Payroll (a) Area (c) Total Cost (t) Other |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

7. Are there any catering services available?........................................................... ☐ Yes ☑ No
   If yes:   ☐ Off premises   ☐ On premises   Gross sales: ......................... $ _____

8. Types of meals served:   ☑ Full meals   ☐ Short order

9. Square footage of bar/tavern/restaurant:.......................................................... 4500

10. Is applicant a BBQ restaurant? ........................................................................ ☐ Yes ☑ No

11. Is applicant a microbrewery that sells their products for off premises consumption?................. ☐ Yes ☑ No

12. Are facilities available for use or rent for private parties, receptions, banquets or similar affairs? ☐ Yes ☑ No
    If yes:   Number of times per year: ......................................................... _____
    Describe: _____

GLS-APP-18s (8-18)                    Page 2 of 8



13. Are patrons allowed to drink their own alcoholic beverages on the premises? ............................ ☐ Yes ☑ No

If yes:

    a. Are there procedures in place for handling violent or disruptive patrons? ............................ ☑ Yes ☐ No

    b. Is there table service? ............................................................................................................ ☑ Yes ☐ No

    c. Does applicant also sell alcohol? ........................................................................................... ☑ Yes ☐ No

14. Does applicant advertise or promote "happy hour" or other events when drinks are sold at a
lower price than usual? ................................................................................................................ ☐ Yes ☑ No

15. Does applicant subscribe to a taxi or other service providing transportation home to apparently
intoxicated persons? .................................................................................................................... ☐ Yes ☑ No

If yes, describe: _____

16. Is there Hookah exposure (communal smoking)? ...................................................................... ☐ Yes ☑ No

If yes:

    a. Any blending of tobacco by applicant? ................................................................................... ☐ Yes ☐ No

    If yes, what percentage of tobacco products: _____ %

    b. Does applicant import any tobacco products? ........................................................................ ☐ Yes ☐ No

    If yes, what percentage of tobacco products: _____ %

    c. Does applicant allow underage persons to purchase and/or use the products? ..................... ☐ Yes ☐ No

    d. How often does applicant clean pipes, tubing and mouthpieces? _____

17. Entertainment:

    a. Is there any live entertainment on premises? ......................................................................... ☐ Yes ☑ No

    If yes:  Number of times per week: _____

    Describe: (include go-go dancers, topless, disco, exotic, female/male): _____
    _____

    b. Is there dancing? ..................................................................................................................... ☐ Yes ☐ No

    If yes:  Number of times per week: _____

    Square footage of dance floor: _____

    c. Does applicant have any mechanical or amusement devices? ................................................ ☐ Yes ☐ No

    If yes:  How many? _____

    Describe: _____

    d. Is there a minimum or cover charge? ...................................................................................... ☐ Yes ☐ No

    e. Are there sports on the premises? ........................................................................................... ☐ Yes ☐ No

    If yes:  Provide complete details: _____
    _____

    f. Are sports sponsored off premises? ........................................................................................ ☐ Yes ☐ No

    If yes:  Number of times per week: _____

    Give details: _____

    g. Does applicant sponsor any special events? ........................................................................... ☐ Yes ☐ No

    If yes:  Describe: _____
    _____

 Nationwide

    h.  Is there any gambling? ........................................................................................ ☐ Yes ☒ No

        If yes:  Are there any "live" dealers? ......................................................... ☐ Yes ☐ No

            Number of gambling machines: ...................................................... ☐ Yes ☒ No

    i.  Is there a play area for children? ................................................................... ☐ Yes ☒ No

    j.  Are there any drinking games (i.e., beer pong, flip cup)? ............................... ☐ Yes ☒ No

        If yes:  Describe: _____

        _____

    k.  Are there any pub crawls (pedal bus or motorized)? ..................................... ☐ Yes ☒ No

    l.  Does applicant own or sponsor party buses? ................................................ ☐ Yes ☒ No

    m. Are there any hatchet/axe throwing activities? ............................................. ☐ Yes ☒ No

**18.**  **Does applicant have parking area?** ..................................................................... ☒ Yes ☐ No

    If yes, is parking area well lit? ............................................................................ ☒ Yes ☐ No

**19.**  **Does applicant subcontract valet parking services on restaurant premises?** ................... ☐ Yes ☒ No

    If yes: Annual subcontract cost: ...................................................................... $ _____

    Do subcontractors provide certificate of insurance with liability limits equal or greater than our
    applicant? .......................................................................................................... ☐ Yes ☐ No

    Do written contracts contain hold harmless agreements in favor of the applicant? ...................... ☐ Yes ☐ No

    Does applicant require all subcontractors to include the applicant as an additional insured on the General Liability and Garage policies? .................................................................................. ☐ Yes ☐ No

**20.**  **Clientele:**

    ☒ Local residents    ☐ Families    ☐ Retirement community    ☐ College students    ☐ Seasonal residents

    Median age of patrons:    ☐ 18-25    ☒ 26-30    ☒ 31-40    ☐ 41 and over

    Are premises located near a college or university? ................................................. ☐ Yes ☒ No

**21.**  **In the past five years, has applicant been cited by the Liquor Control Commission?** ................... ☐ Yes ☒ No

    If yes, give date(s) and full explanation: _____

    _____

**22.**  **Are police records and background checks conducted on employees?** ........................... ☒ Yes ☐ No

**23.**  **Number of bouncers, doormen or security personnel:** ......................................... _____

    Are bouncers, doormen or security personnel employees? .................................... ☐ Yes ☒ No

    Are bouncers, doormen or security personnel independent contractors? .................... ☐ Yes ☐ No

    If independent contractors, do they provide Certificates of Insurance and Additional Insured Endorsements to the applicant? ....................................................................................... ☐ Yes ☐ No

**24.**  **Does applicant have Workers' Compensation coverage in force?** ........................... ☒ Yes ☐ No

    Total number of employees: .............................................................................. ○

**25.**  **During the past three years, has any company ever canceled, nonrenewed, declined or refused
similar insurance to the applicant?** (Not applicable in Missouri) ...................................... ☐ Yes ☒ No

    If yes, explain: _____

**26.**  **Does risk engage in the generation of power, other than emergency back-up power, for their
own use or sale to power companies?** ................................................................................ ☐ Yes ☒ No



27. Does applicant have other business ventures for which coverage is not requested?....................☐ Yes ☑ No

If yes, explain and advise where insured: _____

28. **Additional Insured Information:**

| Name | Address | Interest |
|---|---|---|
| | | |
| | | |
| | | |

29. **Prior Carrier Information:**

| | Year: | Year: | Year: |
|---|---|---|---|
| Carrier | | | |
| Policy No. | | | |
| Coverage | | | |
| Occurrence or Claims Made | | | |
| Total Premium | | | |

30. **Loss History:**

Indicate all claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the prior three years.   ☐ Check if no losses in the last three years.

| Date of Loss | Description of Loss | Amount Paid | Amount Reserved | Claim Status (Open or Closed) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. (Not applicable in AL, CO, DC, FL, KS, LA, ME, MD, MN, NE, NY, OH, OK, OR, RI, TN, VA, VT or WA.)

**NOTICE TO ALABAMA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**NOTICE TO COLORADO APPLICANTS:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

Nationwide

GLS-APP-18s (8-18)

**APPLICANT'S STATEMENT:**

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty.)

APPLICANT'S NAME AND TITLE: Terry Gonzalez

APPLICANT'S SIGNATURE: _____  DATE: 5-5-21

PRODUCER'S SIGNATURE: _____  DATE: _____

AGENT NAME: Hillary Somero  AGENT LICENSE NUMBER: 1537643

NAME AND PHONE NUMBER OF INDIVIDUAL TO CONTACT FOR INSPECTION/AUDIT: Terry Gonzalez
908 163 7976

---

**IMPORTANT NOTICE**

As part of our underwriting procedure, a routine inquiry may be made to obtain applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

---

GLS-APP-18s (8-18)                    Page 8 of 8                    Nationwide

Form Number **SLPS-6-CERT-1**

**STATE OF NEW JERSEY**
**DEPARTMENT OF BANKING AND INSURANCE**
**SURPLUS LINES EXAMINING OFFICE**
**P.O. BOX 325**
**TRENTON, NEW JERSEY 08625-0325**

## CERTIFICATION OF EFFORT TO PLACE RISK WITH AUTHORIZED INSURER

This certification shall be submitted by the originating producer to the surplus lines agent, within 30 business days after the effectuation of any surplus lines insurance. The original of the certification must be maintained in the files of the surplus lines agent and a copy in the files of the producer and both must be available for inspection by the Commissioner for a period of at least five years.

Colonial Restaurant LLC.
(Name of Insured)

821 Spring St. Elizabeth NJ 07208
(Address of Insured)

821 Spring St. Elizabeth NJ 07208
(Location of Property or Risk)

6C / 1 million
(Insurance Coverage: Description and Amount)

//////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

Whir's Hill
(Originating Producer - Corporate or partnership)

Hillary Sermeno
(Originating Producer - Individual Name and/or Title)

1329 North Ave. Elizabeth NJ 07208
(Originating Producer - Complete Address)

The above hereby certifies that he/she is duly licensed as an insurance producer under the laws of New Jersey, and that:  On or about _____, 20___, I was engaged by the insured named herein to procure insurance of the kind described herein and in the amount shown.  I have made a diligent effort first to place this coverage with authorized insurers, each of which is authorized in New Jersey to write insurance of the kind requested and is an insurer that I had a good faith reason to believe might consider writing the type of coverage described herein.



**RWRSO**

## Certification of Effort To Place Risk With Authorized Insurer (continued)

### Page 2 of 2

The following insurers are among those that I contacted relative to this risk, or to substantially similar risks within the past 30 days:

| INSURER | REPRESENTATIVE | TELEPHONE NO. | DATE | RESULT CODE* |
|---------|----------------|---------------|------|--------------|
| CNA | | | | |
| State farm | | | | |
| Travelers | | | | |

*Result Codes: (enter appropriate code(s) for each insurer listed above)

**A.** - Having made a diligent effort. I was unable to obtain an offer/quote from this authorized insurer in the admitted market, which declined to accept all or any part of the risk.

AND/OR

**B.** - Having made a diligent effort, the only offer(s)/ quote(s) obtained reflected such a substantial increase in premium over similar coverage placed within the preceding 12 months that comparable coverage is, as a practical matter, unavailable from this authorized insurer in the admitted market.

AND/OR

**C.** - Having made a diligent effort, the only offer(s)/ quote(s) obtained reflect(s) such a substantial reduction in coverage from coverage placed within the preceding 12 months for substantially similar premium that comparable coverage is, as a practical matter, unavailable from this authorized insurer in the admitted market.

I certify that the foregoing statements made by me are true to the best of my knowledge and belief. I am aware that if any of the statements are willfully false, I am subject to civil and criminal penalties.

5-5-21
_____
(Date)

_____
Signature

Amended by R.2005 d.104, effective April 4, 2005.
See: 36 N.J.R.2144(a), 37 N.J.R.1065(a).

☐ **Scottsdale Insurance Company**
  Home Office:  One Nationwide Plaza
              Columbus, Ohio 43215
  Adm. Office:  8877 North Gainey Center Drive
              Scottsdale, Arizona 85258

☐ **Scottsdale Surplus Lines Insurance Company**
  Adm. Office:  8877 North Gainey Center Drive
              Scottsdale, Arizona 85258

☐ **Scottsdale Indemnity Company**
  Home Office:  One Nationwide Plaza
              Columbus, Ohio 43215
  Adm. Office:  8877 North Gainey Center Drive
              Scottsdale, Arizona 85258

## LIQUOR LIABILITY APPLICATION

### Complete a separate application for each location.

Applicant's Name: Colonial Restaurant

Agency Name: _____

Mailing Address: 821 Spring St.
Elizabeth NJ 07208

Agent: _____

Address: _____

Location Address: _____

E-Mail: _____

Website Address: _____

Phone No.: _____

**PROPOSED EFFECTIVE DATE: From** 5-5-21 **To** 5-5-22   12:01 A.M., Standard Time at the address of the Applicant

**Inspection Contact Name:** Terry Gonzalez   **Phone:** _____

ANSWER ALL QUESTIONS—IF THEY DO NOT APPLY, INDICATE "NOT APPLICABLE" (N/A)

**Applicant is:**  ☐ Individual   ☐ Corporation   ☐ Partnership   ☐ Joint Venture
              ☑ Limited Liability Company   ☐ Other (Specify): _____

### Limits of Liability Requested

| Each Common Cause | Aggregate |
|---|---|
| $ 1,000,000 | $ 2,000,000 |

### 1. Classification of risk:

| | | |
|---|---|---|
| ☐ Arena/Stadium | ☐ Auditorium | ☐ Banquet Hall |
| ☐ Bar/Tavern | ☐ Bartender/Liquor service only | ☐ Bowling Alley |
| ☐ Casino/Gaming | ☐ Catering Service | ☐ Comedy Club |
| ☐ Concession Stand | ☐ Convenience Store | ☐ Drive-through Daiquiri Shop |
| ☐ Exercise and Health Studio | ☐ Exhibit Hall | ☐ Fairground |
| ☐ Gentlemen's/Strip Club | ☐ Grocery Store | ☐ Hotel/Motel |
| ☐ Liquor Distributor/Wholesaler | ☐ Liquor Manufacturer/Brewery | ☐ Liquor/Package Store |
| ☐ Microbrewery | ☐ Nightclub | ☐ Party Buses |
| ☑ Restaurant | ☐ Social Club | ☐ Special Event |
| ☐ Sports Field | ☐ Winery | |
| ☐ Other (Describe): _____ | | |


Nationwide

2. Are patrons allowed to bring their own alcoholic beverages? ☐ Yes ☑ No

3. Are patrons allowed to self-serve themselves alcoholic beverages? ☐ Yes ☑ No

4. Has applicant ever been assessed a fine for violation of a law concerning the sale of alcohol, or had their liquor license suspended/revoked? ☐ Yes ☑ No

   If yes, when and why? _____

5. Name on liquor license: colonial restaurant    Type of liquor license: retail

6. Estimated liquor receipts: $ 120,000
   Other receipts: $ _____

7. Average price for:
   Beer: $ 6
   Wine: $ 7
   Liquor: $ 7

8. Percentage of receipts for on-premises consumption: 80 %

9. Percentage of receipts for off-premises consumption: _____ %

10. Estimated food receipts: $ 280,000

11. Percentage of liquor receipts to total receipts: 30 %

12. How many years has the applicant been in business? new venture

13. How many years has the applicant been at this location? new venture

14. Premises within city limits? ☑ Yes ☐ No

15. Square foot area of establishment: 4500    (Maximum Occupancy: 80 )

16. How many days per week is the location open? 7

17. What time does the location close? 1AM    Hours of serving: 11AM ~ 1AM

18. Number of servers? 5

19. Have all servers been through alcohol awareness server training (i.e., TIPS, TOPS)? ☑ Yes ☐ No
    If yes:
    Type of course: TIPS
    How often required? twice a year

20. Does insured have a ride home policy? ☐ Yes ☑ No

21. How often does the manager review liquor liability laws with employees (including penalties for serving intoxicated customers)? weekly

22. Are procedures in place regulating the sale of alcohol to minors and those under the influence? ☑ Yes ☐ No
    If yes, describe: ID scanners

    How is age of customer verified? ID scanners

23. Type of clientele: ☑ Area Residents    ☐ Area Workers    ☐ Tourists    ☐ College    ☐ Other: _____

24. Percent of clientele:
    25 and under: _____
    26-30: 40 %
    Over 30: 60 %

25. **Type of area:** ☑ Industrial or Commercial  ☐ Residential  ☐ Rural  ☐ Other: _____

Located on or near college campus? .................................................................. ☐ Yes ☑ No

26. **Is there an entrance fee or cover charge?** .......................................... ☐ Yes ☑ No

If yes, what is the amount? ............................................................................. $ _____

27. **Does applicant have "Happy Hour" or 2-for-1 drink specials?** .............. ☐ Yes ☑ No

Is last call announced? ................................................................................. ☑ Yes ☐ No

Are customers allowed more than one drink at last call? ............................... ☐ Yes ☑ No

28. **Any internet or mail order liquor sales?** ............................................ ☐ Yes ☑ No

29. **Security Activities:**

Security provided (check all applicable):

☐ Bouncers      ☐ Doormen      ☐ Off-Duty Police      ☐ Contracted Security Guards

☐ Inside        ☐ Outside      ☐ Armed                ☐ Unarmed

☐ Other (Describe): _____

Any firearms kept or carried on the premises? ............................................. ☐ Yes ☑ No

30. **Are there procedures for handling violent or disruptive patrons?** ........ ☑ Yes ☐ No

If yes, describe: The Restaurant & Nightclub Handbook

31. **Types of entertainment activities:**

☐ Darts      ☐ DJ      ☐ Exotic Dancing      ☐ Jukebox      ☐ Karaoke      ☐ Pinball Machine

☐ Dance Floor .................................... Size: _____

☐ Electronic Games ............................ Type: _____

☐ Live Entertainment .......................... Type and how often: _____

☐ Mechanical Devices .......................... Type: _____

☐ Pool Table(s) .................................. Number: _____

☐ Other activities that would include patron participation (such as: wrestling, boxing, volleyball, etc.): _____

☐ Drinking Games (i.e., beer pong, flip cup) sponsored by the insured? ........... ☐ Yes ☐ No

☐ Special Promotions ................................................................................. ☐ Yes ☐ No

If yes, describe: _____

32. **Gentlemen's/Strip Clubs:**

Turnover rate for staff: _____

Are servers/dancers in training? ................................................................. ☐ Yes ☐ No

Does applicant prohibit serving of alcohol after hours to their staff? .............. ☐ Yes ☐ No

Are clients allowed to purchase drinks for dancers/hostesses? ...................... ☐ Yes ☐ No

33. **Manufacturer:**

Are tours of facility provided? .................................................................... ☐ Yes ☐ No

Are free samples given? ............................................................................. ☐ Yes ☐ No

If yes, how is quantity controlled? _____


Nationwide

**34. Distributor:**

Any sponsored events? ................................................................................ ☐ Yes ☒ No

If yes, describe: _____

Policy for giving away alcoholic beverages by Sponsor? ........................ ☐ Yes ☐ No

If yes, describe: _____

**35. Caterers:**

Are clients/guests allowed to mix their own drinks? ........................................ ☐ Yes ☒ No

Does caterer provide liquor or bartending service? ........................................ ☐ Yes ☐ No

**36. Additional Insured Information:**

| Name | Address | Interest |
|---|---|---|
| | N/A | |
| | | |

**37. During the past three years, has any company ever canceled, declined or refused similar insurance to the applicant?** (Not applicable in Missouri) ................................................ ☐ Yes ☐ No

If yes, explain: _____ N/A _____

**38. Prior Carrier Information:**

| | Year: | Year: | Year: |
|---|---|---|---|
| Carrier | | | |
| Policy No. | | | |

**39. Loss History:**

Indicate all Liquor Liability claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the prior three years.  ☐ Check if no losses in the last three years.

| Date of Loss | Description of Loss | Amount Paid | Amount Reserved | Claim Status (Open or Closed) |
|---|---|---|---|---|
| | N/A | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |

This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.

I understand that Liquor Liability is a separate coverage part and the limits requested in this application apply solely to liquor liability coverage and may differ from the General Liability limits afforded in my commercial package policy.

I further understand that the Company is relying upon statements I have made in this application as an inducement to provide insurance for Liquor Liability coverage.



**FRAUD WARNING (APPLICABLE IN VERMONT, NEBRASKA AND OREGON):** Any person who intentionally presents a materially false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

**FRAUD WARNING (APPLICABLE IN TENNESSEE, VIRGINIA AND WASHINGTON):** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

**NEW YORK FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**APPLICANT'S STATEMENT:**

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty.)

APPLICANT'S SIGNATURE: _____ DATE: 5-5-21

CO-APPLICANT'S SIGNATURE: _____ DATE: _____

PRODUCER'S SIGNATURE: _____ DATE: 5-5-21

AGENT NAME: Hillary Semeno    AGENT LICENSE NUMBER: 1537643
(Applicable to Florida Agents Only)

IOWA LICENSED AGENT: _____
(Applicable in Iowa Only)

**——— IMPORTANT NOTICE ———**

As part of our underwriting procedure, a routine inquiry may be made to obtain applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.



/_/_/_/_/_/-/_/_/-/_/_/_/_/_/
Transaction Number

The undersigned applicant has been advised by the undersigned originating insurance producer and understands that an insurance policy written by a surplus lines insurer is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance.  Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance.

_____
**Applicant's Signature**

Terry Gonzalez
_____
**Applicant's Name (Print or Type)**

5-5-21
_____
**Date of Applicant's Signature**

_____
**Producer Signature**

Hillary Semsen
_____
**Producer Name (Print or Type)**

5-5-21
_____
**Date of Producer Signature**

1537648
_____
**New Jersey Producer License Reference Number**



**RWRSO**

# Exhibit 28



Christian A. Cavallo | Partner
Direct 973.681.7004 | CCavallo@goldbergsegalla.com

December 7, 2023

**<u>Via Mail & Certified Mail, R.R.R.</u>**
Colonial Restaurant LLC
821 Spring Street
Elizabeth, NJ 07208

          **Re:**    **<u>Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez et al.</u>**
                **Docket No.: MID-L-004103-22**
                **Claim No.: 02110244**
                **Policy No.: CPS3985594 (Effective 5/5/21 to 11/15/21) (cancelled)**
                **Date of Loss: 06/19/21**

Dear Sir/Madam:

As you know this firm is counsel for Nationwide E&S/Specialty Claims ("Nationwide"), on behalf of Scottsdale Insurance Company ("Scottsdale") in connection with the lawsuit captioned: *Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez et al.*, New Jersey, Middlesex County, Docket No. MID-L-004103-22 ("Lawsuit"). Scottsdale writes in furtherance of its December 16, 2022 and June 14, 2023 letters, which are incorporated herein. A copy of Scottsdale's December 16, 2022 and June 14, 2023 letters are attached for your reference.

Scottsdale issued commercial insurance policy # CPS3985594 to Colonial Restaurants, LLC d/b/a The Lobby ("Colonial") for the period of May 5, 2021 to November 15, 2021 ("Scottsdale Policy" or "Policy"). As you also know, as detailed in its prior correspondences, Scottsdale previously cancelled the Policy effective November 15, 2021 because it learned of substantial changes in Colonial's business operations. Upon cancellation of the Policy, on or about December 21, 2021, Scottsdale issued a check to Colonial returning a pro-rata portion of the Policy's premium.

Also, as explained in these prior correspondences, Scottsdale advised, since learning of the Lawsuit, it had been investigating whether material misrepresentations by Colonial in its applications for the Policy provided a basis for Scottsdale to rescind the Policy. These correspondences further explained, following its investigation, Scottsdale determined that Colonial had made multiple material misrepresentations in its Bars/Restaurant/Taverns General Liability Application, dated on May 21, 2021 ("Application #1") and Liquor Liability Application, dated on May 5, 2021 ("Application #2").

In its June 14, 2023 letter, Scottsdale invited Colonial to provide the undersigned with any documents and/or information Colonial believed contradicted Scottsdale's understanding of the applications, following its investigation, or was otherwise relevant to these issues. Colonial never responded to Scottsdale's letter nor provided any additional documents or information for Scottsdale's review.

Colonial Restaurant LLC
December 7, 2023
Page 2 of 2

Accordingly, the purpose of this correspondence is to advise you that, based on the numerous material misrepresentations in Application #1 and Application #2 for the Policy, Scottsdale hereby rescinds the Policy, rendering it void *ab initio*. The grounds for Scottsdale's rescission are set forth more fully in its prior correspondences, which are incorporated by reference herein. This means, the Policy will be deemed to have never been issued, and there is <u>no coverage for any occurrence, claim, or suit tendered under the Policy</u>. Further, because Scottsdale rescinds the Policy, this also means there is no coverage for the Lawsuit. Thus, be advised, upon judicial declaration that rescission is valid or Colonial's consent to same, Scottsdale will withdraw its defense of Colonial for the Lawsuit and Colonial, not Scottsdale, will be responsible for its defense and any defense costs, as well as any judgments or settlement for the Lawsuit. Scottsdale will, however, continue to provide Colonial a defense for the Lawsuit as a courtesy pending a judicial declaration that rescission is valid or Colonial's consent to same. Scottsdale reserves all rights in this regard.

Additionally, because the Policy is being rescinded, Scottsdale has tendered return of the remaining balance of the premium Colonial paid for the Policy. <u>A check in the amount of $4,099.80, which represents the remaining balance of the premium paid for the Policy, was sent to Colonial by express mail on December 1, 2023</u>. If you do not receive the premium refund check, please contact the undersigned immediately.

Finally, be advised that Scottsdale intends to commence a declaratory judgment action against Colonial for purposes of obtaining a judicial declaration that rescission is valid.[1] If you have any questions, comments or objections, please contact the undersigned.

Very truly yours,

*/s/Christian A. Cavallo*
Christian A. Cavallo

cc: Khris Hill, LLC (via regular mail and certified mail, r.r.r. w/ encls.)
P.O. Box 2241
Elizabeth, NJ 07208

---

[1] Be advised your remaining premium has been refunded regardless of whether you contest the rescission.



Christian A. Cavallo | Partner
Direct 973.681.7004 | CCavallo@goldbergsegalla.com

June 14, 2023

**Via Mail & Certified Mail, R.R.R.**
Colonial Restaurant LLC
821 Spring Street
Elizabeth, NJ 07208

> Re: **Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez et al.**
> **Docket No.: MID-L-004103-22**
> **Claim No.: 02110244**
> **Policy No.: CPS3985594 (Effective 5/5/21 to 11/15/21) (cancelled)**
> **Date of Loss: 06/19/21**

Dear Sir/Madam:

This law firm is counsel for Nationwide E&S/Specialty Claims ("Nationwide"), on behalf of Scottsdale Insurance Company ("Scottsdale"), with regard to the above referenced lawsuit filed by the Estate of Ajay P. Persaud ("Persaud") against, among others, Colonial Restaurants, LLC d/b/a "The Lobby" (the "Lawsuit"). As you know, by letter dated December 16, 2022, Nationwide offered to defend Colonial Restaurants, LLC ("Colonial") for the Lawsuit under the listed commercial insurance policy Scottsdale issued to Colonial for the period May 5, 2021 to November 15, 2021 (the "Scottsdale Policy" or the "Policy"), subject to a full and complete reservation of all rights. Colonial accepted Nationwide's offer, and assigned defense counsel David Montag, Esq. of the law firm Milber Makris Plousadis & Seiden, LLP, who has been defending Colonial for the Lawsuit under the Policy subject to that reservation of rights. Another copy of the December 16th letter is enclosed and the terms and reservations set forth in that letter are expressly incorporated herein by reference.

As explained in the December 16th letter, Scottsdale previously cancelled the Policy effective November 15, 2021 because it learned of substantial changes in Colonial's business operations and the corresponding risks Scottsdale agreed to assume by issuing the Policy. That letter further explained that since learning of the underlying June 19, 2021 accident involving Persaud and of the Lawsuit on approximately October 21, 2021, Nationwide has been investigating whether material misrepresentations by Colonial in its applications for the Policy provide a basis for Nationwide to now rescind the Policy from its inception, such that the Policy would be treated as though it was never issued and there would be no coverage available under the Policy to any party for any claims, including the claims by Persuad that form the basis of the Lawsuit.

In particular, Nationwide has recently learned that Colonial made multiple material misrepresentations in its Bars/Restaurant/Taverns General Liability Application signed by Terry Gonzalez on behalf of Colonial and dated on May 21, 2021 ("Application #1"), and that Colonial also made multiple material misrepresentations its Liquor Liability Application signed by Mr. Gonzalez and dated on May 5, 2021 ("Application #2"). The applications state that Mr. Gonzalez read the applications and that he declared that to the best of his knowledge and belief all of the statements in the applications are true and that the statements are offered as an inducement to Scottsdale to issue

Colonial Restaurant LLC
June 14, 2023
Page 2 of 7

the Policy. Scottsdale and its agent Tapco Underwriters, Inc. ("Tapco") relied on each of these misrepresentations made in the applications when deciding whether to issue the Policy, the terms of the Policy, and the amount of premium to be charged. Copies of Application #1 and Application #2 are enclosed.

First, question number 1 of Application #1 and question 1 of Application #2 ask for the classification of the risk presented by Colonial's business. In response to both questions, Colonial checked "Bar/Tavern" and "Restaurant". It did not check the box for "Nightclub". Question 17.a. of Application # 1 asked if there is any live music at the insured premises and Question 17.b. asked if there is any dancing. In response, Colonial checked the box for "no" for Question 17.a. and wrote "NA [e.g., Not Applicable] for Question 17.b. Additionally, question number 31 in Application #2 asked about the types of entertainment activities held at the insured location, including dance floor and live entertain. In response, Colonial listed "N/A". Nationwide has learned that there was live entertainment at the premises, however, the type and frequency are not currently known. Additionally, with respect to whether there was a dance floor, Nationwide has learned that a certificate of dance hall was posted at the insured premises. Further, question number 5 in Application #1 asked Colonial's opening and closing times per day. In response, Colonial listed "11 AM – 1 AM". Similarly, question number 17 in Application #2 asked what time the insured location closed and the hours of service, and in response Colonial listed "1 AM". and "11 AM – 1 AM". Nationwide has since learned that Colonial operated Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m. Thus, Colonial's responses to all of these questions were false, as Colonial was operating a nightclub, rather than a bar/tavern or a restaurant, at the insured location.

Second, question number 2 of Application #1 asked for Colonial's annual gross sales for the next twelve months. In response, Colonial listed $120,000 for alcohol sales and $280,000 for food sales. Additionally, question numbers 6 and 10 of Application #2 requested Colonial's estimated liquor receipts and estimated food receipts. In response, Colonial again listed $120,000 for estimated liquor receipts and $280,000 for estimated food receipts. Nationwide has since learned that Colonial's total sales for the pertinent period were actually $3.5 million and that its liquor sales were $1.050 million. Thus, Colonial's responses to these questions also were false.

Third, question numbers 3 and 4 of Application #1 asked the number of years Colonial had been in business and the number of years under current management. In response to both questions, Colonial replied that it was a "new venture". Colonial made this same response to question numbers 12 and 13 in Application #2, which asked how many years Colonial had been in business and how many years it had been at its location at 821 Spring Street, Elizabeth, New Jersey. Nationwide has since learned that Colonial has been in business for fifteen (15) years. Thus, Colonial's responses to these questions were also false.

Fourth, question number 30 of Application #1 asked Colonial to list all claims or losses (regardless of fault or whether or not insured) or occurrences that may give rise to a claim for the prior three years. In response, Colonial listed "N/A". Additionally, question number 39 of Application #2 asked Colonial to list all liquor liability claims or lawsuits or occurrences that may give rise to a claim for the prior three years. For this question also, Colonial responded "N/A". Nationwide has since learned Colonial's responses to each of these questions were false.

Colonial Restaurant LLC
June 14, 2023
Page 3 of 7

Specifically, Nationwide has learned that the following lawsuits were brought against Colonial or "The Lobby", which we understand is a trade name for Colonial, during the three years before Colonial completed the subject applications:

1. On or about January 31, 2019, Yesina Melendez ("Melendez") commenced the lawsuit captioned: *Yesina Melendez v. The Lobby a/k/a The Lobby Sports Bar And Lounge, et al.*, Docket No.: MID-L-001080-19 ("Melendez Lawsuit"). On or about May 17, 2019, an amended complaint was filed naming Colonial as a defendant in the Melendez Lawsuit. In the amended complaint, Melendez claimed to have suffered injuries as a result of a slip and fall that occurred on February 4, 2018.

2. On or about July 31, 2019, Benjamin Casta ("Casta") commenced the lawsuit captioned: *Benjamin Casta v. Colonial Restaurant LLC d/b/a The Lobby, et al.*, Docket No.: UNN-L-002718-19 ("Casta Lawsuit") against, among others, Colonial d/b/a The Lobby. In the complaint, it was alleged as a result of the defendants' negligence, Casta sustained injuries in an unspecified incident.

3. On or about June 5, 2020, Bondreice Nakala Hutchinson ("Hutchinson") commenced the lawsuit captioned: *Bondreice Nakala Hutchinson v. Colonial Restaurant d/b/a The Lobby, et al.*, Docket No.: MID-L-003607-20 ("Hutchinson Lawsuit") against, among others, Colonial Restaurant d/b/a The Lobby. According to the complaint, on or about July 1, 2018, while in the "The Lobby", located at 821 Spring Street, Elizabeth, New Jersey, someone bumped into a table causing a hot hookah to fall on Hutchinson.

4. On or about January 19, 2021, Diamante Suarez ("Suarez") commenced the lawsuit captioned: *Diamante Suarez v. The Lobby, et al.*, Docket No.: UNN-L-000192-21 ("Suarez Lawsuit") against, among others, The Lobby. According to the lawsuit, due to the defendants' negligence, Suarez allegedly suffered injuries at the insured location.

Further, in response to Nationwide's December 16, 2022 letter, Colonial provided documents that included notices of the following additional claims asserted against Colonial during the pertinent period:

1. A letter dated April 5, 2019 from lawyers representing Jennifer Garcia ("Garcia") that stated that due to the carelessness and negligence of The Lobby at its premises, Garcia sustained personal injuries, which would result in a lawsuit being filed. We do not know if Garcia ever filed a lawsuit for her injuries or if the claim was resolved without litigation.

2. A letter dated November 1, 2019 from lawyers representing Edison Espinoza ("Espinoza") that stated that Espinoza sustained personal injuries on October 20, 2019 as a result of an assault and battery by The Lobby's employees / agents on The Lobby's premises. We do not know if Espinoza ever filed a lawsuit for her injuries or if the claim was resolved without litigation.

3. A letter dated June 1, 2021 from lawyers representing Quiana Diggs ("Diggs") with respect to a claim of an alleged attack on Diggs at the insured location on May 31, 2021 on the

Colonial Restaurant LLC
June 14, 2023
Page 4 of 7

outside patio area.  We do not know if Diggs ever filed a lawsuit for Diggs' injuries or if the claim was resolved without litigation.

4. An undated letter from lawyers representing Kevin Connell ("Connell") for injuries at insured location on May 5 and 6, 2019, when Connell claims he was assaulted by one of The Lobby's security employees.  At the time of the incident, it was stated that Connell was performing as a DJ.  We do not know if Connell ever filed a lawsuit for his injuries or if the claim was resolved without litigation.

Also, Nationwide also learned of the following police activity, by the Elizabeth Police Department, at the insured location at 821 Spring Street, Elizabeth, NJ for the pertinent period:

1. On February 22, 2020, police responded to a report of a simple assault in which a female customer stated she had been assaulted by a security guard.

2. On February 23, 2020, police responded to a report of a fight involving a large crowd, which appears to have been started by a confrontation between two patrons.  One of the patrons was seemingly punched and had a small laceration above his ear.

3. On March 15, 2020, police responded to a woman claiming that she was grabbed by a stranger at the club.

4. On August 9, 2020, police responded to an incident in which it was alleged that security would not let a party in and they were stopped and pepper sprayed by security.

5. On August 15, 2020, police responded to an incident in which it was alleged that bouncers had stolen a customer credit card.

6. On September 4, 2020, police responded to an incident in which a customer was harassing other customers.  The customer was escorted out by security, during which time he punched a glass door.  He was arrested and charged with criminal mischief.

7. On September 22, 2020, police returned to collect surveillance footage of a shooting that had occurred the day before.  Security personnel had also located footage for a separate shooting that happened at the rear of the building, where shell casings on the ground were found.

8. On October 26, 2020, police responded to a report of a disorderly group, which allegedly was involved in a fight inside the restaurant and was escorted outside.  One of the persons in the party was eventually charged with disorderly conduct and resisting arrest.

9. On November 21, 2020, police responded to a report of a disorderly patron who would not leave the establishment.

10. On December 26, 2020, police responded to disorderly patrons, one of which was eventually charged with criminal mischief.

Colonial Restaurant LLC
June 14, 2023
Page 5 of 7

11. On January 26, 2021, police responded to a report of a fight at the establishment when patrons refused to leave. One of the persons was charged with disorderly conduct and assault on a police officer.

Also, Nationwide has received a copy of letter from Persuad's estate's attorneys to the Lobby dated August 11, 2021 regarding the underlying accident involving Persaud. However, Colonial never sent his letter to Scottsdale or notified it of Persaud's claims or even the accident involving Persaud. Nationwide also reserves the right to rely on Colonial's breach of the Scottsdale policy's notice provisions as a further basis to preclude coverage to Colonial for the Lawsuit.

Fifth, question number 29 in Application 1 and Question number 38 in Application #2 asked for information on Colonial's insurers for the prior three years, including the insurer name, policy number, coverage types, whether the coverage was provided on an occurrence or claims made basis, and the total premium. In response to both questions, Colonial listed "N/A". Nationwide has since learned that Colonial was insured by other insurers prior to the Scottsdale Policy, including, but not limited to, Skyward Specialty Ins. Group. Thus, Colonial's responses to these questions were also false.

Sixth, question number 23 in Application #1 asked the number of bouncers, doormen, and other security personnel. In response, Colonial answered "No". Additionally, Question number 29 in Application #2 asked Colonial to check all boxes that were applicable to security activities. In response, no boxes were checked, e.g., the box for bouncers was not checked. Nationwide has learned that there were bouncers, doormen, and/or security at the insured location. Additionally, Nationwide has also learned that there may have been off-duty police officers working at the premises. Thus, Colonial's responses to these questions were also false.

Seventh, Question number 16 in Application #2 asked if there was Hookah exposure at the insured location and Colonia responded "No". Nationwide has since learned that there was Hookah exposure at the location, and that at least one lawsuit was filed against Colonial/The Lobby because of this exposure, e.g., the Hutchinson Lawsuit. Thus, Colonial's responses to these questions were also false.

Scottsdale and Tapco relied upon each and every one these misrepresentations when deciding to issue the Policy, the terms of the Policy, and the amount of premium to charge. Had Colonial answered these questions truthfully, Scottsdale would not have issued the Policy. As a result, Scottsdale has a basis to rescind the Policy from its inception, **such that no coverage would be available under the Scottsdale Policy to any party, including Colonial, for the Lawsuit or for any other claims or lawsuits**.

Given the number and scope of these misrepresentations, Nationwide invites Colonial to provide the undersigned with any documents or information Colonial believes contradicts Nationwide's understanding of the applications or Colonial's operations or that are otherwise relevant to these issues. Nationwide also is amenable to holding a meeting with Colonial and the undersigned to discuss these issues. **Should Colonial wish to provide any such documents, or schedule a meeting, please contact the undersigned as soon as possible, but in no event later than ten (10) days from the date of this letter.**

Colonial Restaurant LLC
June 14, 2023
Page 6 of 7

If we do not hear from Colonial within this time frame, we intend to contact counsel for Persaud and raise these misrepresentations and advise Persaud's counsel that Scottsdale plans to rescind the Policy and that there will be no coverage available to Colonial for the Lawsuit under the Policy.

Depending on Persaud's counsel's response, Scottsdale will likely then file a lawsuit in the United States District Court for the District of New Jersey, naming both Colonial and Persaud, to rescind the Policy based on the many, many material misrepresentations identified herein and to obtain a declaration that Scottsdale owes neither a defense nor indemnity to Colonial for the Lawsuit.

Notwithstanding Scottsdale's intent to rescind the Policy, Nationwide offers, as a courtesy, to continue to defend Colonial for the Lawsuit, subject to a full and complete reservation of all Scottsdale's and Nationwide's rights under the Policy, at law, and in equity, including the right to deny coverage to Colonial for the Lawsuit, to withdraw the defense of Colonial for the Lawsuit, to deny indemnity to Colonial for the Lawsuit, to seek reimbursement of all costs incurred on behalf of Colonial for the Lawsuit, and to file a lawsuit to rescind the Policy and obtain a declaration that no coverage is available to Colonial for the Lawsuit under the Policy.

**As before, Colonial has the right to accept or reject Nationwide's offer of a continued defense subject to a full and complete reservation of rights.** If Colonial accepts this offer, assigned defense counsel David Montag, Esq. will continue to defend Colonial for the Lawsuit subject to the reservation of rights set forth herein and in our prior letter.

If Colonial rejects Nationwide's offer, it must retain its own counsel, at its own expense, to substitute in place of assigned defense counsel and to protect its interests for the Lawsuit. **To reject Nationwide's offer of a continued defense under a reservation of rights, Colonial must contact the undersigned within thirty (30) days of this letter in writing rejecting the offer.** If we do not hear from Colonial by that deadline, Nationwide will assume Colonial consents to its offer and assigned defense counsel will continue to defend Colonial subject to a reservation of rights as set forth herein and in our prior letter.

Even if Colonial accepts Nationwide's offer of a continued defense subject to a reservation of rights, it may still wish to retain its own personal lawyer, at its own expense, to advise it with respect to the issues set forth herein and in our prior letter. Further, if Scottsdale files a lawsuit to rescind the Policy, Colonial will need to retain its own lawyer, at its own expense, to represent it for such a lawsuit, and assigned defense counsel will not be able to represent Colonial for such a lawsuit. Ultimately, the decision of whether to retain personal counsel rests with Colonial alone.

Nationwide and Scottsdale will continue to investigate this matter subject to a full and complete reservation of all rights under the Scottsdale Policy, at law, and in equity. Nothing herein constitutes, nor should it be viewed as, a waiver of any of Scottsdale's or Nationwide's rights under the Scottsdale Policy, at law, or in equity. Nor is it the purpose of this letter to waive any additional defenses that further investigation may reveal. Instead, Scottsdale and Nationwide expressly reserve all rights available to them under the Policy, at law or in equity.

Nationwide's coverage position is based on its investigation of this matter to date. Nationwide reserves the right to supplement, modify, or change its position based on its receipt of additional information or additional pleadings filed in the Lawsuit. If you believe that you have documents or

Colonial Restaurant LLC
June 14, 2023
Page 7 of 7

information that are relevant to Nationwide's position, please send same to the undersigned immediately.

Pursuant to New Jersey Statute 17:29E-9, we advise you that Nationwide has an internal appeals procedure for the review of the disputed claims. Colonial may utilize this process following decisions regarding a claim. To notify Nationwide that it is requesting this process be implemented on its behalf, Colonial must send notice to the following address:

Scottsdale Insurance Company
Attention: Jennifer Gay, CBS Operations
18700 North Hayden Road
Scottsdale AZ 85255
Phone: (800) 423-7675 Ext. 2898
Fax: (480) 483-6752

You may seek further review of Nationwide's decisions for this matter from the New Jersey Insurance Claims Ombudsman at the following address:

Department of Banking and Insurance
Office of Insurance Claims Ombudsman
P.O. Box 472
Trenton, NJ 08625-0427
Phone: 800-446-7467
Fax: 609-292-2431
Email: mailto:ombudsman@dobi.state.nj.us

If you have any questions, comments or objections, please contact the undersigned.

Very truly yours,

Christian A. Cavallo

Enclosures:
cc: Khris Hill, LLC (via regular mail and certified mail, r.r.r. w/ encls.)
    P.O. Box 2241
    Elizabeth, NJ 07208



Christian A. Cavallo  |  Partner
Direct 973.681.7004  |  CCavallo@goldbergsegalla.com

December 16, 2022

**Via Mail & Certified Mail, R.R.R.**
Colonial Restaurant LLC
821 Spring Street
Elizabeth, NJ 07208

Re:  **Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez**
**Docket No.:  MID-L-004103-22**
**Claim No.:  02110244**
**Policy No.: CPS3985594 (Effective 5/5/21 to 11/15/21)**
**Date of Loss:  6/19/21**

To Whom It May Concern:

This firm has been retained by Nationwide E&S/Specialty Claims ("Nationwide"), on behalf of Scottsdale Insurance Company ("Scottsdale"), and Nationwide is in receipt of the above-referenced lawsuit filed by the Estate of Ajay P. Persaud ("Persaud") against, among others, Colonial Restaurants, LLC d/b/a "The Lobby" captioned: *Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez, an individual, et al.*, Superior Court of New Jersey, Middlesex County, Docket No.: MID-L-4103-22 ("Lawsuit").

Nationwide has had the opportunity to review Plaintiff's Complaint and other relevant documents.  Nationwide has also reviewed the relevant terms, conditions, exclusions, and limitations of the Scottsdale policy.  Based on its evaluation of these materials, Nationwide offers to defend Colonial Restaurant LLC ("Colonial" and/or "Insured") in the above-referenced lawsuit, subject to a full and complete reservation of all of Nationwide's rights under the Scottsdale policy, at law, and in equity.  The details of Nationwide's offer of a defense for the Lawsuit under a reservation of rights are set forth below.  <u>Colonial has the right to accept or reject Nationwide's offer of a defense under a reservation of rights.</u>

### Factual Background

#### *The Lawsuit*

On or about August 15, 2022, the Estate of Persaud, by and through Desiree Persaud ("D. Persaud"), commenced the Lawsuit.  Subsequently, on or about October 12, 2022, the Estate filed a Second Amended Complaint.  Based on Scottsdale's understanding, the Second Amended Complaint is the operative complaint in the Lawsuit.  The Second Amended Complaint names, among others, the following defendants:  Sergio Cabrerachavez ("Cabrerachavez"); The Lobby; Cotugno Investments, Inc. ("Cotugno"); The Lobby Group NJ LLC d/b/a "The Lobby"; JWPA, LLC d/b/a "The Lobby"; and Colonial Restaurants, LLC d/b/a "The Lobby".  On or about October 28, 2022, the Second Amended Complaint was dismissed against Cotugno via Consent Order.

Colonial Restaurant LLC
December 16, 2022
Page 2 of 15

In Count One of the Second Amended Complaint, it is alleged, on or about June 19, 2021, Persaud was a motorcyclist traveling on US 1 at or near the road's intersection with North Avenue in Elizabeth, New Jersey. *See* Lawsuit, ¶ 1. On that date, Cabrerachavez allegedly operated his pick-up truck in a negligent and unreasonable manner as to cause his vehicle to strike Persaud, who was riding on a motorcycle. *See* Lawsuit, ¶ 3. As a result of Cabrerachavez's alleged negligence, Persaud sustained bodily injuries that resulted in his death. *See* Lawsuit, ¶ 4.

In Count Two, it is alleged that the defendants, The Lobby, Cotugno, The Lobby Group NJ LLC d/b/a "The Lobby", JWPA, LLC d/b/a "The Lobby", and Colonial Restaurants, LLC d/b/a "The Lobby" had ownership and/or control of an alcohol beverage serving establishment, commonly known as "The Lobby" located at 821 Spring Street, Elizabeth, NJ. *See* Lawsuit, ¶ 2. On or about June 18, 2021, into the early hours of June 19, 2021, the aforementioned defendants, through their agents, servants, and/or employees, allegedly served alcoholic beverages to Persaud in a negligent and unreasonable manner, while Persaud was visibly intoxicated. *See* Lawsuit, ¶ 3. As a result of the alleged negligent and unreasonable service of alcoholic beverages to Persaud by the defendants, Persaud left The Lobby in an intoxicated condition and was involved in a motor vehicle accident. *See* Lawsuit, ¶ 4. The alleged negligence of the defendants, in the negligent service of alcoholic beverages to Persaud, while he was visibly intoxicated, allegedly constituted a substantial factor in the causing of the accident. *See* Lawsuit, ¶ 5. As a result of the defendants' alleged negligence, Persaud sustained bodily injuries that resulted in his death. *See* Lawsuit, ¶ 7.

Count Three is directed against John Does and/or ABC Companies.

Count Four asserts a wrongful death claim. In this count, it is alleged that this action was based upon the statute identified as "The Death Act of The State of New Jersey", N.J.S.A. 2a:3-1, *et seq*. *See* Lawsuit, ¶ 2. It is alleged, as a result of the death of Persaud, his next of kin will be deprived of his future society, services, companionship, and earnings. *See* Lawsuit, ¶ 4.

Finally, Count Five asserts a Survival Action claim. It is alleged in this count that D. Persaud and Tillack Persaud are the next of kin of Persaud and were left surviving him at the time of his death. *See* Lawsuit, ¶¶ 2-3. It is alleged, as a result of the defendants' negligence, Persaud sustained bodily injuries causing him to suffer prior to his death. *See* Lawsuit, ¶ 4. The survival action is brought pursuant to N.J.S.A. 2A:15-3. *See* Lawsuit, ¶ 5.

### *The Contract*

There appears to be a Lease Agreement between "Cotugno Investments, Inc.", as the Landlord, and "JPWA, LLC", as the Tenant, for the premises located at 821 US Highway 1, Elizabeth, New Jersey. Scottsdale is unaware of any contracts between Cotugno and Colonial.

### **The Tender**

Nationwide first received notice of the June 18-19, 2021 accident on or about October 5, 2022 when Cotugno tendered its defense and indemnity to JBWA, LLC/The Lobby in connection with the Lawsuit. To date, Colonial has not sought coverage under the Policy for the Lawsuit.

Colonial Restaurant LLC
December 16, 2022
Page 3 of 15

<u>**The Insurance Applications**</u>

***Application #1***

The Bars/Restaurant/Taverns General Liability Application for Colonial with a location address of 821 Spring Street, Elizabeth, NJ, which was signed and dated by Terry Gonzalez on May 21, 2021, included the following questions and responses.

In Question #2, the application asked for the Annual gross sales, for the next twelve (12) months. In response, $120,000 was listed for alcohol sales, and $230,000 was listed for food sales.

In Question #3, the application asked the number of years in business. In response, "new venture" was listed. Additionally, in Questions #28, the application requested prior carrier information. In response, "N/A" was listed.

In Question #5, the application requested the opening and closing times per day. In response, "11 AM – 1 AM" was listed.

In Question #17, the application asked whether there was live entertainment on the premises. In response, "no" was marked.

In Question #23, the application asked the number of bouncers, doormen, and other security personnel. In response, "no" was marked.

In Question #30, Loss History, the application requested the applicant indicate all claims or losses or occurrences that may give rise to a claim for the prior three (3) years. "N/A" was listed in response.

***Application #2***

Additionally, the Liquor Liability Application for Colonial, which was signed and dated on May 5, 2021, included the following questions and responses.

In Question #6, the application requested the estimated liquor receipts. In response, $120,000 was listed. Additionally, in Question #11, when asked about the percentage of liquor receipts to total receipts, "30%" was listed.

In Questions #12 and #13, the application asked how many years the applicant had been in business, and how many years it had been at this location. "New Venture" was listed in response to both questions. Additionally, in Questions #38, with respect to prior carrier information, "N/A" was listed in response.

In Question #16, the application asked if there was Hookah exposure. "No" was marked in response.

In Question #17, the application asked what time the location closed. "1 AM was listed". Additionally, in that same question, when asked hours of serving, "11 AM – 1 AM" was listed.

Colonial Restaurant LLC
December 16, 2022
Page 4 of 15

In Question #29, the application asked the applicant to check all boxes that were applicable to security activities. In response, no boxes were checked, e.g., the box for bouncers was not checked.

In Question #31, the application asked about the types of entertainment activities. In response, "N/A" was listed, e.g., the live entertainment box was not checked.

In Question #39, Loss History, the applicant was asked to indicate all liquor liability claims or lawsuits or occurrences that may give rise to a claim for the prior three (3) years. "N/A" was listed in response.

## The Investigation

Prior to the accident, on or about June 16, 2021, Tapco Underwriters, Inc. ("Tapco"), as an agent of Nationwide, requested an inspection of Colonial's premises located at 821 Spring Street, Elizabeth, New Jersey. On or about August 25, 2021, the inspection was conducted by York Risk Control Services, LLC ("York"), which included an interview with Ashok Dutta, the Insured contact.

According to the inspection, the total sales of the establishment were $3,500,000, and its liquor sales were $1,050,000. With respect to hours of operation, the investigation determined that the premises operated Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m. It was also determined that there were bouncers, doormen, and/or security at the premises, however, they were not armed. With respect to whether there was a dance floor, the inspection report stated there was "none", but noted there was a certificate of dance hall posted. It was also determined that the establishment had been in business for fifteen (15) years at this particular location. The inspection report also stated there was live entertainment at the premises, however, the type and frequency were not provided.

## The Prior Claims And Lawsuits

Additionally, a review of New Jersey's court dockets has revealed the following lawsuits were commenced within the last three (3) years against Colonial and/or The Lobby. First, on or about January 31, 2019, Yesina Melendez ("Melendez") commenced the lawsuit captioned: *Yesina Melendez v. The Lobby a/k/a The Lobby Sports Bar And Lounge, et al.*, Docket No.: MID-L-001080-19 ("Melendez Lawsuit"). On or about May 17, 2019, an amended complaint was filed naming Colonial as a defendant in the Melendez Lawsuit. In the amended complaint, Melendez claimed to have suffered injuries as a result of a slip and fall, which occurred on February 4, 2018. It was alleged as a result of Colonial's negligence, Melendez suffered her claimed injuries. According to the docket, on or about November 9, 2020, the case was resolved via stipulation.

Second, on or about June 5, 2020, Bondreice Nakala Hutchinson ("Hutchinson") commenced the lawsuit captioned: *Bondreice Nakala Hutchinson v. Colonial Restaurant d/b/a The Lobby, et al.*, Docket No.: MID-L-003607-20 ("Hutchinson Lawsuit") against, among others, Colonial Restaurant d/b/a The Lobby. According to the complaint, on or about July 1, 2018, while in the "The Lobby", located at 821 Spring Street, New Jersey, someone bumped into a table causing a hot hookah to fall on the plaintiff. According to the docket, on or about June 9, 2021, the case was resolved via stipulation.

Colonial Restaurant LLC
December 16, 2022
Page 5 of 15

Third, on or about July 31, 2019, Benjamin Casta ("Casta") commenced the lawsuit captioned: *Benjamin Casta v. Colonial Restaurant LLC d/b/a The Lobby, et al.*, Docket No.: UNN-L-002718-19 ("Casta Lawsuit") against, among others, Colonial d/b/a The Lobby.  In the complaint, it was alleged as a result of the defendants' negligence, Casta sustained injuries in an unspecified incident. According to the docket, on or about October 24, 2020, the case was resolved via stipulation.

Fourth, on or about January 19, 2021, Diamante Suarez commenced the lawsuit captioned: *Diamante Suarez v. The Lobby, et al.*, Docket No.: UNN-L-000192-21 ("Suarez Lawsuit") against, among others, The Lobby.  According to the lawsuit, due to the defendants' negligence, the plaintiff allegedly suffered injuries at the premises located at 821 Spring Street, Elizabeth, New Jersey.  According to the docket, on or about August 26 2022, a correspondence was filed with the court advising that a settlement had been reached in the matter.

Additionally, based on Nationwide's understanding, on or about July 25, 2015, there was an assault in the parking lot of the 821 Spring Street premises involving Kyle Nan Ness.

### The Scottsdale Policy

Scottsdale issued policy # CPS3985594 to Colonial with an effective date of May 5, 2021 (the "Scottsdale Policy" or the "Policy").  The Named Insured is identified as a "Limited Liability Company" in the Policy.  The Policy is comprised of a Commercial General Liability Coverage Part and a Liquor Liability Coverage Part.  The Policy's Schedule of Locations (UTS-SP-3 (8-96)) lists Premises No. 1 as 821 Spring St., Elizabeth, New Jersey.

The Policy's Commercial General Liability Coverage Part Supplemental Declarations page lists the General Aggregate (other than Products / Completed Operations) limit as $2 million.  Coverage A – Bodily Injury and Property Damage Liability Limits are listed as $1 million per occurrence. Additionally, the Commercial General Liability Coverage Part Extension Of Supplemental Declarations (CLS-SP-1L (10-93)) lists the Class Description of Premises No. 1 as: "Restaurants – With Sale Of Alcoholic Beverages That Are 30% Or More Of But Less Than 75% Of The Total Annual Receipts Of The Restaurants – Without Dance Floor".

The Liquor Liability Coverage Part Supplemental Declarations page (CLS-SD-5 (8-01)) lists the aggregate limit as $2 million, with a $1 million each common cause limit.  Item 3, Classification and Premium lists the Classification as "Restaurants, Taverns, Hotels, Motels, Including Package Sales (5816A)".

On or about October 13, 2021, a Notice of Cancellation Or Refusal To Renew, with an effective date of November 15, 2021, was issued in connection with the Policy.  The Notice advised that this action had been taken for the following reasons: "Company Request – Substantial Change in risk assumed".

The Policy utilizes the Common Policy Conditions Form, (IL 00 17 11 98), which states, in pertinent part, as follows:

All Coverage Parts included in this policy are subject to the following conditions.

Colonial Restaurant LLC
December 16, 2022
Page 6 of 15

…

### D.  Inspections And Surveys

**1.**  We have the right to:

   **a.**  Make inspections and surveys at any time;

   **b.**  Give you reports on the conditions we find; and

   **c.**  Recommend changes.

**2.**  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of any workers or the public.  And we do not warrant that conditions:

   **a.**  Are safe or healthful; or

   **b.**  Comply with laws, regulations, codes or standards.

**3.**  Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.**  Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

The Policy's Commercial General Liability Coverage Form, (CG 00 01 04 13) states, in pertinent part, as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

…

### Section I – Coverages

### Coverage A – Bodily Injury And Property Damage Liability

### 1.  Insuring Agreement

   **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to

Colonial Restaurant LLC
December 16, 2022
Page 7 of 15

which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

…

## 2.  Exclusions

This insurance does not apply to:

…

### c.  Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)**  Causing or contributing to the intoxication of any person;

**(2)**  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)**  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in:

**(a)**  The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)**  Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol:

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3**) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.  For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, whether or not a fee is charged or a license is required

Colonial Restaurant LLC
December 16, 2022
Page 8 of 15

for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

…

## Section II – Who Is An Insured

…

**1.** If you are designated in the Declarations as:

…

**c.** A limited liability company, you are an insured. Your members are also insured, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers.

…

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

…

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not show as a Named Insured in the Declarations.

...

## Section IV – Commercial General Liability Conditions

…

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

Colonial Restaurant LLC
December 16, 2022
Page 9 of 15

       **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

       **(1)** Immediately record the specifics of the claim or "suit" the date received; and

       **(2)** Notify us as soon as practicable.

       You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

<div align="center">…</div>

   **6. Representations**

   By accepting this policy, you agree:

       **a.** The statements in the Declarations are accurate and complete;

       **b.** Those statements are based upon representations you made to us; and

       **c.** We have issued this policy in reliance upon your representations.

<div align="center">…</div>

The Policy contains the Liquor Liability Coverage Form, (CG 00 33 04 13) which states, in part, as follows:

   Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

<div align="center">…</div>

**Section I – Liquor Liability Coverage**

   **1. Insuring Agreement**

       **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance

Colonial Restaurant LLC
December 16, 2022
Page 10 of 15

does not apply.  We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result.  But:

…

## Section II – Who Is An Insured

**1.** If you are designated in the Declarations as:

…

**c.** A limited liability company, you are an insured.  Your members are also insured, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers.

…

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

…

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

…

## Section IV – Liquor Liability Conditions

…

**2. Duties In The Event Of Injury, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim.  To the extent possible, notice should include:

**(1)** How, when and where the "injury" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any "injury".

**b.** If a claim is made or "suit" is brought against any insured, you must:

Colonial Restaurant LLC
December 16, 2022
Page 11 of 15

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

…

6. **Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

…

The Policy's Punitive Or Exemplary Damage Exclusion, (UTS-74g (8-95), states:

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

…

Please understand that while this Reservation of Rights And Non-Waiver Agreement quotes, references, and/or paraphrases only certain provisions of the Scottsdale Policy, Nationwide expressly reserves its right to rely on all of the provisions of the Policy, whether or not quoted, referenced, and/or paraphrased herein.

**<u>Nationwide's Offer To Defend Colonial Restaurant LLC For The Lawsuit, Subject To A Reservation Of Rights</u>**

Based on the information available to Nationwide at this time, and given the coverage issues discussed below, Nationwide offers to defend Colonial for the Lawsuit under the Scottsdale Policy,

Colonial Restaurant LLC
December 16, 2022
Page 12 of 15

subject to a full and complete reservation of all of Nationwide's rights under the Policy, at law, and in equity. In particular, Nationwide reserves its right to deny coverage to Colonial for the Lawsuit, to withdraw its defense of Colonial for the Lawsuit, to refuse to indemnify Colonial for any liability or other legal obligation Colonial incurs for the Lawsuit, to seek reimbursement of its defense costs incurred on Colonial's behalf for the Lawsuit, to seek a judicial declaration that there is no coverage available to Colonial for the Lawsuit under the Policy, and to rescind the Policy. Specifically, Nationwide reserves its rights under the following provisions of the Scottsdale Policy.

First, the Policy's Commercial General Liability Coverage Part, Section IV – Commercial General Liability Conditions, and the Policy's Liquor Liability Coverage Part, Section IV – Liquor Liability Conditions, 6. Representations sections state that by accepting the Policy, Colonial agrees that the statements in the Declarations are accurate and complete, that those statements are based upon representations that Colonial had made to Nationwide, and Nationwide has issued the Policy in reliance of Colonial's representations. Here, Nationwide relied on the representations made by Colonial in its insurance applications. However, York's investigation, which was requested pre-accident, as well as additional investigation, has revealed that the representations in Colonial's insurance applications were false.

Specifically, in the insurance applications, the estimated liquor receipts were listed as $120,000. However, according to York's investigation, the premises' liquor sales are approximately $1,050,000. Next, in the insurance applications, when asked regarding the number of years in business, "new venture" was listed. However, according to York's investigation, the business has been operating at its 821 Spring Street location for fifteen (15) years. Additionally, in the applications, when asked regarding loss history for the prior three (3) years, "N/A" was listed. However, based upon Scottsdale's current understanding, several lawsuits, including but not limited to the Melenendez Lawsuit, the Hutchinson Lawsuit, the Casta Lawsuit, and the Suarez Lawsuit, as well as an assault claim from 2015, have been asserted against Colonial and/or "The Lobby" within the last three (3) years. Further, in the insurance applications, when asked about opening and closing times, "11 AM – 1 AM" was listed. Conversely, the inspection revealed that the premises' hours of operation are actually Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m. Additionally, in the insurance applications, when asked whether there was live entertainment on the premises, "no" was marked in response. However, the inspection indicated that unspecified live entertainment is provided at the premises. The inspection also revealed that there is a certificate of dance hall posted. In the insurance application, when asked if there was any Hookah exposure, "no" was marked. However, according to the Hutchinson Lawsuit, it appears that the plaintiff was allegedly injured by a Hookah at the 821 Spring Street premises. Finally, in the applications, when asked regarding the number of bouncers, doormen, and other security personnel, "no" was marked in response. However, according to the inspection, there are bouncers, doormen, and/or security at the premises. Accordingly, Nationwide reserves its rights to rescind the Policy or disclaim coverage to Colonial for the Lawsuit based on Colonial's material misrepresentations in its insurance applications.

Second, the Policy's Commercial General Liability Coverage Part and Liquor Liability Coverage Part, Section II – Who Is An Insured sections, state that, if the Insured is a limited liability

Colonial Restaurant LLC
December 16, 2022
Page 13 of 15

company, "you" are an insured. However, no organization is an insured with respect to the conduct of any current or past limited liability company that is not shown as a Named Insured in the Declarations. Here, the Lawsuit is commenced against, among others, "Colonial Restaurant, LLC d/b/a 'The Lobby'". The Policy's Named Insured is "Colonial Restaurant LLC". As such, to the extent that the plaintiff's claims are asserted against an organization that does not constitute an insured under the Policy, Scottsdale must reserve its rights on this basis. For that reason, at this time, Nationwide will not agree to provide coverage to any defendant in the Lawsuit other than Colonial.

Third, the Policy's Commercial General Liability Coverage Part, Section IV – Commercial General Liability Conditions and the Policy's Liquor Liability Coverage Part, Section IV – Liquor Liability Conditions sections state, in part, that Colonial must see to it that Scottsdale is notified as soon as practicable of an "occurrence" which may result in a claim. Additionally, if a claim is made or "suit" is brought, Colonial must notify Nationwide as soon as practicable. Here, the accident occurred on or about June 19, 2021. However, Nationwide's first notice of the claim and Lawsuit was on or about October 5, 2022 when Cotugno tendered its defense and indemnity. Further, to date, Colonial has not sought coverage from Nationwide for the Lawsuit which was commenced on or about August 15, 2022. Accordingly, Nationwide reserves its right to deny coverage to Colonial for the Lawsuit based on that party's failure to comply with the above condition.

Fourth, the Scottsdale Policy's Commercial General Liability Coverage Part contains the Liquor Liability exclusion, which excludes coverage for "bodily injury" for which any insured may be held liable by reason of causing or contributing to the intoxication of any person. This exclusion applies even if the claims against the insured allege negligence or wrongdoing in the supervision, hiring, training or monitoring of others by the insured. In the Lawsuit, it is alleged as a result of the negligent and unreasonable service of alcoholic beverages to Persuad, Persuad left The Lobby in an intoxicated condition and was involved in a motorcycle accident sustaining injuries that led to his death. Nationwide therefore disclaims coverage to Colonial, under the Policy's Commercial General Liability Coverage Part, for the Lawsuit based on the Liquor Liability exclusion.

Fifth, the Policy contains the Punitive Or Exemplary Damages exclusion that excludes coverage for punitive or exemplary damages. Additionally, punitive damages are not insurable as a matter of New Jersey law. As such, to the extent the Lawsuit seeks any such damages, Nationwide must disclaim coverage to Colonial for any punitive or exemplary damages sought against it in the Lawsuit based on the Punitive Or Exemplary Damages Exclusion and New Jersey law.

As set forth above, some or all of the claims asserted against Colonial in the Lawsuit may fall outside the scope of the coverage provided by the Scottsdale Policy, or the Scottsdale Policy may be void *ab initio* based on Colonial's material misrepresentations in its insurance applications. Accordingly, Nationwide offers to defend Colonial for the Lawsuit under the Scottsdale Policy, subject to an express reservation of rights under the Policy, at law, and in equity. Colonial is entitled to accept or reject this offer. If it accepts this offer, then Nationwide will retain the law firm of Milber Makris Plousadis & Seiden, LLP ("Milber Makris") to defend Colonial for the Lawsuit in accordance with the terms and conditions set forth in this Reservation of Rights And Non-Waiver Agreement.

Colonial Restaurant LLC
December 16, 2022
Page 14 of 15

If Colonial chooses to reject Nationwide's offer, Nationwide will not retain Milber Makris to defend Colonial for the Lawsuit, and instead, Colonial must retain, at its own expense, counsel of its choosing to defend its interests for the Lawsuit. Thereafter, Colonial may seek reimbursement from Nationwide for the reasonable and necessary defense costs it incurs for the Lawsuit, but only to the extent such defense costs were incurred in connection with a claim actually covered under the Scottsdale Policy.

To reject Nationwide's offer of a defense for the Lawsuit under a reservation of rights, Colonial must contact the undersigned in writing rejecting the offer <u>within thirty (30) days of the date of this Reservation of Rights And Non-Waiver Agreement</u>. If we do not hear from Colonial within that time period, Nationwide will assume that Colonial accepts and agrees to Nationwide's offer of a defense subject to the terms specified in this Reservation of Rights And Non-Waiver Agreement, and Nationwide will retain Milber Makris to defend Colonial for the Lawsuit, subject to the reservation of rights set forth herein.

Even if Colonial accepts the terms of Nationwide's offer of a defense for the Lawsuit under a reservation of rights, it may still wish to retain personal counsel, at its own expense, to work with Milber Makris to protect any potential uninsured exposure discussed above. Should Colonial accept this offer, it is not required to retain its own attorney to represent it for the Lawsuit. However, we bring this matter to Colonial's attention since it merits serious consideration. The decision of whether Colonial should employ a personal attorney for the Lawsuit given the coverage issues discussed above rests with Colonial alone.

Please also be advised that the Scottsdale Policy imposes upon Colonial a duty to cooperate with Nationwide in investigating, defending, or settling the claims asserted against it in the Lawsuit. Any failure on Colonial's part to comply with this duty may provide a separate and independent basis for Nationwide to deny coverage to Colonial for the Lawsuit under the Policy. As part of that obligation, we request that Colonial provide the following documents:

1. Copies of all contract or agreements between Cotugno and Colonial;

2. The certificate of formation, articles of incorporation, or other documents governing the formation and management of Colonial;

3. All documents regarding any relationship between Colonial and The Lobby;

4. Any and claims and/or lawsuits asserted against Colonial and/or The Lobby between 2018 and June 2021; and

5. All correspondences between Colonial or Lobby and any other person or entity regarding the incident involving Persaud or the Lawsuit.

<u>Please provide the documents and information requested above to the undersigned. Additionally, please contact the undersigned, as soon as possible, to further discuss this matter.</u>

Colonial Restaurant LLC
December 16, 2022
Page 15 of 15


Nothing in this letter constitutes, nor should it be construed by you as, a waiver of any of Nationside's rights under the Policy, at law, or in equity.  Nor is it the purpose of this letter to waive any additional defenses available to Nationwide that further investigation may reveal.  Instead, Nationwide specifically and unequivocally reserves any and all rights available to it under any policy issued by Nationwide, at law, and in equity.

If you are aware of any additional information relevant to Nationwide's current coverage position in this matter, please provide such information to the undersigned as soon as possible for further consideration.  Thank you.

Pursuant to New Jersey Statute 17:29E-9, we advise you that Nationwide has an internal appeals procedure for the review of disputed claims.  Colonial may utilize this process following decisions regarding a claim.  To notify Nationwide that they are requesting this process be implemented on their behalf, Colonial must send notice to the following address:

<div align="center">

Scottsdale Insurance Company
Attention: Jennifer Gay, CBS Operations
18700 North Hayden Road
Scottsdale AZ 85255
Phone: (800) 423-7675 Ext. 2898
Fax: (480) 483-6752

</div>

Colonial may also seek further review of this matter by the New Jersey State Insurance Claims Ombudsman at the following address:

<div align="center">

Department of Banking and Insurance
Office of Insurance Claims Ombudsman
P.O. Box 472
Trenton, NJ 08625-0427
Phone: 800-446-7467
Fax: 609-292-2431
E-mail: ombudsman@dobi.state.nj.us

</div>

Very Truly Yours,

Christian A. Cavallo

☐ **Scottsdale Insurance Company**
   Home Office:   One Nationwide Plaza
                  Columbus, Ohio 43215
   Adm. Office:   8877 North Gainey Center Drive
                  Scottsdale, Arizona 85258

☐ **Scottsdale Surplus Lines Insurance Company**
   Adm. Office:   8877 North Gainey Center Drive
                  Scottsdale, Arizona 85258

☐ **Scottsdale Indemnity Company**
   Home Office:   One Nationwide Plaza
                  Columbus, Ohio 43215
   Adm. Office:   8877 North Gainey Center Drive
                  Scottsdale, Arizona 85258

## BARS/RESTAURANTS/TAVERNS GENERAL LIABILITY APPLICATION

Applicant's Name: Colonial Restaurant

Mailing Address: 821 Spring St.
Elizabeth NJ 07208

Location Address: Same

Agency Name: _____
Agent No.: _____
Address: _____
_____
E-mail: _____
Phone No.: _____

PROPOSED EFFECTIVE DATE: From 5-5-21 To 5-5-22 12:01 A.M., Standard Time at the address of the Applicant

ANSWER ALL QUESTIONS—IF THEY DO NOT APPLY, INDICATE "NOT APPLICABLE" (N/A)

Applicant is: ☐ Individual   ☐ Corporation   ☐ Partnership   ☐ Joint Venture
☑ Limited Liability Company   ☐ Other (Specify) _____

**Website Address:** _____

**E-mail Address:** _____   **Phone No.:** _____

**Inspection Contact:** _____

**E-mail Address:** _____   **Phone No.:** _____

**Limits of Liability and Deductible Requested:**

| | |
|---|---|
| General Aggregate (other than Products/Completed Operations) | $ 7,000,000 |
| Products and Completed Operations Aggregate | $ 2,000,000 |
| Personal and Advertising Injury (any one person or organization) | $ 1,000,000 |
| Each Occurrence | $ 1,000,000 |
| Damage to Premises Rented to You (any one premise) | $ 500,000 |
| Medical Expense (any one person) | $ 5,000 |
| Other Coverages, Restrictions and/or Endorsements: | $ |
| Deductible | $ |

Nationwide

1. **Classification of risk** (select all that apply):

- [ ] Banquet facility
- [ ] Bring your own bottle establishment
- [ ] Disco
- [ ] Membership club
- [x] Bar/Tavern
- [ ] Cabaret
- [ ] Country club
- [ ] Fine Dining
- [ ] Nightclub
- [ ] Bowling center
- [ ] Comedy Club
- [ ] Deli
- [ ] Gentlemen's/Strip Club
- [x] Restaurant

2. **Annual gross sales:**

| | Past Twelve (12) Months | Next Twelve (12) Months |
|---|---|---|
| Alcohol Sales | | 120,000 |
| Food Sales | | 280,000 |
| Gambling | | |
| Other | | |
| Total | | |

3. Number of years in business: ................................................................. New Venture
4. Number of years under current management: ...................................... New Venture
5. Opening and closing time per day: _11AM - 1AM_

6. **Schedule of Hazards:**

| Loc. No. | Classification Description | Class. Code | Exposure | Premium Basis (s) Gross Sales (p) Payroll (a) Area (c) Total Cost (t) Other |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

7. Are there any catering services available?..................................................... [ ] Yes [x] No

    If yes:  [ ] Off premises    [ ] On premises    Gross sales: .......................... $

8. Types of meals served:    [x] Full meals    [ ] Short order

9. Square footage of bar/tavern/restaurant:................................................. 4500

10. Is applicant a BBQ restaurant? ................................................................. [ ] Yes [x] No

11. Is applicant a microbrewery that sells their products for off premises consumption?.............. [ ] Yes [x] No

12. Are facilities available for use or rent for private parties, receptions, banquets or similar affairs? [ ] Yes [x] No

    If yes:  Number of times per year: .........................................

    Describe: _____

GLS-APP-18s (8-18)                    Page 2 of 8

 Nationwide

13. Are patrons allowed to drink their own alcoholic beverages on the premises? .................... ☐ Yes ☑ No

If yes:

   a.  Are there procedures in place for handling violent or disruptive patrons?..................... ☑ Yes ☐ No

   b.  Is there table service?.................................................................................................... ☑ Yes ☐ No

   c.  Does applicant also sell alcohol?.................................................................................. ☑ Yes ☐ No

14. Does applicant advertise or promote "happy hour" or other events when drinks are sold at a lower price than usual? ................................................................................................................. ☐ Yes ☑ No

15. Does applicant subscribe to a taxi or other service providing transportation home to apparently intoxicated persons?.................................................................................................................... ☐ Yes ☑ No

   If yes, describe: _____

16. Is there Hookah exposure (communal smoking)? ................................................................... ☐ Yes ☑ No

If yes:

   a.  Any blending of tobacco by applicant? .......................................................................... ☐ Yes ☐ No

      If yes, what percentage of tobacco products: _____ %

   b.  Does applicant import any tobacco products? ............................................................... ☐ Yes ☐ No

      If yes, what percentage of tobacco products: _____ %

   c.  Does applicant allow underage persons to purchase and/or use the products?............... ☐ Yes ☐ No

   d.  How often does applicant clean pipes, tubing and mouthpieces? _____

17. Entertainment:

   a.  Is there any live entertainment on premises? ............................................................... ☐ Yes ☑ No

      If yes:  Number of times per week: _____

      Describe: (include go-go dancers, topless, disco, exotic, female/male): _____

      _____

   b.  Is there dancing?........................................................................................................... ☐ Yes ☐ No

      If yes:  Number of times per week: _____

      Square footage of dance floor:_____

   c.  Does applicant have any mechanical or amusement devices? ........................................ ☐ Yes ☐ No

      If yes:  How many? _____

      Describe: _____

   d.  Is there a minimum or cover charge? ............................................................................. ☐ Yes ☐ No

   e.  Are there sports on the premises?.................................................................................. ☐ Yes ☐ No

      If yes:  Provide complete details: _____

   f.  Are sports sponsored off premises? ............................................................................... ☐ Yes ☐ No

      If yes:  Number of times per week: _____

      Give details: _____

   g.  Does applicant sponsor any special events?.................................................................. ☐ Yes ☐ No

      If yes:  Describe: _____

      _____


Nationwide

    **h.** Is there any gambling? ............................................................................................ ☐ Yes ☒ No

      If yes: Are there any "live" dealers? ............................................................... ☐ Yes ☐ No

        Number of gambling machines: .................................................................... ☐ Yes ☒ No

    **i.** Is there a play area for children? ........................................................................ ☐ Yes ☒ No

    **j.** Are there any drinking games (i.e., beer pong, flip cup)? .................................... ☐ Yes ☒ No

      If yes:  Describe: _____

    _____

    **k.** Are there any pub crawls (pedal bus or motorized)? ............................................ ☐ Yes ☒ No

    **l.** Does applicant own or sponsor party buses? ....................................................... ☐ Yes ☒ No

    **m.** Are there any hatchet/axe throwing activities? .................................................... ☐ Yes ☒ No

**18. Does applicant have parking area?** ................................................................................ ☒ Yes ☐ No

    If yes, is parking area well lit? .......................................................................................... ☒ Yes ☐ No

**19. Does applicant subcontract valet parking services on restaurant premises?** ...................... ☐ Yes ☒ No

    If yes: Annual subcontract cost: ................................................................................... $ _____

    Do subcontractors provide certificate of insurance with liability limits equal or greater than our
applicant? ................................................................................................................................ ☐ Yes ☐ No

    Do written contracts contain hold harmless agreements in favor of the applicant? ................. ☐ Yes ☐ No

    Does applicant require all subcontractors to include the applicant as an additional insured on the General Liability and Garage policies? .............................................................................................. ☐ Yes ☐ No

**20. Clientele:**

    ☒ Local residents    ☐ Families    ☐ Retirement community    ☐ College students    ☐ Seasonal residents

    Median age of patrons:    ☐ 18-25    ☐ 26-30    ☐ 31-40    ☐ 41 and over

    Are premises located near a college or university? .................................................................... ☐ Yes ☒ No

**21. In the past five years, has applicant been cited by the Liquor Control Commission?** ..................... ☐ Yes ☒ No

    If yes, give date(s) and full explanation: _____

    _____

**22. Are police records and background checks conducted on employees?** ................................... ☒ Yes ☐ No

**23. Number of bouncers, doormen or security personnel:** .................................................................. _____

    Are bouncers, doormen or security personnel employees? ........................................................... ☐ Yes ☐ No

    Are bouncers, doormen or security personnel independent contractors? ........................................ ☐ Yes ☐ No

    If independent contractors, do they provide Certificates of Insurance and Additional Insured Endorsements to the applicant? ...................................................................................................................... ☐ Yes ☐ No

**24. Does applicant have Workers' Compensation coverage in force?** ...................................... ☒ Yes ☐ No

    Total number of employees: ........................................................................................... ____

**25. During the past three years, has any company ever canceled, nonrenewed, declined or refused similar insurance to the applicant?** (Not applicable in Missouri) ........................................ ☐ Yes ☒ No

    If yes, explain: _____

**26. Does risk engage in the generation of power, other than emergency back-up power, for their own use or sale to power companies?** ........................................................................................ ☐ Yes ☒ No


Nationwide

27. Does applicant have other business ventures for which coverage is not requested?....................☐ Yes ☑ No

If yes, explain and advise where insured: _____

28. **Additional Insured Information:**

| Name | Address | Interest |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

29. **Prior Carrier Information:**

|  | Year: | Year: | Year: |
|---|---|---|---|
| Carrier |  |  |  |
| Policy No. |  |  |  |
| Coverage |  |  |  |
| Occurrence or Claims Made |  |  |  |
| Total Premium |  |  |  |

30. **Loss History:**

Indicate all claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the prior three years.       ☐ Check if no losses in the last three years.

| Date of Loss | Description of Loss | Amount Paid | Amount Reserved | Claim Status (Open or Closed) |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. (Not applicable in AL, CO, DC, FL, KS, LA, ME, MD, MN, NE, NY, OH, OK, OR, RI, TN, VA, VT or WA.)

**NOTICE TO ALABAMA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**NOTICE TO COLORADO APPLICANTS:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

Nationwide

GLS-APP-18s (8-18)

**APPLICANT'S STATEMENT:**

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty.)

APPLICANT'S NAME AND TITLE: Terry Gonzalez

APPLICANT'S SIGNATURE: _____  DATE: 5-5-21

PRODUCER'S SIGNATURE: _____  DATE: _____

AGENT NAME: Hillary Comero          AGENT LICENSE NUMBER: 1537643

NAME AND PHONE NUMBER OF INDIVIDUAL TO CONTACT FOR INSPECTION/AUDIT: Terry Gonzalez
908 63 7976

───────────────────── IMPORTANT NOTICE ─────────────────────

As part of our underwriting procedure, a routine inquiry may be made to obtain applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

GLS-APP-18s (8-18)                    Page 8 of 8                    Nationwide

/_/_/_/_/_/ - /_/_/ - /_/_/_/_/
Transaction Number

Form Number **SLPS-6-CERT-1**

**STATE OF NEW JERSEY**
**DEPARTMENT OF BANKING AND INSURANCE**
**SURPLUS LINES EXAMINING OFFICE**
**P.O. BOX 325**
**TRENTON, NEW JERSEY 08625-0325**

## CERTIFICATION OF EFFORT TO PLACE RISK WITH AUTHORIZED INSURER

This certification shall be submitted by the originating producer to the surplus lines agent, within 30 business days after the effectuation of any surplus lines insurance. The **original** of the certification must be maintained in the files of the surplus lines agent and a copy in the files of the producer and both must be available for inspection by the Commissioner for a period of at least five years.

Colonial Restaurant LLC.
(Name of Insured)

821 Spring St. Elizabeth NJ 07208
(Address of Insured)

821 Spring St. Elizabeth NJ 07208
(Location of Property or Risk)

6C / 1 million
(Insurance Coverage: Description and Amount)

///////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

Whirs Hill
(Originating Producer - Corporate or partnership)

Hillary Sermeno
(Originating Producer - Individual Name and/or Title)

1329 North Ave. Elizabeth NJ 07208
(Originating Producer - Complete Address)

The above hereby certifies that he/she is duly licensed as an insurance producer under the laws of New Jersey, and that: On or about _____, 20___, I was engaged by the insured named herein to procure insurance of the kind described herein and in the amount shown. I have made a diligent effort first to place this coverage with authorized insurers, each of which is authorized in New Jersey to write insurance of the kind requested and is an insurer that I had a good faith reason to believe might consider writing the type of coverage described herein.



**RWRSO**

## Certification of Effort To Place Risk With Authorized Insurer (continued)

### Page 2 of 2

The following insurers are among those that I contacted relative to this risk, or to substantially similar risks within the past 30 days:

| INSURER | REPRESENTATIVE | TELEPHONE NO. | DATE | RESULT CODE* |
|---------|----------------|---------------|------|--------------|
| CNA | | | | |
| State farm | | | | |
| Travelers | | | | |

*Result Codes: (enter appropriate code(s) for each insurer listed above)

**A.** - Having made a diligent effort. I was unable to obtain an offer/quote from this authorized insurer in the admitted market, which declined to accept all or any part of the risk.

AND/OR

**B.** - Having made a diligent effort, the only offer(s)/ quote(s) obtained reflected such a substantial increase in premium over similar coverage placed within the preceding 12 months that comparable coverage is, as a practical matter, unavailable from this authorized insurer in the admitted market.

AND/OR

**C.** - Having made a diligent effort, the only offer(s)/ quote(s) obtained reflect(s) such a substantial reduction in coverage from coverage placed within the preceding 12 months for substantially similar premium that comparable coverage is, as a practical matter, unavailable from this authorized insurer in the admitted market.

I certify that the foregoing statements made by me are true to the best of my knowledge and belief. I am aware that if any of the statements are willfully false, I am subject to civil and criminal penalties.

5-5-21

(Date)

Signature

Amended by R.2005 d.104, effective April 4, 2005.
See: 36 N.J.R.2144(a), 37 N.J.R.1065(a).

☐ **Scottsdale Insurance Company**
Home Office:   One Nationwide Plaza
                      Columbus, Ohio 43215
Adm. Office:   8877 North Gainey Center Drive
                      Scottsdale, Arizona 85258

☐ **Scottsdale Surplus Lines Insurance Company**
Adm. Office:   8877 North Gainey Center Drive
                      Scottsdale, Arizona 85258

☐ **Scottsdale Indemnity Company**
Home Office:   One Nationwide Plaza
                      Columbus, Ohio 43215
Adm. Office:   8877 North Gainey Center Drive
                      Scottsdale, Arizona 85258

## LIQUOR LIABILITY APPLICATION

### Complete a separate application for each location.

Applicant's Name: Colonial Restaurant

Agency Name: _____

Mailing Address: 821 Spring St.
                         Elizabeth NJ 0720

Agent: _____
Address: _____

Location Address: _____
_____
_____

E-Mail: _____

Website Address: _____

Phone No.: _____

**PROPOSED EFFECTIVE DATE: From** 5-5-21 **To** 5-5-22   12:01 A.M., Standard Time at the address of the Applicant

**Inspection Contact Name:** Terry Gonzalez          **Phone:** _____

ANSWER ALL QUESTIONS—IF THEY DO NOT APPLY, INDICATE "NOT APPLICABLE" (N/A)

**Applicant is:**   ☐ Individual      ☐ Corporation      ☐ Partnership      ☐ Joint Venture
                       ☑ Limited Liability Company      ☐ Other (Specify): _____

### Limits of Liability Requested

| **Each Common Cause** | **Aggregate** |
|---|---|
| $ 1,000,000 | $ 2,000,000 |

### 1.  Classification of risk:

| | | |
|---|---|---|
| ☐ Arena/Stadium | ☐ Auditorium | ☐ Banquet Hall |
| ☐ Bar/Tavern | ☐ Bartender/Liquor service only | ☐ Bowling Alley |
| ☐ Casino/Gaming | ☐ Catering Service | ☐ Comedy Club |
| ☐ Concession Stand | ☐ Convenience Store | ☐ Drive-through Daiquiri Shop |
| ☐ Exercise and Health Studio | ☐ Exhibit Hall | ☐ Fairground |
| ☐ Gentlemen's/Strip Club | ☐ Grocery Store | ☐ Hotel/Motel |
| ☐ Liquor Distributor/Wholesaler | ☐ Liquor Manufacturer/Brewery | ☐ Liquor/Package Store |
| ☐ Microbrewery | ☐ Nightclub | ☐ Party Buses |
| ☑ Restaurant | ☐ Social Club | ☐ Special Event |
| ☐ Sports Field | ☐ Winery | |
| ☐ Other (Describe): _____ | | |

GLS-APP-28g (9-17)                    Page 1 of 6                     Nationwide

2. Are patrons allowed to bring their own alcoholic beverages? .......................................... ☐ Yes ☒ No

3. Are patrons allowed to self-serve themselves alcoholic beverages? ................................ ☐ Yes ☒ No

4. Has applicant ever been assessed a fine for violation of a law concerning the sale of alcohol, or had their liquor license suspended/revoked? .......................................... ☐ Yes ☒ No

   If yes, when and why? _____

5. Name on liquor license: colonial restaurant    Type of liquor license: retail

6. Estimated liquor receipts: ............................................................................ $ 120,000

   Other receipts: ........................................................................................ $ _____

7. Average price for:

   Beer: ...................................................................................................... $ 6

   Wine: ...................................................................................................... $ 7

   Liquor: .................................................................................................... $ 7

8. Percentage of receipts for on-premises consumption: ............................................ 80 %

9. Percentage of receipts for off-premises consumption: ........................................... _____ %

10. Estimated food receipts: ............................................................................ $ 280,000

11. Percentage of liquor receipts to total receipts: .................................................... 30 %

12. How many years has the applicant been in business? ............................................. new venture

13. How many years has the applicant been at this location? ......................................... new venture

14. Premises within city limits? .......................................................................... ☒ Yes ☐ No

15. Square foot area of establishment: 4500    (Maximum Occupancy: 80 )

16. How many days per week is the location open? ...................................................... 7

17. What time does the location close? 1 AM    Hours of serving: 11AM – 1AM

18. Number of servers? ..................................................................................... 5

19. Have all servers been through alcohol awareness server training (i.e., TIPS, TOPS)? ........... ☒ Yes ☐ No

    If yes:

    Type of course: TIPS

    How often required? twice a year

20. Does insured have a ride home policy? ............................................................... ☐ Yes ☒ No

21. How often does the manager review liquor liability laws with employees (including penalties for serving intox-icated customers)? weekly

22. Are procedures in place regulating the sale of alcohol to minors and those under the influence? ☒ Yes ☐ No

    If yes, describe: ID scanners

    How is age of customer verified? ID scanners

23. Type of clientele: ☒ Area Residents    ☐ Area Workers    ☐ Tourists    ☐ College    ☐ Other: _____

24. Percent of clientele:

    25 and under: ..........................................................................................

    26-30: .................................................................................................... _____ %

    Over 30: .................................................................................................. 40 %

    .......................................................................................................... 60 %

25. **Type of area:** ☑ Industrial or Commercial  ☐ Residential  ☐ Rural  ☐ Other: _____
   Located on or near college campus? ................................................................. ☐ Yes ☑ No

26. **Is there an entrance fee or cover charge?** ......................................................... ☐ Yes ☑ No
   If yes, what is the amount? ........................................................................ $ _____

27. **Does applicant have "Happy Hour" or 2-for-1 drink specials?** ...................................... ☐ Yes ☑ No
   Is last call announced? ........................................................................... ☑ Yes ☐ No
   Are customers allowed more than one drink at last call? ........................................... ☐ Yes ☑ No

28. **Any internet or mail order liquor sales?** ........................................................... ☐ Yes ☑ No

29. **Security Activities:**
   Security provided (check all applicable):
   ☐ Bouncers      ☐ Doormen      ☐ Off-Duty Police      ☐ Contracted Security Guards
   ☐ Inside        ☐ Outside      ☐ Armed                ☐ Unarmed
   ☐ Other (Describe): _____
   Any firearms kept or carried on the premises? ..................................................... ☐ Yes ☑ No

30. **Are there procedures for handling violent or disruptive patrons?** ................................. ☑ Yes ☐ No
   If yes, describe: The Restaurant & Nightclub Handbook

31. **Types of entertainment activities:**
   ☐ Darts    ☐ DJ    ☐ Exotic Dancing    ☐ Jukebox    ☐ Karaoke    ☐ Pinball Machine
   ☐ Dance Floor .................................................. Size: _____
   ☐ Electronic Games ........................................... Type: _____
   ☐ Live Entertainment ......................................... Type and how often: _____
   ☐ Mechanical Devices ......................................... Type: _____
   ☐ Pool Table(s) ............................................... Number: _____
   ☐ Other activities that would include patron participation (such as: wrestling, boxing, volleyball, etc.): _____

   ☐ Drinking Games (i.e., beer pong, flip cup) sponsored by the insured? ............................. ☐ Yes ☐ No
   ☐ Special Promotions ............................................................................. ☐ Yes ☐ No
   If yes, describe: _____

32. **Gentlemen's/Strip Clubs:**
   Turnover rate for staff: _____
   Are servers/dancers in training? ................................................................. ☐ Yes ☐ No
   Does applicant prohibit serving of alcohol after hours to their staff? ............................. ☐ Yes ☐ No
   Are clients allowed to purchase drinks for dancers/hostesses? ..................................... ☐ Yes ☐ No

33. **Manufacturer:**
   Are tours of facility provided? .................................................................. ☐ Yes ☐ No
   Are free samples given? .......................................................................... ☐ Yes ☐ No
   If yes, how is quantity controlled? _____


Nationwide

**34. Distributor:**

Any sponsored events? .................................................................................................................. ☐ Yes ☑ No

If yes, describe: _____

Policy for giving away alcoholic beverages by Sponsor? .................................................... ☐ Yes ☐ No

If yes, describe: _____

**35. Caterers:**

Are clients/guests allowed to mix their own drinks? ............................................................ ☐ Yes ☑ No

Does caterer provide liquor or bartending service? .............................................................. ☐ Yes ☐ No

**36. Additional Insured Information:**

| Name | Address | Interest |
|------|---------|----------|
|  | N/A |  |
|  |  |  |
|  |  |  |

**37. During the past three years, has any company ever canceled, declined or refused similar insurance to the applicant?** (Not applicable in Missouri) ........................................... ☐ Yes ☐ No

If yes, explain: _____ N/A _____

**38. Prior Carrier Information:**

| | Year: | Year: | Year: |
|---|---|---|---|
| **Carrier** |  |  |  |
| **Policy No.** |  |  |  |

**39. Loss History:**

Indicate all Liquor Liability claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the prior three years.          ☐ Check if no losses in the last three years.

| Date of Loss | Description of Loss | Amount Paid | Amount Reserved | Claim Status (Open or Closed) |
|---|---|---|---|---|
|  | N/A | $ | $ |  |
|  |  | $ | $ |  |
|  |  | $ | $ |  |
|  |  | $ | $ |  |
|  |  | $ | $ |  |

This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.

I understand that Liquor Liability is a separate coverage part and the limits requested in this application apply solely to liquor liability coverage and may differ from the General Liability limits afforded in my commercial package policy.

I further understand that the Company is relying upon statements I have made in this application as an inducement to provide insurance for Liquor Liability coverage.

GLS-APP-28g (9-17)


Nationwide

**FRAUD WARNING (APPLICABLE IN VERMONT, NEBRASKA AND OREGON):** Any person who intentionally presents a materially false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

**FRAUD WARNING (APPLICABLE IN TENNESSEE, VIRGINIA AND WASHINGTON):** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

**NEW YORK FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**APPLICANT'S STATEMENT:**

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty.)

APPLICANT'S SIGNATURE: _____ DATE: 5-5-21

CO-APPLICANT'S SIGNATURE: _____ DATE: _____

PRODUCER'S SIGNATURE: _____ DATE: 5-5-21

AGENT NAME: Hillary Semeno   AGENT LICENSE NUMBER: 1537643

(Applicable to Florida Agents Only)

IOWA LICENSED AGENT: _____

(Applicable in Iowa Only)

**———— IMPORTANT NOTICE ————**

As part of our underwriting procedure, a routine inquiry may be made to obtain applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

GLS-APP-28g (9-17)        Page 6 of 6        Nationwide



I_I_I_I_I_I-I_I_I-I_I_I_I_I_I
Transaction Number

The undersigned applicant has been advised by the undersigned originating insurance producer and understands that an insurance policy written by a surplus lines insurer is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance.  Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance.

_____
**Applicant's Signature**

_____
**Applicant's Name (Print or Type)**

_____
**Date of Applicant's Signature**

_____
**Producer Signature**

_____
**Producer Name (Print or Type)**

_____
**Date of Producer Signature**

_____
**New Jersey Producer License Reference Number**

**RWRSO**

# Exhibit 29

**FREDSON STATMORE BITTERMAN, LLC**
Kristian A. Krause, Esq.
Attorney ID: 029672012
200 Broadacres Drive, Suite 180
Bloomfield, NJ 07003-3156
Attorney for Plaintiff
File #: 27203

| | |
|---|---|
| ERNESTO ROJAS,<br><br>        Plaintiff,<br><br>  vs.<br><br>MAURICIO CORNEJO MARTINEZ,<br>GUILIANO ENVIRONMENTAL, LLC,<br>CHRISTOPHER GUILIANO, NANCY<br>GUILIANO, NELSON GUZMAN,<br>LOOKERS, THE LOBBY, JOHN DOE<br>1-10, ABC CORP. 1-10, XYZ BAR 1-10<br>(names being fictitious as true identities<br>are unknown at this time),<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br><br>DOCKET NO: MID-L-2399-22<br><br>CIVIL ACTION<br><br>**AMENDED COMPLAINT AND<br>JURY DEMAND** |

Plaintiff, Ernesto Rojas, residing at 719 Clifton Avenue in the City of Newark, County of Essex,

State of New Jersey, complaining of the defendant(s) states as follows:

### FIRST COUNT

1. On or about 12/10/2021, plaintiff was a passenger in an automobile.

2. At that time and place, Defendant Nelson Guzman was the driver and owner of a motor
   vehicle in which Plaintiff was a passenger in.

3. At that time and place, Defendant Mauricio Cornejo Martinez was the driver of a
   commercial vehicle owned by Defendants Guiliano Environmental, LLC, Nancy
   Guiliano and/or Christopher Guiliano, a company transacting business in the Township
   of Sayreville, County of Middlesex and State of New Jersey.

4. As a result of the negligence of the aforementioned Defendant(s), a motor vehicle accident occurred in the City of Newark, County of Essex, State of New Jersey.

5. As a result of the aforementioned accident, injuries were suffered by the Plaintiff.

6. As a result of the negligence aforesaid, Plaintiff suffered severe injuries of both a temporary and permanent nature, endured great pain and suffering, was required to seek and obtain medical care and treatment in an effort to relieve pain and cure injuries and was otherwise incapacitated from activities.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally or in the alternative for bodily injury damages including but not limited to medical costs, expenses, interest and cost of suit.

## SECOND COUNT

1. Plaintiff repeats and realleges each and every allegation contained in the First Count of the Complaint as though set forth herein more fully at length.

2. Upon information and belief, for some time immediately prior to the aforementioned incident, the Defendant, Nelson Guzman, had been a patron at one or more establishments which sold liquor to him, including Defendant, Lookers, Defendant, The Lobby, and XYZ Bar 1-10 (fictitious names).

3. During this period, said Defendants, by and through their servants, agents and/or employees, Defendants, John Doe 1-10 (fictitious names), did sell and serve the Defendant Nelson Guzman, intoxicating liquor and alcoholic beverages when said Defendants, through their agents, servants an/or employees, knew or should have known, or could have ascertained by making proper observations, that said Defendant was intoxicated and under the influence of alcoholic beverages as a result of having been

served said beverages by said Defendants through their agents, servants and/or employees.

4. The incident as set forth in this Complaint was proximately caused by and was a result of the intoxication of the Defendant, Nelson Guzman, and was brought about and permitted by the negligent, careless and/or reckless conduct of the Defendants, Defendant, Lookers, Defendant, The Lobby, AND XYZ Bar 1-10 (fictitious names) and/or John Doe 1-10 (fictitious names), as set forth above.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally or in the alternative for bodily injury damages including but not limited to medical costs, expenses, interest and cost of suit.

<div align="center">

**THIRD COUNT**

</div>

1. Plaintiff repeats and realleges each and every allegation contained in the First through Second Counts of the Complaint as though set forth herein more fully at length.

2. At the time and place aforesaid, the acts of the Defendant, Lookers, Defendant, The Lobby, and XYZ Bar 1-10 (fictitious names) and/or John Doe 1-10 (fictitious names), were willful and wanton in nature and constituted gross negligence.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally or in the alternative for bodily injury damages including but not limited to medical costs, expenses, interest and cost of suit.

<div align="center">

**FOURTH COUNT**

</div>

1. Plaintiff repeats and realleges each and every allegation contained in the First through Third Counts of the Complaint as though set forth more fully at length.

2. The losses and damages suffered by the Plaintiff was a result of the combined negligence of all of the aforementioned Defendants.

MID-L-002399-22  01/16/2024 11:39:28 AM  Pg 4 of 9  Trans ID: LCV2024123837

**WHEREFORE,** Plaintiff demands judgment against the Defendants jointly, severally or in the alternative for bodily injury damages including but not limited to medical costs, expenses, interest and cost of suit.

### TRIAL DESIGNATION

Kristian A. Krause. Esq. is hereby designated as trial counsel on behalf of plaintiff(s).

### JURY DEMAND

Plaintiff demands trial by jury.

### CERTIFICATION

I hereby certify pursuant to Rule 4:5-1 that the matter in controversy is not the subject of any other action or arbitration proceeding, nor is any other action or arbitration proceeding contemplated, and no other party should be joined in this action at this time.

### DEMAND FOR PRODUCTION OF DOCUMENTS

PLEASE TAKE NOTICE that pursuant to R.4:18-1, plaintiff hereby demands that you produce the following documents within 30 days from the date hereof which are in this defendant's care, custody, control, possession and/or that of their counsel.

This request is intended to cover all documents that this party is authorized to retrieve including financial documents and/or medical documents.

As used in this request, the term "document" means, without limitation, the following items whether printed or recorded or reproduced by any other mechanical process or written or produced by hand:

Agreements, communications, state and federal governmental hearings and reports, correspondence, telegrams, memorandum, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, graphs, reports, notebooks, note charts, plans, drawings, sketches, maps, summaries or other records of meetings or

conferences, summaries or reports of investigations or negotiations, opinions or reports of consultation, photographs, motion picture film, brochures, pamphlets, advertisements, circulars, motion, releases, drafts, letters, any marginal comments appearing on any and all documents and all other writings.

These requests are continuing and include documents which may hereafter come into your actual or constructive possession, custody or control.

If a document is responsive to more than one request, it is to be noted as to which request(s) the document applies.

If you believe that any of the following requests call for the production of material to which a claim or privilege applies, for each document state:

A.    Identify the document;

B.    State the claim or privilege being relied upon not to produce it;

C.    State the date and the subject matter of the document;

D.    State the name of the person who prepared the document;

E.    State the name of the person for whom the document was intended.

The purpose of the above is to properly identify the document so the judge who hears a motion will have appropriate reference.

## **REQUESTS**

1.    Any and all written statements and/or transcription from any recorded statement(s), recording or any oral statement(s), and summaries of all interviews directly or indirectly concerning the above captioned litigation made by any of the parties to this litigation or of any witnesses to the events surrounding the subject matter accident or occurrence or the events which immediately followed thereafter.

2.    All photographs, still pictures, motion pictures, video tapes, and/or any other visual depiction relating to any product, injury, location and/or other item involved in his litigation.

3.    Any work orders, invoices and/or other documents relating any way to any product, service, purchase, or maintenance or any item involved in this litigation.

4.    Copies of any textbook, papers, safety codes, findings and/or reports of any governmental agency or other authority with respect to the any alleged defects and/or negligent condition alleged in this litigation.

5.    Copies of all written accident or investigation reports concerning this accident or occurrence.

6.    Any and all copies of reports, correspondence, memoranda and writings rendered by any expert witness employed or consulted by this answering party or anyone acting on this answering party's behalf concerning this matter.

7.    The complete investigative file prepared by this answering party, this party agents, servants and employees, or this party's insurance carrier.

8.    Copies of any and all medical reports, records and bills generated as a result of the injuries sustained in this matter by this answering party, including all hospital and emergency rooms records.

9.    Copies of all documentation evidencing a claim for lost wages.

10.    A copy of the Declaration Page of the policy of insurance that insured this defendant at the time of the occurrence which gives rise to the within litigation.

11.    Copies of any and all documentation other than that supplied above on which this defendant will rely at the time of trial.

12.    Set forth any other litigation that this defendant has been involved in with respect to the issues raised by the plaintiff's complaint. For each set forth:

A.   The caption of the case, the location where the case pended, and a docket or identifying index number;

B.   The names of the attorneys who represented each of the parties;

C.   Any allegations as to negligence and/or warranty;

D.   Describe the occurrence of the event which gave rise to the litigation;

E.   Describe the outcome of each allegation of the plaintiff(s) in each of the litigations.

## <u>DEMAND FOR ANSWERS TO FORM C AND C1 UNIFORM INTERROGATORIES AND SUPPLEMENTAL INTERROGATORIES</u>

PLEASE TAKE NOTICE that pursuant to R.4:17-1(b)(ii) plaintiff demands certified answers to Form C and C(1) of the Uniform Interrogatories set forth in the Appendix to the Rules Governing Civil Practice and the following supplemental interrogatories:

1.   If there are multiple defendants state each defendant's relationship to the other(s).

2.   Do you, or does any person acting on your behalf, have any reports concerning the occurrence of plaintiff's injury?  YES [ ] NO [ ]

If the answer is "YES", state: (a) the full name, present or last known address and telephone number of the person making it; (b) the date made; (c) the purpose of each report, including, but not limited to,  investigatory or accident report; (d) the field of expertise and relationship to you of the person making it; (e) whether or not it was made in the regular course of business; (f) the findings; (g) whether it was written or oral; and (h) if written, attach a copy hereto, and if oral, set forth the substance thereof.

3.   If the defendant disputes the accuracy or truthfulness of any statement in plaintiff's answers to interrogatories, or testimony at the deposition, regarding the manner or happening of the accident, state specifically which statements are disputed, what defendant claims is the true stated facts, and the basis of the defendant's knowledge or belief.

4.  State if this defendant is aware of any accidents or injuries at the place of plaintiff's accident, within a ten year period prior to the plaintiff's accident and if so state the date, name of the person involved, a description of the accident, the type of injury involved, and if an attorney represented that individual.

5.  If plaintiff's claim involves an injury on property, set forth the name, address, and employer of every janitor, superintendent, or other person charged with maintaining the premises where the plaintiff was injured.

6.  If plaintiff's claim involves an injury on property, state how frequently the place where plaintiff was injured was inspected prior to the date of the accident.

7.  If plaintiff suffered an injury as a result of ice and/or snow, state how long the condition existed prior to the date of the injury, and last time that the snow or ice was removed from the area where the accident occurred.

8.  Identify every document that this defendant will be introducing at the time of trial. Describing each sufficiently so as to be the subject of a Notice To Produce. In lieu of description, attach a copy of each document.

9.  If the defendants contend in any way that the injuries claimed by plaintiff to have been caused by this incident were in fact not caused or in any way related to this incident, state fully and in detail each and every fact upon which defendants will rely in support of said contention. Annex hereto copies of all medical records or other documents upon which defendants will rely in support of said contention.

10. If defendants contend that plaintiff sustained physical injuries at any time prior or subsequent to the subject accident, please state:

    a.  The date of any and all said injuries; and

      b.     The nature of any said injuries.

FREDSON STATMORE BITTERMAN, LLC

BY: */s/ Kristian A. Krause*
              KRISTIAN A. KRAUSE, ESQ.

Dated: January 16, 2024

FREDSON, STATMORE, BITTERMAN LLC
Fredson Statmore Bitterman, LLC
200 Broadacres Drive, Suite 180
Bloomfield, NJ 07003
(973) 777-8600
27203

ATTORNEY FOR THE PLAINTIFF

| | |
|---|---|
| ERNESTO ROJAS | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION |
| Plaintiff | Middlesex COUNTY |
| | DOCKET NO.: MID-L-002399-22 |
| -v- | |
| | CIVIL ACTION |
| MAURICIO CORNEJO MARTINEZ, ET AL | |
| Defendant(s) | **SUMMONS** |

FROM THE STATE OF NEW JERSEY TO: THE LOBBY

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey, and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages, or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

/s/ Michelle M. Smith
Michelle M. Smith,
Clerk of the Superior Court

DATED: January 16, 2024

Name of the Defendant(s) to be served:   THE LOBBY

Address of the Defendant(s) to be served:   821 SPRING STREET, ELIZABETH, NJ 07201

COUNTY LAWYER REFERRAL/LEGAL SERVICES CONTACT INFORMATION

| | | |
|---|---|---|
| New Jersey Bar Association<br>Lawyer Referral Service<br>   (732)249-5000<br><br>Legal Services of New Jersey, Inc.<br>   (908)572-9100 | Gloucester County<br>Gloucester County Bar Association<br>Lawyer Referral Service<br>   (856)848-44071<br>*Regional Legal Services<br>   (856)848-5360 | Passaic County<br>Passaic County Bar Association<br>Lawyer Referral Service<br>   (973)278-9223<br>Passaic County Legal Aid<br>   (973)523-2900 |
| Atlantic County<br>Atlantic County Bar Association<br>Lawyer Referral Service<br>   (609)345-3444<br>Cape-Atlantic Legal Services<br>   (609)348-4200 | Hudson County<br>Hudson County Bar Association<br>Lawyer Referral Service<br>   (201)798-2727<br>Hudson County Legal Services<br>   (201)792-6363 | Salem County<br>Salem County Bar Association<br>Lawyer Referral Service<br>   (856)935-5629<br>*Regional  Legal Services<br>   (856)496-4570 |
| Bergen County<br>Bergen County Bar Association<br>Lawyer Referral Service<br>   (201)488-0044<br>Bergen County Legal Services<br>   (201)487-2166 | Hunterdon County<br>Hunterdon County Bar Association<br>Lawyer Referral Service<br>   (908)200-7822<br>Hunterdon County Legal Services<br>   (908)782-7979 | Somerset County<br>Somerset County Bar Association<br>Lawyer Referral Service<br>   (908)685-2323<br>Somerset-Sussex Legal Services<br>   (908)231-0840 |
| Burlington County<br>Burlington County Bar Association<br>Lawyer Referral Service<br>   (609)261-4862<br>*Regional  Legal Services<br>   (609)261-1088 | Mercer County<br>Mercer County Bar Association<br>Lawyer Referral Service<br>   (609)585-6200<br>Legal Aid Society-Mercer County<br>(609)695-6249 | Sussex County<br>Sussex County Bar Association<br>Lawyer Referral Service<br>   (973)267-5882<br>Somerset-Sussex Legal Services<br>   (973-383-7400 |
| Camden County<br>Camden County Bar Association<br>Lawyer Referral Service<br>   (856)482-0618<br>*Regional Legal Services<br>   (856)964-2010 | Middlesex County<br>Middlesex County Bar Association<br>Lawyer Referral Service<br>   (732)828-0053<br>Middlesex County Legal Services<br>   (732)828-3433 | Union County<br>Union County Bar Association<br>Lawyer Referral Service<br>   (908)353-4715<br>Union County Legal Services<br>   (908)354-4340 |
| Cape May County<br>Cape May County Bar Association<br>Lawyer Referral Service<br>   (609)463-0313<br>Cape-Atlantic Legal Services<br>   (609)465-3001 | Monmouth County<br>Monmouth County Bar Association<br>Lawyer Referral Service<br>   (732)431-5544<br>Ocean-Monmouth Legal Services<br>   (732)414-6750 | Warren County<br>Warren County Bar Association<br>Lawyer Referral Service<br>   (908)387-1835<br>Warren County Legal Services<br>   (908)475-2010 |
| Cumberland County<br>Cumberland County Bar Assoc.<br>Lawyer Referral Service<br>   (856)696-5550<br>Legal Aid Society<br>   (856)691-0494 | Morris County<br>Morris County Bar Association<br>Lawyer Referral Service<br>   (973)267-5882<br>Legal Aid Society of Morris<br>   (973)285-6911 | |
| Essex County<br>Essex County Bar Association<br>Lawyer Referral Service<br>   (973)622-6204<br>Essex County Legal Aid Assoc.<br>   (973)622-0063 | Ocean County<br>Ocean County Bar Association<br>Lawyer Referral Service<br>   (732)431-5544<br>Ocean-Monmouth Legal Services<br>   (732)608-7794 | * Camden Regional Legal Services, Inc. serves Burlington, Cumberland, Gloucester and Salem  Counties. |

# Exhibit 30



Christian A. Cavallo  |  Partner
Direct 973.681.7004  |  CCavallo@goldbergsegalla.com

April 3, 2024

**Via Mail & Certified Mail, R.R.R.**
Colonial Restaurant LLC
c/o Maureen LePochat, Esq.
Powell, Kugelman & Postell, LLC
131 White Oak Lane
Old Bridge, New Jersey 08857
Email: mlepochat@lawppl.com

> Re:   **Ernesto Rojas v. The Lobby, et al.**
> **Docket No.:  MID-L-2399-22**
> **Progressive Garden State Insurance Company, et ano. v. The Lobby NJ, et al.**
> **Docket No.: MID-L-006920-23**
> **Claim No.: 02158982**
> **Policy No.: CPS3985594 (5/5/21 to 11/15/21) (cancelled and rescinded)**
> **Date of Loss:  12/10/21**

Dear Ms. LePochat:

This law firm is counsel for Nationwide E&S/Specialty Claims ("Nationwide"), on behalf of Scottsdale Insurance Company ("Scottsdale"), with regard to the above referenced lawsuits filed by: Ernesto Rojas ("Rojas") against, among others, "The Lobby" (the "Rojas Lawsuit"), and Progressive Garden State Insurance Company and Progressive Garden State Insurance Company ("Progressive") against, among others, "The Lobby NJ" ("Progressive Lawsuit") (Rojas Lawsuit and Progressive Lawsuit collectively "Lawsuits").  We understand that you have been retained as personal counsel for Colonial Restaurant LLC ("Colonial") for the Lawsuits.  If this understanding is incorrect, please advise the undersigned immediately.  For the reasons detailed below, Scottsdale must disclaim coverage for the Rojas Lawsuit and the Progressive Lawsuit, under Scottsdale policy # CPS3985594 ("Scottsdale Policy" and/or "Policy").

Scottsdale issued the Policy to Colonial pursuant to certain terms, conditions, and limitations found within the Policy and related documents.  Though Scottsdale cites and quotes certain provisions of the Policy that may be applicable throughout this letter, we advise you to read the Policy in its entirety for a full understanding of the potential coverage or limitations and exclusions to coverage that may be found within the Policy.  Scottsdale reserves the right to rely on any part of the Policy or limit or disclaim coverage for this loss.

**Factual Background**

***The Rojas Lawsuit***

April 3, 2024
Page 2 of 16

On or about May 18, 2022, Rojas commenced the Rojas Lawsuit. On or about January 16, 2024, an Amended Complaint was filed. In the First Count of the Amended Complaint, it is alleged, on or about December 10, 2021, Rojas was a passenger in an automobile driven and owned by Nelson Guzman ("Guzman"). *See* Rojas Lawsuit, ¶¶ 1-2. At that time and place, Defendant Mauricio Cornejo Martinez ("Martinez") was the driver of a commercial vehicle owned by Defendants Guiliano Environmental, LLC, Nancy Guiliano, and/or Christopher Guiliano (collectively "Guiliano"). *Id.* at ¶ 3. As a result of the Defendants' negligence, a motor vehicle accident occurred in Newark, New Jersey, which resulted in Rojas' claimed damages. *Id.* at ¶¶ 4-6.

In the Second Count, it is alleged that prior to the aforementioned incident, Defendant Guzman had been a patron at one of more of the establishments that sold liquor to him, including Defendant Lookers and The Lobby. *Id.* at ¶ 2. It is alleged, during this period, the Defendants by and through their servants, agents, and/or employees, sold and served Nelson intoxicating liquor and alcoholic beverages when said Defendants knew or should have known that Nelson was intoxicated and under the influence of alcoholic beverages as a result of having been served said beverages by the Defendants. *Id.* at ¶ 3. It is alleged the incident set forth in the Amended Complaint was caused by and was the result of the intoxication of Nelson and was brought about by the negligent, careless, and/or reckless conduct of the Defendants. *Id.* at ¶ 4.

In the Third Count, it is alleged that the acts of the Defendants, including The Lobby, were willful and wanton in nature and constituted gross negligence. *Id.* at ¶ 2.

In the Fourth Count, it is alleged the losses and damages suffered by Rojas were the result of the combined negligence of all of the Defendants. *Id.* at ¶ 2.

### The Progressive Lawsuit

On or about December 8, 2023, Progressive, as subrogee of Rojas, commenced the Progressive Lawsuit. On or about February 22, 2024, an Amended Complaint was filed. In the Amended Complaint, it is alleged that on or about December 10, 2021, Rojas was a passenger in a vehicle owned and operated by Guzman. *See* Progressive Lawsuit, ¶ 18. At that same time and place, Martinez was operating a tractor-trailer, which was owned, rented, and/or leased by Martinez or Guiliano Environmental. *Id.* at ¶¶ 19-20.

It is alleged, at the aforementioned time and place, Martinez operated the vehicle in a negligent manner causing a collision with the vehicle occupied by Rojas. *Id.* at ¶ 23. It is further alleged that, on or about December 10, 2021, Defendants Lookers Gentleman's Club and/or The Lobby NJ acted in a reckless, careless, willful, wanton, and/or negligent manner, so as to serve alcohol to a visibly intoxicated person and allowing Guzman to drive while under the influence, which resulted in Rojas' injuries. *Id.* at ¶¶ 25-28. As a result of the defendants' actions or omissions, Progressive paid medical expense benefits, pursuant to Personal Injury Protection ("PIP") coverage. *Id.* at ¶ 29. Accordingly, Progressive is seeking to recover the PIP benefits, the costs of processing said payments, and the cost of enforcing the rights granted to Progressive. *Id.* at ¶ 32.

The First Count is a Negligence claim. *Id.* at ¶¶ 33-37. The Second Count is a Liability Of Vehicle Owners claim. *Id.* at ¶¶ 38-44. The Third Count is a Vicarious Liability Of Employers claim. *Id.* at ¶¶ 45-49. The Fourth Count is a Negligent Employment/Hiring Retention claim. *Id.* at ¶¶ 50-

April 3, 2024
Page 3 of 16

55.  The Fifth Count is a Negligent Supervision claim.  *Id.* at ¶¶ 56-59.  The Sixth Count is a Direct Right Of PIP Recovery claim.  *Id.* at ¶¶ 60-68.  The Seventh Count is a Statutory Liability claim.  *Id.* at ¶¶ 69-70.

## The Insurance Applications

### *Application #1*

The Bars/Restaurant/Taverns General Liability Application for Colonial with a location address of 821 Spring Street, Elizabeth, NJ, which was signed and dated by Terry Gonzalez on May 21, 2021, included the following questions and responses.

In Question #2, the application asked for the Annual gross sales, for the next twelve (12) months.  In response, $120,000 was listed for alcohol sales, and $230,000 was listed for food sales.

In Question #3, the application asked the number of years in business.  In response, "new venture" was listed.  Additionally, in Questions #28, the application requested prior carrier information.  In response, "N/A" was listed.

In Question #5, the application requested the opening and closing times per day.  In response, "11 AM – 1 AM" was listed.

In Question #17, the application asked whether there was live entertainment on the premises. In response, "no" was marked.

In Question #23, the application asked the number of bouncers, doormen, and other security personnel.  In response, "no" was marked.

In Question #30, Loss History, the application requested the applicant indicate all claims or losses or occurrences that may give rise to a claim for the prior three (3) years.  "N/A" was listed in response.

### *Application #2*

Additionally, the Liquor Liability Application for Colonial, which was signed and dated on May 5, 2021, included the following questions and responses.

In Question #6, the application requested the estimated liquor receipts.  In response, $120,000 was listed.  Additionally, in Question #11, when asked about the percentage of liquor receipts to total receipts, "30%" was listed.

In Questions #12 and #13, the application asked how many years the applicant had been in business, and how many years it had been at this location.  "New Venture" was listed in response to both questions.  Additionally, in Questions #38, with respect to prior carrier information, "N/A" was listed in response.

In Question #16, the application asked if there was Hookah exposure.  "No" was marked in response.

In Question #17, the application asked what time the location closed.  "1 AM was listed". Additionally, in that same question, when asked hours of serving, "11 AM – 1 AM" was listed.

April 3, 2024
Page 4 of 16

In Question #29, the application asked the applicant to check all boxes that were applicable to security activities. In response, no boxes were checked, e.g., the box for bouncers was not checked.

In Question #31, the application asked about the types of entertainment activities. In response, "N/A" was listed, e.g., the live entertainment box was not checked.

In Question #39, Loss History, the applicant was asked to indicate all liquor liability claims or lawsuits or occurrences that may give rise to a claim for the prior three (3) years. "N/A" was listed in response.

## The Investigation

On or about June 16, 2021, Tapco Underwriters, Inc. ("Tapco"), as an agent of Nationwide, commenced an investigation into Colonial's business at its premises located at 821 Spring Street, Elizabeth, New Jersey ("Premises"). On or about August 25, 2021, the inspection was conducted by York Risk Control Services, LLC ("York"). The inspection revealed numerous material misrepresentations in Application #1 and Application #2.

Specifically, following the investigation, Nationwide learned there was live entertainment at the Premises. Prior to May 5, 2021, the Policy's effective date, Nationwide had no knowledge there was live entertainment at the Premises as Colonial misrepresented this fact in Application #1 and Application #2.

Following the investigation, Nationwide learned there was a certificate of dance hall posted at the Premises. Prior to May 5, 2021, Nationwide had no knowledge dancing may be permitted at the Premises as Colonial misrepresented this fact in Application # 1 and Application #2.

Following the investigation, Nationwide learned Colonial operated its establishment Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m. Prior to May 5, 2021, Nationwide had no knowledge that Colonial operated its establishment during the above-stated hours, as Colonial misrepresented that it was opened from 11 a.m. to 1 a.m. in Application #1 and Application #2.

Following the investigation, Nationwide learned Colonial's total sales for the applicable period were $3.5 million in food sales and its liquor sales were $1.050 million. Prior to May 5, 2021, Nationwide had no knowledge Colonial's total sales for the applicable period were $3.5 million in food sales and its liquor sales were $1.050 million as, in Application #1 and Application #2, Colonial misrepresented that its estimated food sales were only $280,000 and estimated liquor sales were only $120,000.

Following the investigation, Nationwide learned Colonial had been in business for approximately fifteen (15) years. Prior to May 5, 2021, Nationwide had no knowledge Colonial had been in business for approximately fifteen (15) years, as Colonial misrepresented it was a "new venture" in Application #1 and Application #2.

## The Prior Claims And Lawsuits

Following the issuance of the Policy, Nationwide also learned numerous lawsuits had been brought against Colonial or "The Lobby", which, based upon information and belief, is a trade name for Colonial, during the relevant time period including, but not limited to:

April 3, 2024
Page 5 of 16

        a.     the lawsuit captioned *Yesina Melendez v. The Lobby a/k/a The Lobby Sports Bar And Lounge, et al.*, Docket No.: MID-L-001080-19 ("Melendez Lawsuit") commenced, on or about January 31, 2019, by Yesina Melendez ("Melendez");

        b.     the lawsuit captioned: *Benjamin Casta v. Colonial Restaurant LLC d/b/a The Lobby, et al.*, Docket No.: UNN-L-002718-19 ("Casta Lawsuit"), commenced by Benjamin Casta, on or about July 31, 2019, against, among others, Colonial d/b/a The Lobby;

        c.     the lawsuit captioned: *Bondreice Nakala Hutchinson v. Colonial Restaurant d/b/a The Lobby, et al.*, Docket No.: MID-L-003607-20 ("Hutchinson Lawsuit") commenced by Bondreice Nakala Hutchinson ("Hutchinson"), on or about June 5, 2020, against, among others, Colonial Restaurant d/b/a The Lobby; and

        d.     the lawsuit captioned: *Diamante Suarez v. The Lobby, et al.*, Docket No.: UNN-L-000192-21 ("Suarez Lawsuit") commenced by Diamante Suarez ("Suarez"), on or about January 19, 2021, against, among others, The Lobby.

Prior to May 5, 2021, Nationwide had no knowledge lawsuits had previously been commenced against Colonial as Colonial misrepresented this fact in Application #1 and Application #2.

Following the issuance of the Policy, in response to Nationwide's request, Colonial provided documents to Nationwide that included notices of additional claims asserted against Colonial during the relevant time period including, but not limited to:

        a.     a letter dated April 5, 2019 from lawyers representing Jennifer Garcia ("Garcia") stating due to the carelessness and negligence of The Lobby at its Premises, Garcia sustained personal injuries;

        b.     a letter dated November 1, 2019 from lawyers representing Edison Espinoza ("Espinoza") stating Espinoza sustained personal injuries on October 20, 2019 as a result of an assault and battery by The Lobby's employees / agents on The Lobby's Premises;

        c.     a letter dated June 1, 2021 from lawyers representing Quiana Diggs ("Diggs") with respect to a claim of an alleged attack on Diggs at the Premises on May 31, 2021 on an outside patio area;

        d.     an undated letter from lawyers representing Kevin Connell ("Connell") for injuries at the Premises on May 5 and 6, 2019, when Connell claimed he was assaulted by one of The Lobby's security employees;

Prior to May 5, 2021, Nationwide had no knowledge there were prior claims asserted against Colonial as Colonial misrepresented this fact in Application #1 and Application #2.

Following the issuance of the Policy, Nationwide learned of numerous incidents of police activity, by the Elizabeth Police Department, at the Premises including, but not limited to:

        a.     on February 22, 2020, police responded to a report of a simple assault in which a female customer stated she had been assaulted by a security guard;

        b.     on February 23, 2020, police responded to a report of a fight involving a large crowd;

April 3, 2024
Page 6 of 16

      c.      on March 15, 2020, police responded to a woman claiming she was grabbed by a stranger at the club;

      d.      on August 9, 2020, police responded to an incident in which it was alleged that security would not let a party in and they were stopped and pepper sprayed by security;

      e.      on August 15, 2020, police responded to an incident in which it was alleged that bouncers had stolen a customer credit card;

      f.      on September 4, 2020, police responded to an incident in which a customer was harassing other customers;

      g.      on September 22, 2020, police returned to collect surveillance footage of a shooting that had occurred the day before;

      h.      on October 26, 2020, police responded to a report of a disorderly group;

      i.      on November 21, 2020, police responded to a report of a disorderly patron who would not leave the establishment;

      j.      on December 26, 2020, police responded to disorderly patrons, one of which was eventually charged with criminal mischief; and

      k.      on January 26, 2021, police responded to a report of a fight at the establishment when patrons refused to leave.

Prior to May 5, 2021, Nationwide had no knowledge there was substantial prior police activity at the Premises as Colonial misrepresented this fact in Application #1 and Application #2.

### Additional Misrepresentations

Additionally, following the issuance of the Policy, based upon information and belief, Nationwide learned Colonial was insured by other insurers prior to the Policy, including, but not limited to, Skyward Specialty Ins. Group ("Skyward"). Prior to May 5, 2021, Nationwide had no knowledge Colonial was previously insured by other insurers including, but not limited to Skyward, as Colonial misrepresented this fact in Application #1 and Application #2.

Following the issuance of the Policy, Nationwide learned there were bouncers, doormen, and/or security at the Premises, which may have included off-duty police officers working at the Premises. Prior to May 5, 2021, Nationwide had no knowledge there were bouncers, doormen, and/or security at the Premises, which potentially included off-duty police officers, as Colonial misrepresented this fact in Application #1 and Application #2.

Following the issuance of the Policy, Nationwide learned the Hutchinson Lawsuit was filed against Colonial / The Lobby, which alleged damages based on Hookah exposure. Prior to May 5, 2021, Nationwide had no knowledge there was Hookah exposure at the Premises as Colonial misrepresented this fact in Application #1 and Application #2.

### The Scottsdale Policy

Scottsdale issued the Policy to Colonial with an effective date of May 5, 2021. The Named Insured is identified as a "Limited Liability Company" in the Policy. The Policy is comprised of a

April 3, 2024
Page 7 of 16

Commercial General Liability Coverage Part and a Liquor Liability Coverage Part. The Policy's Schedule of Locations (UTS-SP-3 (8-96)) lists Premises No. 1 as 821 Spring St., Elizabeth, New Jersey.

The Policy's Commercial General Liability Coverage Part Supplemental Declarations page lists the General Aggregate (other than Products / Completed Operations) limit as $2 million. Coverage A – Bodily Injury and Property Damage Liability Limits are listed as $1 million per occurrence. Additionally, the Commercial General Liability Coverage Part Extension Of Supplemental Declarations (CLS-SP-1L (10-93)) lists the Class Description of Premises No. 1 as: "Restaurants – With Sale Of Alcoholic Beverages That Are 30% Or More Of But Less Than 75% Of The Total Annual Receipts Of The Restaurants – Without Dance Floor".

The Liquor Liability Coverage Part Supplemental Declarations page (CLS-SD-5 (8-01)) lists the aggregate limit as $2 million, with a $1 million each common cause limit. Item 3, Classification and Premium lists the Classification as "Restaurants, Taverns, Hotels, Motels, Including Package Sales (5816A)".

The Policy utilizes the Common Policy Conditions Form, (IL 00 17 11 98), which states, in pertinent part, as follows:

> *All Coverage Parts included in this policy are subject to the following conditions.*
>
> …
>
> **D. Inspections And Surveys**
>
> **1.** *We have the right to:*
>
> > *a. Make inspections and surveys at any time;*
> >
> > **b.** *Give you reports on the conditions we find; and*
> >
> > **c.** *Recommend changes.*
>
> **2.** *We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of any workers or the public. And we do not warrant that conditions:*
>
> > *a. Are safe or healthful; or*
> >
> > **b.** *Comply with laws, regulations, codes or standards.*
>
> **3.** *Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.*
>
> **4.** *Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.*

The Policy's Commercial General Liability Coverage Form, (CG 00 01 04 13) states, in pertinent part, as follows:

*Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.*

*…*

### Section I – Coverages

### Coverage A – Bodily Injury And Property Damage Liability

#### 1. Insuring Agreement

**a.** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

*…*

#### 2. Exclusions

*This insurance does not apply to:*

*…*

#### c. Liquor Liability

*"Bodily injury" or "property damage" for which any insured may be held liable by reason of:*

**(1)** *Causing or contributing to the intoxication of any person;*

**(2)** *The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or*

**(3)** *Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.*

*This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in:*

**(a)** *The supervision, hiring, employment, training or monitoring of others by that insured; or*

**(b)** *Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol:*

*if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.*

*However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes*

April 3, 2024
Page 9 of 16

> *of this exclusion, permitting a person to bring alcoholic beverages on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.*

> *…*

> **Section II – Who Is An Insured**

> *…*

> **1.** *If you are designated in the Declarations as:*

> *…*

> **c.** *A limited liability company, you are an insured. Your members are also insured, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers.*

> *…*

> **3.** *Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:*

> *…*

> *No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not show as a Named Insured in the Declarations.*

> *…*

> **Section IV – Commercial General Liability Conditions**

> *…*

> **6. Representations**

> *By accepting this policy, you agree:*

> **a.** *The statements in the Declarations are accurate and complete;*

> **b.** *Those statements are based upon representations you made to us; and*

> **c.** *We have issued this policy in reliance upon your representations.*

> *…*

The Policy contains the Liquor Liability Coverage Form, (CG 00 33 04 13) which states, in part, as follows:

> *Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.*

> *…*

> **Section I – Liquor Liability Coverage**

**1. Insuring Agreement**

    **a.** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:*

    …

**Section II – Who Is An Insured**

    **1.** *If you are designated in the Declarations as:*

    …

    **c.** *A limited liability company, you are an insured. Your members are also insured, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers.*

    …

    **3.** *Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:*

    …

    *No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.*

    …

**Section IV – Liquor Liability Conditions**

    …

**6. Representations**

    *By accepting this policy, you agree:*

    **a.** *The statements in the Declarations are accurate and complete;*

    **b.** *Those statements are based upon representations you made to us; and*

    **c.** *We have issued this policy in reliance upon your representations.*

    …

The Policy's Punitive Or Exemplary Damage Exclusion, (UTS-74g (8-95), states:

    *In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.*

April 3, 2024
Page 11 of 16

*Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.*

*If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.*

The Policy's New Jersey Changes – Cancellation And Nonrenewal Endorsement at Form IL 02 08 09 07 states, in part:

**C.** *The following is added to the* **Cancellation** *Common Policy Condition:*

**7. Cancellation Of Policies In Effect For 60 Days Or More**

> **a.** *If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued; we may cancel this policy only for one or more of the following reasons:*
>
> … 
>
> > **(3)** *Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;*
> >
> > …
>
> **b.** *If we cancel this policy based on Paragraph* **7.a.(1)** *or* **(2)** *above, we will mail or deliver a written notice, to the first Named Insured an any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.*
>
> **c.** *In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.*
>
> **d.** *Notice will be sent to the last mailing addresses known to us, by:*
>
> > **(1)** *Certified mail; or*
> >
> > **(2)** *First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.*
>
> …

Please understand that while this disclaimer quotes, references, and/or paraphrases only certain provisions of the Scottsdale Policy, Scottsdale expressly reserves its right to rely on all of the provisions of the Policy, whether or not quoted, referenced, and/or paraphrased herein.

<u>**The Policy's Cancellation**</u>

The Policy was cancelled on November 15, 2021 per the Notice of Cancellation, dated October 13, 2021, for "Substantial Change in risk assumed", which was sent via First Class Mail to

April 3, 2024
Page 12 of 16

Colonial.  Following the Policy's cancellation, which was effective November 15, 2021, a pro-rated portion of the Policy's premium was returned to Colonial, on or about December 21, 2021.

## **The Policy's Rescission**

In its December 7, 2023 letter,[1] Nationwide advised Colonial based on its numerous misrepresentations in Application #1 and Application #2, Nationwide was rescinding the Policy, rendering it void *ab initio*.  On or about December 1, 2023, Nationwide returned the remainder to the Policy's premium to Colonial.

Additionally, as you are aware, on or about February 22, 2024, Scottsdale commenced its declaratory judgment action captioned: *Scottsdale Insurance Company v. Colonial Restaurant, LLC, et al.*, United States District Court For The District Of New Jersey, Docket No. 2:24-cv-00152 ("Declaratory Judgment Action").  In its Declaratory Judgement Action, Scottsdale is seeking a declaration that the Policy is rescinded and void *ab initio*.

Please be advised, although the Policy was no longer in effect at the time of Rojas' accident, Scottsdale intends to amend the Complaint in the Declaratory Judgment Action joining Rojas and Progressive as interested parties, as to ensure Rojas and Progressive are bound by any orders, rulings, or judgments made in the Declaratory Judgment Action.

## **Nationwide's Disclaimer**

Based on the information provided to Nationwide to date, Nationwide has determined there is no coverage available to Colonial, under the Policy, for the Rojas Lawsuit and Progressive Lawsuit and, thus, must disclaim coverage for the Rojas Lawsuit and the Progressive Lawsuit.

First, the Policy's New Jersey Changes – Cancellation And Nonrenewal Endorsement states, in part, that if the Policy has been in effect for more than sixty (60) days, Nationwide may cancel the Policy due to material misrepresentations or nondisclosure to Nationwide of a material fact at the time of the acceptance of the risk.

Here, on or about August 25, 2021, an inspection of the Premises was conducted  The inspection revealed numerous material misrepresentations regarding the Premises, including, but not limited to, misrepresentations regarding: (1) the total sales and liquor sales at the Premises, (2) the hours of operation at the Premises, (3) the use of bouncers, doormen, and/or security at the Premises, (4) the existence of a dance hall, (5) the number of years the establishment had been in business, and (6) live entertainment at the Premises.  Following the inspection, in accordance with the Policy's requirements, on October 13, 2021, Nationwide issued a Notice of Cancellation, to Colonial, via First Class Mail, with an effective date of November 15, 2021 due to "Substantial Change in risk assumed".  Accordingly, the Policy was cancelled on November 15, 2021.

In the Rojas Lawsuit, it is alleged, on **December 10, 2021**, Rojas sustained his claimed injuries.  Additionally, in the Progressive Lawsuit, it also alleged that the claimed damages arose out of the December 10, 2021 motor vehicle accident.  As the claimed losses occurred after the Policy's cancellation, the Policy does not provide coverage for the Rojas Lawsuit and Progressive Lawsuit.

---

[1] A copy of Nationwide's December 7, 2023 letter is attached and are incorporated herein by reference.

April 3, 2024
Page 13 of 16

Accordingly, Nationwide must disclaim coverage under the Policy to Colonial for the Lawsuits on this basis.

Second, the Policy's Commercial General Liability Coverage Part, Section IV – Commercial General Liability Conditions, and the Policy's Liquor Liability Coverage Part, Section IV – Liquor Liability Conditions, 6. Representations sections state that by accepting the Policy, Colonial agrees that the statements in the Declarations are accurate and complete, that those statements are based upon representations that Colonial had made to Nationwide, and Nationwide has issued the Policy in reliance of Colonial's representations.  Here, Nationwide relied on the representations made by Colonial in its insurance applications.  However, Nationwide's investigation has revealed that the representations in Colonial's insurance applications were false.  Specifically, Colonial materially misrepresented the following:

- Question number 1 of Application #1 and question 1 of Application #2 asked for the classification of the risk presented by Colonial's business.  In response to both questions, Colonial checked "Bar/Tavern" and "Restaurant".  It did not check the box for "Nightclub".  Question 17.a. of Application # 1 asked if there is any live music at the insured premises and Question 17.b. asked if there is any dancing.  In response, Colonial checked the box for "no" for Question 17.a. and wrote "NA [e.g., Not Applicable] for Question 17.b.  Additionally, question number 31 in Application #2 asked about the types of entertainment activities held at the insured location, including dance floor and live entertainment.  In response, Colonial listed "N/A".  Nationwide has learned that there was live entertainment at the Premises.  Additionally, with respect to whether there was a dance floor, Nationwide has learned that a certificate of dance hall was posted at the insured Premises.  Further, question number 5 in Application #1 asked Colonial's opening and closing times per day.  In response, Colonial listed "11 AM – 1 AM".  Similarly, question number 17 in Application #2 asked what time the insured location closed and the hours of service, and in response Colonial listed "1 AM" and "11 AM – 1 AM".  Nationwide has since learned that Colonial operated Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m.  Thus, Colonial's responses to all of these questions were false, as Colonial was operating a nightclub, rather than a bar/tavern or a restaurant, at the Premises.

- Question number 2 of Application #1 asked for Colonial's annual gross sales for the next twelve months.  In response, Colonial listed $120,000 for alcohol sales and $280,000 for food sales.  Additionally, question numbers 6 and 10 of Application #2 requested Colonial's estimated liquor receipts and estimated food receipts.  In response, Colonial again listed $120,000 for estimated liquor receipts and $280,000 for estimated food receipts.  Nationwide has since learned that Colonial's total sales for the pertinent period were actually $3.5 million and that its liquor sales were $1.050 million.  Thus, Colonial's responses to these questions also were false.

- Question numbers 3 and 4 of Application #1 asked the number of years Colonial had been in business and the number of years under current management.  In response to both questions, Colonial replied that it was a "new venture".  Colonial made this same response to question numbers 12 and 13 in Application #2, which asked how many years Colonial had been in business and how many years it had been at its location at 821 Spring Street, Elizabeth, New

April 3, 2024
Page 14 of 16

Jersey. Nationwide has since learned that Colonial has been in business for fifteen (15) years. Thus, Colonial's responses to these questions were also false.

- Question number 30 of Application #1 asked Colonial to list all claims or losses (regardless of fault or whether or not insured) or occurrences that may give rise to a claim for the prior three years. In response, Colonial listed "N/A". Additionally, question number 39 of Application #2 asked Colonial to list all liquor liability claims or lawsuits or occurrences that may give rise to a claim for the prior three years. For this question also, Colonial responded "N/A". Nationwide has since learned that the following lawsuits were brought against Colonial or "The Lobby", during the three years before Colonial completed the subject applications: (1) the Melendez Lawsuit; (2) the Casta Lawsuit; (3) the Hutchinson Lawsuit; and (4) the Suarez Lawsuit. Nationwide has also learned of the following additional claims asserted against Colonial during the pertinent period: (1) the Garcia claim; (2) the Espinoza claim; (3) the Diggs claim; and (4) the Connell claim. Also, Nationwide learned of the above-listed police activity, by the Elizabeth Police Department, at the insured location at 821 Spring Street, Elizabeth, NJ between February 22, 2020 and January 26, 2021. Thus, Colonial's responses to these questions were also false.

- Question number 29 in Application # 1 and Question number 38 in Application #2 asked for information on Colonial's insurers for the prior three years, including the insurer name, policy number, coverage types, whether the coverage was provided on an occurrence or claims made basis, and the total premium. In response to both questions, Colonial listed "N/A". Nationwide has since learned that Colonial was insured by other insurers prior to the Scottsdale Policy, including, but not limited to, Skyward. Thus, Colonial's responses to these questions were also false.

- Question number 23 in Application #1 asked the number of bouncers, doormen, and other security personnel. In response, Colonial answered "No". Additionally, Question number 29 in Application #2 asked Colonial to check all boxes that were applicable to security activities. In response, no boxes were checked, e.g., the box for bouncers was not checked. Nationwide has learned that there were bouncers, doormen, and/or security at the insured location. Additionally, Nationwide has also learned that there may have been off-duty police officers working at the premises. Thus, Colonial's responses to these questions were also false.

- Question number 16 in Application #2 asked if there was Hookah exposure at the insured location and Colonia responded "No". Nationwide has since learned that there was Hookah exposure at the location, and that at least one lawsuit was filed against Colonial/The Lobby because of this exposure, e.g., the Hutchinson Lawsuit. Thus, Colonial's responses to these questions were also false.

Based upon and in reliance on the information contained in Application #1 and Application #2, the Policy was issued to Colonial. If Application #1 and Application #2 had contained the correct information, Scottsdale's underwriting would not have issued the Policy. Consequently, on or about December 7, 2023, Nationwide issued a letter to Colonial advising that it was rescinding the Policy based on the misrepresentations in Application #1 and Application #2. Additionally, on or about December 1, 2023, Nationwide returned the remaining premium to Colonial for the Policy.

April 3, 2024
Page 15 of 16

Accordingly, as the Policy has been rescinded, Nationwide must disclaim coverage for the Lawsuits on this basis.

Further, as you are aware, Scottsdale commenced the Declaratory Judgment Action seeking a declaration that the Policy is void *ab initio*. Please be advised that Scottsdale intends to amend the Complaint in its Declaratory Judgment Action to join Rojas and Progressive to the Declaratory Judgment Action, so that Rojas and Progressive are also bound by any orders, rulings, or holdings in the Declaratory Judgment Action.

Third, the Scottsdale Policy's Commercial General Liability Coverage Part contains the Liquor Liability exclusion, which excludes coverage for "bodily injury" for which any insured may be held liable by reason of causing or contributing to the intoxication of any person. This exclusion applies even if the claims against the insured allege negligence or wrongdoing in the supervision, hiring, training or monitoring of others by the insured. In the Rojas Lawsuit, it is alleged that the subject accident was caused by and was the result of the intoxication of Nelson, which was brought about and permitted by the negligent, careless, and/or reckless conduct of the Defendants. Additionally, in the Progressive Lawsuit, it is alleged that The Lobby NJ acted in a reckless, careless, willful, wanton, and/or negligent manner, so as to serve alcohol to a visibly intoxicated person and allowing Guzman to drive while under the influence, which resulted in Rojas' injuries. Nationwide therefore disclaims coverage to Colonial, under the Policy's Commercial General Liability Coverage Part, for the Lawsuits based on the Liquor Liability exclusion.

Fourth, the Policy contains the Punitive Or Exemplary Damages exclusion that excludes coverage for punitive or exemplary damages. Additionally, punitive damages are not insurable as a matter of New Jersey law. As such, to the extent the Lawsuits seek any such damages, Nationwide must disclaim coverage to Colonial for any punitive or exemplary damages sought against it in the Lawsuits based on the Punitive Or Exemplary Damages Exclusion and New Jersey law.

Fifth, the Policy's Commercial General Liability Coverage Part and Liquor Liability Coverage Part, Section II – Who Is An Insured sections, state that, if the Insured is a limited liability company, "you" are an insured. However, no organization is an insured with respect to the conduct of any current or past limited liability company that is not shown as a Named Insured in the Declarations. Here, the Rojas Lawsuit is commenced against, among others, "The Lobby'". Additionally, the Progressive Lawsuit is commenced against, among others, "The Lobby NJ". The Policy's Named Insured is "Colonial Restaurant LLC". As such, to the extent that Rojas' and/or Progressive's claims are asserted against an organization that does not constitute an insured under the Policy, Nationwide must reserve its rights on this basis.

## Conclusion

Based upon the foregoing, Nationwide must advise you that it denies coverage, under the Policy, to Colonial for the Rojas Lawsuit and the Progressive Lawsuit.

Nationwide's coverage positon is not intended in any way to be exhaustive or exclusive, and it expressly reserves all of its rights under the Policy and at law including, but not limited, to the right to raise additional defenses, terms, and conditions to coverage as appropriate. The failure to cite other policy language at this time does not preclude Nationwide from raising other defenses in the future

April 3, 2024
Page 16 of 16

should the situation so warrant. Nothing in this or any other correspondence or communication shall serve to waive any of Nationwide's rights under the Policy, including, but not limited to, the right to rescind the Policy in full.

Be advised that Nationwide's coverage decision is based upon information that is currently available. If you believe that Nationwide has not considered any applicable facts, allegations, or legal authority, please let us know, and Nationwide will carefully consider your position. In addition, if any lawsuits, amended pleadings, and/or additional claims are asserted, please provide us with copies, so that Nationwide can evaluate those additional claims or pleadings.

Additionally, if you have not done so, you should notify any other insurance carriers that issued insurance policies that may be implicated by this Lawsuits. If you have any questions, please feel free to contact the undersigned.

Pursuant to New Jersey Statute 17:29E-9, we advise you that Nationwide has an internal appeals procedure for the review of disputed claims. Colonial may utilize this process following decisions regarding a claim. To notify Nationwide that they are requesting this process be implemented on their behalf, Colonial must send notice to the following address:

Scottsdale Insurance Company
Attention: Jennifer Gay, CBS Operations
18700 North Hayden Road
Scottsdale AZ 85255
Phone: (800) 423-7675 Ext. 2898
Fax: (480) 483-6752

Colonial may also seek further review of this matter by the New Jersey State Insurance Claims Ombudsman at the following address:

Department of Banking and Insurance
Office of Insurance Claims Ombudsman
P.O. Box 472
Trenton, NJ 08625-0427
Phone: 800-446-7467
Fax: 609-292-2431
E-mail: ombudsman@dobi.state.nj.us

Very Truly Yours,

Christian A. Cavallo



Christian A. Cavallo | Partner
Direct 973.681.7004 | CCavallo@goldbergsegalla.com

December 7, 2023

**Via Mail & Certified Mail, R.R.R.**
Colonial Restaurant LLC
821 Spring Street
Elizabeth, NJ 07208

COPY

Re: **Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez et al.**
**Docket No.: MID-L-004103-22**
**Claim No.: 02110244**
**Policy No.: CPS3985594 (Effective 5/5/21 to 11/15/21) (cancelled)**
**Date of Loss: 06/19/21**

Dear Sir/Madam:

As you know this firm is counsel for Nationwide E&S/Specialty Claims ("Nationwide"), on behalf of Scottsdale Insurance Company ("Scottsdale") in connection with the lawsuit captioned: *Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez et al.*, New Jersey, Middlesex County, Docket No. MID-L-004103-22 ("Lawsuit"). Scottsdale writes in furtherance of its December 16, 2022 and June 14, 2023 letters, which are incorporated herein. A copy of Scottsdale's December 16, 2022 and June 14, 2023 letters are attached for your reference.

Scottsdale issued commercial insurance policy # CPS3985594 to Colonial Restaurants, LLC d/b/a The Lobby ("Colonial") for the period of May 5, 2021 to November 15, 2021 ("Scottsdale Policy" or "Policy"). As you also know, as detailed in its prior correspondences, Scottsdale previously cancelled the Policy effective November 15, 2021 because it learned of substantial changes in Colonial's business operations. Upon cancellation of the Policy, on or about December 21, 2021, Scottsdale issued a check to Colonial returning a pro-rata portion of the Policy's premium.

Also, as explained in these prior correspondences, Scottsdale advised, since learning of the Lawsuit, it had been investigating whether material misrepresentations by Colonial in its applications for the Policy provided a basis for Scottsdale to rescind the Policy. These correspondences further explained, following its investigation, Scottsdale determined that Colonial had made multiple material misrepresentations in its Bars/Restaurant/Taverns General Liability Application, dated on May 21, 2021 ("Application #1") and Liquor Liability Application, dated on May 5, 2021 ("Application #2").

In its June 14, 2023 letter, Scottsdale invited Colonial to provide the undersigned with any documents and/or information Colonial believed contradicted Scottsdale's understanding of the applications, following its investigation, or was otherwise relevant to these issues. Colonial never responded to Scottsdale's letter nor provided any additional documents or information for Scottsdale's review.

Colonial Restaurant LLC
December 7, 2023
Page 2 of 2

Accordingly, the purpose of this correspondence is to advise you that, based on the numerous material misrepresentations in Application #1 and Application #2 for the Policy, Scottsdale hereby rescinds the Policy, rendering it void *ab initio*. The grounds for Scottsdale's rescission are set forth more fully in its prior correspondences, which are incorporated by reference herein. This means, the Policy will be deemed to have never been issued, and there is <u>no coverage for any occurrence, claim, or suit tendered under the Policy</u>. Further, because Scottsdale rescinds the Policy, this also means there is no coverage for the Lawsuit. Thus, be advised, upon judicial declaration that rescission is valid or Colonial's consent to same, Scottsdale will withdraw its defense of Colonial for the Lawsuit and Colonial, not Scottsdale, will be responsible for its defense and any defense costs, as well as any judgments or settlement for the Lawsuit. Scottsdale will, however, continue to provide Colonial a defense for the Lawsuit as a courtesy pending a judicial declaration that rescission is valid or Colonial's consent to same. Scottsdale reserves all rights in this regard.

Additionally, because the Policy is being rescinded, Scottsdale has tendered return of the remaining balance of the premium Colonial paid for the Policy. <u>A check in the amount of $4,099.80, which represents the remaining balance of the premium paid for the Policy, was sent to Colonial by express mail on December 1, 2023</u>. If you do not receive the premium refund check, please contact the undersigned immediately.

Finally, be advised that Scottsdale intends to commence a declaratory judgment action against Colonial for purposes of obtaining a judicial declaration that rescission is valid.[1] If you have any questions, comments or objections, please contact the undersigned.

Very truly yours,

*/s/Christian A. Cavallo*
Christian A. Cavallo

cc: Khris Hill, LLC (via regular mail and certified mail, r.r.r. w/ encls.)
    P.O. Box 2241
    Elizabeth, NJ 07208

---

[1] Be advised your remaining premium has been refunded regardless of whether you contest the rescission.



Christian A. Cavallo | Partner
Direct 973.681.7004 | CCavallo@goldbergsegalla.com

June 14, 2023

**Via Mail & Certified Mail, R.R.R.**
Colonial Restaurant LLC
821 Spring Street
Elizabeth, NJ 07208

Re:    **Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud,**
       **Administrator ad Prosequendum v. Sergio Cabrerachavez et al.**
       **Docket No.: MID-L-004103-22**
       **Claim No.: 02110244**
       **Policy No.: CPS3985594 (Effective 5/5/21 to 11/15/21) (cancelled)**
       **Date of Loss: 06/19/21**

Dear Sir/Madam:

        This law firm is counsel for Nationwide E&S/Specialty Claims ("Nationwide"), on behalf of
Scottsdale Insurance Company ("Scottsdale"), with regard to the above referenced lawsuit filed by the
Estate of Ajay P. Persaud ("Persaud") against, among others, Colonial Restaurants, LLC d/b/a "The
Lobby" (the "Lawsuit"). As you know, by letter dated December 16, 2022, Nationwide offered to
defend Colonial Restaurants, LLC ("Colonial") for the Lawsuit under the listed commercial insurance
policy Scottsdale issued to Colonial for the period May 5, 2021 to November 15, 2021 (the "Scottsdale
Policy" or the "Policy"), subject to a full and complete reservation of all rights. Colonial accepted
Nationwide's offer, and assigned defense counsel David Montag, Esq. of the law firm Milber Makris
Plousadis & Seiden, LLP, who has been defending Colonial for the Lawsuit under the Policy subject
to that reservation of rights. Another copy of the December 16th letter is enclosed and the terms and
reservations set forth in that letter are expressly incorporated herein by reference.

        As explained in the December 16th letter, Scottsdale previously cancelled the Policy effective
November 15, 2021 because it learned of substantial changes in Colonial's business operations and
the corresponding risks Scottsdale agreed to assume by issuing the Policy. That letter further explained
that since learning of the underlying June 19, 2021 accident involving Persaud and of the Lawsuit on
approximately October 21, 2021, Nationwide has been investigating whether material
misrepresentations by Colonial in its applications for the Policy provide a basis for Nationwide to now
rescind the Policy from its inception, such that the Policy would be treated as though it was never
issued and there would be no coverage available under the Policy to any party for any claims, including
the claims by Persuad that form the basis of the Lawsuit.

        In particular, Nationwide has recently learned that Colonial made multiple material
misrepresentations in its Bars/Restaurant/Taverns General Liability Application signed by Terry
Gonzalez on behalf of Colonial and dated on May 21, 2021 ("Application #1"), and that Colonial also
made multiple material misrepresentations its Liquor Liability Application signed by Mr. Gonzalez
and dated on May 5, 2021 ("Application #2"). The applications state that Mr. Gonzalez read the
applications and that he declared that to the best of his knowledge and belief all of the statements in
the applications are true and that the statements are offered as an inducement to Scottsdale to issue

Colonial Restaurant LLC
June 14, 2023
Page 2 of 7

the Policy.  Scottsdale and its agent Tapco Underwriters, Inc. ("Tapco") relied on each of these misrepresentations made in the applications when deciding whether to issue the Policy, the terms of the Policy, and the amount of premium to be charged.  Copies of Application #1 and Application #2 are enclosed.

First, question number 1 of Application #1 and question 1 of Application #2 ask for the classification of the risk presented by Colonial's business.  In response to both questions, Colonial checked "Bar/Tavern" and "Restaurant".  It did not check the box for "Nightclub".  Question 17.a. of Application #1 asked if there is any live music at the insured premises and Question 17.b. asked if there is any dancing.  In response, Colonial checked the box for "no" for Question 17.a. and wrote "NA [e.g., Not Applicable] for Question 17.b.  Additionally, question number 31 in Application #2 asked about the types of entertainment activities held at the insured location, including dance floor and live entertain.  In response, Colonial listed "N/A".  Nationwide has learned that there was live entertainment at the premises, however, the type and frequency are not currently known.  Additionally, with respect to whether there was a dance floor, Nationwide has learned that a certificate of dance hall was posted at the insured premises.  Further, question number 5 in Application #1 asked Colonial's opening and closing times per day.  In response, Colonial listed "11 AM – 1 AM".  Similarly, question number 17 in Application #2 asked what time the insured location closed and the hours of service, and in response Colonial listed "1 AM". and "11 AM – 1 AM".  Nationwide has since learned that Colonial operated Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m.  Thus, Colonial's responses to all of these questions were false, as Colonial was operating a nightclub, rather than a bar/tavern or a restaurant, at the insured location.

Second, question number 2 of Application #1 asked for Colonial's annual gross sales for the next twelve months.  In response, Colonial listed $120,000 for alcohol sales and $280,000 for food sales.  Additionally, question numbers 6 and 10 of Application #2 requested Colonial's estimated liquor receipts and estimated food receipts.  In response, Colonial again listed $120,000 for estimated liquor receipts and $280,000 for estimated food receipts.  Nationwide has since learned that Colonial's total sales for the pertinent period were actually $3.5 million and that its liquor sales were $1.050 million.  Thus, Colonial's responses to these questions also were false.

Third, question numbers 3 and 4 of Application #1 asked the number of years Colonial had been in business and the number of years under current management.  In response to both questions, Colonial replied that it was a "new venture".  Colonial made this same response to question numbers 12 and 13 in Application #2, which asked how many years Colonial had been in business and how many years it had been at its location at 821 Spring Street, Elizabeth, New Jersey.  Nationwide has since learned that Colonial has been in business for fifteen (15) years.   Thus, Colonial's responses to these questions were also false.

Fourth, question number 30 of Application #1 asked Colonial to list all claims or losses (regardless of fault or whether or not insured) or occurrences that may give rise to a claim for the prior three years. In response, Colonial listed "N/A".  Additionally, question number 39 of Application #2 asked Colonial to list all liquor liability claims or lawsuits or occurrences that may give rise to a claim for the prior three years.  For this question also, Colonial responded "N/A".  Nationwide has since learned Colonial's responses to each of these questions were false.

Colonial Restaurant LLC
June 14, 2023
Page 3 of 7

Specifically, Nationwide has learned that the following lawsuits were brought against Colonial or "The Lobby", which we understand is a trade name for Colonial, during the three years before Colonial completed the subject applications:

1. On or about January 31, 2019, Yesina Melendez ("Melendez") commenced the lawsuit captioned: *Yesina Melendez v. The Lobby a/k/a The Lobby Sports Bar And Lounge, et al.*, Docket No.: MID-L-001080-19 ("Melendez Lawsuit"). On or about May 17, 2019, an amended complaint was filed naming Colonial as a defendant in the Melendez Lawsuit. In the amended complaint, Melendez claimed to have suffered injuries as a result of a slip and fall that occurred on February 4, 2018.

2. On or about July 31, 2019, Benjamin Casta ("Casta") commenced the lawsuit captioned: *Benjamin Casta v. Colonial Restaurant LLC d/b/a The Lobby, et al.*, Docket No.: UNN-L-002718-19 ("Casta Lawsuit") against, among others, Colonial d/b/a The Lobby. In the complaint, it was alleged as a result of the defendants' negligence, Casta sustained injuries in an unspecified incident.

3. On or about June 5, 2020, Bondreice Nakala Hutchinson ("Hutchinson") commenced the lawsuit captioned: *Bondreice Nakala Hutchinson v. Colonial Restaurant d/b/a The Lobby, et al.*, Docket No.: MID-L-003607-20 ("Hutchinson Lawsuit") against, among others, Colonial Restaurant d/b/a The Lobby. According to the complaint, on or about July 1, 2018, while in the "The Lobby", located at 821 Spring Street, Elizabeth, New Jersey, someone bumped into a table causing a hot hookah to fall on Hutchinson.

4. On or about January 19, 2021, Diamante Suarez ("Suarez") commenced the lawsuit captioned: *Diamante Suarez v. The Lobby, et al.*, Docket No.: UNN-L-000192-21 ("Suarez Lawsuit") against, among others, The Lobby. According to the lawsuit, due to the defendants' negligence, Suarez allegedly suffered injuries at the insured location.

Further, in response to Nationwide's December 16, 2022 letter, Colonial provided documents that included notices of the following additional claims asserted against Colonial during the pertinent period:

1. A letter dated April 5, 2019 from lawyers representing Jennifer Garcia ("Garcia") that stated that due to the carelessness and negligence of The Lobby at its premises, Garcia sustained personal injuries, which would result in a lawsuit being filed. We do not know if Garcia ever filed a lawsuit for her injuries or if the claim was resolved without litigation.

2. A letter dated November 1, 2019 from lawyers representing Edison Espinoza ("Espinoza") that stated that Espinoza sustained personal injuries on October 20, 2019 as a result of an assault and battery by The Lobby's employees / agents on The Lobby's premises. We do not know if Espinoza ever filed a lawsuit for her injuries or if the claim was resolved without litigation.

3. A letter dated June 1, 2021 from lawyers representing Quiana Diggs ("Diggs") with respect to a claim of an alleged attack on Diggs at the insured location on May 31, 2021 on the

Colonial Restaurant LLC
June 14, 2023
Page 4 of 7

outside patio area.  We do not know if Diggs ever filed a lawsuit for Diggs' injuries or if the claim was resolved without litigation.

4. An undated letter from lawyers representing Kevin Connell ("Connell") for injuries at insured location on May 5 and 6, 2019, when Connell claims he was assaulted by one of The Lobby's security employees.  At the time of the incident, it was stated that Connell was performing as a DJ.  We do not know if Connell ever filed a lawsuit for his injuries or if the claim was resolved without litigation.

Also, Nationwide also learned of the following police activity, by the Elizabeth Police Department, at the insured location at 821 Spring Street, Elizabeth, NJ for the pertinent period:

1. On February 22, 2020, police responded to a report of a simple assault in which a female customer stated she had been assaulted by a security guard.

2. On February 23, 2020, police responded to a report of a fight involving a large crowd, which appears to have been started by a confrontation between two patrons.  One of the patrons was seemingly punched and had a small laceration above his ear.

3. On March 15, 2020, police responded to a woman claiming that she was grabbed by a stranger at the club.

4. On August 9, 2020, police responded to an incident in which it was alleged that security would not let a party in and they were stopped and pepper sprayed by security.

5. On August 15, 2020, police responded to an incident in which it was alleged that bouncers had stolen a customer credit card.

6. On September 4, 2020, police responded to an incident in which a customer was harassing other customers.  The customer was escorted out by security, during which time he punched a glass door.  He was arrested and charged with criminal mischief.

7. On September 22, 2020, police returned to collect surveillance footage of a shooting that had occurred the day before.  Security personnel had also located footage for a separate shooting that happened at the rear of the building, where shell casings on the ground were found.

8. On October 26, 2020, police responded to a report of a disorderly group, which allegedly was involved in a fight inside the restaurant and was escorted outside.  One of the persons in the party was eventually charged with disorderly conduct and resisting arrest.

9. On November 21, 2020, police responded to a report of a disorderly patron who would not leave the establishment.

10. On December 26, 2020, police responded to disorderly patrons, one of which was eventually charged with criminal mischief.

Colonial Restaurant LLC
June 14, 2023
Page 5 of 7

11. On January 26, 2021, police responded to a report of a fight at the establishment when patrons refused to leave. One of the persons was charged with disorderly conduct and assault on a police officer.

Also, Nationwide has received a copy of letter from Persuad's estate's attorneys to the Lobby dated August 11, 2021 regarding the underlying accident involving Persaud. However, Colonial never sent his letter to Scottsdale or notified it of Persaud's claims or even the accident involving Persaud. Nationwide also reserves the right to rely on Colonial's breach of the Scottsdale policy's notice provisions as a further basis to preclude coverage to Colonial for the Lawsuit.

Fifth, question number 29 in Application 1 and Question number 38 in Application #2 asked for information on Colonial's insurers for the prior three years, including the insurer name, policy number, coverage types, whether the coverage was provided on an occurrence or claims made basis, and the total premium. In response to both questions, Colonial listed "N/A". Nationwide has since learned that Colonial was insured by other insurers prior to the Scottsdale Policy, including, but not limited to, Skyward Specialty Ins. Group. Thus, Colonial's responses to these questions were also false.

Sixth, question number 23 in Application #1 asked the number of bouncers, doormen, and other security personnel. In response, Colonial answered "No". Additionally, Question number 29 in Application #2 asked Colonial to check all boxes that were applicable to security activities. In response, no boxes were checked, e.g., the box for bouncers was not checked. Nationwide has learned that there were bouncers, doormen, and/or security at the insured location. Additionally, Nationwide has also learned that there may have been off-duty police officers working at the premises. Thus, Colonial's responses to these questions were also false.

Seventh, Question number 16 in Application #2 asked if there was Hookah exposure at the insured location and Colonia responded "No". Nationwide has since learned that there was Hookah exposure at the location, and that at least one lawsuit was filed against Colonial/The Lobby because of this exposure, e.g., the Hutchinson Lawsuit. Thus, Colonial's responses to these questions were also false.

Scottsdale and Tapco relied upon each and every one these misrepresentations when deciding to issue the Policy, the terms of the Policy, and the amount of premium to charge. Had Colonial answered these questions truthfully, Scottsdale would not have issued the Policy. As a result, Scottsdale has a basis to rescind the Policy from its inception, **such that no coverage would be available under the Scottsdale Policy to any party, including Colonial, for the Lawsuit or for any other claims or lawsuits**.

Given the number and scope of these misrepresentations, Nationwide invites Colonial to provide the undersigned with any documents or information Colonial believes contradicts Nationwide's understanding of the applications or Colonial's operations or that are otherwise relevant to these issues. Nationwide also is amenable to holding a meeting with Colonial and the undersigned to discuss these issues. **Should Colonial wish to provide any such documents, or schedule a meeting, please contact the undersigned as soon as possible, but in no event later than ten (10) days from the date of this letter.**

Colonial Restaurant LLC
June 14, 2023
Page 6 of 7

If we do not hear from Colonial within this time frame, we intend to contact counsel for Persaud and raise these misrepresentations and advise Persaud's counsel that Scottsdale plans to rescind the Policy and that there will be no coverage available to Colonial for the Lawsuit under the Policy.

Depending on Persaud's counsel's response, Scottsdale will likely then file a lawsuit in the United States District Court for the District of New Jersey, naming both Colonial and Persaud, to rescind the Policy based on the many, many material misrepresentations identified herein and to obtain a declaration that Scottsdale owes neither a defense nor indemnity to Colonial for the Lawsuit.

Notwithstanding Scottsdale's intent to rescind the Policy, Nationwide offers, as a courtesy, to continue to defend Colonial for the Lawsuit, subject to a full and complete reservation of all Scottsdale's and Nationwide's rights under the Policy, at law, and in equity, including the right to deny coverage to Colonial for the Lawsuit, to withdraw the defense of Colonial for the Lawsuit, to deny indemnity to Colonial for the Lawsuit, to seek reimbursement of all costs incurred on behalf of Colonial for the Lawsuit, and to file a lawsuit to rescind the Policy and obtain a declaration that no coverage is available to Colonial for the Lawsuit under the Policy.

**As before, Colonial has the right to accept or reject Nationwide's offer of a continued defense subject to a full and complete reservation of rights.** If Colonial accepts this offer, assigned defense counsel David Montag, Esq. will continue to defend Colonial for the Lawsuit subject to the reservation of rights set forth herein and in our prior letter.

If Colonial rejects Nationwide's offer, it must retain its own counsel, at its own expense, to substitute in place of assigned defense counsel and to protect its interests for the Lawsuit. **To reject Nationwide's offer of a continued defense under a reservation of rights, Colonial must contact the undersigned within thirty (30) days of this letter in writing rejecting the offer.** If we do not hear from Colonial by that deadline, Nationwide will assume Colonial consents to its offer and assigned defense counsel will continue to defend Colonial subject to a reservation of rights as set forth herein and in our prior letter.

Even if Colonial accepts Nationwide's offer of a continued defense subject to a reservation of rights, it may still wish to retain its own personal lawyer, at its own expense, to advise it with respect to the issues set forth herein and in our prior letter. Further, if Scottsdale files a lawsuit to rescind the Policy, Colonial will need to retain its own lawyer, at its own expense, to represent it for such a lawsuit, and assigned defense counsel will not be able to represent Colonial for such a lawsuit. Ultimately, the decision of whether to retain personal counsel rests with Colonial alone.

Nationwide and Scottsdale will continue to investigate this matter subject to a full and complete reservation of all rights under the Scottsdale Policy, at law, and in equity. Nothing herein constitutes, nor should it be viewed as, a waiver of any of Scottsdale's or Nationwide's rights under the Scottsdale Policy, at law, or in equity. Nor is it the purpose of this letter to waive any additional defenses that further investigation may reveal. Instead, Scottsdale and Nationwide expressly reserve all rights available to them under the Policy, at law or in equity.

Nationwide's coverage position is based on its investigation of this matter to date. Nationwide reserves the right to supplement, modify, or change its position based on its receipt of additional information or additional pleadings filed in the Lawsuit. If you believe that you have documents or

Colonial Restaurant LLC
June 14, 2023
Page 7 of 7

information that are relevant to Nationwide's position, please send same to the undersigned immediately.

Pursuant to New Jersey Statute 17:29E-9, we advise you that Nationwide has an internal appeals procedure for the review of the disputed claims. Colonial may utilize this process following decisions regarding a claim. To notify Nationwide that it is requesting this process be implemented on its behalf, Colonial must send notice to the following address:

Scottsdale Insurance Company
Attention: Jennifer Gay, CBS Operations
18700 North Hayden Road
Scottsdale AZ 85255
Phone: (800) 423-7675 Ext. 2898
Fax: (480) 483-6752

You may seek further review of Nationwide's decisions for this matter from the New Jersey Insurance Claims Ombudsman at the following address:

Department of Banking and Insurance
Office of Insurance Claims Ombudsman
P.O. Box 472
Trenton, NJ 08625-0427
Phone: 800-446-7467
Fax: 609-292-2431
Email: mailto:ombudsman@dobi.state.nj.us

If you have any questions, comments or objections, please contact the undersigned.

Very truly yours,

Christian A. Cavallo

Enclosures:
cc:  Khris Hill, LLC (via regular mail and certified mail, r.r.r. w/ encls.)
      P.O. Box 2241
      Elizabeth, NJ 07208



<div align="right">Christian A. Cavallo  |  Partner
Direct 973.681.7004  |  CCavallo@goldbergsegalla.com</div>

December 16, 2022

**Via Mail & Certified Mail, R.R.R.**
Colonial Restaurant LLC
821 Spring Street
Elizabeth, NJ 07208

> **Re:**  **Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez**
> **Docket No.:  MID-L-004103-22**
> **Claim No.:  02110244**
> **Policy No.: CPS3985594 (Effective 5/5/21 to 11/15/21)**
> **Date of Loss:  6/19/21**

To Whom It May Concern:

This firm has been retained by Nationwide E&S/Specialty Claims ("Nationwide"), on behalf of Scottsdale Insurance Company ("Scottsdale"), and Nationwide is in receipt of the above-referenced lawsuit filed by the Estate of Ajay P. Persaud ("Persaud") against, among others, Colonial Restaurants, LLC d/b/a "The Lobby" captioned: *Estate of Ajay P. Persaud deceased, by and through, Desiree Persaud, Administrator ad Prosequendum v. Sergio Cabrerachavez, an individual, et al.*, Superior Court of New Jersey, Middlesex County, Docket No.: MID-L-4103-22 ("Lawsuit").

Nationwide has had the opportunity to review Plaintiff's Complaint and other relevant documents.  Nationwide has also reviewed the relevant terms, conditions, exclusions, and limitations of the Scottsdale policy.  Based on its evaluation of these materials, Nationwide offers to defend Colonial Restaurant LLC ("Colonial" and/or "Insured") in the above-referenced lawsuit, subject to a full and complete reservation of all of Nationwide's rights under the Scottsdale policy, at law, and in equity.  The details of Nationwide's offer of a defense for the Lawsuit under a reservation of rights are set forth below.  <u>Colonial has the right to accept or reject Nationwide's offer of a defense under a reservation of rights.</u>

<div align="center"><u>**Factual Background**</u></div>

<div align="center">***The Lawsuit***</div>

On or about August 15, 2022, the Estate of Persaud, by and through Desiree Persaud ("D. Persaud"), commenced the Lawsuit.  Subsequently, on or about October 12, 2022, the Estate filed a Second Amended Complaint.  Based on Scottsdale's understanding, the Second Amended Complaint is the operative complaint in the Lawsuit.  The Second Amended Complaint names, among others, the following defendants:  Sergio Cabrerachavez ("Cabrerachavez"); The Lobby; Cotugno Investments, Inc. ("Cotugno"); The Lobby Group NJ LLC d/b/a "The Lobby"; JWPA, LLC d/b/a "The Lobby"; and Colonial Restaurants, LLC d/b/a "The Lobby".  On or about October 28, 2022, the Second Amended Complaint was dismissed against Cotugno via Consent Order.

Colonial Restaurant LLC
December 16, 2022
Page 2 of 15

In Count One of the Second Amended Complaint, it is alleged, on or about June 19, 2021, Persaud was a motorcyclist traveling on US 1 at or near the road's intersection with North Avenue in Elizabeth, New Jersey.  *See* Lawsuit, ¶ 1.  On that date, Cabrerachavez allegedly operated his pick-up truck in a negligent and unreasonable manner as to cause his vehicle to strike Persaud, who was riding on a motorcycle.  *See* Lawsuit, ¶ 3.  As a result of Cabrerachavez's alleged negligence, Persaud sustained bodily injuries that resulted in his death.  *See* Lawsuit, ¶ 4.

In Count Two, it is alleged that the defendants, The Lobby, Cotugno, The Lobby Group NJ LLC d/b/a "The Lobby", JWPA, LLC d/b/a "The Lobby", and Colonial Restaurants, LLC d/b/a "The Lobby" had ownership and/or control of an alcohol beverage serving establishment, commonly known as "The Lobby" located at 821 Spring Street, Elizabeth, NJ.  *See* Lawsuit, ¶ 2.  On or about June 18, 2021, into the early hours of June 19, 2021, the aforementioned defendants, through their agents, servants, and/or employees, allegedly served alcoholic beverages to Persaud in a negligent and unreasonable manner, while Persaud was visibly intoxicated.  *See* Lawsuit, ¶ 3.  As a result of the alleged negligent and unreasonable service of alcoholic beverages to Persaud by the defendants, Persaud left The Lobby in an intoxicated condition and was involved in a motor vehicle accident.  *See* Lawsuit, ¶ 4.  The alleged negligence of the defendants, in the negligent service of alcoholic beverages to Persaud, while he was visibly intoxicated, allegedly constituted a substantial factor in the causing of the accident. *See* Lawsuit, ¶ 5.  As a result of the defendants' alleged negligence, Persaud sustained bodily injuries that resulted in his death.  *See* Lawsuit, ¶ 7.

Count Three is directed against John Does and/or ABC Companies.

Count Four asserts a wrongful death claim.  In this count, it is alleged that this action was based upon the statute identified as "The Death Act of The State of New Jersey", N.J.S.A. 2a:3-1, *et seq.*  *See* Lawsuit, ¶ 2.  It is alleged, as a result of the death of Persaud, his next of kin will be deprived of his future society, services, companionship, and earnings.  *See* Lawsuit, ¶ 4.

Finally, Count Five asserts a Survival Action claim.  It is alleged in this count that D. Persaud and Tillack Persaud are the next of kin of Persaud and were left surviving him at the time of his death. *See* Lawsuit, ¶¶ 2-3.  It is alleged, as a result of the defendants' negligence, Persaud sustained bodily injuries causing him to suffer prior to his death.  *See* Lawsuit, ¶ 4.  The survival action is brought pursuant to N.J.S.A. 2A:15-3.  *See* Lawsuit, ¶ 5.

### *The Contract*

There appears to be a Lease Agreement between "Cotugno Investments, Inc.", as the Landlord, and "JPWA, LLC", as the Tenant, for the premises located at 821 US Highway 1, Elizabeth, New Jersey.  Scottsdale is unaware of any contracts between Cotugno and Colonial.

### **The Tender**

Nationwide first received notice of the June 18-19, 2021 accident on or about October 5, 2022 when Cotugno tendered its defense and indemnity to JBWA, LLC/The Lobby in connection with the Lawsuit.  To date, Colonial has not sought coverage under the Policy for the Lawsuit.

Colonial Restaurant LLC
December 16, 2022
Page 3 of 15

## The Insurance Applications

### *Application #1*

The Bars/Restaurant/Taverns General Liability Application for Colonial with a location address of 821 Spring Street, Elizabeth, NJ, which was signed and dated by Terry Gonzalez on May 21, 2021, included the following questions and responses.

In Question #2, the application asked for the Annual gross sales, for the next twelve (12) months. In response, $120,000 was listed for alcohol sales, and $230,000 was listed for food sales.

In Question #3, the application asked the number of years in business. In response, "new venture" was listed. Additionally, in Questions #28, the application requested prior carrier information. In response, "N/A" was listed.

In Question #5, the application requested the opening and closing times per day. In response, "11 AM – 1 AM" was listed.

In Question #17, the application asked whether there was live entertainment on the premises. In response, "no" was marked.

In Question #23, the application asked the number of bouncers, doormen, and other security personnel. In response, "no" was marked.

In Question #30, Loss History, the application requested the applicant indicate all claims or losses or occurrences that may give rise to a claim for the prior three (3) years. "N/A" was listed in response.

### *Application #2*

Additionally, the Liquor Liability Application for Colonial, which was signed and dated on May 5, 2021, included the following questions and responses.

In Question #6, the application requested the estimated liquor receipts. In response, $120,000 was listed. Additionally, in Question #11, when asked about the percentage of liquor receipts to total receipts, "30%" was listed.

In Questions #12 and #13, the application asked how many years the applicant had been in business, and how many years it had been at this location. "New Venture" was listed in response to both questions. Additionally, in Questions #38, with respect to prior carrier information, "N/A" was listed in response.

In Question #16, the application asked if there was Hookah exposure. "No" was marked in response.

In Question #17, the application asked what time the location closed. "1 AM was listed". Additionally, in that same question, when asked hours of serving, "11 AM – 1 AM" was listed.

Colonial Restaurant LLC
December 16, 2022
Page 4 of 15

In Question #29, the application asked the applicant to check all boxes that were applicable to security activities. In response, no boxes were checked, e.g., the box for bouncers was not checked.

In Question #31, the application asked about the types of entertainment activities. In response, "N/A" was listed, e.g., the live entertainment box was not checked.

In Question #39, Loss History, the applicant was asked to indicate all liquor liability claims or lawsuits or occurrences that may give rise to a claim for the prior three (3) years. "N/A" was listed in response.

## The Investigation

Prior to the accident, on or about June 16, 2021, Tapco Underwriters, Inc. ("Tapco"), as an agent of Nationwide, requested an inspection of Colonial's premises located at 821 Spring Street, Elizabeth, New Jersey. On or about August 25, 2021, the inspection was conducted by York Risk Control Services, LLC ("York"), which included an interview with Ashok Dutta, the Insured contact.

According to the inspection, the total sales of the establishment were $3,500,000, and its liquor sales were $1,050,000. With respect to hours of operation, the investigation determined that the premises operated Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m. It was also determined that there were bouncers, doormen, and/or security at the premises, however, they were not armed. With respect to whether there was a dance floor, the inspection report stated there was "none", but noted there was a certificate of dance hall posted. It was also determined that the establishment had been in business for fifteen (15) years at this particular location. The inspection report also stated there was live entertainment at the premises, however, the type and frequency were not provided.

## The Prior Claims And Lawsuits

Additionally, a review of New Jersey's court dockets has revealed the following lawsuits were commenced within the last three (3) years against Colonial and/or The Lobby. First, on or about January 31, 2019, Yesina Melendez ("Melendez") commenced the lawsuit captioned: *Yesina Melendez v. The Lobby a/k/a The Lobby Sports Bar And Lounge, et al.*, Docket No.: MID-L-001080-19 ("Melendez Lawsuit"). On or about May 17, 2019, an amended complaint was filed naming Colonial as a defendant in the Melendez Lawsuit. In the amended complaint, Melendez claimed to have suffered injuries as a result of a slip and fall, which occurred on February 4, 2018. It was alleged as a result of Colonial's negligence, Melendez suffered her claimed injuries. According to the docket, on or about November 9, 2020, the case was resolved via stipulation.

Second, on or about June 5, 2020, Bondreice Nakala Hutchinson ("Hutchinson") commenced the lawsuit captioned: *Bondreice Nakala Hutchinson v. Colonial Restaurant d/b/a The Lobby, et al.*, Docket No.: MID-L-003607-20 ("Hutchinson Lawsuit") against, among others, Colonial Restaurant d/b/a The Lobby. According to the complaint, on or about July 1, 2018, while in the "The Lobby", located at 821 Spring Street, New Jersey, someone bumped into a table causing a hot hookah to fall on the plaintiff. According to the docket, on or about June 9, 2021, the case was resolved via stipulation.

Colonial Restaurant LLC
December 16, 2022
Page 5 of 15

Third, on or about July 31, 2019, Benjamin Casta ("Casta") commenced the lawsuit captioned: *Benjamin Casta v. Colonial Restaurant LLC d/b/a The Lobby, et al.*, Docket No.: UNN-L-002718-19 ("Casta Lawsuit") against, among others, Colonial d/b/a The Lobby. In the complaint, it was alleged as a result of the defendants' negligence, Casta sustained injuries in an unspecified incident. According to the docket, on or about October 24, 2020, the case was resolved via stipulation.

Fourth, on or about January 19, 2021, Diamante Suarez commenced the lawsuit captioned: *Diamante Suarez v. The Lobby, et al.*, Docket No.: UNN-L-000192-21 ("Suarez Lawsuit") against, among others, The Lobby. According to the lawsuit, due to the defendants' negligence, the plaintiff allegedly suffered injuries at the premises located at 821 Spring Street, Elizabeth, New Jersey. According to the docket, on or about August 26 2022, a correspondence was filed with the court advising that a settlement had been reached in the matter.

Additionally, based on Nationwide's understanding, on or about July 25, 2015, there was an assault in the parking lot of the 821 Spring Street premises involving Kyle Nan Ness.

### The Scottsdale Policy

Scottsdale issued policy # CPS3985594 to Colonial with an effective date of May 5, 2021 (the "Scottsdale Policy" or the "Policy"). The Named Insured is identified as a "Limited Liability Company" in the Policy. The Policy is comprised of a Commercial General Liability Coverage Part and a Liquor Liability Coverage Part. The Policy's Schedule of Locations (UTS-SP-3 (8-96)) lists Premises No. 1 as 821 Spring St., Elizabeth, New Jersey.

The Policy's Commercial General Liability Coverage Part Supplemental Declarations page lists the General Aggregate (other than Products / Completed Operations) limit as $2 million. Coverage A – Bodily Injury and Property Damage Liability Limits are listed as $1 million per occurrence. Additionally, the Commercial General Liability Coverage Part Extension Of Supplemental Declarations (CLS-SP-1L (10-93)) lists the Class Description of Premises No. 1 as: "Restaurants – With Sale Of Alcoholic Beverages That Are 30% Or More Of But Less Than 75% Of The Total Annual Receipts Of The Restaurants – Without Dance Floor".

The Liquor Liability Coverage Part Supplemental Declarations page (CLS-SD-5 (8-01)) lists the aggregate limit as $2 million, with a $1 million each common cause limit. Item 3, Classification and Premium lists the Classification as "Restaurants, Taverns, Hotels, Motels, Including Package Sales (5816A)".

On or about October 13, 2021, a Notice of Cancellation Or Refusal To Renew, with an effective date of November 15, 2021, was issued in connection with the Policy. The Notice advised that this action had been taken for the following reasons: "Company Request – Substantial Change in risk assumed".

The Policy utilizes the Common Policy Conditions Form, (IL 00 17 11 98), which states, in pertinent part, as follows:

All Coverage Parts included in this policy are subject to the following conditions.

Colonial Restaurant LLC
December 16, 2022
Page 6 of 15

…

### D.  Inspections And Surveys

**1.**  We have the right to:

    **a.**  Make inspections and surveys at any time;

    **b.**  Give you reports on the conditions we find; and

    **c.**  Recommend changes.

**2.**  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of any workers or the public. And we do not warrant that conditions:

    **a.**  Are safe or healthful; or

    **b.**  Comply with laws, regulations, codes or standards.

**3.**  Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.**  Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

The Policy's Commercial General Liability Coverage Form, (CG 00 01 04 13) states, in pertinent part, as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

…

### Section I – Coverages

### Coverage A – Bodily Injury And Property Damage Liability

#### 1.  Insuring Agreement

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to

Colonial Restaurant LLC
December 16, 2022
Page 7 of 15

which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

…

**2. Exclusions**

This insurance does not apply to:

…

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol:

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3**) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, whether or not a fee is charged or a license is required

Colonial Restaurant LLC
December 16, 2022
Page 8 of 15

for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

…

## Section II – Who Is An Insured

…

**1.** If you are designated in the Declarations as:

…

**c.** A limited liability company, you are an insured. Your members are also insured, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers.

…

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

…

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not show as a Named Insured in the Declarations.

...

## Section IV – Commercial General Liability Conditions

…

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

Colonial Restaurant LLC
December 16, 2022
Page 9 of 15

**(3)**  The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**  If a claim is made or "suit" is brought against any insured, you must:

**(1)**  Immediately record the specifics of the claim or "suit" the date received; and

**(2)**  Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

…

**6. Representations**

By accepting this policy, you agree:

**a.**  The statements in the Declarations are accurate and complete;

**b.**  Those statements are based upon representations you made to us; and

**c.**  We have issued this policy in reliance upon your representations.

…

The Policy contains the Liquor Liability Coverage Form, (CG 00 33 04 13) which states, in part, as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

…

**Section I – Liquor Liability Coverage**

**1. Insuring Agreement**

**a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance

Colonial Restaurant LLC
December 16, 2022
Page 10 of 15

does not apply.  We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result.  But:

…

### Section II – Who Is An Insured

**1.**  If you are designated in the Declarations as:

…

**c.**  A limited liability company, you are an insured.  Your members are also insured, but only with respect to the conduct of your business.  Your managers are insured, but only with respect to their duties as your managers.

…

**3.**  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

…

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

…

### Section IV – Liquor Liability Conditions

…

### 2.  Duties In The Event Of Injury, Claim Or Suit

**a.**  You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim.  To the extent possible, notice should include:

**(1)**  How, when and where the "injury" took place;

**(2)**  The names and addresses of any injured persons and witnesses; and

**(3)**  The nature and location of any "injury".

**b.**  If a claim is made or "suit" is brought against any insured, you must:

Colonial Restaurant LLC
December 16, 2022
Page 11 of 15

**(1)**  Immediately record the specifics of the claim or "suit" and the date received; and

**(2)**  Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

…

**6.  Representations**

By accepting this policy, you agree:

**a.**  The statements in the Declarations are accurate and complete;

**b.**  Those statements are based upon representations you made to us; and

**c.**  We have issued this policy in reliance upon your representations.

…

The Policy's Punitive Or Exemplary Damage Exclusion, (UTS-74g (8-95), states:

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

…

Please understand that while this Reservation of Rights And Non-Waiver Agreement quotes, references, and/or paraphrases only certain provisions of the Scottsdale Policy, Nationwide expressly reserves its right to rely on all of the provisions of the Policy, whether or not quoted, referenced, and/or paraphrased herein.

## Nationwide's Offer To Defend Colonial Restaurant LLC For The Lawsuit, Subject To A Reservation Of Rights

Based on the information available to Nationwide at this time, and given the coverage issues discussed below, Nationwide offers to defend Colonial for the Lawsuit under the Scottsdale Policy,

Colonial Restaurant LLC
December 16, 2022
Page 12 of 15

subject to a full and complete reservation of all of Nationwide's rights under the Policy, at law, and in equity. In particular, Nationwide reserves its right to deny coverage to Colonial for the Lawsuit, to withdraw its defense of Colonial for the Lawsuit, to refuse to indemnify Colonial for any liability or other legal obligation Colonial incurs for the Lawsuit, to seek reimbursement of its defense costs incurred on Colonial's behalf for the Lawsuit, to seek a judicial declaration that there is no coverage available to Colonial for the Lawsuit under the Policy, and to rescind the Policy. Specifically, Nationwide reserves its rights under the following provisions of the Scottsdale Policy.

First, the Policy's Commercial General Liability Coverage Part, Section IV – Commercial General Liability Conditions, and the Policy's Liquor Liability Coverage Part, Section IV – Liquor Liability Conditions, 6. Representations sections state that by accepting the Policy, Colonial agrees that the statements in the Declarations are accurate and complete, that those statements are based upon representations that Colonial had made to Nationwide, and Nationwide has issued the Policy in reliance of Colonial's representations. Here, Nationwide relied on the representations made by Colonial in its insurance applications. However, York's investigation, which was requested pre-accident, as well as additional investigation, has revealed that the representations in Colonial's insurance applications were false.

Specifically, in the insurance applications, the estimated liquor receipts were listed as $120,000. However, according to York's investigation, the premises' liquor sales are approximately $1,050,000. Next, in the insurance applications, when asked regarding the number of years in business, "new venture" was listed. However, according to York's investigation, the business has been operating at its 821 Spring Street location for fifteen (15) years. Additionally, in the applications, when asked regarding loss history for the prior three (3) years, "N/A" was listed. However, based upon Scottsdale's current understanding, several lawsuits, including but not limited to the Melenendez Lawsuit, the Hutchinson Lawsuit, the Casta Lawsuit, and the Suarez Lawsuit, as well as an assault claim from 2015, have been asserted against Colonial and/or "The Lobby" within the last three (3) years. Further, in the insurance applications, when asked about opening and closing times, "11 AM – 1 AM" was listed. Conversely, the inspection revealed that the premises' hours of operation are actually Monday to Friday from 11:00 a.m. to 3 a.m., and Friday to Saturday from 11:00 a.m. to 2:00 a.m. Additionally, in the insurance applications, when asked whether there was live entertainment on the premises, "no" was marked in response. However, the inspection indicated that unspecified live entertainment is provided at the premises. The inspection also revealed that there is a certificate of dance hall posted. In the insurance application, when asked if there was any Hookah exposure, "no" was marked. However, according to the Hutchinson Lawsuit, it appears that the plaintiff was allegedly injured by a Hookah at the 821 Spring Street premises. Finally, in the applications, when asked regarding the number of bouncers, doormen, and other security personnel, "no" was marked in response. However, according to the inspection, there are bouncers, doormen, and/or security at the premises. Accordingly, Nationwide reserves its rights to rescind the Policy or disclaim coverage to Colonial for the Lawsuit based on Colonial's material misrepresentations in its insurance applications.

Second, the Policy's Commercial General Liability Coverage Part and Liquor Liability Coverage Part, Section II – Who Is An Insured sections, state that, if the Insured is a limited liability

Colonial Restaurant LLC
December 16, 2022
Page 13 of 15

company, "you" are an insured. However, no organization is an insured with respect to the conduct of any current or past limited liability company that is not shown as a Named Insured in the Declarations. Here, the Lawsuit is commenced against, among others, "Colonial Restaurant, LLC d/b/a 'The Lobby'". The Policy's Named Insured is "Colonial Restaurant LLC". As such, to the extent that the plaintiff's claims are asserted against an organization that does not constitute an insured under the Policy, Scottsdale must reserve its rights on this basis. For that reason, at this time, Nationwide will not agree to provide coverage to any defendant in the Lawsuit other than Colonial.

Third, the Policy's Commercial General Liability Coverage Part, Section IV – Commercial General Liability Conditions and the Policy's Liquor Liability Coverage Part, Section IV – Liquor Liability Conditions sections state, in part, that Colonial must see to it that Scottsdale is notified as soon as practicable of an "occurrence" which may result in a claim. Additionally, if a claim is made or "suit" is brought, Colonial must notify Nationwide as soon as practicable. Here, the accident occurred on or about June 19, 2021. However, Nationwide's first notice of the claim and Lawsuit was on or about October 5, 2022 when Cotugno tendered its defense and indemnity. Further, to date, Colonial has not sought coverage from Nationwide for the Lawsuit which was commenced on or about August 15, 2022. Accordingly, Nationwide reserves its right to deny coverage to Colonial for the Lawsuit based on that party's failure to comply with the above condition.

Fourth, the Scottsdale Policy's Commercial General Liability Coverage Part contains the Liquor Liability exclusion, which excludes coverage for "bodily injury" for which any insured may be held liable by reason of causing or contributing to the intoxication of any person. This exclusion applies even if the claims against the insured allege negligence or wrongdoing in the supervision, hiring, training or monitoring of others by the insured. In the Lawsuit, it is alleged as a result of the negligent and unreasonable service of alcoholic beverages to Persuad, Persuad left The Lobby in an intoxicated condition and was involved in a motorcycle accident sustaining injuries that led to his death. Nationwide therefore disclaims coverage to Colonial, under the Policy's Commercial General Liability Coverage Part, for the Lawsuit based on the Liquor Liability exclusion.

Fifth, the Policy contains the Punitive Or Exemplary Damages exclusion that excludes coverage for punitive or exemplary damages. Additionally, punitive damages are not insurable as a matter of New Jersey law. As such, to the extent the Lawsuit seeks any such damages, Nationwide must disclaim coverage to Colonial for any punitive or exemplary damages sought against it in the Lawsuit based on the Punitive Or Exemplary Damages Exclusion and New Jersey law.

As set forth above, some or all of the claims asserted against Colonial in the Lawsuit may fall outside the scope of the coverage provided by the Scottsdale Policy, or the Scottsdale Policy may be void *ab initio* based on Colonial's material misrepresentations in its insurance applications. Accordingly, Nationwide offers to defend Colonial for the Lawsuit under the Scottsdale Policy, subject to an express reservation of rights under the Policy, at law, and in equity. Colonial is entitled to accept or reject this offer. If it accepts this offer, then Nationwide will retain the law firm of Milber Makris Plousadis & Seiden, LLP ("Milber Makris") to defend Colonial for the Lawsuit in accordance with the terms and conditions set forth in this Reservation of Rights And Non-Waiver Agreement.

Colonial Restaurant LLC
December 16, 2022
Page 14 of 15

If Colonial chooses to reject Nationwide's offer, Nationwide will not retain Milber Makris to defend Colonial for the Lawsuit, and instead, Colonial must retain, at its own expense, counsel of its choosing to defend its interests for the Lawsuit. Thereafter, Colonial may seek reimbursement from Nationwide for the reasonable and necessary defense costs it incurs for the Lawsuit, but only to the extent such defense costs were incurred in connection with a claim actually covered under the Scottsdale Policy.

To reject Nationwide's offer of a defense for the Lawsuit under a reservation of rights, Colonial must contact the undersigned in writing rejecting the offer <u>within thirty (30) days of the date of this Reservation of Rights And Non-Waiver Agreement</u>. If we do not hear from Colonial within that time period, Nationwide will assume that Colonial accepts and agrees to Nationwide's offer of a defense subject to the terms specified in this Reservation of Rights And Non-Waiver Agreement, and Nationwide will retain Milber Makris to defend Colonial for the Lawsuit, subject to the reservation of rights set forth herein.

Even if Colonial accepts the terms of Nationwide's offer of a defense for the Lawsuit under a reservation of rights, it may still wish to retain personal counsel, at its own expense, to work with Milber Makris to protect any potential uninsured exposure discussed above. Should Colonial accept this offer, it is not required to retain its own attorney to represent it for the Lawsuit. However, we bring this matter to Colonial's attention since it merits serious consideration. The decision of whether Colonial should employ a personal attorney for the Lawsuit given the coverage issues discussed above rests with Colonial alone.

Please also be advised that the Scottsdale Policy imposes upon Colonial a duty to cooperate with Nationwide in investigating, defending, or settling the claims asserted against it in the Lawsuit. Any failure on Colonial's part to comply with this duty may provide a separate and independent basis for Nationwide to deny coverage to Colonial for the Lawsuit under the Policy. As part of that obligation, we request that Colonial provide the following documents:

1. Copies of all contract or agreements between Cotugno and Colonial;

2. The certificate of formation, articles of incorporation, or other documents governing the formation and management of Colonial;

3. All documents regarding any relationship between Colonial and The Lobby;

4. Any and claims and/or lawsuits asserted against Colonial and/or The Lobby between 2018 and June 2021; and

5. All correspondences between Colonial or Lobby and any other person or entity regarding the incident involving Persaud or the Lawsuit.

<u>Please provide the documents and information requested above to the undersigned. Additionally, please contact the undersigned, as soon as possible, to further discuss this matter.</u>

Colonial Restaurant LLC
December 16, 2022
Page 15 of 15

Nothing in this letter constitutes, nor should it be construed by you as, a waiver of any of Nationside's rights under the Policy, at law, or in equity. Nor is it the purpose of this letter to waive any additional defenses available to Nationwide that further investigation may reveal. Instead, Nationwide specifically and unequivocally reserves any and all rights available to it under any policy issued by Nationwide, at law, and in equity.

If you are aware of any additional information relevant to Nationwide's current coverage position in this matter, please provide such information to the undersigned as soon as possible for further consideration. Thank you.

Pursuant to New Jersey Statute 17:29E-9, we advise you that Nationwide has an internal appeals procedure for the review of disputed claims. Colonial may utilize this process following decisions regarding a claim. To notify Nationwide that they are requesting this process be implemented on their behalf, Colonial must send notice to the following address:

Scottsdale Insurance Company
Attention: Jennifer Gay, CBS Operations
18700 North Hayden Road
Scottsdale AZ 85255
Phone: (800) 423-7675 Ext. 2898
Fax: (480) 483-6752

Colonial may also seek further review of this matter by the New Jersey State Insurance Claims Ombudsman at the following address:

Department of Banking and Insurance
Office of Insurance Claims Ombudsman
P.O. Box 472
Trenton, NJ 08625-0427
Phone: 800-446-7467
Fax: 609-292-2431
E-mail: ombudsman@dobi.state.nj.us

Very Truly Yours,

Christian A. Cavallo

☐ **Scottsdale Insurance Company**
Home Office    One Nationwide Plaza
Columbus, Ohio 43215
Adm. Office    8877 North Gainey Center Drive
Scottsdale, Arizona 85258

☐ **Scottsdale Surplus Lines Insurance Company**
Adm. Office    8877 North Gainey Center Drive
Scottsdale, Arizona 85258

☐ **Scottsdale Indemnity Company**
Home Office:    One Nationwide Plaza
Columbus, Ohio 43215
Adm. Office    8877 North Gainey Center Drive
Scottsdale, Arizona 85258

## BARS/RESTAURANTS/TAVERNS GENERAL LIABILITY APPLICATION

| | |
|---|---|
| Applicant's Name  Colonial Restaurant | Agency Name: |
| | Agent No |
| Mailing Address  321 Spring St.  Elizabeth NJ 07202 | Address: |
| Location Address  Same | E-mail: |
| | Phone No |

**PROPOSED EFFECTIVE DATE: From** 5-5-22 **To** 5-5-22 _12:01 A.M., Standard Time at the address of the Applicant_

ANSWER ALL QUESTIONS—IF THEY DO NOT APPLY, INDICATE "NOT APPLICABLE" (N/A)

**Applicant is:** ☐ Individual    ☐ Corporation    ☐ Partnership    ☐ Joint Venture
☑ Limited Liability Company    ☐ Other (Specify) _____

**Website Address:** _____

**E-mail Address:** _____    **Phone No.:** _____

**Inspection Contact:** _____

**E-mail Address:** _____    **Phone No.:** _____

**Limits of Liability and Deductible Requested:**

| | |
|---|---|
| General Aggregate (other than Products/Completed Operations) | $ 2,000,000 |
| Products and Completed Operations Aggregate | $ 2,000,000 |
| Personal and Advertising Injury (any one person or organization) | $ 1,000,000 |
| Each Occurrence | $ 1,000,000 |
| Damage to Premises Rented to You (any one premise) | $ 500,000 |
| Medical Expense (any one person) | $ 5,000 |
| Other Coverages, Restrictions and/or Endorsements: | $ |
| Deductible | $ |

1. **Classification of risk** (select all that apply):

☐ Banquet facility   ☐ Bring your own bottle establishment   ☐ Disco   ☐ Membership club
☑ Bar/Tavern   ☐ Cabaret   ☐ Country club   ☐ Fine Dining   ☐ Nightclub
☐ Bowling center   ☐ Comedy Club   ☐ Deli   ☐ Gentlemen's/Strip Club   ☑ Restaurant

2. **Annual gross sales:**

| | Past Twelve (12) Months | Next Twelve (12) Months |
|---|---|---|
| Alcohol Sales | | 120.000 |
| Food Sales | | 280.000 |
| Gambling | | |
| Other | | |
| Total | | |

_Resturante_
_New Yorke_

3. **Number of years in business:** ...............................................................................

4. **Number of years under current management:** ...................

5. **Opening and closing time per day:** ___ 11AM - 1AM ___

6. **Schedule of Hazards:**

| Loc. No. | Classification Description | Class. Code | Exposure | Premium Basis (s) Gross Sales (p) Payroll (a) Area (c) Total Cost (t) Other |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

7. **Are there any catering services available?** ........................................................ ☐ Yes ☑ No

   If yes:   ☐ Off premises   ☐ On premises   Gross sales: ................   $_____

8. **Types of meals served:**   ☑ Full meals   ☐ Short order

9. **Square footage of bar/tavern/restaurant:** .................................................   4800

10. **Is applicant a BBQ restaurant?** ......................................................... ☐ Yes ☑ No

11. **Is applicant a microbrewery that sells their products for off premises consumption?** ........... ☐ Yes ☑ No

12. **Are facilities available for use or rent for private parties, receptions, banquets or similar affairs?** ☐ Yes ☑ No

   If yes:  Number of times per year ..........................................................   _____

   Describe: _____

   _____

Nationwide

13. Are patrons allowed to drink their own alcoholic beverages on the premises? ... .......... ☐ Yes ☑ No

If yes:

   a. Are there procedures in place for handling violent or disruptive patrons? ... .. ........... ☑ Yes ☐ No

   b. Is there table service? ... .......... ......... ........ ........ ☑ Yes ☐ No

   c. Does applicant also sell alcohol?. ... ... ............... .......... ... ☑ Yes ☐ No

14. Does applicant advertise or promote "happy hour" or other events when drinks are sold at a lower price than usual? .......... ☐ Yes ☑ No

15. Does applicant subscribe to a taxi or other service providing transportation home to apparently intoxicated persons? ... ......... ☐ Yes ☑ No

If yes, describe.

___ ___ _____ ____ __ _____ _ _____ ___ _____

16. Is there Hookah exposure (communal smoking)? ... ... .... .. ... ☐ Yes ☑ No

If yes

   a. Any blending of tobacco by applicant? .. ............ ... ☐ Yes ☐ No

     If yes, what percentage of tobacco products.. .. ... ........ _____ %

   b. Does applicant import any tobacco products? ...... .. ☐ Yes ☐ No

     If yes, what percentage of tobacco products ... %

   c. Does applicant allow underage persons to purchase and/or use the products? .. ☐ Yes ☐ No

   d. How often does applicant clean pipes, tubing and mouthpieces?

17. Entertainment:

   a. Is there any live entertainment on premises? ☐ Yes ☑ No

     If yes   Number of times per week .. .. ..

       Describe (include go-go dancers topless, disco exotic, female/male)

     ___ _ _ __ __ _____ _ _ _ ___ ___ ___

   b. Is there dancing? .. . . ........ ☐ Yes ☐ No

     If yes   Number of times per week

       Square footage of dance floor ... ___ _____

   c. Does applicant have any mechanical or amusement devices? .......... ☐ Yes ☐ No

     If yes   How many? ___ _

       Describe ___ __ _____ ____ __

     _____ ___ __ _____ ____ __

   d. Is there a minimum or cover charge? ......... ........ ☐ Yes ☐ No

   e. Are there sports on the premises? .. . ....... ☐ Yes ☐ No

     If yes   Provide complete details _____ ____ ___

     _____ _____ ____ _____

   f. Are sports sponsored off premises? . .......... ☐ Yes ☐ No

     If yes   Number of times per week: _____

       Give details _ _ ___ __ _____ ____ ___

   g. Does applicant sponsor any special events? . . .......... .... ☐ Yes ☐ No

     If yes   Describe _____ __

     _____ ____ _____ ___

Nationwide

h.  Is there any gambling? ....................................................................................... ☐ Yes ☒ No
   If yes   Are there any "live" dealers? ................................................................. ☐ Yes ☐ No
        Number of gambling machines: _____
i.  Is there a play area for children? ...................................................................... ☐ Yes ☒ No
j.  Are there any drinking games (i.e., beer pong, flip cup)? ...................................... ☐ Yes ☒ No
   If yes:  Describe: _____
   _____
k.  Are there any pub crawls (pedal bus or motorized)? ..... ...................................... ☐ Yes ☒ No
l.  Does applicant own or sponsor party buses? ...................................................... ☐ Yes ☒ No
m.  Are there any hatchet/axe throwing activities? .................................................... ☒ Yes ☐ No

18.  **Does applicant have parking area?** .................................................................. ☒ Yes ☐ No
   If yes, is parking area well lit? ............................................................................ ☒ Yes ☐ No

19.  **Does applicant subcontract valet parking services on restaurant premises?** .... ... . . ☐ Yes ☒ No
   If yes:  Annual subcontract cost ...................................................................... $
   Do subcontractors provide certificate of insurance with liability limits equal or greater than our
   applicant? ............................................................................................... ☐ Yes ☐ No
   Do written contracts contain hold harmless agreements in favor of the applicant? ............... ☐ Yes ☐ No
   Does applicant require all subcontractors to include the applicant as an additional insured on the General Liability and Garage policies? ................................................................. ☐ Yes ☐ No

20.  **Clientele:**
   ☒ Local residents   ☐ Families   ☐ Retirement community   ☐ College students   ☐ Seasonal residents
   Median age of patrons   ☐ 18-25   ☒ 26-30   ☒ 31-40   ☐ 41 and over
   Are premises located near a college or university? ....... .. .. ☐ Yes ☒ No

21.  **In the past five years, has applicant been cited by the Liquor Control Commission?** .. ... . . ☐ Yes ☒ No
   If yes, give date(s) and full explanation

22.  **Are police records and background checks conducted on employees?** ................. ☒ Yes ☐ No

23.  **Number of bouncers, doormen or security personnel:** ...................................... _____
   Are bouncers, doormen or security personnel employees? ...................................... ☐ Yes ☒ No
   Are bouncers, doormen or security personnel independent contractors? .. .. .. .. .. .. ☐ Yes ☐ No
   If independent contractors, do they provide Certificates of Insurance and Additional Insured Endorsements to the applicant? ... .. ...................................................................... ☐ Yes ☐ No

24.  **Does applicant have Workers' Compensation coverage in force?** ......................... ☒ Yes ☐ No
   Total number of employees: .. .. ...................................................................... _____

25.  **During the past three years, has any company ever canceled, nonrenewed, declined or refused similar insurance to the applicant? (Not applicable in Missouri)** .................................. ☐ Yes ☒ No
   If yes, explain

26.  **Does risk engage in the generation of power, other than emergency back-up power, for their own use or sale to power companies?** .. ... . . ............................................... ☐ Yes ☒ No

27. Does applicant have other business ventures for which coverage is not requested? ... .. ...........☐ Yes ☑ No

If yes, explain and advise where insured: __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

28. Additional Insured Information:

| Name | Address | Interest |
|------|---------|----------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

29. Prior Carrier Information:

|  | Year: | Year: | Year: |
|--|-------|-------|-------|
| Carrier |  |  |  |
| Policy No. |  |  |  |
| Coverage |  |  |  |
| Occurrence or Claims Made |  |  |  |
| Total Premium |  |  |  |

30. Loss History:

Indicate all claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the prior three years.  ☐ Check if no losses in the last three years

| Date of Loss | Description of Loss | Amount Paid | Amount Reserved | Claim Status (Open or Closed) |
|--------------|---------------------|-------------|-----------------|-------------------------------|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. (Not applicable in AL, CO, DC, FL, KS, LA, ME, MD, MN, NE, NY, OH, OK, OR, RI, TN, VA, VT or WA.)

**NOTICE TO ALABAMA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof

**NOTICE TO COLORADO APPLICANTS:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies

Nationwide

GLS-APP-18s (8-18)

**APPLICANT'S STATEMENT:**

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying (Kansas: This does not constitute a warranty )

APPLICANT'S NAME AND TITLE: Terry Gonzalez

APPLICANT'S SIGNATURE: _____    DATE: 5-5-21

PRODUCER'S SIGNATURE: _____    DATE: _____

AGENT NAME: Hillary Comero    AGENT LICENSE NUMBER: 1537643

NAME AND PHONE NUMBER OF INDIVIDUAL TO CONTACT FOR INSPECTION/AUDIT: Terry Gonzalez
908 623 7076

— — — — — — — — IMPORTANT NOTICE — — — — — — — — — —

As part of our underwriting procedure, a routine inquiry may be made to obtain applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

Nationwide

/_/_/_/_/_/ - /_/_/ - /_/_/_/_/
Transaction Number

Form Number SLPS-5-CERT-1

**STATE OF NEW JERSEY**
**DEPARTMENT OF BANKING AND INSURANCE**
**SURPLUS LINES EXAMINING OFFICE**
**P.O. BOX 325**
**TRENTON, NEW JERSEY 08625-0325**

## CERTIFICATION OF EFFORT TO PLACE RISK WITH AUTHORIZED INSURER

This certification shall be submitted by the originating producer to the surplus lines agent, within 30 business days after the effectuation of any surplus lines insurance. The original of the certification must be maintained in the files of the surplus lines agent and a copy in the files of the producer and both must be available for inspection by the Commissioner for a period of at least five years.

Colonial Restaurant LLC
(Name of Insured)

821 Spring St. Elizabeth NJ 07208
(Address of Insured)

821 Spring St Elizabeth NJ 07208
(Location of Property or Risk)

GL / 1 million
(Insurance Coverage: Description and Amount)

////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

Chris Hill
(Originating Producer - Corporate or partnership)

Hillary Sermeno
(Originating Producer - Individual Name and/or Title)

829 North Ave Elizabeth NJ 07208
(Originating Producer - Complete Address)

The above hereby certifies that he/she is duly licensed as an insurance producer under the laws of New Jersey, and that: On or about _____ 20___, I was engaged by the insured named herein to procure insurance of the kind described herein and in the amount shown   I have made a diligent effort first to place this coverage with authorized insurers, each of which is authorized in New Jersey to write insurance of the kind requested and is an insurer that I had a good faith reason to believe might consider writing the type of coverage described herein



**RWRSO**

## Certification of Effort To Place Risk With Authorized Insurer (continued)

## Page 2 of 2

The following insurers are among those that I contacted relative to this risk, or to substantially similar risks within the past 30 days:

| INSURER | REPRESENTATIVE | TELEPHONE NO. | DATE | RESULT CODE* |
|---|---|---|---|---|
| CNA | | | | |
| State Farm | | | | |
| Travelers | | | | |

*Result Codes: (enter appropriate code(s) for each Insurer listed above)

**A.** - Having made a diligent effort. I was unable to obtain an offer/quote from this authorized insurer in the admitted market, which declined to accept all or any part of the risk

AND/OR

**B.** - Having made a diligent effort, the only offer(s)/ quote(s) obtained reflected such a substantial increase in premium over similar coverage placed within the preceding 12 months that comparable coverage is, as a practical matter, unavailable from this authorized insurer in the admitted market.

AND/OR

**C.** - Having made a diligent effort, the only offer(s)/ quote(s) obtained reflect(s) such a substantial reduction in coverage from coverage placed within the preceding 12 months for substantially similar premium that comparable coverage is, as a practical matter, unavailable from this authorized insurer in the admitted market

I certify that the foregoing statements made by me are true to the best of my knowledge and belief. I am aware that if any of the statements are willfully false, I am subject to civil and criminal penalties.

5-5-21
(Date)

_____
Signature

Amended by R.2005 d.104, effective April 4, 2005.
See: 36 N.J R.2144(a), 37 N J.R.1065(a)

☐ **Scottsdale Insurance Company**
　Home Office:　One Nationwide Plaza
　　　　　　　　Columbus, Ohio 43215
　Adm. Office:　8877 North Gainey Center Drive
　　　　　　　　Scottsdale, Arizona 85258

☐ **Scottsdale Surplus Lines Insurance Company**
　Adm. Office.　8877 North Gainey Center Drive
　　　　　　　　Scottsdale, Arizona 85258

☐ **Scottsdale Indemnity Company**
　Home Office:　One Nationwide Plaza
　　　　　　　　Columbus, Ohio 43215
　Adm. Office:　8877 North Gainey Center Drive
　　　　　　　　Scottsdale, Arizona 85258

## LIQUOR LIABILITY APPLICATION

### Complete a separate application for each location.

Applicant's Name: Colonial Restaurant

Mailing Address: 821 Spring St Elizabeth NJ 07201

Location Address: _____

Website Address: _____

Agency Name: _____

Agent: _____

Address: _____

E-Mail: _____

Phone No.: _____

**PROPOSED EFFECTIVE DATE: From** 5-5-21 **To** 5-5-22  12:01 A.M., Standard Time at the address of the Applicant

**Inspection Contact Name:** Tony Gonzalez  **Phone:** _____

ANSWER ALL QUESTIONS—IF THEY DO NOT APPLY, INDICATE "NOT APPLICABLE" (N/A)

**Applicant is:**　☐ Individual　☐ Corporation　☐ Partnership　☐ Joint Venture
　　　　　　　☑ Limited Liability Company　☐ Other (Specify): _____

### Limits of Liability Requested

| Each Common Cause | Aggregate |
|---|---|
| $ 1,000,000 | $ 2,000,000 |

**1. Classification of risk:**

☐ Arena/Stadium　　　　　☐ Auditorium　　　　　　　☐ Banquet Hall
☐ Bar/Tavern　　　　　　☐ Bartender/Liquor service only　☐ Bowling Alley
☐ Casino/Gaming　　　　　☐ Catering Service　　　　☐ Comedy Club
☐ Concession Stand　　　　☐ Convenience Store　　　　☐ Drive-through Daiquiri Shop
☐ Exercise and Health Studio　☐ Exhibit Hall　　　　　☐ Fairground
☐ Gentlemen's/Strip Club　　☐ Grocery Store　　　　　☐ Hotel/Motel
☐ Liquor Distributor/Wholesaler　☐ Liquor Manufacturer/Brewery　☐ Liquor/Package Store
☐ Microbrewery　　　　　☐ Nightclub　　　　　　　☐ Party Buses
☑ Restaurant　　　　　　☐ Social Club　　　　　　☐ Special Event
☐ Sports Field　　　　　　☐ Winery
☐ Other (Describe): _____

GLS-APP-28g (9-17)　　　　　Page 1 of 8　　　　　 Nationwide

2. Are patrons allowed to bring their own alcoholic beverages? ................................................. ☐ Yes ☑ No

3. Are patrons allowed to self-serve themselves alcoholic beverages? .......................................... ☐ Yes ☑ No

4. Has applicant ever been assessed a fine for violation of a law concerning the sale of alcohol, or had their liquor license suspended/revoked? .............................................. ☐ Yes ☑ No

If yes, when and why? _____

5. Name on liquor license: COCKTAIL RESTAURANT    Type of liquor license: retail

6. Estimated liquor receipts: .............................................................................................. $ 120,000

Other receipts: ............................................................................................................ $ _____

7. Average price for:

Beer ............................................................................................................................... $ 6

Wine ............................................................................................................................... $ 7

Liquor ........................................................................................................................... $ 7

8. Percentage of receipts for on-premises consumption: ........................................... 50 %

9. Percentage of receipts for off-premises consumption: ............................................ ___ %

10. Estimated food receipts: ............................................................................................ $ 780,000

11. Percentage of liquor receipts to total receipts: ...................................................... 30 %

12. How many years has the applicant been in business? ............................................ NEW VENTURE

13. How many years has the applicant been at this location? ....................................... NEW VENTURE

14. Premises within city limits? ....................................................................................... ☑ Yes ☐ No

15. Square foot area of establishment: 4500    (Maximum Occupancy: 80 )

16. How many days per week is the location open? .......................................................... 7

17. What time does the location close? 1AM    Hours of serving: 11AM–1AM

18. Number of servers? .................................................................................................... 5

19. Have all servers been through alcohol awareness server training (i.e., TIPS, TOPS)? ......... ☑ Yes ☐ No

If yes:

Type of course TIPS _____

How often required? twice a year _____

20. Does insured have a ride home policy? ..................................................................... ☐ Yes ☑ No

21. How often does the manager review liquor liability laws with employees (including penalties for serving intoxicated customers)? weekly _____

22. Are procedures in place regulating the sale of alcohol to minors and those under the influence? ☑ Yes ☐ No

If yes, describe: ID scanners _____

How is age of customer verified? ID scanners _____

23. Type of clientele: ☑ Area Residents   ☐ Area Workers   ☐ Tourists   ☐ College   ☐ Other: _____

24. Percent of clientele:

25 and under: ....................................................................................................................

26-30: ........................................................................................................................ ___ %

Over 30 ...................................................................................................................... 40 %

................................................................................................................................... 60 %

25. **Type of area:** ☑ Industrial or Commercial   ☐ Residential   ☐ Rural   ☐ Other. _____  _____
Located on or near college campus? . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No

26. **Is there an entrance fee or cover charge?** . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No
If yes, what is the amount? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

27. **Does applicant have "Happy Hour" or 2-for-1 drink specials?** . . . . . . . . . . . ☐ Yes ☑ No
Is last call announced? . . . . . . . . . . . . . . . . . . . . . . . . ☑ Yes ☐ No
Are customers allowed more than one drink at last call? . . . . . . . . . . . . ☐ Yes ☑ No

28. **Any internet or mail order liquor sales?** . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No

29. **Security Activities:**
Security provided (check all applicable):
☐ Bouncers    ☐ Doormen    ☐ Off-Duty Police    ☐ Contracted Security Guards
☐ Inside    ☐ Outside    ☐ Armed    ☐ Unarmed
☐ Other (Describe): _____  _____  _____
Any firearms kept or carried on the premises? . . . . . . . . . . . . . . . . ☐ Yes ☑ No

30. **Are there procedures for handling violent or disruptive patrons?** . . . . . . . ☑ Yes ☐ No
If yes, describe: The Restaurant & Nightclub Handbook _____

31. **Types of entertainment activities:**
☐ Darts    ☐ DJ    ☐ Exotic Dancing    ☐ Jukebox    ☐ Karaoke    ☐ Pinball Machine
☐ Dance Floor . . . . . . . . . . . . . . . . . Size: _____  _____
☐ Electronic Games . . . . . . . . . . . . . . Type. _____  _____
☐ Live Entertainment . . . . . . . Type and how often: _____  _____
☐ Mechanical Devices. . . . . . . . . . . . . Type _____  _____
☐ Pool Table(s) . . . . . . . . . . . . . . . Number _____  _____
☐ Other activities that would include patron participation (such as: wrestling, boxing, volleyball, etc.): _____
_____  _____
☐ Drinking Games (i.e., beer pong, flip cup) sponsored by the insured? . . . . . . . ☐ Yes ☐ No
☐ Special Promotions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No
If yes, describe: . _____  _____
_____

32. **Gentlemen's/Strip Clubs:**
Turnover rate for staff _____
Are servers/dancers in training? . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No
Does applicant prohibit serving of alcohol after hours to their staff? . . . . . . . ☐ Yes ☐ No
Are clients allowed to purchase drinks for dancers/hostesses? . . . . . . . . . . ☐ Yes ☐ No

33. **Manufacturer:**
Are tours of facility provided? . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No
Are free samples given? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No
If yes, how is quantity controlled? _____  _____
_____  _____

**34.  Distributor:**

Any sponsored events? .............................................................................................................. ☐ Yes ☒ No

If yes, describe: _____

_____

Policy for giving away alcoholic beverages by Sponsor?................................................... ☐ Yes ☐ No

If yes, describe _____

_____

**35.  Caterers:**

Are clients/guests allowed to mix their own drinks?    ................................... ☐ Yes ☒ No

Does caterer provide liquor or bartending service?.......................................... ☐ Yes ☐ No

**36.  Additional Insured Information:**

| Name | Address | Interest |
|------|---------|----------|
|      |         |          |
|      |         |          |
|      |         |          |

**37.  During the past three years, has any company ever canceled, declined or refused similar insurance to the applicant?** (Not applicable in Missouri)......................................................... ☐ Yes ☐ No

If yes, explain _____

**38.  Prior Carrier Information:**

|            | Year: | Year: | Year: |
|------------|-------|-------|-------|
| Carrier    |       |       |       |
| Policy No. |       |       |       |

**39.  Loss History:**

Indicate all Liquor Liability claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the prior three years.          ☐ Check if no losses in the last three years.

| Date of Loss | Description of Loss | Amount Paid | Amount Reserved | Claim Status (Open or Closed) |
|------|------|------|------|------|
|      |      | $    | $    |      |
|      |      | $    | $    |      |
|      |      | $    | $    |      |
|      |      | $    | $    |      |
|      |      | $    | $    |      |

This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.

I understand that Liquor Liability is a separate coverage part and the limits requested in this application apply solely to liquor liability coverage and may differ from the General Liability limits afforded in my commercial package policy.

I further understand that the Company is relying upon statements I have made in this application as an inducement to provide insurance for Liquor Liability coverage.



**FRAUD WARNING (APPLICABLE IN VERMONT, NEBRASKA AND OREGON):** Any person who intentionally presents a materially false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law

**FRAUD WARNING (APPLICABLE IN TENNESSEE, VIRGINIA AND WASHINGTON):** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits

**NEW YORK FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation

**APPLICANT'S STATEMENT:**

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty.)

APPLICANT'S SIGNATURE: _____ DATE 5-5-21

CO-APPLICANT'S SIGNATURE: _____ DATE _____

PRODUCER'S SIGNATURE: _____ DATE 5-5-21

AGENT NAME: Hillary Semeno           AGENT LICENSE NUMBER: 1537648
(Applicable to Florida Agents Only)

IOWA LICENSED AGENT: _____
(Applicable in Iowa Only)

— **IMPORTANT NOTICE** —

As part of our underwriting procedure, a routine inquiry may be made to obtain applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

GLS-APP-28g (9-17)                    Page 6 of 8                    **Nationwide**



Transaction Number

The undersigned applicant has been advised by the undersigned originating insurance producer and understands that an insurance policy written by a surplus lines insurer is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance.

_____
Applicant's Signature

_____
Applicant's Name (Print or Type)

_____
Date of Applicant's Signature

_____
Producer Signature

_____
Producer Name (Print or Type)

_____
Date of Producer Signature

_____
New Jersey Producer License Reference Number



**RWRSO**